**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00687-NYW-TPO

**JANE DOE**, a minor child by and through her guardian and natural parent, **JANE ROE,**

      Plaintiff,

v.

**CHERRY CREEK SCHOOL DISTRICT**;
**KEVIN UHLIG**, in his individual capacity;
and **RYAN SILVA**, in his individual capacity,

      Defendants.

─────────────────────────────────────────────

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**
─────────────────────────────────────────────

Plaintiff Jane Doe, through her attorneys, Laura B. Wolf and Stephen Shaw of **SPARK JUSTICE LAW LLC,** respectfully submits the following Motion for a Protective Order pursuant to Federal Rule of Civil Procedure 26(c)(1) and Federal Rule of Evidence 412(a), and states as follows:

**STATEMENT OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel conferred with counsel for Defendants regarding this Motion. Defendants oppose the requested relief.

**FACTUAL & PROCEDURAL BACKGROUND**

This case arises from Defendants' failure to implement proper protections for Plaintiff Jane Doe after she was sexually assaulted by John Jones, a fellow Cherry Creek High School student, on or around January 19, 2022. The pursuant criminal prosecution of Mr. Jones resulted in his entering into a plea agreement in October 2022, in which he pled guilty to a misdemeanor count of "Sexual Contact – No Consent" in exchange for a

two-year deferred adjudication.  Notably, Defendants have **never** raised as a defense that Ms. Doe consented to Mr. Jones's sexual assault, nor have they denied or challenged the basis of Mr. Jones's conviction.

On August 27, 2024, Plaintiff conducted a fact-witness deposition of Mr. Jones. During this deposition, Defendants engaged in lines of questioning regarding alleged previous sexual contact between Mr. Jones and Ms. Doe and Ms. Doe's alleged sexual reputation.  Plaintiff objected on the grounds of relevance under Fed. R. Civ. P. 26(b)(1), as well as invoking Fed. R. Evid. 412 and C.R.S. § 13-25-13, which establish the presumption that with respect to victims of sexual assault (such as Ms. Doe), evidence of the victim's sexual conduct is irrelevant and not admissible.  *See, e.g.*, **Ex. 1**, *John Jones Deposition Transcript Excerpts* at 203:12-204:20, 208:13-14, 209:13-17.[1]

Following Mr. Jones's deposition, Plaintiff provided Defendants with a discovery dispute letter outlining a number of issues, including the need for a protective order to preclude discovery into Ms. Doe's sexual history, including her alleged sexual reputation. The parties conferred on these issues on September 26, 2024.  Following this conferral, Plaintiff sent a follow-up discovery dispute letter to Defendants reproducing the issues outlined in the first letter and adding a section to each dispute memorializing the outcome of counsel's discussions, with a request that Defendants alert her if they disputed any of the positions set forth within.  *See generally* **Ex. 2**, *2024.09.28 Discovery Dispute Letter*

---

[1] Because the Parties agreed to mark the transcript Confidential under the Stipulated Protective Order in this case, this exhibit is being filed as a restricted document.  Plaintiff will file a motion to restrict within the timeframe set forth in D.C.COLO.LCivR 7.2.

*Conferral Positions*.  Defendants did not dispute Plaintiff's description of their position regarding Ms. Doe's sexual history, which is as follows:

> You stated that you believed that these issues are within bounds of discovery as they go to emotional distress.  You indicated your position that there is a difference in the emotional distress experienced by a person who had previously engaged in consensual sexual contact with a future assaulter (as well as generally) and that experienced by a person who had not. You acknowledged that Federal Rule of Evidence 412 may keep such evidence out at trial, but you stated that that would be determined by what discovery showed.

*Id.* at 17.  Plaintiff noted her disagreement, particularly that "sexual contact is not correlated with trauma arising from a sexual assault, that courts regularly prohibit discovery on these issues, and that any such level of questioning would be entirely inappropriate." *Id.* Plaintiff reiterated her stance that such discovery was prohibited under Fed. R. Civ. P. 26 and Fed. R. Evid. 412 and her intention to move for a protective order should Defendants pursue this line of inquiry.  *Id.*

On October 21, 2024, Defendants served written discovery on Plaintiff, which contained several discovery requests that affirmed Plaintiff's alarm that Defendants would continue their pursuit into Ms. Doe's alleged past sexual history.  For instance, Defendants issued interrogatories and requests for production involving Ms. Doe's relationship and interactions with Mr. Jones prior to the assault, which bear no relation to Defendants' conduct at issue in this case.  *See, e.g.*, **Ex. 3**, *Defendants' First Set of Written Discovery to Plaintiff* at Interrogatory No. 2; Request for Production Nos. 4, 9.[2]  In

---

[2] Plaintiff acknowledges that the identified written discovery requests may encompass information beyond Ms. Doe's alleged sexual interactions with Mr. Jones.  However, Interrogatory No. 2 in particular is limited explicitly to Ms. Doe's interactions with Mr. Jones

light of these continued indications that Defendants intend to probe Ms. Doe's alleged sexual history notwithstanding its irrelevance to this case, and in advance of Defendants noticing Ms. Doe's deposition, Plaintiff seeks a protective order to limit discovery of Ms. Doe's sexual conduct and reputation.

## LEGAL ANALYSIS

Federal Rule of Civil Procedure 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Additionally, Fed. R. Civ. P. 26(c)(1) provides that, upon good cause shown, a court may issue a protective order to protect a party or person from "annoyance, embarrassment, oppression or undue burden or

---

*prior* to the sexual assault and has no bearing on Defendants' conduct or any injury that Ms. Doe may have experienced as a result of Defendants' conduct.  This Interrogatory (together with the Requests for Production seeking communications with and about Mr. Jones from June 2021 onward, rather than from the date of the assault, January 19, 2022, onward, clearly signal Defendants' intention to explore Ms. Doe's alleged sexual relationship with Mr. Jones during this pre-assault period.  Defendants' second set of written discovery requests similarly seek information regarding conversations and communications with and about Mr. Jones for an even more expansive period, from January 2020 forward.  *See, e.g.*, **Ex. 4**, *Defendants' Second Set of Written Discovery to Plaintiff* at Interrogatory Nos. 20, 21, 25; Request for Production Nos. 15, 16.  Once again, these communications prior to January 19, 2022 have no bearing on the issues in this case.

expense," including entering orders that the discovery not be had or forbidding inquiry into certain matters. These safeguards are incorporated into Fed. R. Civ. P. 30(c)(2) and 30(d)(3), which allows counsel to instruct the deponent not to answer certain questions and to move to limit deposition questioning on the ground that it is being conducted "in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Under Fed. R. Civ. P. 30(d)(3), courts may limit the scope of depositions as provided by Rule 26(c). The authority of trial courts to issue protective orders under Rule 26(c) is broad because of the significant potential for abuse and important privacy interests that may be implicated by discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).

Here, a protective order is needed to prevent further harassment and embarrassment to the Plaintiff—a high-school student who was sexually assaulted as a freshman—in the form of discovery into her private sexual life and sexuality. Not only will such evidence be inadmissible under Fed. R. Evid. 412, but to allow Defendants to proceed with such lines of questioning will create a chilling effect on other victims of sexual abuse that is against the public interest.

**I.     Fed. R. Evid. 412 Precludes Discovery into Ms. Doe's Alleged Sexual History**

Fed. R. Evid. 412 states: "The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a). Thus, evidence of a plaintiff's mode of speech and dress, lifestyle, sexual behavior, predisposition, sexual conduct with third parties, fantasies, dreams, and information with sexual connotations is irrelevant and

presumptively inadmissible at trial.  *Truong v. Smith*, 183 F.R.D. 273, 274-75 (D. Colo. 1998) (presumptively inadmissible); *Socks-Brunock v. Hirschvogel Inc.*, 184 F.R.D. 113, 118-19 (S.D. Ohio 1999) (same); *Burns v. McGregor Elec. Indus.*, 989 F.2d 959, 962-64 (8th Cir. 1993) (posing naked for a magazine or use of foul language outside of work was not relevant to plaintiff's sexual harassment claim and court was in error allowing it to bias decisions).

Although Rule 412 theoretically governs the admissibility of evidence and not the scope of discovery, courts have regularly considered the rule in rendering discovery decisions, "in order not to undermine [its] rationale."  *See Williams v. Bd. of Cty. Comm'rs*, 192 F.R.D. 698, 704 (D. Kan. 2000); *Ratts v. Bd. of Cty. Comm'rs*, 189 F.R.D. 448, 451 (D. Kan. 1999); *see also, e.g.*, *EEOC v. Bryan C. Donahue, M.D., P.C.*, 746 F. Supp. 2d 662, 665 (W.D. Pa. 2010).  Indeed, the Advisory Committee Notes on Rule 412 state:

> In order not to undermine the rationale of Rule 412, . . . courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality.  **Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery.**  In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior in the workplace may perhaps be relevant, non-work place conduct will usually be irrelevant.

Fed. R. Evid. 412, Advisory Committee Note (1994) (citing case law) (emphasis added). As a result, it is the proponent of the presumptively inadmissible discovery who must establish relevance and that the value of the evidence sought substantially outweighs the danger of harm or prejudice to the victim.  *Truong*, 183 F.R.D. at 274; *A.W. v. I.B. Corp.*, 224 F.R.D. 20, 24 (D. Maine 2004).

Ms. Doe's alleged past sexual history, including with Mr. Jones, bears no possible relevance to the claims and defenses in this case. However, the evidence sought by Defendants is substantially prejudicial to Ms. Doe, as it seeks to portray her as sexually promiscuous and to discredit her in the eyes of the jury. Publicization of the intimate details of her sexual life would be especially harmful and prejudicial for Ms. Doe as the minor victim of sexual assault, giving Ms. Doe a heightened interest in shielding her alleged sexual history from public scrutiny.

Further, Defendants' interest in questioning Ms. Doe's alleged sexual history with Mr. Jones in particular is especially concerning. Although a victim's consensual sexual history with her assailant may be permitted under Rule 412, such history is typically relevant to establish consent or lack thereof for the alleged assault. *See, e.g.*, *Truong*, 183 F.R.D. at 275. Defendants have never previously challenged the nonconsensual nature of Mr. Jones's January 2022 assault of Ms. Doe, to which Mr. Jones pled guilty. And yet Defendants spent a *significant* portion of their time on the record during Mr. Jones's deposition—that is, five out of eight pages of transcript—soliciting testimony that Ms. Doe had previously consented to and even sought out sexual contact with Mr. Jones. *See* **Ex. 1** at 203:3-208:15. Defendants questioned Mr. Jones about the particulars of this alleged contact, including the number of times they had kissed; how many times Ms. Doe had touched Mr. Jones's genitals; whether Ms. Doe had initiated contact with Mr. Jones's genitals; whether Mr. Jones had touched Ms. Doe's breasts and genitals; whether Ms. Doe had ever previously objected to such conduct; and whether Ms. Doe had sent Mr. Jones messages indicating that she wanted to escalate the level of their sexual activity. *See id.* Defendants spent the remainder of their deposition time (excluding

several short questions about the church Mr. Jones and Ms. Doe attended) soliciting testimony regarding Ms. Doe's alleged reputation for sexual promiscuity among CCSD students prior to Mr. Jones's assault. *Id.* at 208:16-210:6. Plaintiff can think of no reason—aside from an invidious desire to embarrass, harass, discredit, and discourage Ms. Doe from pursuing this litigation—that such information would be relevant to Ms. Doe's claims against Defendants in this case or their defenses.

## II. Ms. Doe's Sexual History Prior to Mr. Jones's Assault Is Irrelevant to Her Claim of Emotional Distress

Contrary to Defendants' position, allegations of emotional distress do not give a defendant free rein to rummage through a victim's sexual past or current relationships. *See Truong*, 183 F.R.D. at 275- 76; *Bryan C. Donahue*, 746 F. Supp. 2d at 667. While courts have previously held that, under FRE 412, a victim's past trauma may be relevant to examining whether certain evidence is relevant to their claims of emotional distress, *see Ledezma v. Young Life*, No. 20-CV-01896-NYW, 2021 WL 2823261, at *9 (D. Colo. Jan. 8, 2021), this exception does not allow a defendant to therefore assume that every event in a victim's life is a potential source of trauma until the victim has testified otherwise. Instead, defendants are permitted to inquire into a victim's past traumatic experiences as alternate sources of emotional distress only when evidence exists in the record that such experiences may in fact be traumatic. *See, e.g.*, *id.* (denying the plaintiff's motion for a protective order regarding discovery into her past trauma because she had "affirmatively disclosed the past trauma to others at [employer], thereby raising at least a colorable issue as to whether such past trauma might be an alternative source of the emotional distress she experienced . . . for which she now claims damages"); *Doe v. Bridges to Recovery, LLC*, 2021 WL 4690830, at *2 (C.D. Cal. May 19, 2021) (denying

the plaintiffs' motion to exclude references to a plaintiff's inter-family disputes, including issues regarding domestic violence and alcoholism, specifically because "there is evidence in the record based on which a reasonable juror could infer that the inter-family disputes were a source of emotional distress"); *Giron v. Corrections Corp. of America*, 981 F. Supp. 1406 (D.N.M.1997) (permitting additional discovery as to the damages caused by sexual contact with third parties when that plaintiff had responded to discovery acknowledging two prior rapes by other parties and childhood sexual abuse).

No such evidence exists in the record, nor do Defendants argue such. Instead, with no factual basis whatsoever, Defendants posit that sexual assault victims who had engaged in prior consensual sexual activity—regardless of whether they engaged in such activity with their assailant—*de facto* experience emotional distress differently. In more straightforward terms, Defendants take the position that they are entitled to determine to what extent Ms. Doe was a virgin prior to her sexual assault by Mr. Jones because such status is apparently determinative of Ms. Doe's emotional distress. This comports with the level of detail solicited by Defendants from Mr. Jones during his deposition and anticipated to be solicited from Ms. Doe during hers: by demonstrating that Ms. Doe had previously consented to a certain level of sexual contact with Mr. Jones, Defendants seemingly seek to establish that she was used to such contact and therefore less susceptible to the damage of nonconsensual sexual activity.

In reality, this argument has been soundly rejected by courts. For example, in *Mitchell v. Hutchings*, 116 F.R.D. 481 (D. Utah 1987), the court thoroughly and directly disagreed:

> Defendants also argue that plaintiffs' sexual conduct has a bearing on damages. Defendants note that plaintiffs' alleged damages are limited to

9

psychological and emotional damages.  Defendants argue that those damages require an inquiry into the sexual behavior of the plaintiffs because sexually promiscuous people are less likely to be offended by sexual harassment, and thus less damaged, than those who are less sexually active.  Although defendants' argument has a persuasive ring, this court does not agree.  Past sexual conduct does not, as defendants would argue, create emotional calluses that lessen the impact of unwelcomed sexual harassment.  **The fact that the plaintiffs may welcome sexual advances from certain individuals has absolutely no bearing on the emotional trauma they may feel from sexual harassment that is unwelcome.  Past sexual conduct does not callous one to subsequent, unwelcomed sexual advancements.**  This court cannot condone a wholesale inquiry into the past sexual conduct of the plaintiffs under such a theory.

*Id.* at 484-85.  As such, Defendants' intention to seek discovery into Ms. Doe's alleged sexual background is irrelevant and serves no purpose but to depict her as sexually promiscuous, to retaliate against her for pursuing this litigation, and—as discussed below—to chill future reports and litigation by guaranteeing that plaintiffs will face questions about such sensitive topics while simultaneously being victim-blamed for the sexual abuse they suffer.

### III.     Public Policy Encourages Issuance of a Protective Order

The dangers that result from allowing the discovery of irrelevant sexual conduct are dangers expressly recognized by Congress when it first adopted Fed. R. Evid. 412 and then subsequently extended it to civil litigation:

The reason for extending Rule 412 to civil cases is equally obvious. The need to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief. There is a strong social policy in not only punishing those who engage in sexual misconduct, but in also providing relief for victims. Thus, Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct, such as actions for sexual battery or sexual harassment.

Fed. R. Evid. 412(a), Advisory Committee Notes (1994); *see also, e.g.*, *EEOC v. Willamette Tree Wholesale, Inc.*, 2010 WL 11583063, at *5-6 (D. Or. July 8, 2010) (issuing protective order against questioning about plaintiff's sexual and romantic history). "There is an inordinate risk of harm" to a plaintiff if defendants are permitted to delve into the intimate sexual details of her life, including "the unjustified invasion of privacy into Plaintiff's life, the potential for public and private embarrassment to Plaintiff as a result, and the likelihood of significant prejudice based on improper sexual stereotyping." *Williams*, 192 F.R.D. at 703. Alongside this personal risk of injury, there is also the likelihood that permitting such discovery will have a "prejudicial and chilling effect" on future victim participation. *Bryan C. Donahue*, 746 F. Supp. 2d at 667 (quashing third-party subpoenas seeking information about plaintiff's personal matters and responses to banter). Rule 412 thus deprives the district court of its discretion to introduce such evidence. *See Truong*, 183 F.R.D. at 275.

Here, Plaintiff is engaged in an action to address Defendants' deliberate indifference to sexual harassment and assault by CCSD students and to protect students' rights to be free from a hostile educational environment as a result of sexual harassment or assault. If this Court were to allow Defendants to continue delving into unrelated aspects of Ms. Doe's alleged sexual history, not only she but also future victims of abuse will be discouraged from asserting their rights. Both Plaintiff and the public have an interest in ensuring that all students who suffer as a result of their school's indifference to their sexual harassment and assault are able to seek legal relief without fear that their irrelevant personal sexual lives will be laid bare and criticized.

## CONCLUSION

For the reasons set forth above, Plaintiff asks the Court to issue a protective order precluding Defendants from engaging in any discovery about Ms. Doe's alleged sexual history, including with Mr. Jones, beyond the January 19, 2022 sexual assault in question, including limiting questioning in depositions about such topics.

Respectfully submitted this 19th day of November 2024.

SPARK JUSTICE LAW LLC

*s/ Stephen Shaw*
Laura B. Wolf
Stephen Shaw
3435 S. Inca Street, Suite C-113
Englewood, CO 80110
(303) 802-5390 (t) / (303) 848-3003 (f)
laura@spark-law.com
steve@spark-law.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November 2024, I electronically filed the foregoing **MOTION FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system and served on the following:

Holly E. Ortiz
Mary B. Gray
SEMPLE, FARRINGTON, EVERALL & CASE, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
(303) 595-0941
hortiz@semplelaw.com
mgray@semplelaw.com

*Attorneys for Defendants*

*s/ Stephen Shaw*
Stephen Shaw
