

September 28, 2024

**<u>VIA ELECTRONIC MAIL ONLY</u>**
Holly Ortiz
Mary B. Gray
Semple, Farrington, Everall & Case, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
(303) 595-0941
hortiz@semplelaw.com
mgray@semplelaw.com

> RE: *Doe v. Cherry Creek School District, et al.*, Case No. 1:24-cv-00687-NYW-NRN – Discovery Dispute Letter Conferral Positions

Dear Holly and Mary:

    We provided you with a discovery dispute letter on September 16, 2024, and we conferred regarding the matters set forth therein on September 26, 2024. Below, we have reproduced the discovery dispute letter and added a section as to each dispute memorializing the outcome of our discussions. Please let us know if you dispute any of the positions set forth below.

## I. Redaction Practices

### A. Redaction Color

    We raised concerns with your practice of, in some instances, redacting information using a white brush tool on documents with white backgrounds. Our objection to this practice is that, even if you represent that the redactions are to solely to personally identifiable information ("PII"), the use of white-on-white redaction may make it unclear that information was redacted at all, making it impossible to identify redactions that might be subject to challenge.[1] We appreciate your commitment to redact in black going forward.

---

[1] While we appreciate your assurances that only PII was redacted in white in your production, we remain concerned, not least because you have failed to identify the specific nature of all such PII that was redacted. Namely, during our initial telephone conferral, you informed us that only Social Security numbers, personal telephone numbers for employees and their spouses, and dates of birth. When Mr. Shaw noted that employee identification numbers were also redacted, you added those to the list. However, even when you wrote to confirm the scope of PII being redacted on August 21, 2024, you left out dates of birth and drivers license numbers in the list of "the only information redacted" in white. *See, e.g.*, CCSD 000119; CCSD 000201. This shifting and incomplete accounting for the information redacted in this manner reaffirms the need for all redactions to be visible and not accepted on assurances.

**Conferral Positions:**

We agreed that the parties had already reached an agreement on this issue and that we did no need to discuss it further.

    B. **PII Categories**

As for the redaction of PII in discovery production going forward, the Parties have agreed only to redact Social Security numbers. Any documents containing PII past SSNs (such as birthdates) shall be marked "CONFIDENTIAL" pursuant to the protection order and such categories of information will only be redacted for filing purposes pursuant to Federal Rule of Civil Procedure 5.2 and/or any pertinent court orders in the case. Insofar as you believe any redactions in the production of documents are required by FERPA, you have agreed to confer with us regarding such in advance of the production. Overall, however, you understand that we have taken the position that the names of minors should not be redacted, as many minors constitute witnesses or potential witnesses in this case, and our understanding is that you have agreed.

In this vein, we would ask that you reproduce any documents in which you have redacted or withheld minors' names thus far, including CCSD 002334-002366, 002369-002371, 002692-002694, 002853-002856, and 003137.

**Conferral Positions:**

You stated that you intend to produce these documents and your recent supplemental production with students' names unredacted, but that you are unable to do so until FERPA notices have been sent to students and their families and the required period for objections has passed. You stated that although there is no specifically defined period to allow for objections, you believe that two to three weeks is a reasonable period. We asked you to identify whether FERPA notices had gone out already and, if so, when, stating our position that such notices should have been sent prior to the production deadline in an attempt to meet that deadline. You stated that you were not aware whether FERPA notices had been sent, but that you would discuss with your client. You stated that you would discuss these FERPA notices with your client by Tuesday, October 1, and that you would update us on their status at that time.

    C. **Privilege Redactions**

In many instances in your August 19, 2024 production, you have redacted the entirety of emails in email chains, including the sender, direct and cc: recipient(s), dates, and subject lines. *See, e.g.*, CCSD 002658; CCSD 002834; CCSD 002857-58; CCSD 003030 (redacting entire email chain). Because you have not provided a privilege log with this production, we assume that these redactions are all based on the presumption of privilege for certain communications as set forth in the ESI protocol in this case. If there are any redacted emails that do not qualify for this presumption, we ask that you promptly supply us with a privilege log reflecting such.

      Even if these emails are presumptively privileged, however, it is inappropriate to redact the email header identifying the email participants, date, and subject. During the hearing on the ESI protocol, Magistrate Judge Neureiter expressed that such information, even if the content of communications were to be redacted as privileged, would be relevant and discoverable. Further, during the same hearing you represented on the record that merely cc'ing an attorney, whether included in the presumptive privilege list or not, would likely not be enough to underpin a privilege claim. For these reasons, we request that you reproduce any documents where you redacted the entirety of an email based on a claim of attorney-client privilege with the email header unredacted.

      We have identified these documents as: CCSD 002605, 002613-002614, 002618, 002658, 002834, 002857-002858, 002911, 003030, 003033, 003087, 003101-003102, 003106, 003129.

### Conferral Positions:

<span style="color:blue">You took the position that email headers as described above are subject to work-product privilege and thus were properly redacted. We noted that Magistrate Judge Neureiter had explained during our hearing on the ESI protocol that information such as when matters were brought to Legal's attention were properly discoverable and relevant, and you indicated that you did not recall such commentary by the judge during that hearing. We also observed that, if these communications were required to be included on a privilege log, the information in these email headers (to, from, date, and subject line) would be included on the privilege log even if the communications themselves were withheld, which would be inconsistent with the position that this information is subject to work-product privilege. You stated that you would look at some case law on this issue and let us know whether you would be agreeing to unredact this information. Our expectation is that we will learn your position on this issue when we confer again on October 1, 2024.</span>

## II.    Presumptive Privilege List

      Pursuant to the ESI protocol entered in this case, emails and text messages where CCSD's General Legal Counsel Sonja McKenzie (smckenzie3@cherrycreekschools.org) is a recipient are presumptively privileged and need not be logged on to a privilege log. However, as you indicated during the hearing on the ESI protocol, this does not mean that any such communication is actually privileged and only means that, if the communication is privileged, you need not provide a privilege log providing the basis for such withholding or redaction. You acknowledged during the hearing that you have a professional obligation to produce responsive, non-privileged documents notwithstanding the ESI protocol. Based on ensuing discovery, we are concerned that you appear to take the position that any communication with Ms. McKenzie is privileged without regard to the context of the communication.



      For instance, during the deposition of ███████████, you stated on the record that you believed that there was an inadvertent disclosure of attorney-client privilege in Exhibit 21, an email chain Bates stamped CCSD 002635-002636. In this chain, Defendant Uhlig emailed a number of school officials on October 26, 2022 to inform them of his decision to suspend ███████████ for four days. In response, Athletic Director Jason Wilkins asked whether he should contact ███ ███████ "to discuss the one game suspension or am I not to talk to them since they have legal

involved?" CCSD Director of Athletics and Activities Larry Bull replied, "I spoke with Sonya [*sic*] and advised that you will not contact the family until after suspension is up. She agrees." During ▮▮▮▮▮ deposition, you stated that the disclosure of Mr. Bull's email was inadvertent, "and I would withdraw or redact the center email that references Sonja McKenzie's advice." ▮▮▮▮▮ Tr. at 143:8-12.

This email clearly does not implicate the attorney-client privilege. The underlying communication between Mr. Bull and Ms. McKenzie did not represent CCSD or its agents seeking legal advice regarding their legal obligations or litigation strategy, but rather business advice on how to communicate with the family of a student who had just been suspended. As has been recognized in this District, "In-house counsel performs a dual role of legal advisor and business advisor," and "[b]usiness communications are not protected merely because they are directed to an attorney." *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 3055774, at *3 (D. Colo. May 23, 2018) (citation omitted). Instead, an entity "must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." *Id.* (citation omitted). We fail to understand how Ms. McKenzie's agreeing to Mr. Bull's proposal not to communicate with ▮▮▮▮▮ family reflects the provision of legal, rather than business, advice.

We also note that, in response to a subpoena duces tecum, ▮▮▮▮▮ produced communications between a guardian ad litem appointed to ▮▮▮▮▮ and Ms. McKenzie relating to the imposition of an ISMP related to ▮▮▮▮▮ criminal case. JONES 000262-265. Despite these communications being responsive to RFP No. 1, Defendants did not produce these or any similar communications. This leads us to believe that Ms. McKenzie's communications have not been searched and/or have been withheld without respect to whether they properly fall under the attorney-client privilege. Given that no such documents involving Ms. McKenzie that have been withheld have been included on a privilege log pursuant to the ESI protocol, we are unable to determine how widespread this seemingly categorical invocation of the privilege might be.

In light of the above, we believe that it is no longer appropriate for Ms. McKenzie to be included in the presumptive privilege list under the ESI protocol. Ms. McKenzie clearly engages in providing business advice and has also communicated with third parties about this matter, and Defendants appear to have taken the position that such activities are protected by the attorney-client privilege when they are not. For these reasons, we believe that Ms. McKenzie should be removed from the presumptive privilege list. Removing Ms. McKenzie will not change Defendants' ability to withhold properly privileged documents, but will instead merely ensure that Plaintiff receives sufficient information to challenge overly expansive privilege claims such as those described above.

### Conferral Positions:

You stated that you did not believe that any privilege claims that have been made in this litigation have been overbroad. We noted several non-privileged email communications with Ms. McKenzie that we have learned of through other discovery that were not produced, and you responded that

you were not positive that Ms. McKenzie's emails were searched in the process of identifying responsive documents. You referenced Ms. McKenzie's emails with our client's previous attorney, Laura Hazen, which you believed to have been produced, though they were not. You stated that you will check with your client whether Ms. McKenzie's documents were in fact searched. You further suggested that we eliminate presumptive privilege under the ESI protocol entirely. We responded that we believed that it was more appropriate to maintain outside counsel's communications as presumptively privileged to avoid the burden of logging unquestionably privileged documents, but you indicated your desire to remove this feature entirely. You stated that you would speak to your client regarding these issues but you did not otherwise disagree with removing Ms. McKenzie as a presumptively privileged custodian. We look forward to discussing these positions further on October 1, 2024.

### III. Document Productions

#### A. Search Terms

Following the entry of the ESI protocol in this case, we sent you a list of search terms on August 6, 2024. As contemplated by the ESI protocol, those search terms were meant to be run across all CCSD custodians to identify and create the population of documents to be reviewed for potential production. You never directly acknowledged receipt of the search terms to us, though you did respond to a separate point in the email transmitting them with the subject line "Doe v. CCSD: Search Terms." As a result, we are not certain whether these search terms were applied to identify documents to be reviewed in the documents you produced on August 19, 2024, nearly two weeks later. We also are uncertain whether you anticipate using these search terms moving forward or whether any terms require amendment to identify an appropriate set of documents.

In particular, given the limited nature of the documents produced to us on August 19, 2024—including the limited custodians and the limited scope to just the parties at issue in this case—we are concerned that the ESI protocol was not used when responding to the first set of discovery in this case. Accordingly, we would ask that you confirm whether these search terms were used to identify responsive documents in your August 19, 2024 production and, if not, why not. We would also ask you to identify a date certain when you will be providing supplemental responses to those requests for production using the search terms. At this time, we are nearly one month past the extended production deadline.

**Conferral Positions:**

You stated that you do not believe that our search terms were applied to identify the universe of documents to be reviewed in response to our discovery requests. You stated that another set of search terms were applied in identifying documents and that you were not confident about precisely what they were, though you knew that they included our client's name, Mr. ▮▮▮▮ name, and several other terms. You stated that we did not serve our search terms until after we served our written discovery requests and took the position that it was disallowed to retroactively alter our discovery requests by applying search terms later, asking us to provide evidence of a rule stating otherwise. We noted that there is no rule providing that we were required to provide search

terms in advance of a discovery request and that the delays with respect to entering an ESI protocol were well documented as being caused by Defendants, not Plaintiff. We also noted that we provided our list of search terms on the same day that you filed your motion for an extension of time in which to respond to the discovery requests, which indicates that review was not yet complete as of that date. We also stated our position that our search terms inherently narrow the discovery requests by only requiring that a limited subset of documents be reviewed; our discovery requests as propounded were without limitation and the search terms you applied were not part of those requests and instead unilaterally chosen and applied by Defendants. You took the position that we would need to issue further discovery requests in order for the documents falling under our search terms to be reviewed for responsiveness, even though all parties have an ongoing obligation to supplement discovery responses as newly responsive materials and information is discovered. We responded that we had never agreed to having Defendants apply their own set of search terms to our requests, and that you are independently under a duty to supplement discovery responses. We did not come to an agreement on this dispute, and we anticipate scheduling a discovery dispute hearing to resolve this matter with the Court unless your clients agree to have you review the universe of documents identified by the search terms for responsive discovery. We look forward to learning your clients' position on October 1, 2024.

### B. Responding by Providing Links

In responses to RFP Nos. 3, 5, and 8, as well as RFA No. 4, you responded in whole or in part by including links to websites presumably containing further information. We object to this practice on several grounds. First, by referring merely to information stored elsewhere on the internet, you have failed to produce Bates stamped documents that could be referenced throughout this case. In order to use such documents, Plaintiff would be forced to print, stamp, and disclose such documents herself, though they were identified by Defendants to satisfy their discovery obligations. This is plainly improper. Further, by providing such links without any indication about the responsive information presumably included on the associated web pages, you have failed to sufficiently identify the documents you purport to be responsive. For instance, your response to RFP No. 5 provides a link to a website associated with the Cherry Creek School District's Board of Education. This website as linked does not include any responsive documents. Presumably, your intention was for Plaintiff to click the "Policies" link on that page, then review each of the hundreds of available policies to determine which are responsive to RFP No. 5. There is no indication in your response which policies may be responsive, especially given your position in other filings in this case that some policies listed on this website are not policies at all, but rather "procedures." Additionally, as these policies are subject to change (and former versions are not reflected on the site), it can be impossible to determine what policy was actually in effect during the relevant time frame.

We ask that you provide Bates stamped documents in response to RFP Nos. 3, 5, and 8 and RFA No. 4 by September 23, 2024. We further request that you refrain from linking to non-specific, externally hosted, and inherently changeable information in response to future discovery requests.

**Conferral Positions:**

You stated that you are under no obligation to provide documents that are publicly available and that it was appropriate to provide links to publicly available documents in response to discovery requests. We responded that it was unclear what documents on the associated web pages you believed to be responsive to these requests, as no specific documents were identified in your discovery responses, with a link to the main school board website provided instead. We also pointed out that even if documents were identified, these web pages are inherently subject to change and may not reflect historical data; for instance, if a policy were in place in 2022 but were later revised, the former policy would not be available on the Board of Education's website. You stated that you would review your discovery responses to see whether it is necessary to specifically identify responsive information on those web pages, and that you would look into whether any responsive policies have been updated during the relevant time period. We look forward to agreeing to a supplemental response deadline when we meet on October 1, 2024.

    **C. Specific Responses**

    *i. Interrogatories Nos. 2-4; RFA Nos. 1-3, 10*

Interrogatories Nos. 2, 3, and 4 ask for a description of the understanding of the District, Assistant Principal Uhlig, and Principal Silva (respectively), during the 2021-2022 school year, of the control, responsibility, and authority that CCSD retained over students' off-campus conduct, including during off-campus free periods. RFA Nos. 1-3 similarly ask for admissions regarding our understanding that Defendants maintained that they had such authority over off-campus activities by students during the 2021-2022 school year, and RFA 10 addresses whether CCSD maintained during the 2021-2022 school year that it could discipline students regardless of law enforcement or judicial conclusions. In your response to Interrogatory No. 2, which you relied upon as your responses to Interrogatories Nos. 3 and 4, you respond, "Defendants state that they only have authority over students' off-campus conduct while students are participating in District or school sponsored events or if the students engaged in conduct that substantially disrupts the operation of the school." You also objected on the basis that these written discovery requests called for a legal conclusion.

Based on your objection and your response, we are concerned that you have not understood the written discovery requests as written. Specifically, these written discovery requests ask for each Defendant's **factual** understanding of their authority and position of the same during a specific time period. In other words, these written discovery requests address the beliefs of the parties at the relevant time, without respect to whether those beliefs were correct or accurately reflected the law. Thus, the written discovery requests explicitly do not seek a legal conclusion, but rather to elucidate the mental state of Defendants at the time when they took relevant actions. Further, your responses purport to describe the actual authority of Defendants as a matter of law, without specifying whether this description accurately reflects each Defendant's understanding and position during the 2021-2022 school year. Thus, we ask that you supplement your responses to indicate the actual understanding and position of each Defendant on these issues during the

2021-2022 school year, as requested, whether or not that understanding and position were legally or otherwise accurate. Please provide updated responses by no later than September 23, 2024.

**Conferral Positions:**

You stated that you believe that the discovery responses were complete and responsive. We stated that we believe they are incomplete, as they do not answer as to, for example, authority, control, and responsibility for student conduct off-campus, and that they are not responsive, in that they do not identify the historical understanding of the parties during the identified time frame. You stated that you would supplement your discovery responses to specifically identify the time frame being described but that you otherwise disagreed that the responses were incomplete.

    ii.    *Interrogatories Nos. 7-8 and RFP No. 7*

Interrogatories Nos. 7 and 8 ask for a description of the training provided to CCSD employees regarding how to respond to allegations of sexual harassment or assault by or against CCSD students and training, guidance, and directives provided to Defendants Uhlig and Silva regarding the proper investigation of and response to such allegations, respectively. RFP No. 7 requests production of all training documents, policies, guidance, and other documents and communications regarding how to respond to reports of sexual harassment by or of a CCSD student. Your responses to each refer to your responses to Interrogatory No. 6 and/or RFP No. 5, both of which requests are limited to training relating to Title IX.

We understand from these responses that CCSD provided **no** training, guidance, policies, or other directives as to the investigation of and response to allegations of sexual harassment and sexual assault during the relevant time frame outside of its training as to Title IX and its requirements. Please confirm whether this understanding of your responses is correct. If it is not, we ask that you supplement your responses to these requests with responsive documents and descriptions by no later than September 23, 2024.

**Conferral Positions:**

You expressed your understanding is that there was no training, guidance, policies, or other directives as to the investigation and response to allegations of sexual harassment and sexual assault outside of the training, guidance, policies, or other directives relating to Title IX. We would ask that Interrogatories 7 and 8 be supplemented to expressly state this position for purposes of complete and clear discovery. We would ask for a supplemental response by October 3, 2024.

    iii.    *Interrogatory No. 11*

Interrogatory No. 11 originally requested identification of all discipline administered within CCSD during the relevant time frame, including certain specific information as to each. On August 9, 2024, following conferral, we agreed to limit the scope of this Interrogatory to only students at CCHS rather than at all CCSD schools. This narrowing was memorialized in an email following our conversation. During our call, we expressed a willingness to discuss further

refinement of this request if necessary. However, we never heard from you regarding this Interrogatory prior to your serving discovery responses and, in turn, were under the impression that we would receive a fulsome response to our narrowed request.

In your discovery responses, you objected based on the original request rather than the narrowed one. Specifically, you noted that "The interrogatory seeks all disciplinary information for all CCSD students over a six-year time period. CCSD has approximately 53,000 students per year enrolled in District Schools. It is unreasonable to require the District to provide all disciplinary information regarding literally tens of thousands of students." You further objected on the ground that Defendants believe "the majority of the requested information is entirely irrelevant to Plaintiff's claims and involves conduct by minors as young as 4 years old."

On August 19, 2024, we emailed to clarify whether your objection was based on the original or the narrowed request. You responded by email that "We object to providing all discipline for all CCHS students for a six year period. CCHS has over 4000 students per year. It is not reasonable to expect the district to provide all discipline records for over 24,000 students."

We are puzzled by your response, as in response to RFP No. 6 you provided a spreadsheet that you described in your August 19, 2024 email as reflecting "discipline for sexual harassment related infractions for all male students" at CCHS during the relevant time frame. It simply does not make sense that you were able to identify and provide details regarding a supposedly exhaustive 9-10[2] instances of discipline for specific conduct over a six-year period but that you could not provide similar information regarding all discipline over that same time period. Based on the information provided in CCSD 003137, it appears that each instance of discipline is associated with an incident ID and stored in an accessible database. For example, the column headers appear to represent database fields, with headers comprising multiple words being separated by underscores. Based on these indications that you maintain the information requested in a format that could be easily exported and produced, your primary objections based on the supposed burden of production are not credible.[3] We would further note that in one Professional Practice Goal in 2020, Defendant Uhlig wrote, "I plan to evaluate suspension data for our minority students from school years 17-18, 18-19, and 19-20 to see how [newly implemented programs are]

---

[2] As noted below, we are uncertain as to the total number of infractions given that row 11 of CCSD 003137 appears to have been cut off.

[3] Indeed, much of the information requested is required to be tracked and reported to the Colorado Department of Education. *See* C.R.S. § 22-1-139 (outlining profile reports required to be submitted by school districts, including the number of in-school and out-of-school suspensions and expulsions). As evidenced by CCSD's data included in DOE reports, CCSD tracks such information. *See, e.g.*, Suspension /Expulsion Statistics, Colo. Dep't of Ed., https://www.cde.state.co.us/cdereval/suspend-expel (reflecting numerous reports regarding discipline by school district). The information collated by the DOE is wide-ranging and requires that multiple fields, such as gender, be associated with reports. Notably, 2023-24 data shows that CCSD referred 177 matters to law enforcement and that CCSD expelled 77 students and administered out-of-school suspensions for 4,831 students. Given that, as demonstrated by CCSD 003137, CCSD's systems associate such discipline with student names, there should be no excessive burden to identifying and producing information relating to such discipline as it is already being tracked.

impacting both suspensions and retention of our minority students." CCSD 000964. We find it difficult to understand how Defendant Uhlig could review such data in connection with his personal goals while it would be prohibitively difficult for Defendants to produce such in litigation.

Defendants' further objection that production of this disciplinary information would violate "the privacy rights of those students under FERPA" is simply inaccurate. Educational institutions are permitted to disclose educational records of students in response to legal process. *See* 34 CFR § 99.31(a)(9)(i). CCSD may be required to notify those students of the disclosure, but since each entry in the database is apparently associated with a student name, a mass mailing of such notices should not impose an unreasonable burden on the District when compared with Plaintiff's need for such information. Regardless, the noted objection itself—inability to comply with FERPA—is legally and factually inaccurate.

In light of the issues set forth above, we ask that you supplement your response to Interrogatory No. 11 to reflect the narrowed request agreed to by the parties on August 9, 2024. We further request that you provide the sum of the requested information by no later than September 23, 2024, given these indications that there is no unreasonable burden associated with such compliance.

**Conferral Positions:**

You stated that you intend to issue a supplemental response so that your objection responds to our discovery request as narrowed following conferral. However, you also indicated that you still believe the discovery request to be overbroad and unduly burdensome. You described that CCSD tracks some disciplinary information, but not in a comprehensive database that contains all the information we requested. You indicated that to provide the information in CCSD 003137, you searched for all sex-related offenses and had to then go through each student's record individually, and that doing so for the thousands of students in CCSD during the relevant time frame would be unduly burdensome. We offered to preliminarily narrow Interrogatory No. 11 to suspensions and expulsions rather than all discipline to see if that would provide sufficient information at a lesser burden and that at this time, we would accept responsive discovery easily accessible through the databases that exist that currently track this information. We stated that insofar as we felt we needed to identify a student by name or obtain additional information, we would follow up at that time and confer further. You stated that initially providing this more limited amount of information may make responding more manageable and said that you would check with your client and provide a response by October 1, 2024.

   iv.    *RFP No. 1*

RFP No. 1 requests, among other things, documents and communications relating to Mr. ▒▒▒▒▒▒ criminal prosecution and any impacts or consequences of Mr. ▒▒▒▒▒▒ sexual assault and criminal prosecution. You responded by referring to essentially every document produced by any party in the course of this case, without distinction.

However, discovery has revealed that there are numerous documents that have not been produced, without explanation. For instance, your response to Interrogatory No. 1 states that upon learning about Mr. ███████ guilty plea in October 2022, and "[a]fter conferring with CCSD staff and District Legal Counsel, . . . Uhlig suspended ██████ for four (4) days and he was suspended from a late season football game." You have produced no documents reflecting Mr. Uhlig's conferral with any CCSD staff regarding the discipline to assign to Mr. ██████.[4] Further, you have produced no documents in any way related to Mr. ██████ suspension from any football game. There are no documents or communications informing Mr. ██████ coaches or other athletics personnel about the suspension, no record of an actual suspension from a game, and nothing to reflect who made the decision to suspend Mr. ██████ from the game, when, or through what process.

Several previously produced documents reference communications between school district personnel and third parties regarding the criminal prosecution of ██████████. These communications, however, have not been produced. The documents referencing such can be found at, at a minimum, CCSD 000244, 000247, 000263, 000560, and 002707. We would ask that all referenced communications be immediately produced, including the communications from Sonja McKenzie to third parties regarding Mr. ██████ criminal prosecution.

Further, several statements during the recent depositions of ████████ and his father ████████ indicate the existence of even more documents that were not produced without explanation. For example, ████████ repeatedly testified that prior to the February 2023 ISMP meeting, communications between his family and the school proceeded through multiple lawyers retained by the family. *See, e.g.,* ████████ Tr. at 54:21-25; 55:11-56:2; 57:11-59:1; 60:12-16. You have produced **no** such documents or communications without explanation, despite their clear relevance to the present case.[5] Additionally, ████████ testified during his deposition that during the present school year, which began on August 12, 2024, he had reported to Dean Brock Felchle ███████████████████████████████████████████████████████ ████████████████████████████████████████ *See, e.g.,* ████████ Tr. at 131:18-132:10. Presumably, upon learning of these allegations, Dean Felchle would have contacted other members of the school administration as well as the school SRO responsible for liaising with local police departments. We have received no such documents or communications, including any notes Dean

---

[4] Even if these "conferrals" were only held in person without any associated documentation, details surrounding such conversations should properly have been included in responses to Interrogatories Nos. 1 and 5. To the extent that your position is that no specific documents exist, we would ask that you supplement your responses to these Interrogatories with the responsive information you reference in your response to Interrogatory 1.

[5] We also note that we have received almost no communications between the District and Mr. ██████ parole officer and no communications between CCHS's administration and CCHS's football program regarding Mr. ██████. These documents and communications would similarly be responsive to RFP No. 1.

Felchle may have taken, despite your continuing obligation to supplement responses upon discovering new information.[6]

Having identified these documents through discovery, we of course ask that you produce them by September 23, 2024, as they are responsive to RFPs that have been served on you. However, we are also concerned by the need for us to specifically identify documents that should have already been included in your production. "Parties to litigation are required to reasonably construe [the opposing party's] interrogatories and requests for production and conduct a reasonable search for responsive information." *Praetorian Ins. Co. v. Axia Contracting, LLC*, 2022 WL 2274705, at *5 (D. Colo. June 23, 2022) (citation and internal quotation marks omitted) (determining that "the Court cannot overlook discovery responses, like those here, that omit or withhold information plainly responsive and unequivocally within the knowledge, possession, custody, and control, of the responding parties" and finding sanctions appropriate). Your failure to produce multiple categories of documents and communications that are clearly responsive to Plaintiff's written discovery requests and which should have been identified by a reasonable search calls into question the completeness and diligence of your search for responsive information. Please supplement your response to RFP No. 1 by no later than September 23, 2024.

**Conferral Positions:**

You stated that the search terms used in identifying responsive documents including "▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮," and that no additional responsive documents exist. We also agreed that you had provided documents relating to Mr. ▮▮▮▮▮▮▮ report to Dean Felchle in your recent supplemental production. You stated that many documents that we might have expected to exist may not do so if conversations happened directly rather than through email or if emails were deleted based on record retention policies that allow for ongoing deletion of emails over short periods of time. **While we did not confer over this, we would hereby ask to be provided the record retention policy to which you were referring so we can better understand the universe of documents that may no longer exist.**

    v.    RFP No. 6

RFP No. 6 requested all documents and communications regarding reports or allegations of sexual harassment or sexual assault by male student athletes, including the investigation of any such reports or allegations and any resultant disciplinary actions through the relevant time frame. Although the original request sought such information for all male student athletes at any CCSD school, the parties agreed to narrow the scope of this RFP to male student athletes at CCHS on August 9, 2024, as noted above.

---

[6] We would take the position that such documents and communications are relevant to the present case, as they demonstrate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In your response, you provided a PDF of a spreadsheet including information about 9-10 incidents. CCSD 003137. To begin, it is unclear who created this document and how, as there is no information on the document's face or in your response to indicate such. The document appears to be an export from a database based on its column headers including underscores between words, but it also appears that the information pulled from the database has been manipulated as the names of students other than ███████ are provided as initials. We ask that you clarify the source and method of creating this document. We further ask that you reproduce this document in a manner that fully presents the information contained therein; the information in row 11 appears to have been cut off, or else there is no information provided for the associated student's name, incident date or incident ID, or action taken.

Further, it is not clear what this document is meant to represent. RFP No. 6 asks for records of investigations and discipline regarding any reports or allegations of sexual harassment or sexual assault. However, in your August 9, 2024 email to us regarding this RFP, you wrote, "We have provided discipline for sexual harassment related infractions for all male students, which we believe would be the relevant students." From this description, it is unclear whether you provided information relating to sexual assaults as requested. Your response to RFP No. 6 does not reflect any such narrowing of RFP No. 6's scope. It is also notable that this document appears to only reflect incidents that resulted in out-of-school suspensions. If so, this narrowing is similarly not reflected in your response, nor appropriate under RFP No. 6's language.

Even if this document does reflect a compilation of all reports or allegations of sexual harassment or sexual assault by male athletes at CCHS during the relevant time frame (which is doubtful), the information provided is insufficient to satisfy your production obligations. RFP No. 6 clearly seeks all documents or communications regarding such, including the investigation of such allegations and any disciplinary actions resulting from such. This spreadsheet contains no such documents or communications relating to investigations of this conduct, beyond a short statement of the facts of the incident and in some incidents details on the discipline received.

Based on your response to RFP No. 6, it appears that only 9-10 reports or allegations of sexual harassment or sexual assault have been received by CCHS in the previous six years, each has resulted in an out-of-school suspension, and there have been no investigations, Title IX or otherwise, into any of these reports and allegations beyond the text included in the description. Please confirm if this understanding is correct. We further ask that you supplement your response by producing all relevant and responsive documents (including but not limited to investigations and full documentation of discipline) by no later than September 23, 2024.

**Conferral Positions:**

You stated that the information in CCSD 003137 was compiled by searching relevant databases for all discipline imposed for sexual harassment (of which sexual assault is a subset). You stated that the search was performed on discipline administered because if discipline were not administered, there would be no record or tracking of such allegations. You stated that once you had identified relevant incidents, you then cross-referenced those incidents with student files to extract relevant information such as the student's name and a description of the incident. You

further stated that the lack of investigation documents is likely due to the incidents having occurred in the past and investigation files not being retained. We responded that many of the incidents were within the previous two years and stated that we believed any associated investigation materials would be responsive. We also stated that the universe of documents produced through our ESI search terms should reveal this information. You agreed to confirm that row 11 of the spreadsheet was not inadvertently cut off in the process of rendering the spreadsheet in a PDF file but otherwise did not commit to reviewing the universe of documents for additionally responsive documents.

    *vi.*    *RFP No. 8*

In your response to RFP No. 8, you identified documents produced at CCSD 001277 – CCSD 001808 as responsive documents setting forth expectations, rules, and regulations for student athletes throughout the relevant time period. However, the documents you produced are frequently undated, and when they are dated, it is unclear the time periods during which they were in effect. For instance, CCSD 001277-78 bears no date whatsoever, and it is unclear when this document was in effect. We ask that you identify the dates of undated documents produced in response to RFP No. 8 and confirm that the produced documents were the only such documents setting forth expectations, rules, and regulations for student athletes throughout the relevant time period, along with designations noting the specific time period the content of each of these documents was in effect. If there were additional documents setting forth such expectations, rules, and regulations that have not been produced, we ask that you supplement your response by September 23, 2024.

**Conferral Positions:**

You stated that the documents produced were all those that were in place during the relevant time period, but that you were not certain that it could be determined the precise dates during which each policy was in effect. You further stated that you believed we would need to issue an interrogatory to require identification of the applicable dates. We asked that you provide those dates as a courtesy to relieve both sides of the need to engage in 30(b)(6) deposition questioning and so that all parties can agree we are discussing the same correct policies. We asked as a courtesy for you to ask your client for the effective dates of the policies and to provide such or, in the alternative, to prepare your 30(b)(6) designee to answer such questions. We look forward to receiving an update on this matter during our conferral on October 1, 2024.

    *vii.*    *RFA Nos. 8-9*

RFA Nos. 8-9 seek admissions that Defendant CCSD did not conduct a Title IX or other investigation into Mr. ▮ sexual assault of Ms. ▮ prior to September 2022. Your responses consist of objections that the RFAs improperly or incorrectly "infer[]" that such investigations were required or appropriate and assert that such investigations were not required or appropriate. However, these requests are pellucid on their face; they seek a factual answer as to whether such investigations were conducted. There is no language in the RFAs that "infer"

such requirements, such as describing a "required Title IX investigation" or other similar language; each merely seeks an admission as to whether such an investigation was conducted.

Because your objection appears tailored primarily toward legal arguments as to the implications of the facts being sought, rather than to the impropriety or lack of clarity of the RFAs as propounded, they are not adequate to justify your refusal to admit or deny the RFAs. Fed. R. Civ. P. 36(a)(5) ("A party must not object solely on the ground that the request presents a genuine issue for trial."). A party must either admit or deny requests for admission, and any denial must be specifically stated and fairly respond to the substance of the matter. Fed. R. Civ. P. 36(a)(3)-(4). We ask that you provide an Admit or Deny response as required by FRCP 36 as to these heretofore unanswered RFAs by no later than September 23, 2024. As you know, Rule 36 permits the Court to rule that inadequate answers to RFAs are admitted. If we must compel such a response, however, we will of course need to seek sanctions for the time and resources expended on involving the court on such a matter.

**Conferral Positions:**

You stated that you believe that these responses were clear as written. However, you agreed to issue supplemental responses specifically stating whether you admit or deny the requests for admission.

IV. **Protective Order**

Finally, we are concerned with your decision to engage in lines of questioning regarding alleged previous sexual contact between Mr. ▆▆▆ and Ms. ▆▆ and Ms. ▆▆ alleged sexual reputation during the deposition of Mr. ▆▆▆. This line of questioning causes us to believe that you feel this information is relevant to the case and somehow discoverable. If that is correct, we intend to seek a protective order to prevent you from seeking discovery into this unrelated and irrelevant alleged past sexual behaviors on the part of Ms. ▆▆, whose only purpose would be to embarrass and harass her—a minor girl—despite the confines of FRCP 26 and FRE 412.

As you know, Federal Rule of Civil Procedure 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Additionally, Rule 26(c)(1) provides that, upon good cause shown, a court may issue a protective order to protect a party or person from "annoyance, embarrassment, oppression or undue burden or expense," including entering orders that the discovery not be had or forbidding inquiry into certain matters. These safeguards are incorporated into Rules 30(c)(2) and 30(d)(3), which allow counsel to instruct the deponent not to answer certain questions and to move to limit deposition questioning on the ground that it is being conducted "in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Under Rule 30(d)(3), courts may limit the scope of depositions as provided by Rule 26(c). The authority of trial courts to issue protective orders under Rule 26(c) is broad because of the significant potential for abuse and important privacy interests that may be implicated by discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).

Federal Rule of Evidence 412 states: "The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." The Advisory Committee Notes on Rule 412 state:

> In order not to undermine the rationale of Rule 412, . . . courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior in the workplace may perhaps be relevant, nonwork place conduct will usually be irrelevant.

Fed. R. Evid. 412, Advisory Committee Note (1994) (citing case law).

Here, any alleged previous sexual behavior, with Mr. ▇▇▇ or otherwise, has no relevance to the facts and theories of this case. Defendants have never raised as a defense that Ms. ▇▇▇ consented to Mr. ▇▇▇ sexual assault, nor have they denied or challenged the basis of Mr. ▇▇▇ conviction for unlawful sexual contact, no consent. Defendants' apparent intention to seek discovery into Ms. ▇▇▇ alleged sexual background serves no purpose but to depict her as sexually promiscuous, to retaliate against her for pursuing this litigation, and to chill future reports and litigation by guaranteeing that plaintiffs will face questions about such sensitive topics while simultaneously being victim blamed for the sexual abuse they suffer.

The dangers that result from allowing the discovery of irrelevant sexual conduct were expressly recognized by Congress when it first adopted Rule 412 and then subsequently extended it to civil litigation:

> The reason for extending Rule 412 to civil cases is equally obvious. The need to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief. There is a strong social policy in not only punishing those who engage in sexual misconduct, but in also providing relief for victims. Thus, Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct, such as actions for sexual battery or sexual harassment.

Fed. R. Evid. 412(a), Advisory Committee Notes (1994).

Defendants' apparent intention to explore Ms. ▇▇▇ alleged past sexual history, including with Mr. ▇▇▇ serves no purpose but to harass and embarrass a girl who dared to report sexual assault and prosecute claims against those who should have, but did not, protect her in its

aftermath. This information bears no possible relevance to the claims and defenses in this case as presented. Such questioning could only serve the purpose of punishing and chilling similar reports in the future. Thus, unless you expressly disclaim that you will be seeking such information in this case, we intend to seek a protective order preventing you from engaging in similar questioning during the upcoming depositions of Ms. ███ and her mother or seeking similar discovery from any other witness in this case.

**Conferral Positions:**

You stated that you believed that these issues are within bounds of discovery as they go to emotional distress. You indicated your position that there is a difference in the emotional distress experienced by a person who had previously engaged in consensual sexual contact with a future assaulter (as well as generally) and that experienced by a person who had not. You acknowledged that Federal Rule of Evidence 412 may keep such evidence out at trial, but you stated that that would be determined by what discovery showed. We stated our position that past consensual sexual contact is not correlated with trauma arising from a sexual assault, that courts regularly prohibit discovery on these issues, and that any such level of questioning would be entirely inappropriate. We further informed you of our intention to file a motion for protective order on this matter so that the Court may resolve the dispute in advance of our client's deposition.

**Additional Conferral Discussion:**

We additionally raised the potential need to move to modify the scheduling order to push back discovery deadlines for depositions and experts, or discovery more generally. You stated that you had no dispute with us doing so. We agreed to confer further on this matter before filing a motion.

## Conclusion

    We look forward to conferring with you regarding these matters, and we believe that the above accurately reflects the substance of our discussions to date, as applicable. If you disagree, please let us know as soon as possible. We look forward to our upcoming conferral on October 1, 2024 to address some of these outstanding matters.

                                              Sincerely,

                                              *Stephen Shaw*

                                              Laura B. Wolf
                                              Stephen Shaw