IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00687-NYW-TPO

JANE DOE,

    Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT,
KEVIN UHLIG, in his individual capacity, and
RYAN SILVA, in his individual capacity,

    Defendants.

**PLAINTIFF'S SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER (ECF No. 117)**

Plaintiff Jane Doe, through her undersigned attorneys, respectfully submits the following Supplemental Reply in Support of Motion for Protective Order (ECF No. 117), following Defendants' Supplemental Response to the Motion for Protective Order (ECF No. 160-1), and states as follows:

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

As the Court is aware, in 2022, Plaintiff Jane Doe, then 15 years old, was the victim of a sexual assault by a fellow CCSD classmate during the school day. Unfortunately, it is necessary to be specific here. The perpetrator, a strong football player, locked Jane in a restroom alone with him and violently sexually assaulted her out of public view. John Jones forced Jane to the ground and held her down while he digitally penetrated Jane without her consent and while she actively resisted and struggled to get away. When Mr. Jones removed one of his hands from

1

holding Jane down to expose his genitals to rape Jane, she was able to push Mr. Jones off and escape out of the bathroom. Jane had bruises, scratches, and other injuries from being thrown to the ground and pinned down to the floor.

Jane reported the assault to CCSD Dean of Students Kelly Devitt and law enforcement a few days later, and she began the always difficult process of navigating the criminal legal system as a young sex assault victim. The report triggered a criminal investigation by the Greenwood Village Police Department and subsequent criminal prosecution of Mr. Jones. After this investigation, prosecutors saw fit to file charges against Mr. Jones in April 2022. To his credit, Mr. Jones has been candid about what happened and has taken responsibility for his actions. In October 2022, Mr. Jones pled guilty to the charge of unlawful sexual contact, no consent, a violation of C.R.S. § 18-3-404(1)(a). *See* **Ex. 1**, *Jones Pre-Sentence Investigation Report Excerpt*. Moreover, in a letter addressed to Jane, Mr. Jones admitted,

> **Once I started kissing you and touching you, you asked me to stop, and I didn't. I sexually abused you by ignoring your request for me to stop. None of this was your fault, and you never asked for this to happen. I never had your consent and you never wanted this to happen.**

*See* **Ex. 2**, *Jones Letter to Jane,* at 1 (emphasis added).[1] Mr. Jones also wrote a letter to Jane's mother and stated "I am responsible for sexually abusing your daughter. I realize that I did not just impact [Jane], but I impacted you as well. I did not have her consent and took away her power." *See* **Ex. 4**, *Jones Letter to Jane's Mother,* at 1.

---

[1] At his deposition, Mr. Jones confirmed under oath that these words were his and no one told him to write that – or anything specifically – in his apology letter to Jane. *See* **Ex. 3**, *Jones Deposition Transcript Excerpt,* at 4. He confirmed that these letters were not written as part of a court requirement but "part of the healing process." *Id*. at 2.

Fast forward to the present day, Defendants seek to ask Jane about *all* of her sexual conduct, with anyone, at any time, and even her sexual "fantasies." *See, e.g.*, ECF No. 126 at 7 ("Such discovery necessarily includes Ms. Doe's and Mr. Jones' interactions prior to and during the alleged assault, and what Ms. Doe reported to others about all of her sexual interactions with, **or fantasies about**, Mr. Jones") (emphasis added); *id.* at 10 (arguing "her past sexual history with Mr. Jones **[and] her sexual encounters with others**," are discoverable) (emphasis added). Jane has sought a protective order seeking to prohibit Defendants from their fishing expedition into her entire sexual history and "fantasies" pursuant to Fed. R. Civ. P. 26(c)(1) and Fed. R. Evid. 412. ECF No. 117. Several months after the motion for protective order was fully briefed, Defendants requested leave to supplement their response to include the fact that Jane was prescribed an antidepressant and that a treating provider mentioned that Jane experienced a "period of hypersexuality," which the provider also notes "is a common complex trauma response to sexual assault." *See generally* ECF No. 160. The Court granted leave to file the supplemental response and granted Plaintiff the opportunity to file a supplemental reply. *See* ECF No. 173 at 3.

## ARGUMENT

Plaintiff stands on her previous briefing on this matter (*see* ECF Nos. 117, 134, 165) and her arguments before the Court on March 18, 2025, but she briefly addresses an argument discussed at the recent hearing. Specifically, in response to a question from the Court confirming that Defendants were not raising consent as a defense, Defendants' counsel stated that they have not ruled out whether they *may* claim that Jane consented to the sexual conduct by Mr. Jones. Defendants argue that because Jane's consent *might* be a defense that they *may* raise,

they are entitled to a range of discovery regarding any sexual conduct with Mr. Jones before the assault. This position conveniently allows them to conduct the discovery they seek regarding Jane's previous sexual history with Mr. Jones. However, there is no good faith basis for a consent defense here, and allowing Defendants to use this hypothetical defense as a disingenuous work-around to evade the protections for sex assault victims would be improper. Additionally, Plaintiff alerts the Court to new persuasive authority in her favor.

    I.    *Defendants' Mere Assertion of a Possible Consent Defense Is Not Sufficient Reason to Justify Their Fishing Expedition into Jane's Sexual History*

Defendants should not be allowed to side-step protections for sexual assault victims merely by raising the logical possibility of a consent defense. The claim that Jane's consent to her assault is a possible defense in this matter is dubious for two reasons: first, the only two individuals involved in the sexual assault both agree there was no consent; second, the Defendants have not actually pursued such a defense to date despite the Parties' approaching one year of discovery as of April 3, 2025.

The facts here do not support a possible defense of consent. In the operative Answer, Defendants have admitted that with respect to Jane's allegations regarding her assault, "Defendants are without knowledge as to the truth of the allegations." *See* ECF No. 114 at ¶ 9. Jane unequivocally states (and always has) that she did not consent to Mr. Jones' sexual assault. And the perpetrator, Mr. Jones, has repeatedly acknowledged he did not have Jane's consent for what he did. *See* **Ex. 2 at 1; Ex. 4** at 1. In this vein, Mr. Jones pled guilty to the charge of unlawful sexual contact, **no consent.** *See* **Ex. 1** at 1. Defendants' newfound probing into the reliability of plea agreements is neither here nor there in the litigation context, because a guilty plea is an irrevocable admission of guilt. "By entering a plea of guilty, the accused is not simply

4

stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *United States v. Dwyer*, 245 F.3d 1168, 1170 (10th Cir. 2001) (quoting *United States v. Broce*, 488 U.S. 563, 570 (1989); citing *United States v. Hill,* 53 F.3d 1151, 1155 (10th Cir.1995) (en banc) (holding that by pleading guilty, a defendant admits "all the well-pleaded facts in the indictment")); *see also People v. Ford*, 232 P.3d 260, 261 (Colo. App. 2009) ("'[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case.'") (quoting *Menna v. New York*, 423 U.S. 61, 63 (1975)). Regardless of the reasons a person may plead guilty, Defendants cannot rely on their unsubstantiated theory that Mr. Jones may have pled guilty to avoid jail time (a sentence which was never available based on the charge, Mr. Jones' criminal history, and his age at the time of the offense) as an excuse to seek otherwise prohibited discovery. Even if Mr. Jones had not privately admitted his guilt and apologized for his conduct, his plea is a judicially binding admission of the underlying facts of the indictment.

During the deposition of Mr. Jones, Plaintiff's counsel asked Mr. Jones to admit the contact was not consensual, but he asserted his Fifth Amendment privilege not to answer. *See* **Ex. 3** at 3. If the perpetrator of the assault were a party in this matter, his refusal to dispute that there was no consent under his assertion of his Fifth Amendment rights would result in an inference against him that there was no consent. *See, e.g.*, *Hilda M. v. Brown*, No. 10-CV-02495-PAB-KMT, 2010 WL 5313755, at *5 (D. Colo. Dec. 20, 2010) (noting the "quandary" for parties "of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case"). Defendants seek to use *Mr. Jones'* Fifth Amendment privilege as a sword and shield, hiding behind the fact that he refused to answer the question when Plaintiff's counsel

5

asked. But Plaintiff should not be left paying for Mr. Jones' assertion of his Fifth Amendment rights – especially where Defendants have never sought to challenge Mr. Jones' assertion and reopen the deposition despite reserving their right to do so during the deposition.

The Defendants' own statements and actions also belie their claim that they may in good faith seek a consent defense. Notably, Defendant Silva testified that he does not dispute that Jane was sexually assaulted. *See* ECF No. 165-2 at 2. Thus, any claim now that they *may* pursue a defense that the sexual contact was consensual is very clearly a strategic maneuver rather than an honest attempt to get to the truth or to defend their case. The real purpose is to humiliate Jane by prying into and airing her most private moments.

Moreover, the Court should not feel obligated to open the floodgates to Jane's sexual history, even any alleged sexual past with her assaulter, merely because Defendants half-heartedly mention consent. The Court must still weigh the requested discovery under Fed. R. Civ. P. 26(b)(1). The weakness of Defendants' claim of consent certainly bears upon its proportionality to the needs of the case.[2] Jane's sexual history is not relevant to any issue in the

---

[2] If Defendants' argument is accepted and evenly applied, Plaintiff would also be entitled to pursue speculative theories even if unsupported by current facts. For instance, Plaintiff could seek to show that the Individual Defendants treat female students with particular deliberate indifference as a result of their own sexual pasts, including past allegations of sexual harassment and assault. Indeed, there isn't any evidence this is *not* the case. In that scenario, the same logic would seem to suggest that Plaintiff should be entitled to ask the Individual Defendants to detail their sexual history with women, including all sexual rejections, frustrations, and claims of lack of consent, in furtherance of her hypothetical theory that they were deliberately indifferent to claims of sexual harassment on the part of the female student body based on such potential past experiences. Certainly, Defendants would object and refuse to answer such questions. That is because patently unserious claims that might have relevance to *any* possible argument cannot suffice to overcome the protections and limits of FRCP 26 and FRE 412.

case, including consent,[3] nor does any supposed benefit to Defendants outweigh the significant burden to Jane of detailing her sexual past to Defendants, especially when it is not (and never will be) admissible under Fed. R. Evid. 412.

## II. New Colorado Law Provides Support for Plaintiff's Position

Lawmakers in Colorado recently strengthened protections for victims of sexual assault against the admissibility of previous sexual conduct in civil litigation. This legislative change provides persuasive support for Plaintiff's position that her sexual history should be protected. On March 13, 2025, the Colorado General Assembly passed HB 25-1138, entitled "Protect Victims in Civil Sex Misconduct Suits," which was signed into law on the same day by Governor Polis. *See* **Ex. 5**, *Colorado House Bill 25-1138 – Signed*.; *see also id.* (explaining in the bill summary that "[u]nder current law, certain evidence of a victim's prior or subsequent sexual conduct is presumed irrelevant and inadmissible in a civil proceeding, but there is an exception for evidence of the victim's prior or subsequent sexual conduct with the defendant. **The bill eliminates this exception**." (emphasis added)).[4] This Act strengthens Colo. Rev. Stat. § 13-25-138, which had made a sexual-assault victim's prior sexual conduct and reputation evidence inadmissible and presumptively irrelevant in civil cases, by significantly narrowing the existing exception for evidence of previous sexual conduct with the assaulter. *See id.* The new legislation creates a legal process and protections for victims when previous sexual conduct with a perpetrator is sought to be admitted in court, and it mandates that such evidence can only be

---

[3] It bears noting that even if there was previous sexual contact, that does not somehow render the assault consensual.
[4] More information regarding the passage of this bill is available at https://leg.colorado.gov/bills/hb25-1138.

7

admitted if it is relevant to a material issue to the case *and* if "its probative value substantially outweighs the probability that its admission will create an unfair prejudice or invasion of privacy." *Id.* at 3. Plaintiff readily acknowledges that this Court is not necessarily bound by Colorado statutes on the admissibility of evidence. However, the undersigned offers this as evidence supporting the fact that prior sexual conduct – including prior sexual conduct with an alleged sex assault perpetrator – is information that society and public officials view as warranting serious protections even in the context of civil cases. The privacy interests implicated in the disclosure of this information are well established and should be given due weight.

## CONCLUSION

For the reasons set forth above and in earlier briefing, Plaintiff respectfully asks that the Court grant her Motion for Protective Order (ECF No. 117).

Dated: March 24, 2025

Respectfully submitted,

*s/ Aurora L. Randolph*
**ALR Civil Rights LLC**
Aurora L. Randolph
9878 W. Belleview Ave., Suite 2129
Denver, CO 80123
(303) 968-1703 (t)
aurora@alrcivilrights.com

**Spark Justice Law LLC**
Laura B. Wolf
Stephen Shaw
3435 S. Inca Street, Suite C-113
Englewood, CO 80110
(303) 802-5390 (t) / (303) 848-3003 (f)
laura@spark-law.com
steve@spark-law.com
*Attorneys for Jane Doe*