IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00687-NYW-TPO

**JANE DOE**,

    Plaintiff,

v.

**CHERRY CREEK SCHOOL DISTRICT**;
**KEVIN UHLIG**, in his individual capacity;
and **RYAN SILVA**, in his individual capacity,

    Defendants.

---

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

---

The entire reason Plaintiff is seeking to file a Third Amended Complaint ("TAC") is because discovery obtained in January 2025 (and transcribed the following month) clearly establishes municipal liability.  As such, permitting Plaintiff to file a TAC is not only appropriate, but it is judicially efficient, as any renewed motion to dismiss filed by Defendants will be narrowed to two issues: qualified immunity and legal arguments on the scope of the Claire Davis School Safety Act.

Defendants' Response in opposition proceeds in three main segments.  First, Defendants attempt to expand the burden on plaintiffs for filing an amended complaint after the deadline for amendments, in contravention of thoroughly established caselaw.  Second, Defendants address many (but not all) of Plaintiff's new or substantially amended allegations in scattershot fashion, seeking to show that each is problematic in *some* way, often through mischaracterizing the allegations, mischaracterizing discovery in this case, or disputing the connection between the new allegations and the discovery on which it is based in a manner more appropriate for summary judgment.  Finally, Defendants make spurious and conclusory claims of prejudice that would result from permitting the proposed amendment and assert (but do not argue) that the amendment would be futile.

I. **Plaintiff Need Not Demonstrate Excusable Neglect**

The well-established standard for assessing a motion for leave to amend filed after the scheduling order's deadline for amendment of pleadings is to determine whether the plaintiff has demonstrated "(1) good cause for seeking modification under Fed.R.Civ.P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  This standard has not been meaningfully amended or challenged since *Gorsuch* and has been applied

consistently in the mine run of cases since the Tenth Circuit adopted it. *See, e.g.*, *French v. Denver Pub. Sch.*, No. 23-CV-01614-NYW-MDB, 2024 WL 5168139, at *2 (D. Colo. Dec. 19, 2024) (Wang, J.).

Defendants cite a single unreported case, *Nesjan v. Allstate Fire and Casualty Insurance Co.*, 2020 WL 2494616 (D. Colo. May 14, 2020), in an attempt to impose an additional burden on the plaintiff to establish excusable neglect under Fed. R. Civ. P. 6. *See Resp.* at 3-4. However, *Nesjan* acknowledges directly that "Courts apply a *two-step analysis* to determine whether a party may amend their pleading after the deadline to amend," describing the *Gorsuch* standard. *Nesjan*, 2020 WL 2494616, at *2 (emphasis added). The *Nesjan* court then interposes a burden to establish excusable neglect under Rule 6 without citing any caselaw or providing any analysis. *Id.* Given the clarity of the Tenth Circuit's standard in *Gorsuch* – that a plaintiff must demonstrate good cause under Rule 16(b) and that a court must weigh whether amendment should be permitted under Rule 15 – and that the only Tenth Circuit case undersigned counsel could identify directly addressing this question suggested that adding an excusable neglect analysis may be "the wrong legal standard" insofar as it differs from the test in *Gorsuch*, *Birch v. Polar Industries, Inc.*, 812 F.3d 1238, 1249 n.2 (10th Cir. 2015), *Nesjan* should be disregarded.[1]

II. **Rule 16 – Plaintiff Learned of the Factual Basis for Many Amendments No Earlier than January 2025, Contrary to Defendants' Representations**

---

[1] To the extent *Birch* does not fully reject the imposition of an "excusable neglect" hurdle, this is because "excusable neglect under Rule 6 and good cause under Rule 16 [] are essentially the same standard" and thus any error was harmless. 812 F.3d at 1249 n.2.

As to Rule 16, "'[i]f a plaintiff learns new information through discovery,' Rule 16's good cause requirement is met." *Obeslo*, 2017 WL 10591604, at *2 (quoting *Gorsuch*, 771 F.3d at 1240). Not every new allegation in an amended pleading must be based on new information so long as the new information justifies amendment on its own. *See, e.g.*, *Prairie Walk Condominium Ass'n v. Am. Ins. Co.*, 2024 WL 3228466, at *5 (D. Colo. June 28, 2024) (finding good cause under Rule 16 when recently discovered evidence clarified claims as to which the amending party already had some information). Importantly, facts can only be alleged in context; the idea that *every* fact known to a party must be alleged in a pleading or else is lost forever, no matter how the scope of its relevance changes over time, would be an impossible and unwieldy standard to meet.

Most of the additional allegations in the proposed TAC are based on discovery obtained since the amended pleading deadline. And facts alleged that were previously known are alleged *in connection to* the new allegations, as their relevance has become pronounced in light of the new discovery. Defendants' efforts to attack each paragraph one by one without acknowledging the larger story being told is noteworthy.

Defendants' nearly exhaustive recitation of amended or added paragraphs is also notable for at least one set of allegations that Defendants *do not* acknowledge. Paragraphs 67-73 of the proposed TAC describe deposition testimony from Defendant Uhlig and Dean Devitt (Prevost), the two individuals who were responsible for actually identifying and providing supportive measures to Ms. Doe in the aftermath of her reporting Mr. Jones's assault. Defendant Uhlig, who has been CCHS's Title IX Coordinator for eight years, testified that the **only** supportive measures available for victims of sexual assault are: providing a "trusted adult" with whom to speak, providing a safe place to go

4

during off periods to avoid people, communicating with guardians about the reported assault, and letting teachers know a student may be struggling to see whether they would "potentially" lighten the academic load.  ECF No. 171-2 ¶ 67.  No previous discovery had shown that Defendants had such a cramped view of the supportive measures available to victims of sexual assault.  Nor did previous discovery establish that CCSD had a policy, practice, or custom of requiring female victims of sexual assault to initiate contact with their student support teams and proactively identify the supportive measures they wished to receive, regardless of the victim's age and familiarity with potential supports.  *Id.* ¶ 71.  Plaintiff learned of such through the deposition testimony of Dean Devitt, who was the only member of CCHS's administration who actually spoke with Ms. Doe about the assault or its aftermath.  These allegations speak to municipal liability, specifically inadequate training and deliberate indifference toward sexual assault victims.  Defendants do not mention these paragraphs in their Response.

With regard to the specific paragraphs Defendants discuss in their Response, Defendants repeatedly purport to summarize wide swathes of allegations as being related to a given topic, pointing to some piece of evidence that *also* relates to that topic and which Plaintiff has had for some time.  These descriptions are quite frequently so misleading as to suggest bad faith.[2]  As so often in contemporary discourse, it requires

---

[2] Defendants' misrepresentations permeate the Response in matters both significant and minor.  For instance, Defendants quibble with Plaintiff's claim to have filed three sets of written discovery requests since seeking leave to file the SAC, claiming Plaintiff has only served three sets total.  *Resp.* at 5.  This is false.  *See* **Ex. 1**, *2025.03.10 Plaintiff's Fourth*

5

much more detail to correct such misstatements than it took to make them, and so Plaintiff cannot possibly dispute each such description fully. However, several examples will make the pattern clear.

At page 11 of their Response, Defendants identify a series of allegations and state that they "do not contain any allegations or information that were not available and known to Plaintiff in 2022 . . . ." *Resp.* at 11. Among these allegations were those at ¶¶ 244-250 of the proposed TAC. Paragraphs 244-246 describe how Defendants never took any steps to determine whether Mr. Jones's conduct warranted discipline under several broad CCSD behavioral codes, nor to determine whether Mr. Jones's continued presence at school could disrupt the learning environment or endanger students, even though Defendant Uhlig acknowledged that Mr. Jones's crime was one that could have a "substantial impact to safety and security" at the school. While Plaintiff was aware that Defendants had never actually removed Mr. Jones from the educational environment, it was only through the January 2025 depositions that Plaintiff learned that Defendants

---

*Set of Written Discovery Requests*. Even if Plaintiff had not served this most recent set, Plaintiff notes that after seeking leave to file the SAC, she had to bring a discovery dispute to the Court because Defendants failed to adequately responded to her first set of discovery requests, including by limiting responsive documents to the Doe/Jones case to impair Plaintiff's efforts to establish municipal liability. Plaintiff only received *some* discovery relating to other sex assault cases for the first time on November 8, 2024. Plaintiff will endeavor not to play whack-a-mole with respect to each misrepresentation, but an uncommon number of their claims are simply untrue.

never even *considered* such actions, despite being required to under CCSD policies. At ¶¶ 248-249, Plaintiff references Mr. Silva's testimony that "we needed to wait for it to go through the legal system" before taking disciplinary action, which practice is contrary to CCSD's published policies. Plaintiff could not have known that Defendants' actual practices and Defendant Silva's beliefs so thoroughly contradicted CCSD's written policies without the depositions.[3]

> Most striking, however, is paragraph 250. This paragraph reads, in its entirety:
>
> However, this position reflects the practice and custom of CCSD, as Defendant Silva took direction as to how to address the Doe/Jones situation – including when to impose discipline – directly from the district's legal department. He did so to ensure consistency within the district, meaning that any advice he received was consistent with districtwide practices. And although Principal Silva had the discretion not to follow the advice he received, he never exercised that discretion.

Prior to the January 2025 depositions, Plaintiff was not aware of how closely Defendants Silva and Uhlig worked with CCSD's legal department to determine whether to investigate Title IX claims, whether to discipline students accused of sexual harassment, or how to respond to Plaintiff's case in particular. Plaintiff also did not know that the Individual Defendants uniformly deferred to CCSD's legal department's recommendations in the interest of "consistency," **which demonstrates that Defendants' decisions in Plaintiff's specific case were representative of CCSD's overarching policy and practice**. This allegation is critical to Plaintiff's municipal liability claims, as it draws the

---

[3] As to due diligence, it should be noted that Plaintiff was unable to set these depositions until January 2025 due to ongoing, months-long delays in obtaining discovery from Defendants as well as Defendants' limited availability for depositions.

link between her case and a "consistent" practice by CCSD. And, contrary to Defendants' representation to this Court, these details about the internal decisionmaking process were **not** "available and known to Plaintiff" merely because she was aware that Mr. Jones had not been removed from the campus. *Resp.* at 11.

In the same set of paragraphs described by Defendants as previously known to Ms. Doe are ¶¶ 301 and 303. Paragraph 301 states that Defendants contend that they *could not* gather evidence or investigate Ms. Doe's allegations of sexual assault because Ms. Roe asked that Ms. Doe not be interviewed about the assault (after having already made a report to police) to avoid retraumatization. However, Plaintiff did not learn that this was Defendants' position in 2022 – paragraph 303 states that these policies/practices were never communicated to Ms. Doe or Ms. Roe, and that Plaintiff actually learned about them through the January 2025 depositions.

These are merely examples of Defendants' persistent mischaracterization of the new allegations and their relation to previously known information. Further examples include ¶¶ 79-84 (*Resp.* at 7 (although Plaintiff inferred that Defendants did not conduct a threat assessment as to Mr. Jones, she did not know that Defendant Uhlig was not aware of a *single* threat assessment in response to sexual assault while approximately 100 are conducted each year)) and ¶¶ 85-133 (*Resp.* at 8 (while Plaintiff knew that Defendants did not conduct an investigation, these paragraphs include detailed information about the decision process for CCSD and its agents, which had not previously been revealed and which speak to municipal liability)), among many more.

Where, as here, a plaintiff has learned of new information through timely discovery, the good cause requirement under Rule 16 is met. As to many new or amended

8

paragraphs, Plaintiff only learned the factual basis for such allegations through the January 2025 depositions. Because transcripts were only received in February 2025 and the Motion was filed in early March 2025, Plaintiff only waited approximately one month before seeking leave to amend. This is well within a reasonable time frame for amendment based on newly learned information. *See, e.g.*, *Nesjan*, 2020 WL 2494616, at *3 (40 days was not an undue delay); *id.* (citing *McCain v. Taylor*, 2010 WL 2521065, at *1 (D. Colo. June 17, 2010) (133 days not an undue delay); *Mock v. Allstate Ins. Co.*, 2018 WL 6243912, at *3 (D. Colo. Aug. 31, 2018) (3 months not an undue delay)).

### III. Rule 15 – No Factors Weigh Against the Court Freely Granting Leave to File the Proposed Third Amended Complaint

Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted).

Without repeating the arguments above, it is simply untrue that Plaintiff has unduly delayed the amendment of her operative complaint or otherwise acted in bad faith. If anything, it is Defendants' ongoing reticence to produce discovery pertinent to Plaintiff's claims of municipal liability that has caused delay. Further, there can be no good faith dispute that amendment *does* in fact cure any arguable deficiencies from Plaintiff's SAC with respect to her municipal liability claims. It was only through depositions that Plaintiff was able to examine the process that Defendants follow in making decisions about investigations, discipline, and supportive measures in response to reports of sexual harassment. This examination has shown that Defendants follow a **consistent,**

**municipality-wide** process that violated Ms. Doe's rights.  The testimony also created a new theory of liability, specifically based on failure to train. Put simply, if the proposed TAC is accepted, Defendants would have **no basis** for moving to dismiss three of the four claims they previously challenged, at least not in good faith.  While Defendants may still raise challenges based on qualified immunity and their legal interpretation of the Claire Davis School Safety Act, the vast majority of Defendants' pending Motion to Dismiss is entirely mooted by the allegations of official policy/practice.

Defendants also argue throughout the Response that Plaintiff has demonstrated bad faith by "mischaracteriz[ing] deposition testimony."  *See, e.g., Resp.* at 10, 12, 14. Plaintiff similarly believes that Defendants' interpretation of the cited deposition testimony is inaccurate, as is their choice selection of portions of testimony attached to their brief. However, questions of whether allegations are consistent with record evidence are properly reserved for summary judgment; Plaintiff stands by her allegations based on the *complete* deposition testimony of four witnesses who spoke on deeply interrelated matters over hundreds of pages of transcripts.  When taken as a whole, these depositions paint a picture that may differ in some respects from individual answers from individual deponents.[4]  These differences in interpretation between Defendants and Plaintiff are not indicative of bad faith, but rather the standard process of advocacy.  Plaintiff is prepared to show the connection between evidence and legal theory at the summary judgment stage, but believes it is inappropriate here at the pleading stage.  In an abundance of

---

[4] Indeed, the deponents themselves sometimes gave contradictory testimony within their depositions, especially after realizing the significance of their testimony.

caution, Plaintiff is attaching herein the *complete* deposition transcripts should the court believe it is proper to undertake such an analysis at this time.

Finally, Defendants claim that they would suffer undue prejudice if the amendment were permitted. *Resp.* at 14-15. Each of their arguments is without merit. First, Defendants are not prejudiced by the prospect of filing another motion to dismiss, as detailed above. *See also* ECF No. 89 at 6. Second, Defendants argue that the addition of new allegations at this stage is prejudicial as they have already engaged in discovery. Defendants notably do not identify *how* their discovery would have differed had Plaintiff made the proposed amendments earlier (which she could not have done, as they are based on recently discovered information) or why Defendants cannot serve more discovery at this time, especially since discovery does not close until August and Mses. Doe and Roe have not yet been deposed. Perhaps it is because the proposed amendments far and away detail Defendants' own conduct; it is not clear how Defendants' written discovery "would have potentially targeted different areas," *Resp.* at 14, based on allegations about *Defendants'* training, *Defendants'* internal deliberative processes, or *Defendants'* understanding and application of their own policies. It is also oddly circular (and concerning) to claim that Defendants would have prepared witnesses for depositions differently if they were aware of the new allegations, when those allegations are themselves based on the deposition testimony in question. The vague prospect of potentially conducting some additional discovery based on the proposed amendments is not enough to establish prejudice; "engaging in discovery, by itself, is not prejudicial to a party; it is inherent in litigation." *Nesjan*, 2020 WL 2494616, at *5.

11

WHEREFORE, Plaintiff respectfully requests that the Court grant her leave to file her Third Amended Complaint.

Respectfully submitted this 15th day of April 2025.

SPARK JUSTICE LAW LLC

*s/ Stephen Shaw*
Laura B. Wolf
Stephen Shaw
3435 S. Inca Street, Suite C-113
Englewood, CO 80110
(303) 802-5390 (t) / (303) 848-3003 (f)
laura@spark-law.com
steve@spark-law.com

ALR Civil Rights LLC
Aurora L. Randolph
9878 W. Belleview Ave., Suite 2129
Denver, CO 80123
(303) 968-1703 (t)
aurora@alrcivilrights.com

*Attorneys for Plaintiff*