IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00687-NYW-TPO

JANE DOE,

    Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT,
KEVIN UHLIG, in his individual capacity, and
RYAN SILVA, in his individual capacity,

    Defendants.

## ORDER

**Timothy P. O'Hara, United States Magistrate Judge**

Before the Court is the Plaintiff's Motion for a Protective Order. *See* ECF 117 (Motion), ECF 134 (Reply), and ECF 174 (Supplemental Reply). The Motion is opposed by Defendants. *See* ECF 126 (Response) & ECF 173 (Supplemental Response). After considering the Parties' briefing, the relevant law, the Parties' arguments, the Court **grants, in part, the Plaintiff's Motion for Protective Order [ECF 117]**.

### BACKGROUND[1]

Ms. Jane Doe was a freshman at Cherry Creek High School (CCHS)[2] in the 2021-2022 school year. ECF 100 ¶ 12. She was 14-15 years old. *Id.* On January 19, 2022, Mr. John Jones, also a freshman at CCHS and a prominent player on the school's football team, suggested that he

---

[1] All alleged facts are derived from Plaintiff's Second Amended Complaint [ECF 100]. On March 11, 2025, Plaintiff filed a Motion for Leave to File the Third Amended Complaint [ECF 171], which has been opposed by Defendants [ECF 184].

[2] Cherry Creek High School is part of the Cherry Creek School District (CCSD).

and Ms. Doe leave campus during school hours when each had a period without class. *Id.* ¶ 14. Mr. Jones took Ms. Doe's phone and left, telling her that she could retrieve it if she joined him at a nearby Starbucks. *Id.* ¶ 16. At Starbucks, Mr. Jones went into a bathroom with Ms. Doe's phone. *Id.* ¶ 18. Ms. Doe followed him inside to retrieve the phone, and while inside the bathroom, Mr. Jones locked the door and "began to violently sexually assault Ms. Doe." *Id.* ¶ 20. He "digitally penetrated Ms. Doe's vagina without her consent and despite her resistance." *Id.* ¶ 22. He also "forced Ms. Doe to the ground, positioning himself on top of her and holding her down with both hands and his body weight." *Id.* ¶ 23. After pushing a much larger Mr. Jones off, Ms. Doe was able to escape. *Id.* ¶¶ 25-26.

On January 25, 2022, Ms. Doe and her mother reported the incident to the school resource officer and a CCHS Dean. *Id.* ¶ 31. Ms. Doe's outcry sparked a criminal investigation and prosecution of Mr. Jones. *Id.* ¶ 32. As part of that criminal proceeding, Mr. Jones pled guilty to the charge of unlawful sexual contact, no consent, in violation of C.R.S. § 18-3-404(1)(a), a class A misdemeanor. *Id.* ¶ 45. In connection with that proceeding, Mr. Jones wrote a letter to Ms. Doe in which he stated:

> Once I started kissing you and touching you, you asked me to stop, and I didn't. I sexually abused you by ignoring your request for me to stop. None of this was your fault, and you never asked for this to happen. I never had your consent and you never wanted this to happen.

*Id.* ¶ 28.

According to Plaintiff's Second Amended Complaint, after learning of the sexual assault, the Defendants failed to: implement any measures to protect Ms. Doe at school, investigate the matter, and take sufficient disciplinary action against Mr. Jones. *Id.* ¶¶ 41, 47, and 49. Ms. Doe was forced to interact with Mr. Jones at school and was harassed by fellow students. *Id. e.g.,* ¶¶ 34, 64-65. As a result of the school's inaction and the "hostile environment and harassment" that

she faced, "Ms. Doe began to suffer from severe anxiety, PTSD, and depression, manifesting in panic attacks, physical sickness, rapid heartbeat, heart palpitations, uncontrollable weeping, vomiting, migraines, weight loss, difficulty sleeping, and fainting on more than one occasion." *Id*. ¶¶ 68, 313-314.  Eventually, because the family "could not know that Ms. Doe would be protected by Defendants," she withdrew from CCHS and enrolled in a private school. *Id.* ¶¶ 196-97.

Plaintiff also alleges that CCSD's failure to properly address the sexual assault of Ms. Doe is not unique. She alleges that "[o]ther instances of sexual harassment and sexual assault have been met with similar inaction" by CCSD. *Id.* ¶ 283. According to Plaintiff's Second Amended Complaint, "[o]ver the past decade, CCSD has created, condoned, or ratified a toxic culture that includes a demonstrated pattern of ignoring reports of sexual assault, disbelieving or minimizing reports of sexual harassment or assault, and failing to take available steps to protect victims of sexual harassment or sexual assault from other students." *Id.* ¶ 274. This behavior by CCSD "has resulted in a policy, custom, or practice of deliberate indifference among high-ranking administrators of ignoring reports made by female students and allowing gender violence to fester and flourish." *Id.* ¶ 275.

Plaintiff brings five claims against the Defendants. The first two claims, against Defendant CCSD, are for violations of Title IX based on an official policy of deliberate indifference and deliberate indifference to Ms. Doe's report of sex assault. *Id.* ¶¶ 302-315. The third and fourth claims, against Defendant CCSD (Claim Three) and individual Defendants Ryan Silva and Kevin Uhlig (Claim Four), are under 42 U.S.C. § 1983 for violations of Equal Protection. *Id.* ¶¶ 316-320. The fifth claim, against all Defendants, is under the Claire Davis School Safety Act, set forth in Colo. Rev. Stat. § 24-10-106.3. *Id.* ¶¶ 329-347. As part of the final claim, the Plaintiff must prove

3

that Mr. Jones "committed or attempted to commit a felony sexual assault against Ms. Doe as defined in Colo. Rev. Stat. §18-3-402."[3] *Id.* ¶ 331.

## PROCEDURAL HISTORY

On March 13, 2024, Plaintiff filed her Complaint [ECF 1]. On August 27, 2024, Plaintiff's counsel deposed Mr. Jones. During the deposition, over objection, defense counsel inquired of Mr. Jones about his prior sexual relationship with Ms. Doe and Ms. Doe's sexual reputation. ECF 117 at p. 2 (referencing specific portions of the deposition transcript in which defense counsel inquired about Ms. Doe's sexual reputation). Recognizing that it may become an issue, the Parties conferred on the proper scope of discovery relating to the Plaintiff's sexual history, both with Mr. Jones and otherwise. *Id.* at pp. 2-3.

Then, on October 21, 2024, Defendants served written discovery requests on Plaintiff. Defendants asked Plaintiff to:

> [e]xplain Your relationship with Mr. Jones prior to January 19, 2022. In doing so, describe how You met him, where You met him, the nature of Your relationship with him and Your previous interactions with him, including face-to-face interactions, social media interactions, text message interactions and all verbal interactions. For each interaction described, include the date of each interaction, the nature of the interaction, all witnesses to the interactions and the length of the interactions.

ECF 117-3 at p. 3. Defendants also served two requests for production related to this issue:

> Provide all documents related to any communications. You [sic] had with Mr. Jones from June 2021 to the present, including all text messages, all emails, all social media posts or messages; all letters; all voicemails; all notes; all diary or journal entries; and all recordings of any conversations You had with Mr. Jones.
>
> Provide all documents related to communications You had with any current or former District student about Mr. Jones or the Sexual Assault from June 2021 to the present, including all text messages, all emails, all social media posts or messages; all letters; all voicemails; all notes; all diary or journal entries; and all

---

[3] As part of the claim, Plaintiff must prove that Mr. Jones committed the sexual act knowing Ms. Doe did not consent. Colo. Rev. Stat. § 18-3-402(1)(a).

4

recordings of any conversations You had with any former or current District student.

*Id.* at pp. 8-9. Based on what Plaintiff perceives as "continued indications that Defendants intend to probe Ms. Doe's alleged sexual history notwithstanding its irrelevance to this case," the Plaintiff seeks a Protective Order to "limit discovery of Ms. Doe's sexual conduct and reputation." ECF 117 at pp. 3-4.

## LEGAL STANDARDS

### *Scope of Discovery*

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and states that parties may receive information:

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweigh its likely benefit.

The scope of discoverable information is wider than that of relevant information. *Id.* ("Information within the scope of discovery need not be admissible in evidence to be discoverable."). "The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P. 26(b)(1)." *Brand Mgmt, Inc. v. Maryland Cas. Co.*, No. 05-cv-02293-PSF-MEH, 2006 WL 8454338, at *2 (D. Colo. June 15, 2006) (citation omitted).

### *Protective Orders*

Federal Rule of Civil Procedure 26(c) allows courts to limit the wide berth that is otherwise allowed for discovery in civil litigation. Specifically, for good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking the protective order carries the burden of

5

demonstrating its necessity. *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325 (10th Cir. 1981). "Implicit in the Rule is the facet that the inquiry into a Protective Order is not all or nothing; the court may exercise its discretion to craft the contours of a Protective Order that meets the needs of the Parties in a specific case." *Ledezma v. Young Life*, No. 20-cv-01896-NYW, 2021 WL 2823261, at *3 (D. Colo. Jan. 8, 2021).

### *Federal Rule of Evidence 412*

In a civil[4] or criminal case involving sexual misconduct, the following evidence is presumptively inadmissible: 1) evidence offered to prove that a victim engaged in other sexual behavior; or 2) evidence offered to prove a victim's sexual predisposition. Fed. R. Evid. 412(a). However, in a civil case specifically, there is an exception to the rule: "the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2). "[R]ather than [using] the specific exceptions stated in subdivision (b)(1)[,] in recognition of the difficulty of foreseeing future developments in the law" the exception requires courts to employ a balancing test. *Id.* Also, the Court "may admit evidence of a victim's reputation only if the victim has placed it in controversy." *Id.*

In cases involving sex assault, Fed. R. Evid. 412 explicitly addresses the *admissibility* of evidence at trial while Federal Rule of Civil Procedure 26 governs questions relating to discovery. *See* Advisory Committee Notes to 1994 Amendments to Fed. R. Evid. 412. However, the umbrella of Rule 412 extends over discovery matters. Specifically, "[i]n order to not undermine the rationale

---

[4] As stated in the Advisory Committee Notes to Rule 412, "[t]he need to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief."

of Rule 412, . . . courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." *Id*. In other words, "[a]lthough Rule 412 controls the admissibility of evidence rather than its discoverability, it must inform the proper scope of discovery in [the] case." *Giron v. Corrections Corp. of Amer.*, 981 F. Supp. 1406, 1407 (D. Colo. Aug. 13, 1997) (citation omitted). The burden of overcoming this presumption rests with the party seeking the discovery. *See Truong v. Smith*, 183 F.R.D. 273, 274 (D. Colo. 1998); *see also Giron*, 981 F. Supp. at 1409.

## ANALYSIS

### *Parties' Filings*

Plaintiff seeks a Protective Order "precluding Defendants from engaging in any discovery about Ms. Doe's alleged sexual history, including with Mr. Jones, beyond the January 19, 2022, sexual assault in question, including limiting questioning in depositions about such topics." ECF 117 at p. 12. Plaintiff cites to Defendants' discovery requests and subsequent conferral attempts with defense counsel that would suggest that "Defendants intend to probe Ms. Doe's alleged sexual history notwithstanding its irrelevance to this case . . ." *Id.* at p. 4. Conceding that Rule 412 "theoretically governs the admissibility of evidence and not the scope of discovery," Plaintiff's counsel highlights the language from the 1994 Amendments to Fed. R. Evid. 412 as support for a presumption in favor of a protective order in the present case. *Id.* at p. 6. And conceding that "defendants are entitled to inquire into a victim's past traumatic experiences as alternate sources of emotional distress," Plaintiff's counsel argues that use of prior sexual history is only appropriate

7

"when evidence exists in the record that such experiences may in fact be traumatic." *Id.* at p. 8 (citing *Ledezma*, 2021 WL 2823261, at *9; *Doe v. Bridges to Recovery, LLC*, No. 20-cv-348-SVW, 2021 WL 4690830, at *2 (C.D. Cal. May 19, 2021); *Giron,* 981 F. Supp. at (D.N.M. 1997)). Plaintiff also argues that public policy supports a limitation on the amount of this type of sensitive information that Plaintiff has to provide so that plaintiffs "are able to seek legal relief without fear that their irrelevant personal sexual lives will be laid bare and criticized." *Id.* at p. 11.

Defendants respond with three principal arguments. First, Rule 412 does not apply to pre-trial discovery and any concern from the Plaintiff about private information will be addressed by the Protective Order already in place [ECF 25]. ECF 126 at pp. 4-5. Second, Defendants are entitled to certain discovery based on Plaintiff's claim under the Claire Davis Act and the possibility of a consent defense to that claim. *Id.* at pp. 5-7. Finally, discovery relating to Ms. Doe's sexual history with Mr. Jones and others may provide the defense with evidence of alternate sources of emotional distress. *Id.* at pp. 7-10.

Plaintiff's counsel replied, arguing that: Rule 412 applies to discovery, any consent defense would lack merit, and this type of discovery for the purpose of developing an alternative source of emotional distress is not proportional. ECF 134. Plaintiff notes that Defendants have failed to meet their burden on the issue, thus further justifying a protective order. *Id.* at p. 7.

### *Rule 412 Indirectly Applies to Discovery Issues*

Defendants first argue that Fed. R. Evid. 412 "does not apply to pre-trial discovery." ECF 126 at pp. 4-5. While Rule 412 specifically addresses the *admissibility* of evidence for purposes of trial, the Advisory Committee Notes to the rule make clear that the impact of the rule is meant to extend into discovery-related issues relating to Fed. R. Civ. P. 26. First, the Advisory Committee noted the "obvious" need to extend the rule to include civil cases, noting "[t]he need to protect

8

alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief." Notes of Advisory Committee on Rules – 1994 Amendment. Second, the Committee urged that "courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality." *Id.* Third, the balancing test in Rule 412(b)(2) is much stricter than that listed in the related Fed. R. Evid. 403, making it clear that the scale is tilted in favor of exclusion and placing the burden on the proponent of the evidence to show that the probative value substantially outweighs the unfair prejudice. "Stereotyping Evidence: The Civil Exception to the Federal Rape Shield Law and its Embedded Sexual Stereotypes," Albin, Ramona C., 30 Am. U. J. Gender Soc. Pol'y & L. 1, 12 (2022).

### *Discovery Topics Not Allowed*

A)  *Ms. Doe's prior, non-traumatic sexual history with individuals other than Mr. Jones.*

Ms. Doe's non-traumatic sexual history with individuals other than Mr. Jones will not be relevant to the issue of consent. *See* Rule 412(a)(1); *see also Truong v. Smith*, 183 F.R.D. 273, 275 (D. Colo. Nov. 16, 1998) ("Rule 412(a) expressly states that evidence of a victim's past sexual behavior is irrelevant to the credibility of her testimony, and that her prior sexual activity with third parties has no bearing on the issue of whether she consented to the sexual violence charged.").

At the March 18, 2025 Status Conference, the Court asked Defendants what line of questioning they envisioned pursuing at Plaintiff's deposition regarding her past sexual history and behavior. Asserting relevance to defending against Plaintiff's claimed emotional distress damages, Defendants responded:

> What I would envision would be asking about . . . Were you sexually active prior to the assault? How many sexual partners did you have? . . . What types of sexual activity, and . . . did that change after the sexual assault? And if it did, how? Fewer partners? More partners?

ECF 198 pp. 105 ¶¶ 23-25, 106 ¶¶ 1-5 (Transcript of Status/Discovery/Motion Hearing held on March 18, 2025).

This evidence also will not be relevant to the issue of damages because it is not sufficiently connected to Plaintiff's trauma. *See Giron v. Corrections Corp. of America*, 981 F. Supp. 1406, 1408 (D. N.M. 1997) ("discovery regarding the plaintiff's sexual contact history may be relevant to the issue of damages, but only to the extent that such sexual contact caused pain and suffering. Inquiry along these very narrow lines in discovery shall be permitted."). Without any link between Plaintiff's prior sexual conduct and either liability or damages, this information has little chance of leading to relevant evidence and therefore is not discoverable.

Additionally, this type of inquiry would greatly annoy and embarrass Plaintiff. It would "'undermine[] the rationale of Rule 412' which is to protect victims of sexual misconduct from undue embarrassment and intrusion into their private affairs." *Alsaadi v. Saulsbury Industries, Inc.*, No. 23-cv-291-KG/KRS, 2024 WL 2398134, at *4 (D. Colo. May 22, 2024) (citing Fed. R. Evid. 412, Advisory Committee's Note; *Sanchez v. Zabihi*, 166 F.R.D. 500, 502 (D. N.M. 1996)). As a result, the Court will not allow any discovery about Plaintiff's non-traumatic relationship history with individuals other than Mr. Jones, sexual or otherwise, including whether or not she was a virgin prior to January 19, 2022.

B) *Ms. Doe's sexual fantasies*

Defendants also will not be allowed to inquire about Ms. Doe's sexual fantasies, generally,

10

whether they pertain to Mr. Jones or otherwise. Any probative value that such information could have on the merits of the case is outweighed by the danger of harm and unfair prejudice to Plaintiff. Fed. R. Evid. 412(b)(2).

In *Simpson v. Univ. of Colo.*, 220 F.R.D. 354 (D. Colo. 2004), a case relied upon by Defendants, Magistrate Judge Craig Shaffer found that portions of Plaintiff's diary were discoverable towards her claim of emotional distress. Without identifying the portions with specificity, Judge Shaffer found that the items subject to discovery were "encompassed by Plaintiff's own interpretation of relevance" and had already been disclosed by Plaintiff in the discovery process. *Id.* at p. 361. However, Judge Shaffer also limited the use of portions of Plaintiff's diary, finding the majority of the diary entries to be "not relevant to the claims and defenses asserted in this action, and [] not likely to lead to admissible evidence." *Id.* at 361. Any "marginal relevance of such events would be substantially outweighed by the potential harm to Plaintiff." *Id.* at pp. 361-362 (citing *Williams v. Board of County Commissioners*, 192 F.R.D. 698, 703 (D. Kan. 2000)). The Court finds discovery in this area would violate the spirit of Rule 412.

The issue is different if Ms. Doe communicated sexual fantasies to Mr. Jones or others about Mr. Jones, whether in writing or otherwise. In that case, Defendants may receive such communications as part of written discovery and would be allowed to examine Plaintiff at deposition about her making those statements. This information is discoverable as it relates to Plaintiff's consent, or lack thereof, during the January 19, 2022, incident.

C) *Ms. Doe's reputation and predisposition*[5]

Sexual behavior and predisposition are presumptively inadmissible and irrelevant to the issue of consent. Fed. R. Evid. 412(b)(2). However, if a Plaintiff puts her reputation in controversy, such information would be admissible. *See* Fed. R. Evid. 412(b)(2); *Troung*, 183 F.R.D. at 274 (citation omitted). Therefore, if Plaintiff provides Defendants with a stipulation that she will not elicit such evidence at trial, then discovery of Ms. Doe's reputation for sexual activity would not be allowed. This ruling applies to both Ms. Doe as well as third party witnesses.

As it relates to the three areas discussed above, Defendants have not met their burden in demonstrating that this information is discoverable under Fed. R. Civ. P. 26. As a result, except as clarified below, Defendants may not inquire about these subjects in written or oral discovery.

**Discovery Topics Allowed**

Defendants will be allowed to inquire about the following topics:

*1) Ms. Doe's prior relationship with Mr. Jones, including details involving the physical/sexual nature of their relationship prior to and on January 19, 2022*

Plaintiff's fifth claim is one of Negligence under the Claire Davis School Safety Act, Colo. Rev. Stat. § 24-10-106.3(2)(c). ECF 100 ¶¶ 329-347. As part of that claim, Plaintiff must prove that Mr. Jones "committed or attempted to commit a felony sexual assault against Ms. Doe as defined in C.R.S. § 18-3-402." *Id.* ¶ 331. A defense to felony sexual assault is that the victim consented to the sexual contact. *See* Colo. Rev. Stat. § 18-3-402(1)(a) (defendant must commit sexual intrusion or penetration "knowing the victim does not consent."). Additionally, the Plaintiff alleges that she and her mother reported the sexual assault to a school resource officer and dean,

---

[5] Defendants' Response does not indicate that Defendants intend to pursue discovery in this area. However, based on the questioning by defense counsel of Mr. Jones during his deposition, and in an effort to avoid future discovery disputes, the Court addresses the issue here.

prompting a criminal investigation. ECF 100 ¶¶ 31-32. According to Plaintiff, CCSD failed to independently investigate the matter. *Id.* ¶ 47.

As it relates to liability on Claim Five alone, the relationship between Mr. Jones and Ms. Doe leading up to January 19, 2022, and after, is potentially an important part of the case. This information could provide Defendants with information to support a consent defense. Plaintiff acknowledges as much: "[a] victim's consensual history with her assailant may be permitted under Rule 412 . . . to establish consent or lack thereof for the alleged assault." ECF 117 at p. 7. Additionally, Plaintiff's statements to CCSD, regarding the January 19, 2022, incident, including her statements relating to her prior relationship with Mr. Jones and including her consent to sexual behavior (both before and after), are also important as it may have affected CCSD's decision-making process after they learned of the January 19, 2022, incident. Defendants may also seek to challenge inconsistencies in the Plaintiff's story as a basis for impeachment. *See* Federal Practice and Procedure (Wright & Miller), "Relevancy to the Claims or Defenses – Admissibility not Required," FPP § 2008 ("'background' information about the manner of operation of a party, or information that might provide a basis for impeachment, should still be available regularly."); *see also United States v. Flaming*, 133 F.4th 1011, 1028 (10th Cir. 2025) ("Prior inconsistent statements are an accepted means of impeaching a witness.") (citing *Wheeler v. United States*, 382 F.2d 998, 1000-01 (10th Cir. 1967)); *Martensen v. Koch*, 301 F.R.D. 562, 571 (D. Colo. 2014) ("Subsumed within the scope of discoverable information under Rule 26(b)(1) is 'information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses.") (citation omitted).

This Court does not ignore the significant evidence that exists contradicting a defense that the sexual encounter on January 19, 2022, was consensual. First, Mr. Jones pled guilty to the

13

misdemeanor offense of unlawful sexual contact in violation of Colo. Rev. Stat. § 18-3-404(1)(a). ECF 100 ¶ 205. That offense requires that "[t]he actor knows that the victim does not consent." Colo. Rev. Stat. § 18-3-404(1)(a). Second, Mr. Jones authored a written statement in which he states "'[n]one of this was your fault, and you never asked for this to happen. I never had your consent, and you never wanted this to happen.'" ECF 134-5. However, Defendants have not admitted that Mr. Jones acted without consent and are entitled to explore possible defenses at this stage of the litigation. ECF 114 ¶ 17 ("Defendants are without knowledge as to the truth of the allegations in ¶ 45 of the Complaint, which are therefore denied."). Discovery into Ms. Doe's and Mr. Jones' relationship prior to the incident is permissible because it is germane to Defendants' potential defense of consent.

Alternatively, as it relates to damages, Mr. Jones is not a defendant to the lawsuit. Thus, Mr. Jones' actions are distinct from the Defendants' actions. Any resulting trauma that Plaintiff may have experienced because of Mr. Jones' conduct could provide an alternative source for Ms. Doe's emotional distress. *Ledezma*, 2021 WL 2823261, at *7 ("defendants are permitted to seek and offer evidence regarding alternative sources of Plaintiff's emotional pain, suffering, inconvenience, mental anguish, loss off enjoyment of life, and other non-pecuniary losses.") The Court finds that discovery into Plaintiff's relationship with Mr. Jones, up to and including the alleged assault, inclusive of questions relating to their prior physical and sexual relationship is permissible as it could provide relevant evidence of an alternative source of trauma.[6]

---

[6] Since this information also is discoverable as it relates to consent, the suggested plan requiring written discovery in advance of oral discovery is not required.

> *2) Ms. Doe's other sources of trauma, including sexual trauma, occurring before and after January 19, 2022*

On the issue of damages, alternative sources of trauma are relevant to rebut allegations that the Defendants caused Plaintiff's trauma. *See Ledezma*, 2021 WL 2823261, at *7 (citing *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 957). As a result, Defendants will be allowed to inquire about Plaintiff's other traumatic experiences as part of oral discovery, but only if defense counsel have a good faith basis that such potential sources of trauma exist. *See, e.g., id.*, at *9 ("Ms. Ledezma . . . affirmatively disclosed the past trauma to others at Young Life, thereby raising at least a colorable issue as to whether such past trauma might be an alternative source of emotional distress . . ."); *c.f., Giron*, 981 F. Supp. At 1408 (discovery into past sexual trauma disclosed in an Interrogatory response is relevant to damages).

To prevent Defendants from "rummag[ing] through [P]laintiff's life in search of possible source of stress or distress," *Ledezma*, 2021 WL 2823261, at *9 (citation omitted), the Court will require Defendants to first inquire by way of Interrogatory about Plaintiff's relevant past traumatic experiences. The Court notes that Plaintiff's Counsel conceded the propriety of this approach at the March 18, 2025, Motion Hearing:

> As of [the Hearing], we have received no discovery requests specifically asking whether our client has experienced any trauma in the past or since the sexual assault. I don't disagree . . . that a request that is narrowly tailored to actually understanding what defendant claims to be seeking, which is discovery into alternative sources of emotional distress, is valid.

ECF 198 p. 91 ¶¶ 1-5 (Transcript of Status/Discovery/Motion Hearing held on March 18, 2025).

Should Plaintiff respond that alternative sources of trauma exist, Defendants may examine Plaintiff during the deposition about those traumatic experiences listed in the Plaintiff's written discovery response. Defendants may pursue additional information through third parties, although

15

the Court cautions Defendants against engaging in fishing expeditions in this sensitive area and will require a good faith basis to support such inquiry.

      *3)  All prior communications (emails and text messages) between Mr. Jones and Ms. Doe.*

Consistent with the Court's finding about the discoverability of information relating to the prior relationship between Mr. Jones and Ms. Doe, the written communications between the two, both before and after January 19, 2022, are discoverable. This information could be directly relevant to the allegations in the Second Amended Complaint and alternatively, to impeach the credibility of Ms. Doe.

## CONCLUSION

Therefore, Plaintiff's Motion for Protective Order [ECF 117] is **granted in part**. As described above and with the caveats provided, Plaintiff's non-traumatic sexual history with individuals other than Mr. Jones, her sexual fantasies, and her sexual reputation are not to be the subject of discovery by Defendants. On the other hand, Defendants may discover information in the following areas: Ms. Doe's relationship with Mr. Jones, including communications between them, and Ms. Doe's alternative sources of trauma. Any discovery relating to Plaintiff's prior traumatic experiences should first come by way of a written discovery request, with the deposition being narrowly tailored to address those issues identified in written discovery. This extra step will minimize the possibility of a fishing expedition into Plaintiff's trauma.

All outstanding discovery requests requiring supplementation must be answered within 21 days of the Court's Order, **by July 7, 2025**. The Court also orders that within the next 14 days, **by June 27, 2025**, the Parties set the Plaintiff's deposition to occur within the next 90 days, **by September 11, 2025**.

With this Order, the Court has endeavored to assist the Parties in navigating a complex subject. However, the Court's Order does not cover every possibility that might arise. The Court encourages meaningful conferral between the Parties, using this Order as a guide, prior to involving the Court in additional discovery related disputes on this topic. Going forward, any issues that remain on this topic that meaningful conferral does not resolve should be brought by way of a written motion.

SO ORDERED.

DATED at Denver, Colorado, this 13th day of June, 2025.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge