**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-00687-NYW-TPO

JANE DOE, by and through her guardian and natural parent, JANE ROE,

     Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT,
KEVIN UHLIG, in his individual capacity, and
RYAN SILVA, in his individual capacity,

     Defendants.

---

## ORDER

---

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's First, Third, Fourth and Fifth Claims for Relief from her Second Amended Complaint (the "Motion" or "Motion to Dismiss"). [Doc. 113]. The Court has reviewed the Motion, the related briefing, and applicable case law. For the following reasons, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

During the 2021–2022 school year, Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe") was a freshman at Cherry Creek High School ("CCHS"). [Doc. 100 at ¶ 12]. Many CCHS students, including Ms. Doe, have a free period during the school day during which they are permitted to leave the CCHS campus. [*Id.* at ¶ 13]. On January 19, 2022, during a visit to Starbucks during her free period, Ms. Doe was forcefully sexually assaulted by a fellow CCHS freshman, John Jones ("Mr. Jones"). [*Id.* at ¶¶ 14–29]. A few days later,

Plaintiff and her mother reported the assault to the CCHS school resource officer and dean.  [*Id.* at ¶ 31].  The report triggered a criminal investigation, and on April 5, 2022, Mr. Jones was criminally charged with unlawful sexual contact, a misdemeanor offense.  [*Id.* at ¶¶ 32, 42–44].  Mr. Jones pleaded guilty on October 18, 2022.  [*Id.* at ¶ 45].

Plaintiff alleges that "CCHS failed to implement any protective measures in response to Ms. Doe's report of Mr. Jones's sexual assault."  [*Id.* at ¶ 41].  Because there were no measures to protect Ms. Doe from encountering Mr. Jones, Ms. Doe changed her typical routes to class, left campus during lunch, avoided certain areas on campus, and hid in the bathroom to avoid contact with her assailant.  [*Id.* at ¶¶ 50–61].  According to Ms. Doe, because "Mr. Jones was a popular student athlete at CCHS," other students targeted Ms. Doe with physical and verbal abuse, such as throwing things at her, accusing her of fabricating her report, and diminishing the assault.  [*Id.* at ¶¶ 63–67].  This harassment caused Ms. Doe to suffer from "severe anxiety, PTSD, and depression, manifesting in panic attacks, physical sickness, rapid heartbeat, heart palpitations, uncontrollable weeping, vomiting, migraines, weight loss, difficulty sleeping, and fainting on more than one occasion."  [*Id.* at ¶ 68].  No one within the Cherry Creek School District (the "School District"), including CCHS Principal Ryan Silva ("Principal Silva") and Assistant CCHS Principal Kevin Uhlig ("Assistant Principal Uhlig"), provided any protections for Ms. Doe from other students' abuse.  [*Id.* at ¶¶ 79–82].

On March 10, 2022, Plaintiff's mother submitted a formal Title IX complaint based on Ms. Doe's inability to fully participate in school.  [*Id.* at ¶ 86].  Within 24 hours, Assistant Principal Uhlig dismissed the complaint on the basis that the assault "did not occur in a school program or activity."  [*Id.* at ¶¶ 87–88].  Ms. Doe alleges, however, that the School

District "has regularly and repeatedly taken the position that students are under the school's control while off-campus during free periods." [*Id.* at ¶ 92]. Shortly thereafter, Mr. Jones was charged criminally, but he was permitted to return to the CCHS campus during the pendency of the criminal case. [*Id.* at ¶¶ 109, 122]. Plaintiff's mother submitted another Title IX complaint, which was again quickly dismissed by Assistant Principal Uhlig. [*Id.* at ¶¶ 147–48].

Prior to the 2022–2023 school year, Plaintiff's mother met with Assistant Principal Uhlig and other school officials to "discuss potential supportive measures for Ms. Doe" during the upcoming term. [*Id.* at ¶¶ 165–66]. The talks were not successful, and because Plaintiff and her mother "could not know that Ms. Doe would be protected by Defendants, Ms. Doe withdrew her enrollment from CCHS." [*Id.* at ¶ 196]; *see also* [*id.* at ¶¶ 167–95 (setting out the meeting discussions)]. Plaintiff subsequently enrolled at a private school "with a hefty annual tuition." [*Id.* at ¶ 197].

Plaintiff initiated this case on March 13, 2024, [Doc. 1], and filed the Second Amended Complaint on November 1, 2024, [Doc. 100]. She asserts five claims: (1) a Title IX claim against the School District alleging an official policy of indifference ("Claim One"), [*id.* at ¶¶ 302–08]; (2) a Title IX claim against the School District alleging deliberate indifference to Plaintiff's report of sexual assault ("Claim Two"), [*id.* at ¶¶ 309–15]; (3) an equal protection claim under 42 U.S.C. § 1983 against the School District ("Claim Three"), [*id.* at ¶¶ 316–20]; (4) a § 1983 equal protection claim against Principal Silva and Assistant Principal Uhlig in their individual capacities ("Claim Four"), [*id.* at ¶¶ 321–28]; and (5) a negligence claim against all Defendants ("Claim Five"), [*id.* at ¶¶ 329–47]. In their Motion to Dismiss, Defendants seek dismissal of all but Claim Two. [Doc. 113 at 1].

**LEGAL STANDARDS**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

**ANALYSIS**

Defendants seek dismissal of four of Plaintiff's five claims.  [Doc. 113].  They argue that Claims One and Three should be dismissed for failure to state a claim.  [*Id.* at 4–11].  They also assert that Principal Silva and Assistant Principal Uhlig are entitled to qualified immunity against Claim Four, necessitating dismissal of that claim.  [*Id.* at 11–15].  And finally, they contend that Claim Five is barred by the Colorado Governmental Immunity Act ("CGIA").  [*Id.* at 15–18].  Plaintiff disagrees, arguing that her factual allegations are sufficient, the individual Defendants are not entitled to qualified immunity, and the CGIA does not apply in this case.  [Doc. 129].  The Court addresses these arguments on a claim-by-claim basis below.

**I.    Claim One:  Title IX**

Title IX of the Education Amendments Act of 1972 provides that "[n]o person in the

4

United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  "The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs."  *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644 (1999).  "If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subjects' its students to harassment."  *Id.* (alteration omitted). In other words, the funding recipient's deliberate indifference must, "at a minimum," "cause students to undergo harassment or make them liable or vulnerable to it."  *Id.* at 645 (cleaned up).  "[A] funding recipient can be said to have 'intentionally acted in clear violation of Title IX' . . . when the violation is caused by official policy," including a policy of deliberate indifference to sexual assault or harassment.  *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007) (quoting *Davis*, 526 U.S. at 642).

### A.    Policy of Deliberate Indifference

Defendants first argue that Claim One should be dismissed because Ms. Doe fails to adequately allege that the School District maintained a policy of deliberate indifference to sexual assault or harassment.  [Doc. 113 at 4–7].  Notably, Defendants' argument cites *no* legal authority and does not set forth any sort of legal standard it contends is applicable to the Court's analysis.  *See* [*id.*].[1]  Instead, they single out certain subsets of Plaintiff's

---

[1] In their reply, Defendants argue (1) Plaintiff's claim "does not appear to be recognized by the Tenth Circuit," [Doc. 133 at 1]; and (2) Plaintiff's allegations do not rise to the level of deliberate indifference, which requires "more than simple or even heightened negligence," [*id.* at 1–2 (quoting *Doe No. 1 v. Boulder Valley Sch. Dist. No. Re-2*, No. 11-cv-02107-PAB-KLM, 2012 WL 4378162, *9 (D. Colo. 2012))].  Neither of these arguments

allegations and argue that those allegations are insufficient to plausibly allege a policy of deliberate indifference to sexual harassment.  [*Id.*].

Defendants first assert that Plaintiff cannot allege a policy of deliberate indifference based on allegations that School District students engaged in protests because they believed that a separate Title IX investigation in the District was taking too long.  [*Id.* at 4]; *see also* [Doc. 100 at ¶ 277 ("As one example of [deliberate] indifference, on April 20, 2022, students at several [District] schools staged a walkout to protest [the District]'s taking too long to produce results from a Title IX investigation into an incident that occurred in November 2021 at Grandview High School."); *id.* at ¶¶ 279–80 (alleging that the investigation had taken five months at the time of the protest, but the investigation should have been completed within five days "in most instances"); *id.* at ¶ 281 (alleging that the School District did not remove the accused student from school)].  Defendants contend that "[t]he fact that the District was conducting a long investigation does not show that the District was deliberately indifferent to the sexual harassment report," but instead "shows that the District was taking the complaint seriously."  [Doc. 113 at 4].  They also contend that under Title IX regulations, the School District could not have removed the accused student from school, as he was presumed innocent.  [*Id.* at 5].  These arguments are more appropriately directed to a jury, rather than this Court; indeed, accepting these arguments would require the Court to view the allegations in the School District's favor (and in the case of the second assertion, consider facts not present in the Second Amended Complaint), which the Court cannot do at the motion-to-dismiss stage.

---

was raised in Defendants' Motion to Dismiss, and the Court does not consider arguments raised for the first time in a reply.  *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017).

*Casanova*, 595 F.3d at 1124 (allegations must be construed in non-moving party's favor); *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (courts do not consider extraneous allegations in ruling on a Rule 12(b)(6) motion).

For similar reasons, the Court is respectfully unpersuaded by Defendants' next two arguments. They contend that Plaintiff cannot rely on allegations about a student at Cherokee Trail High School who was sexually harassed by a fellow student. [Doc. 113 at 5]; *see also* [Doc. 100 at ¶¶ 284–85 (Plaintiff alleging that the assailant violated a no-contact order without consequence)]. Defendants argue that these allegations lack factual support, as Plaintiff "does not plead any facts about when this alleged incident occurred, whether the female student requested a Title IX investigation, whether the District investigated the incident or what the outcome of that investigation was." [Doc. 113 at 5]. Defendants also point out a lack of allegations "that the alleged harasser continued to harass" the student, which they say "indicat[es] that the District's measures were effective." [*Id.*]. But again, the Court cannot construe Plaintiff's allegations in the District's favor. *Casanova*, 595 F.3d at 1124. Moreover, Defendants cite no authority requiring the type of factual support they say is missing. This Court finds that the allegations of the Cherokee Trail High School student are sufficiently specific at the pleading stage to lend plausible support to Plaintiff's theory of deliberate indifference, [Doc. 100 at ¶¶ 284–85], especially in combination with her other allegations suggesting indifference.

Defendants also challenge Plaintiff's potential reliance on an incident involving a Prairie Middle School student. [Doc. 113 at 5–6]. The Court observes, however, that Plaintiff simply links to a news article about this incident in her Second Amended

Complaint; she does not affirmatively include any specific allegations about this event in her pleading.  *See* [Doc. 100 at ¶ 290].  In any event, Defendants' argument again asks the Court to view this incident in their favor:  "Far from being indifferent to the sexual assault of the actions of the two employees who did not believe the student, the article cited by Plaintiff in the Complaint demonstrates that the District took immediate action to address the administrators' conduct, placing them both on leave and commencing an investigation into their conduct."  [Doc. 113 at 6].  For the reasons explained above, this argument is insufficient to justify dismissal under Rule 12(b)(6).

Finally, Defendants argue that Plaintiff cannot rely on allegations "that the District was deliberately indifferent to new allegations that Mr. Jones sexually harassed a different student" because "[Judge Neureiter[2]] has already heard evidence on this matter and has ruled that the District did investigate the allegations and did report the allegation to the police."  [Doc. 113 at 6–7]; *see also* [Doc. 100 at ¶¶ 292–97 (allegations that Defendants failed to investigate or address another alleged sexual assault by Mr. Jones)].  Respectfully, this Court does not interpret Judge Neureiter's ruling in the context of a discovery proceeding in the manner Defendants suggest.  Further, this argument again disregards not only the limited focus of a Rule 12(b)(6) motion, but also the fact that a court's role in a case is neutral arbiter, not factfinder.  Judge Neureiter's stated explanation for denying a discovery motion, even if it touched on the facts of the case, is not a binding factual resolution or a relevant consideration on a motion to dismiss.  Accordingly, dismissal is not warranted on this basis.

---

[2] Judge Neureiter was the magistrate judge assigned to this case before the case was reassigned to Judge O'Hara on October 16, 2024.  [Doc. 17; Doc. 85].

B.    Causation

In the alternative, Defendants contend that Plaintiff does not "plead any facts showing that the District's responses to any allegations of sexual assault caused Mr. Jones to sexually assault her." [Doc. 113 at 7].  They assert that there are no allegations that Mr. Jones was aware of the District's response to prior allegations of sexual harassment, and they reason that "Mr. Jones' actions cannot have been caused by activities of which he was not aware." [*Id.*].  Ms. Doe responds that Defendants "misconstrue[] the burden at this stage." [Doc. 129 at 7].  She contends that, under Title IX, "a private damages action may lie against the school board in cases of student-on-student harassment," [*id.* (quoting *Davis*, 526 U.S. at 633)], and so "[t]here is no need for specific knowledge on the part of an assaulter where the school's deliberate indifference failed to forestall foreseeable risks," [*id.*].  This assertion is not supported by authority, and Plaintiff does not expound on what she alleges these "foreseeable risks" were.  *See* [*id.*].

"[I]n the case where a district does not engage in the harassment directly, as here, 'it may not be liable for damages unless its deliberate indifference subjects its students to harassment.  That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.'"  *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1123 (10th Cir. 2008) (quoting *Davis*, 526 U.S. at 644–45).

Claim One asserts two theories of relief:  first, that the School District's deliberate indifference "was a proximate cause of Ms. Doe's being subjected to ongoing sexual harassment," [Doc. 100 at ¶ 305], and second, that the School District's deliberate

indifference "was also a proximate cause of Ms. Doe's being subjected to sexual assault by Mr. Jones," [*id.* at ¶ 306]. Defendants do not distinguish between these two theories, seeking dismissal of Claim One in its entirety for a lack of allegations supporting causation under the second theory. *See* [Doc. 113 at 4, 7].

As for Claim One's first basis, the Tenth Circuit has held that a plaintiff "can state a viable Title IX claim [based on] student-on-student harassment by alleging that the funding recipient's deliberate indifference caused them to be 'vulnerable to' further harassment without requiring an allegation of subsequent actual sexual harassment." *Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1104 (10th Cir. 2019). Plaintiff alleges that the School District's deliberate indifference caused her to be subjected to sexual harassment at school, namely "(1) a hostile education environment, (2) ongoing harassment perpetrated by Mr. Jones and his classmates, and (3) vulnerability to future harassment by being forced to interact with Mr. Jones and his friends in daily life at CCHS." [Doc. 100 at ¶ 305]. This assertion is supported by a substantial number of factual allegations setting out Ms. Doe's changes in her routine to avoid encountering Mr. Jones, targeted in-school verbal harassment from other students, and physical and mental ailments that resulted from the harassment. *See, e.g.*, [*id.* at ¶¶ 31–35, 50–68]. These allegations are sufficient to state a Title IX claim. *See Farmer*, 918 F.3d at 1104–05 ("Plaintiffs sufficiently pled that KSU's deliberate indifference to their reports of rape made them vulnerable to harassment by alleging that the fear of running into their student-rapists caused them, among other things, to struggle in school, lose a scholarship, withdraw from activities KSU offers its students, and avoid going anywhere on campus without being accompanied by friends or sorority sisters."); *id.* at 1105 ("[W]e have no

hesitation in concluding that the allegations in these complaints are sufficient to survive a motion to dismiss, where all inferences are drawn in favor of Plaintiffs.").

Turning to the second theory set out in Claim One—that the School District's policy of deliberate indifference actually caused Mr. Jones to assault Ms. Doe—the Court respectfully agrees with Defendant that the Second Amended Complaint lacks factual allegations linking Mr. Jones's assault of Plaintiff to the District's alleged indifference. Although Plaintiff is correct that a school district may be liable under Title IX if it acts with deliberate indifference to harassment, *see* [Doc. 129 at 7], causation remains a requisite element of that Title IX claim, *see Rost*, 511 F.3d at 1123 (The school district's "deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." (quotation omitted)).  Plaintiff does not direct the Court to any allegations plausibly establishing that the School District's alleged indifference was the cause of the assault, focusing instead on whether the School District had control over students during their free periods.  *See* [Doc. 129 at 6–7].  But whether the School District had authority over students during that time does not answer the question of whether the School District's policy of indifference caused or made Ms. Doe vulnerable to the assault.

Focusing on the present allegations, Ms. Doe alleges that:

The toxic culture within CCSD, CCSD's custom, policy, or practice, of deliberate indifference, and the complete failure of CCSD officials to address sexual misconduct on the part of male students, especially athletes, or to comply with their Title IX responsibilities created a heightened risk that sexual abuse would occur within CCSD's schools, which risk was known and obvious to CCSD officials and repeatedly raised as a concern by students and community members.

This hostile culture and policy of indifference, with the clear message that sexual assault is a tolerable part of being in high school, has led to increased sexual violence in CCSD and many, including Ms. Doe, have suffered as a result.

[Doc. 100 at ¶¶ 300–01]. But Ms. Doe does not include any factual allegations that would allow a factfinder to draw such a conclusion. For instance, there are no factual allegations that CCHS had any prior knowledge of sexual misconduct by Mr. Jones towards Ms. Doe or others prior to the January 17, 2022 sexual assault. *See generally* [*id.*]. Further, there are no factual allegations that the School District was on notice that the football program at CCHS encouraged or at least was aware of a culture that condoned sexual assault prior to Mr. Jones's assault on Ms. Doe. *See generally* [*id.*]; *cf. Simpson*, 500 F.3d at 1177.

Similarly, there are no *specific* factual allegations that the School District was on notice that allowing CCHS students to leave campus during the school day posed a risk of sexual assault. Respectfully, Plaintiff's assertion that "[i]t is unfortunately reasonably foreseeable that, when young teenagers are left wholly without supervision in this manner, sexual assaults will occur," *see* [Doc. 100 at ¶ 107], is unsupported and speculative and need not be taken as true, *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021). And finally, the factual allegations regarding the November 2021 incident at Grandview High School that followed "a campaign of consistent sexual harassment and groping dating back to August 2020," [Doc. 100 at ¶¶ 277–79], are insufficiently severe or pervasive to establish a causal connection between the alleged deliberate indifference of the School District and Mr. Jones's assault on Ms. Doe in January 2022. *Cf. Farmer*, 918 F.3d at 1104 ("Once a funding recipient . . . has actual knowledge of sexual harassment that is severe, pervasive, and objectively offense enough to deprive a student of access to the educational benefits and resources the recipient offers, . . . the recipient cannot, acting with deliberate indifference, turn a

blind eye to that harassment.").

For all of these reasons, the Motion to Dismiss is **GRANTED** to the limited extent it seeks dismissal of the Claim One based on Mr. Jones's assault of Plaintiff. It is **DENIED** to the extent it seeks complete dismissal of Claim One, and Ms. Doe's theory that the School District's deliberate indifference was a proximate cause of Ms. Doe's being subjected to ongoing sexual harassment after the January 2022 assault remains viable.

## II.    Claim Three:  Equal Protection Claim Against the School District

Next, Defendants seek dismissal of Plaintiff's equal protection claim against the School District, which is based on Principal Silva's and Assistant Principal Uhlig's alleged conduct.  [Doc. 113 at 7–8; Doc. 100 at ¶¶ 317–20].  A local government entity, like a public school district, "cannot be held liable for the acts of its employees on a theory of *respondeat superior*."  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010).  "Rather, it will only be held liable for its own acts—acts it 'has officially sanctioned or ordered.'"  *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  Therefore, the local governing body "may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  An official policy or custom may be shown by:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to

whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up).

Defendants argue that Plaintiff's third claim should be dismissed because Principal Silva and Assistant Principal Uhlig were not "final policymakers" for purposes of municipal liability. [Doc. 113 at 8]. "Whether an individual is a final policymaker for purposes of § 1983 liability is a legal issue to be determined by the court based on state and local law." *Vogt v. City of Hays*, 844 F.3d 1235, 1251 (10th Cir. 2017) (quotation omitted). The Tenth Circuit has identified "three elements that help determine whether an individual is a 'final policymaker'": (1) "whether the official is meaningfully constrained by policies not of that official's own making"; (2) "whether the official's decisions are final—i.e., are they subject to any meaningful review"; and (3) "whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (quotation omitted).

Defendants do not undertake an analysis of the *Randle* factors, instead arguing as follows: (1) the Board of Education is the final policymaker for the School District, [Doc. 113 at 8 (citing *Singer v. Denver Sch. Dist. No. 1*, 959 F. Supp. 1325, 1330 (D. Colo. 1997))]; (2) "[i]n order for Uhlig or Silva to be final policymakers, the Board must legally delegate its policymaking authority to" them, [*id.*]; (3) the CCHS handbook, titled "Bear Facts," delegates to principals only the authority to suspend students for ten or fewer days, and delegates no authority to assistant principals, [*id.* at 8–9]; (4) nothing else in the Bear Facts handbook shows a delegation of any other authority, [*id.* at 9]; so (5) it follows that Principal Silva and Assistant Principal Uhlig are not final policymakers, [*id.* at

14

9–10].  Defendants direct the Court to a portion of the handbook that lays out a procedure for expulsion for unlawful sexual behavior, which states that the "Board or its designee will make a preliminary determination whether it will proceed with an expulsion hearing." [*Id.* at 10]; *see also* [Doc. 113-2 at 6; Doc. 129-1].[3]

The Court is respectfully unpersuaded by this argument at the motion-to-dismiss stage.  Defendants' reliance on *Singer* to argue that the Board of Education is the final policymaker for the District is unconvincing, as the *Singer* case discussed only a board of education's final policymaking authority to terminate teachers.  *See Singer*, 959 F. Supp. at 1330 ("The question of whether an official has 'final policymaking authority' is one of state law.  In the case of a school district, a termination of a teacher lies within the responsibility of the board of education." (citation omitted)).[4]  Second, the Bear Facts handbook shows that Principal Silva had been delegated at least some authority to discipline Mr. Jones, such as suspending him from school for a limited period of time.

---

[3] In resolving a Rule 12(b)(6) motion to dismiss, the Court may consider documents that are referenced in the complaint, so long as they are central to the plaintiff's claims and undisputedly authentic.  *Brown*, 124 F.4th at 1264.  The Court notes that the copy of Bear Facts attached to Defendants' Motion to Dismiss governs the 2023–2024 school year, [Doc. 113-2 at 1], and contains only five pages from the handbook, [*id.* at 2–6].  Plaintiff, however, has attached what appears to be a complete version of the 2021–2022 Bear Facts handbook to her response brief.  *See* [Doc. 129-1].  Because no Party disputes the authenticity of the document submitted by Plaintiff, the Court relies on that document to the extent necessary to resolve the Motion to Dismiss.

[4] Similarly, Defendants' citation to *Wilk v. St. Vrain Valley School District*, No. 15-cv-01925-RPM, 2017 WL 3190443, at *9–10 (D. Colo. July 27, 2017), for the proposition that "courts have recognized that the Board is the final policymaker with respect to disciplinary decisions," [Doc. 133 at 4], is not persuasive.  *Wilk* made no such holding or finding.  The *Wilk* court recognized that although those plaintiffs had provided evidence *in that case* that the board of education was the final policymaker over a student's expulsion, the plaintiffs had not provided any evidence that the board acted with deliberate indifference, so summary judgment was appropriate.  2017 WL 3190443, at *10.  *Wilk* does not stand for the broad proposition that Defendants suggest.

*See* [Doc. 129-1 at 24–26].[5]  Defendants' argument that Principal Silva "did not have final policymaking authority to suspend Jones" during the "several months" it took to resolve Mr. Jones's criminal proceedings, [Doc. 113 at 9–10], is not supported by the allegations in the Second Amended Complaint or the provisions of Bear Facts, *see* [Doc. 129-1 at 26 (setting forth the procedures for suspending a student)]; *see also* [*id.* at 24 (stating that "[b]ehavior on or off school property which is detrimental to the welfare or safety of other pupils" is grounds for suspension)].  Therefore, Plaintiff can state a deliberate indifference claim against the School District based at least on Principal Silva's alleged refusal or failure to suspend Mr. Jones after the sexual assault until after he had pled guilty.  *See* [Doc. 100 at ¶ 319 (Plaintiff basing her equal protection claim against the School District on Principal Silva's failure to "take actions to protect victims of sexual assault"); *id.* at ¶¶ 207–09 (alleging that Assistant Principal Uhlig suspended Mr. Jones for four days and one football game, but only after he pled guilty)].  Accordingly, the Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Claim Three.

## III.    Claim Four:  Equal Protection Claim Against the Individual Defendants

Defendants next contend that Claim Four should be dismissed because Principal Silva and Assistant Principal Uhlig are entitled to qualified immunity.  [Doc. 113 at 11].  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

---

[5] When citing to the Bear Facts handbook, the Court uses the page numbers assigned by the Court's Case Management/Electronic Case Files system.

"Because they turn on a fact-bound inquiry, qualified immunity defenses are typically resolved at the summary judgment stage rather than on a motion to dismiss." *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022) (quotation omitted). At the motion-to-dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for constitutionality." *Id.* (cleaned up). In this procedural posture, the Court considers whether the plaintiff has alleged facts sufficient to show (1) the defendant "plausibly violated [her] constitutional rights"; and (2) "those rights were clearly established at the time" of the alleged violation. *Brown*, 124 F.4th at 1265.

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotation omitted). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right," *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018), but a plaintiff need not identify "a case precisely on point" to show that the right is clearly established, *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018); *see also McInerney v. King*, 791 F.3d 1224, 1238 (10th Cir. 2015) (explaining that "there will almost never be a previously published opinion involving exactly the same circumstances" and instructing that courts "cannot find qualified immunity wherever [there is] a new fact pattern" (quotation omitted)). A case is "on point" if it involves materially similar conduct to the case at hand or applies "with obvious clarity" to the conduct at issue. *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (cleaned up).

Defendants raise two related arguments in support of qualified immunity, asserting that (1) "there is no clearly established law that would have put Uhlig or Silva on notice

that it would be a violation of Doe's constitutional rights if they did not conduct a Title IX investigation of an off-campus sexual assault," [Doc. 113 at 12]; and (2) "there is no clearly established law that would have put [the individual Defendants] on notice that failing to expel or even discipline a student because another student accused him of misconduct off campus would violate Doe's rights," [*id.* at 13].  Plaintiff disagrees with Defendants' narrow framing of the issue, arguing that Defendants improperly focus on the specific actions the individual Defendants allegedly failed to take.  [Doc. 129 at 11–12].  She contends that the actual question before the Court is "whether clearly established law put [the individual Defendants] on notice that their broader course of conduct would violate Ms. Doe's rights."  [*Id.* at 11].

In support of her argument, Ms. Doe directs the Court to two cases that she contends "establish school officials' liability for failing to take reasonable steps to prevent or respond to student-on-student sexual assault and subsequent harassment": *Murrell v. School District No. 1*, 186 F.3d 1238 (10th Cir. 1999), and *Doe v. Roaring Fork School District*, 510 F. Supp. 3d 971 (D. Colo. 2020).  [Doc. 129 at 12].  Defendants do not address either case in their reply brief.  *See* [Doc. 133 at 6–8].

In *Murrell*, the plaintiff alleged that a school principal and teachers knew that her school-aged daughter was sexually harassed by a fellow student and "acquiesced in that conduct by refusing to reasonable respond to it."  186 F.3d at 1250.  In reversing the district court's ruling that the employees were entitled to qualified immunity, the Tenth Circuit made two important pronouncements:  first, that "it has been clearly established since . . . 1989 . . . that 'sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws,'" *id.* at 1251 (quoting *Woodward v. City of Worland*,

977 F.2d 1392, 1398 (10th Cir. 1992)), and second, that "it has been clearly established since at least 1992 that a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority," *id.*  The court concluded that the unlawfulness of school employees' deliberate indifference to discriminatory, harassing conduct by students over whom they exercised supervisory authority was "apparent."  *Id.* at 1251–52.

A number of district courts have relied on *Murrell* to deny qualified immunity to school officials in similar circumstances.  In *Roaring Fork*, the plaintiff alleged that she reported to the assistant principal of her school that she had been raped by a fellow student.  510 F. Supp. 3d at 973–74.  She also told the assistant principal that her assailant frequently followed, harassed, and intimidated her.  *Id.* at 974.  Despite the assistant principal's disciplinary authority, he allegedly did nothing in response to the student's report, and the assailant's harassment continued for months.  *Id.* at 973–75.  In a motion to dismiss, the assistant principal sought dismissal of the plaintiff's equal protection claim on qualified immunity grounds.  *Id.* at 976.  The court refused to grant qualified immunity, finding the plaintiff's allegations, which fell "squarely within *Murrell*," were sufficient to allege a violation of her clearly established rights.  *Id.* at 977, 979; *see also, e.g.*, *A.C. ex rel. S.T.C. v. Jefferson Cnty. R-1 Sch. Dist.*, 721 F. Supp. 3d 1162, 1189–90 (D. Colo. 2024) (finding that the equal protection right to be free from deliberate indifference to known sexual harassment was clearly established in 2017 (citing *Roaring Fork*, 510 F. Supp. 3d at 977)); *Lameda ex rel. S.L. v. Indep. Sch. Dist. No. 29 of Cleveland Cnty.*, No. 21-cv-00119-D, 2021 WL 4302773, at *5 (W.D. Okla. Sept. 21,

2021) ("Given clear authority that school officials may not act with deliberate indifference to student-on-student sexual harassment, a § 1983 claim that satisfies the deliberate indifference standard should not be dismissed at the pleading stage based on an asserted defense of qualified immunity."); *R.C. ex rel. Culver v. Indep. Sch. Dist. No. 2 of Osage Cnty.*, No. 23-cv-00478-JFJ, 2024 WL 3570014, at *6 (N.D. Okla. July 29, 2024) (concluding that *Murrell* "provides adequate notice" that teacher's alleged deliberate indifference to known sexual harassment "violate[d] a clearly established right").

*Murrell* is substantially on point. As mentioned above, the Court's analysis at this stage is limited to the allegations in the Second Amended Complaint. *Thompson*, 23 F.4th at 1256. Ms. Doe alleges that Principal Silva and Assistant Principal Uhlig instructed Ms. Doe and her mother that "any concerns about [her] school experience should be communicated to" the CCHS dean. [Doc. 100 at ¶ 70]. Plaintiff thus reported the harassment from her classmates to the CCHS dean, who (upon information and belief) communicated the reports to Principal Silva and Assistant Principal Uhlig. [*Id.* at ¶¶ 71–72, 81]; *see also* [*id.* at ¶¶ 74–75 (explaining that the dean was required to report sexual harassment to the principal)]. However, Principal Silva and Assistant Principal Uhlig took no action to protect Ms. Doe from the bullying or harassment. [*Id.* at ¶ 82]. She also raises allegations suggesting that Principal Silva and Assistant Principal Uhlig had supervisory authority over CCHS students. *See, e.g.*, [*id.* at ¶¶ 92–94, 96–97, 101, 108, 209–10, 212, 242]. These allegations are sufficient at this stage to plausibly establish that Principal Silva and Assistant Principal Uhlig "exercise[d] the state's supervisory authority" and "consciously acquiesce[ed] in sexually harassing conduct by a non-state actor over whom the state actor has authority." *Murrell*, 186 F.3d at 1251.

Defendants make no attempt to address or distinguish *Murrell* or *Roaring Fork*,[6] and their arguments in favor of qualified immunity otherwise are unpersuasive. First, Defendants' framing of the issue—whether it is clearly established that failing to conduct a Title IX investigation or expel Mr. Jones was unconstitutional—is much too narrow and is contrary to binding precedent. The Supreme Court has expressly rejected the notion that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Murrell*, 186 F.3d at 1251 ("We have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct."). Plaintiff's allegations make clear that she is challenging the individual Defendants' alleged general inaction in response to her reports. Her inclusion of factual allegations setting forth *examples* of the alleged inaction—which a plaintiff is *required* to do to state a claim, *see Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement.")—does not

---

[6] Defendants' failure to address *Murrell* and *Roaring Fork* is striking and troubling, given that Defendants are represented by the same defendant as the defendant in the *Roaring Fork* case, and the *Roaring Fork* court relied extensively on *Murrell* in denying qualified immunity. *See Roaring Fork*, 510 F. Supp. 3d at 977–79. Under Rule 11 of the Federal Rules of Civil Procedure, by presenting the Motion for Dismiss to the Court, counsel certified that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Moreover, Rule 3.3 of the Colorado Rules of Professional Conduct provides that a lawyer shall not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Colo. R.P.C. 3.3(a)(2); *see also* D.C.COLO.LAttyR 2 (adopting the Colorado Rules of Professional Conduct as standards of professional responsibility for the United States District Court for the District of Colorado).

raise the bar to defeat qualified immunity to an unattainable height.

Defendants also contend that there are no allegations that Principal Silva or Assistant Principal Uhlig knew about the harassment Plaintiff faced after she reported the assault, as Plaintiff alleges only upon "information and belief" that they knew.  [Doc. 113 at 14].  The Court respectfully disagrees.  First, Plaintiff alleges that the dean was required to report the harassment to Principal Silva, [Doc. 100 at ¶ 74–75], and a reasonable inference may be drawn that the dean did inform Principal Silva of the harassment.  Second, "permitting allegations on information and belief is a practical necessity."  5 Wright & Miller's Federal Practice & Procedure § 1224 (4th ed. May 2025 update).  Indeed, circuit courts "have largely agreed that factual allegations pled on information and belief should not be summarily rejected under *Twombly* where 'the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"  *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (quoting *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (collecting cases).

Based on *Murrell*, Plaintiff has plausibly alleged a violation of her constitutional rights, and the law on this constitutional violation was clearly established at the time of the alleged violation.  Principal Silva and Assistant Principal Uhlig are not entitled to qualified immunity, and the Motion to Dismiss is respectfully **DENIED** as to Claim Four.

## IV.    Claim Five:  Negligence

Claim Five is a common law negligence claim.  *See* [Doc. 100 at 41].  Defendants seek dismissal of this claim under the Colorado Governmental Immunity Act.  [Doc. 113 at 15].  Plaintiff responds that Colorado has waived its sovereign immunity through the

Claire Davis School Safety Act.  [Doc. 129 at 15].

A.    The CGIA and the Claire Davis School Safety Act

With some exceptions, the CGIA "establishes immunity from suit for public entities and their employees in tort cases."  *Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo. 2001); *see also* Colo. Rev. Stat. § 24-10-108 ("[S]overeign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.").  However, the "CGIA allows injured persons to sue governmental entities in certain specific circumstances" where the government's immunity has been waived.  *City of Colo. Springs v. Powell*, 48 P.3d 561, 563 (Colo. 2002).  Sovereign immunity acts as a bar to suit, so it presents a jurisdictional question.  *Smokebrush Found. v. City of Colo. Springs*, 410 P.3d 1236, 1240 (Colo. 2018).  "And because the injured plaintiff must establish that the court has jurisdiction, the plaintiff bears the burden of demonstrating that immunity has been waived."  *Id.*

Plaintiff contends that Colorado has waived its sovereign immunity with respect to her negligence claim through the Claire Davis School Safety Act, Colo. Rev. Stat. § 24-10-106.3.  *See* [Doc. 129 at 15–16].  The Claire Davis School Safety Act provides, in pertinent part:

> All school districts and charter schools and their employees in this state have a duty to exercise reasonable care to protect all students, faculty, and staff from harm from acts committed by another person when the harm is reasonably foreseeable, while such students, faculty, and staff are within the school facilities or are participating in school-sponsored activities.
>
> . . . In addition to any other claims for which the "Colorado Governmental Immunity Act" waives sovereign immunity in this article, sovereign immunity is waived under the "Colorado Governmental Immunity Act" with respect to school districts and charter schools for a claim of a breach of the duty of

care . . . by the school district, a charter school, or an employee of the school
district or charter school arising from an incident of school violence on or
after June 3, 2015[.]

Colo. Rev. Stat. § 24-10-106.3(3)–(4).  Under the statute, school district employees are

not subject to suit in their individual capacities "unless the employee's actions or

omissions are willful and wanton."  *Id.* § 24-10-106.3(4).

The statute defines "incident of school violence" to mean "an occurrence at a public

school or public school-sponsored activity in which a person" engaged in "a crime of

violence" that "caused serious bodily injury or death to any other person."  *Id.* § 24-10-

106.3(2)(c).  "Crime of violence" means that the person committed, conspired to commit,

or attempted to commit murder, first degree assault, or felony sexual assault.  *Id.* § 24-

10-106.3(2)(b).  And "serious bodily injury" means "bodily injury that, either at the time of

the actual injury or a later time, involves a substantial risk of death, a substantial risk of

serious permanent disfigurement, or a substantial risk of protracted loss or impairment of

the function of any part or organ of the body."  *Id.* § 24-10-106.3(2)(f).

### B.    Interpreting Statutes

"The primary goal of statutory interpretation is to ascertain and give effect to the

legislature's intent."  *Lewis v. Taylor*, 375 P.3d 1205, 1209 (Colo. 2016).  The interpreting

court looks first to the statute's plain language, "giving words and phrases their commonly

accepted and understood meaning."  *Crandall v. City of Denver*, 238 P.3d 659, 662 (Colo.

2010) (quotation omitted).  The Court considers the subject language within the context

of the "entire statutory scheme to give consistent, harmonious, and sensible effect to all

parts."  *Denv. Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).  If the statutory text

is unambiguous, it is applied as written, *Lewis*, 375 P.3d at 1209, and "public policy

considerations beyond the statute's plain language have no place in its interpretation," *Samuel J. Stoorman & Assocs., P.C. v. Dixon*, 394 P.3d 691, 695 (Colo. 2017). However, if a literal interpretation of the statute would lead to an "absurd result," then "the intent of the legislature will prevail." *Crandall*, 238 P.3d at 662 (quotation omitted).

In interpreting the CGIA specifically, courts "strictly construe the statute's immunity provisions but broadly construe its waiver provisions, in the interest of compensating victims of governmental negligence." *Smokebrush Found.*, 410 P.3d at 1240.

### C.    Whether Defendants' Immunity Has Been Waived

#### 1.    The School District

With respect to the District, Defendants argue that the Claire Davis School Safety Act does not waive the District's sovereign immunity because (1) the sexual assault was not an "incident of school violence" because it did not occur at a school facility or during a school-sponsored activity; (2) Mr. Jones was convicted of a misdemeanor offense, so there was no "felony sexual assault" to constitute a "crime of violence"; and (3) Plaintiff fails to allege that the assault was caused by the District's breach of the duty of care. [Doc. 113 at 16–17]. The Court finds Defendants' first argument dispositive.

Turning first to Plaintiff's allegations, she asserts that, "[l]ike many other students at CCHS, [she] had a free period each school day during which time CCHS permitted her to leave campus." [Doc. 100 at ¶ 13]. Plaintiff's free period was scheduled at the end of the school day, though other students had free periods in the middle of the school day. [*Id.* at ¶ 104]. According to Plaintiff, the School District "did not know in advance where [its] students would go or what they would do during their off periods," but the District "was aware that students would be able to go and do what they wanted during these times."

[*Id.* at ¶ 106].

Ms. Doe also alleges that the District "has regularly and repeatedly taken the position that students are under the school's control while off-campus during free periods" because school officials have admonished students that their behavior should be "consistent with what we expect of a CCHS student," "includ[ing] all times when we are on campus, off campus, and when we represent [CCHS] at sporting events, travel or other [sic]." [*Id.* at ¶¶ 92–100]. Plaintiff also mentions an email sent by Principal Silva to unknown recipients after "receiving reports of students off-campus during free periods 'stealing, vandalizing, cursing, vaping, harassing employees, and leaving trash on the tables'" at various establishments. [*Id.* at ¶ 96]. Ms. Doe alleges that the District "has an obligation to adequately supervise students during the school day" because its "students are, by and large, children and teenagers who require supervision as they learn how to interact with others and control their impulses, including harmful and dangerous ones." [*Id.* at ¶¶ 101–02].

Defendants argue that the mere fact that the students' trip to Starbucks occurred during school hours does not render the off-campus visit a "school-sponsored activity." [Doc. 113 at 13, 16]. And in their view, "[t]he fact that the District directed students to behave while off campus does not turn all off-campus activities into school-sponsored activities." [*Id.* at 16]. Plaintiff counters that the "free periods allowing students to travel off-campus without supervision during the school day would reasonably fall within" the scope of "school-sponsored activity," "especially in light of Defendants' repeated assertions of authority to discipline conduct occurring off-campus during such free periods." [Doc. 129 at 16]. Because Plaintiff has the burden of demonstrating waiver, the

Court adopts her framing of the "school-sponsored activity" at issue and considers whether the free period during the middle of the school day is such an activity.

The starting point in the Court's analysis is the statutory text. *Denv. Post Corp.*, 255 P.3d at 1088. The statute does not define "school-sponsored activity." *See* Colo. Rev. Stat. § 24-10-106.3. The ordinary meaning of "sponsor" is "to be or stand sponsor for : accept responsibility for." *See Sponsor*, Webster's Third New Int'l Dictionary 2204 (1993); *see also Smokebrush Found.*, 410 P.3d at 1241 (relying on dictionary definitions to ascertain ordinary meaning). "School-sponsored," then, suggests both a school's express sanctioning or approval of the event *and* the school's consent to be associated with the event. And the plain meaning of "activity" is "a form of organized, supervised, and often extracurricular recreation (as athletic games, dramatics, or dancing)." *See Activity*, Webster's Third New Int'l Dictionary 22 (1993); *see also Activity*, Black's Law Dictionary (12th ed. 2024) ("Something that a person or group does; collectively, the acts that someone or some group engages in, esp. in furtherance of some purpose.").

The plain and ordinary meaning of "school-sponsored activity" refers to an organized school-sanctioned curricular or extracurricular endeavor, such as a field trip, a sporting event, or an off-campus school dance. It does not, in the Court's view, extend to off-campus conduct during individualized free periods as alleged in Plaintiff's Second Amended Complaint. Plaintiff herself alleges that the School District "did not know in advance where these students would go or what they would do during their off periods" and that students "would be able to go and do what they wanted" during their free periods. [Doc. 100 at ¶ 106]. Indeed, there are no allegations in the Second Amended Complaint suggesting that the School District set forth any parameters about what students could or

could not do during their free periods or that School District officials directly supervise students during their free periods. In fact, Plaintiff alleges the opposite. *See* [*id.* at ¶ 340 (during free periods, students are "outside the direct supervision of [School District] faculty members")]. The fact that Principal Silva encouraged students to "make sure [their] behavior is consistent with what we expect of a CCHS student . . . [at] all times" and was concerned with certain students' off-campus behavior, [*id.* at ¶ 94], does not lead to the far-reaching conclusion that the School District actually *sponsored* all of its students' off-campus behavior. While the Court must construe the CGIA's waiver provisions broadly, *Smokebrush Found.*, 410 P.3d at 1240, Plaintiff's argument that free periods—and whatever conduct occurs during those periods—amounts to "school-sponsored activity" is simply too expansive.

For these reasons, Plaintiff has not met her burden to establish waiver of the School District's sovereign immunity against her negligence claim. The Motion to Dismiss is **GRANTED** as to the negligence claim against the School District.

### 2. Principal Silva and Assistant Principal Uhlig

The CGIA provides that public employees are immune from tort claims arising out of the employees' performance of their duties and within the scope of their employment "unless the act or omission causing [the] injury was willful and wanton." Colo. Rev. Stat. § 24-10-118(2)(a). The Parties agree that Plaintiff can only assert her negligence claim against Principal Silva and Assistant Principal Uhlig if she plausibly alleges that their actions were willful and wanton. [Doc. 113 at 17–18; Doc. 129 at 18]. They also agree on the applicable standard for measuring "willful and wanton conduct": a public employee acts willfully and wantonly when the employee is "consciously aware that their acts or

omissions create danger or risk to the safety of others, and they then act, or fail to act, without regard to the danger or risk." *L.J. v. Carricato*, 413 P.3d 1280, 1288 (Colo. App. 2018); *see also* [Doc. 113 at 17–18; Doc. 129 at 18].

To meet this threshold, a complaint "must allege specific facts to support a reasonable inference that the employee was consciously aware that his or her acts or omissions created danger or risk to the safety of others, and that he or she acted, or failed to act, without regard to the danger or risk." *Carricato*, 413 P.3d at 1288 (quotation omitted). Defendants argue that Plaintiff fails to plead any specific facts showing that either of the individual Defendants "engaged in any actions that would create a danger that Jones would assault Doe off campus at a Starbucks, much less facts showing that they were consciously aware that their actions created any such danger." [Doc. 113 at 18]. Plaintiff responds that she has pleaded sufficient allegations of willful and wanton conduct. [Doc. 129 at 18]. But in support, she directs the Court to allegations of Principal Silva's and Assistant Principal Uhlig's conduct *after* the sexual assault. Specifically, she argues that she reported her "continuing difficulties [she] was experiencing at school, including as a result of interactions with Mr. Jones himself," but that the individual Defendants "declined to take any steps to protect Ms. Doe," instead "suggest[ing] that Ms. Doe switch schools." [*Id.* (citing [Doc. 100 at ¶¶ 69–82, 124–26, 165–98])]. She argues that "[b]y intentionally ignoring the known and evident risks to Ms. Doe's safety after the sexual assault, Silva and Uhlig willfully and wantonly breached their duty of care." [*Id.*]. Because Plaintiff directs the Court only to allegations about the individual Defendants' conduct after the assault, the Court infers that Plaintiff concedes that she does not allege specific facts that Principal Silva or Assistant Principal Uhlig acted willfully

and wantonly *prior* to the assault. In their reply, Defendants contend that "harassment is insufficient to sustain a [Claire Davis School Safety Act] claim." [Doc. 133 at 10].

Even assuming that Plaintiff has adequately alleged willful and wanton conduct with respect to the individual Defendants' post-assault actions, the Court agrees with Defendant that the Claire Davis School Safety Act does not waive sovereign immunity for claims based on verbal harassment or bullying. The limited waiver of immunity within the Claire Davis School Safety Act applies only to "a claim of a breach of the duty of care . . . by . . . an employee of the school district . . . arising from an incident of school violence." Colo. Rev. Stat. § 24-10-106.3(4). As explained above, an "incident of school violence" requires a "crime of violence," which means committing, conspiring to commit, or attempting to commit murder, first degree assault, or felony sexual assault. *Id.* § 24-10-106.3(2)(b)–(c). Bullying and harassment do not fall within the statute's definition of a "crime of violence."[7] Accordingly, Plaintiff has not met her burden to demonstrate a waiver of immunity here. Because the CGIA bars Plaintiff's negligence claim against the individual Defendants, the Motion to Dismiss is respectfully **GRANTED** as to Plaintiff's

---

[7] Plaintiff does allege that she suffered injuries from "physical abuse . . . by other students." [Doc. 100 at ¶ 342]. However, the Second Amended Complaint contains scant supporting facts for this assertion, alleging only that other students "would throw things at Ms. Doe while telling her that the assault never happened." [*Id.* at ¶ 65]. This singular undetailed allegation is insufficient to plausibly allege that those students committed or attempted to commit first degree assault (and thereby engaged in a "crime of violence"). First degree assault occurs when a person either (a) intentionally "causes serious bodily injury to any person by means of a deadly weapon"; (b) intentionally "disfigure[s] another person seriously and permanently" or "destroy[s], amputate[s], or disable[s] permanently a member or organ of [the person's] body"; or (c) "knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person," under "circumstances manifesting extreme indifference to the value of human life." Colo. Rev. Stat. § 18-3-202(1). Accordingly, Plaintiff has not plausibly alleged facts from which the Court could conclude that sovereign immunity has been waived with respect to any claim arising out of other students "throw[ing] things at her.

negligence claim against Principal Silva and Assistant Principal Uhlig.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss Plaintiff's First, Third, Fourth and Fifth Claims for Relief from her Second Amended Complaint [Doc. 113] is **GRANTED in part** and **DENIED in part**;

(2)     Claim One is **DISMISSED without prejudice**, <u>to the limited extent it alleges that the School District's alleged deliberate indifference caused Mr. Jones's sexual assault</u>; and

(3)     Plaintiff's negligence claim, Claim Five, is **DISMISSED without prejudice**.[8]


DATED:  July 30, 2025                          BY THE COURT:

Nina Y. Wang
United States District Judge

---

[8] "[A] dismissal on sovereign immunity grounds . . . must be without prejudice." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).