# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Nina Y. Wang

Civil Action No. 24-cv-00687-NYW-TPO

JANE DOE, by and through her guardian and natural parent, JANE ROE,

    Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT,
KEVIN UHLIG, in his individual capacity, and
RYAN SILVA, in his individual capacity,

    Defendants.

---

## ORDER

---

This matter is before the Court on the following:

(1)     Defendants' Partial Objections to the Magistrate Judge's Order on Plaintiff's Motion for Protective Order ("Defendants' Objection"), [Doc. 234, filed July 11, 2025]; and

(2)     Plaintiff's Objection to Magistrate Judge's Order ("Plaintiff's Objection," and collectively with Defendants' Objection, the "Objections"), [Doc. 235, filed July 11, 2025].

Upon review of Plaintiff's Motion for Protective Order (or "Motion"), [Doc. 117]; Defendants' Response in Opposition to Plaintiff's Motion for Protective Order, [Doc. 126]; Plaintiff's Reply in Support of Motion for Protective Order ("Reply"), [Doc. 134]; Defendants' Supplemental Response in Opposition to Plaintiff's Motion for Protective Order ("Supplemental Response"), [Doc. 160]; Plaintiff's Supplemental Reply in Support

of Motion for Protective Order ("Supplemental Reply"), [Doc. 174]; the June 13, 2025 Order issued by the Honorable Timothy P. O'Hara, [Doc. 217]; and the Objections, Defendants' Objection is respectfully **OVERRULED** and Plaintiff's Objection is respectfully **SUSTAINED**.

## BACKGROUND

The factual background of this case has been discussed in other orders, *see, e.g.*, [Doc. 217; Doc. 245], and therefore, the Court will focus on the allegations most relevant to the issues raised in the Parties' Objections. During the 2021–2022 school year, Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe") was a freshman at Cherry Creek High School ("CCHS"). [Doc. 100 at ¶ 12]. On January 19, 2022, during a visit to Starbucks during her free period, Ms. Doe was forcefully sexually assaulted by a fellow CCHS freshman, John Jones ("Mr. Jones"). [*Id.* at ¶¶ 14–29]. A few days later, Plaintiff and her mother reported the assault to the CCHS school resource officer and dean. [*Id.* at ¶ 31]. The report triggered a criminal investigation, and on April 5, 2022, Mr. Jones was criminally charged with unlawful sexual contact, a misdemeanor offense. [*Id.* at ¶¶ 32, 42–44]. Mr. Jones pleaded guilty on October 18, 2022. [*Id.* at ¶ 45].

Plaintiff alleges that "CCHS failed to implement any protective measures in response to Ms. Doe's report of Mr. Jones's sexual assault." [*Id.* at ¶ 41]. Because there were no measures to protect Ms. Doe from encountering Mr. Jones, Ms. Doe changed her typical routes to class, left campus during lunch, avoided certain areas on campus, and hid in the bathroom to avoid contact with her assailant. [*Id.* at ¶¶ 50–61]. According to Ms. Doe, because "Mr. Jones was a popular student athlete at CCHS," other students targeted Ms. Doe with physical and verbal abuse, such as throwing things at her, accusing

2

her of fabricating her report, and diminishing the assault. [*Id.* at ¶¶ 63–67]. This harassment caused Ms. Doe to suffer from "severe anxiety, PTSD, and depression, manifesting in panic attacks, physical sickness, rapid heartbeat, heart palpitations, uncontrollable weeping, vomiting, migraines, weight loss, difficulty sleeping, and fainting on more than one occasion." [*Id.* at ¶ 68]. No one within the Cherry Creek School District (the "School District"), including CCHS Principal Ryan Silva ("Principal Silva") and Assistant CCHS Principal Kevin Uhlig ("Assistant Principal Uhlig"), provided any protections for Ms. Doe from other students' abuse even after the submission of formal Title IX complaints. [*Id.* at ¶¶ 79–82, 86, 147–48]. Mr. Jones was allowed to remain on campus during the criminal investigation. [*Id.* at ¶¶ 109, 122]. Ms. Doe eventually withdrew from CCHS. [*Id.* at ¶¶ 165–96].

Plaintiff initiated this case on March 13, 2024, [Doc. 1], and filed the Second Amended Complaint on November 1, 2024, [Doc. 100]. She asserted five claims in the Second Amended Complaint: (1) a Title IX claim against the School District alleging an official policy of deliberate indifference on two theories: (a) the risk of the sexual assault itself and (b) Defendants' indifference to ongoing harassment after Plaintiff's report of sexual assault ("Claim One"), [*id.* at ¶¶ 302–08]; (2) a Title IX claim against the School District alleging deliberate indifference to Plaintiff's report of sexual assault ("Claim Two"), [*id.* at ¶¶ 309–15]; (3) an equal protection claim under 42 U.S.C. § 1983 against the School District ("Claim Three"), [*id.* at ¶¶ 316–20]; (4) a § 1983 equal protection claim against Principal Silva and Assistant Principal Uhlig in their individual capacities ("Claim Four"), [*id.* at ¶¶ 321–28]; and (5) a negligence claim against all Defendants arising under the Claire Davis School Safety Act ("Claire Davis Act"), Colo. Rev. Stat. § 24-10-106.3

3

("Claim Five"), [*id.* at ¶¶ 329–47]. On November 15, 2024, Defendants filed a Motion to Dismiss Plaintiff Plaintiff's First, Third, Fourth and Fifth Claims for Relief from Her Second Amended Complaint ("Motion to Dismiss"). [Doc. 113].

While the Motion to Dismiss was pending, the Parties engaged in discovery efforts. The Parties agreed to, and the Court entered, a Stipulated Protective Order to facilitate the exchange of confidential information. [Doc. 25]. But the discovery process has not been without challenges. *See, e.g.*, [Doc. 69; Doc. 82; Doc. 93]. Relevant here, on November 19, 2024, Plaintiff filed her Motion for Protective Order, arguing that Rule 412 precludes discovery into Ms. Doe's alleged sexual history and that Ms. Doe's sexual history prior to January 19, 2022 is not relevant to her request for damages based on emotional distress. [Doc. 117]. Defendants opposed Plaintiff's Motion for Protective Order, arguing that (1) Rule 412 does not preclude discovery of evidence of an alleged victim's sexual history and Plaintiff's alleged conduct with Mr. Jones; (2) such evidence is relevant to Plaintiff's request for emotional distress damages and the defense of consent related to the Claire Davis Act claim; and (3) the Stipulated Protective Order adequately protects Ms. Doe's privacy interests. [Doc. 126]. Plaintiff replied, arguing that any relevance of Ms. Doe's prior sexual conduct was not proportional to the needs of the case. [Doc. 134].

Defendants subsequently filed their Supplemental Response, arguing that evidence of Ms. Doe's alleged sexual conduct—both before and after the assault, not limited to Mr. Jones, and including her sexual "fantasies"—was particularly relevant because Ms. Doe's therapist had noted a diagnosis of "hypersexuality" as a result of the trauma of the assault. [Doc. 160-1]. Ms. Doe responded by filing her Supplemental

4

Reply, arguing that her sexual history was not relevant and proportional to any claims or defenses in this case, including any defense of consent.

After a hearing on the matter, Judge O'Hara issued an Order granting in part and denying in part the Motion for Protective Order. [Doc. 217]. Specifically, Judge O'Hara granted a protective order precluding any discovery about Plaintiff's non-traumatic sexual history with individuals other than Mr. Jones, her sexual fantasies generally, and her sexual reputation. [*Id.* at 16]. But Judge O'Hara denied the Motion for Protective Order insofar as Plaintiff sought to preclude Defendants' request for information regarding Ms. Doe's relationship with Mr. Jones, including communications and prior sexual conduct between them, as well as sexual fantasies about Mr. Jones communicated to Mr. Jones or others. [*Id.*]. Judge O'Hara further instructed that "[a]ny discovery relating to Plaintiff's prior traumatic experiences should first come by way of a written discovery request, with the deposition being narrowly tailored to address those issues identified in written discovery." [*Id.*].

Since that time, on July 30, 2025, this Court granted in part and denied in part Defendant's Motion to Dismiss. [Doc. 245]. In that ruling, the Court dismissed Claim One, insofar as it relied on a theory that Defendants were deliberately indifferent to the risk of sexual assault such that it resulted in Mr. Jones's assault of Ms. Doe, and the entirety of Claim Five, the Claire Davis Act claim. [*Id.* at 31]. Four claims remain: Claim One, to the extent it alleges an official policy of indifference to ongoing harassment after Plaintiff's report of sexual assault, and Claims Two, Three, and Four.

Against this background, this Court considers the Parties' Objections to Judge O'Hara's Order. [Doc. 234; Doc. 235]. Plaintiff objects to two areas of discovery that

5

Judge O'Hara permitted: (1) any sexual fantasies Ms. Doe had about Mr. Jones that she communicated to Mr. Jones or others; and (2) discovery into Ms. Doe's and Mr. Jones's relationship prior to the assault, up to and including any physical or sexual relationship. [Doc. 235]. Defendants object to Judge O'Hara's Order precluding them from taking discovery about (1) Ms. Doe's sexual fantasies generally; and (2) non-traumatic sexual history with individuals other than Mr. Jones prior to and after the alleged assault with people other than Mr. Jones. [Doc. 234].

## LEGAL STANDARDS

### I. Objections to Non-Dispositive Magistrate Judge Orders

When a magistrate judge issues an order on a non-dispositive matter, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). When considering a timely objection to a non-dispositive ruling under Rule 72(a), a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "The clearly erroneous standard means the district court must affirm the magistrate judge's order unless the district court has the definite and firm conviction from all the evidence that error has occurred." *Resol. Tr. Corp. v. Fid. & Deposit Co. of Maryland*, 885 F. Supp. 228, 229 (D. Kan. 1995) (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)).

Insofar as the Parties have not objected to certain portions of Judge O'Hara's Order, such as the prohibition on discovery into Ms. Doe's sexual reputation, *see* [Doc. 234 at 3], this Court does not pass on them unless they are implicated by the Court's ruling on the Motion to Dismiss.

6

II.     **Rule 26**

***Scope of Discovery.***  The Federal Rules of Civil Procedure provide for discovery procedures that seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information.  *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 619 (D. Colo. 2007).  To accomplish these objectives, Rule 26(b) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," so long as it is proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  While evidence does not necessarily need to be admissible to be discoverable, inadmissible evidence must still be relevant to be subject to discovery.  *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 376 (D.N.M. 2018) (describing the 2000 amendments to Rule 26(b)(1) as "a housekeeping amendment to clarify that inadmissible evidence must still be relevant to be discoverable").

***Protective Orders.***  Rule 26(c) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  The party seeking a protective order bears the burden of establishing its necessity, *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981), but the entry of a protective order is left to the sound discretion of the court, *see Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008).  As part of the exercise of its discretion, the court may also specify the terms for disclosure.  Fed. R. Civ. P. 26(c)(1)(B).

Rule 26(c)'s good cause standard is highly flexible, having been designed to accommodate all relevant interests as they arise.  *See Rohrbough*, 549 F.3d at 1321.  Implicit in the rule is the fact that the inquiry into a protective order is not all or nothing;

the court may exercise its discretion to craft the contours of a protective order that meets the needs of the Parties in a specific case.

### III.     Rule 412

Rule 412 of the Federal Rules of Evidence provides that the following evidence is not admissible in a case involving alleged sexual misconduct:

> (1) evidence offered to prove that a victim engaged in other sexual behavior; or
>
> (2) evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412(a). "Rule 412 aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 357 (D. Colo. 2004) (quotation omitted). Although Rule 412 is an evidentiary rule that does not expressly apply to discovery,

> [i]n order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery.

Fed. R. Evid. 412, advisory committee's note to 1994 amendments. "In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-work place conduct will usually be irrelevant." *Id.* (citing *Burns v. McGregor Elec. Indus., Inc.*, 989 F.2d 959, 962–63 (8th Cir. 1993)). Instead, the operative causes of action focus on the knowledge of these Defendants, and their actions, in response to the unlawful sexual

8

contact to which Mr. Jones pleaded guilty and was convicted.[1]

## ANALYSIS

A district court has substantial discretion in handling discovery requests under Rule 26(b). *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995) ("Generally, control of discovery is entrusted to the sound discretion of the trial courts." (cleaned up)). Here, the operative causes of action and defenses have changed since Judge O'Hara resolved Plaintiff's Motion for Protective Order on June 13, 2025. Given the dismissal of (1) Ms. Doe's theory under Claim One that Defendants' pre-assault conduct led to her sexual assault and (2) her negligence claim arising under the Claire Davis Act pleaded in Claim Five, none of the remaining claims requires the resolution of any disputed facts about what occurred between Ms. Doe and Mr. Jones on January 19, 2022, including but not limited to a defense of consent. *See, e.g.*, [Doc. 126 at 6 (arguing that "Ms. Doe's interactions with Mr. Jones, and questions related to whether she engaged in consensual sexual conduct with him prior to and at the time of the alleged assault, are integral to Defendants' defense against her Claire Davis Act claim")].

---

[1] The Court is puzzled by Defendants' Answer to the allegation that Mr. Jones pleaded guilty to unlawful sexual contact, no consent, in violation of Colo. Rev. Stat. § 18-3-404(1)(a), which states that "Defendants are without knowledge as to the truth of the allegations in ¶ 45 of the Complaint, which are therefore denied." *Compare* [Doc. 100 at ¶ 45], *with* [Doc. 114 at ¶ 17]. This boilerplate response is at odds with Defendants' core argument that they appropriately investigated and responded to Ms. Doe's concerns after the January 19, 2022 incident, particularly when Defendants admit that they "learned of Mr. Jones's sexual assault of Ms. Doe no later than February 1, 2022." [Doc. 29 at 5]. The Court reminds Defendants of their obligations under Rule 11 of the Federal Rules of Civil Procedure that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4).

I.     **Plaintiff's Sexual Fantasies**

First, Judge O'Hara barred discovery into Ms. Doe's sexual fantasies generally, but he allowed discovery into sexual fantasies Ms. Doe had about Mr. Jones that she communicated with Mr. Jones or others.  [Doc. 217 at 11].  Judge O'Hara found that the limited discovery into Ms. Doe's sexual fantasies about Mr. Jones that were communicated to him or others was "discoverable as it relates to Plaintiff's consent, or lack thereof, during the January 19, 2022, incident."  [*Id.*].  Plaintiff objects to any inquiry into her sexual fantasies, if any, about Mr. Jones that were communicated to Mr. Jones or others.  [Doc. 235 at 3–9].  In their Objection, Defendants contend that information about Ms. Doe's sexual fantasies generally, whether or not about Mr. Jones or communicated to him or others, is relevant because she is seeking emotional distress damages, and although she has disclaimed any damages arising from "hypersexuality," "denying Defendants the opportunity to seek discovery into [this issue] would be prejudicial."  [Doc. 234 at 7].

First, in examining the question of whether Judge O'Hara properly precluded discovery into Ms. Doe's sexual fantasies generally, this Court is required to "defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law."  *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (quotation omitted).  Defendants do not specifically point out how Judge O'Hara's ruling was clearly erroneous or contrary to law.  *See generally* [Doc. 234].  Rather, they simply disagree with Judge O'Hara's weighing of the factors before him.  But when "objecting to the magistrate judge's [order], a party must raise specific arguments addressing purported errors in the [order]; the party may not reiterate its identical arguments hoping to get a different outcome."  *Crocs, Inc. v.*

10

*Effervescent, Inc.*, No. 06-cv-00605-PAB-MEH, 2022 WL 901382, at *3 (D. Colo. Mar. 28, 2022) (cleaned up).  Upon review of the record, the Court finds that Judge O'Hara's Order that "[a]ny probative value that such information could have on the merits of the case is outweighed by the danger of harm and unfair prejudice to Plaintiff," [Doc. 217 at 10–11], is not clearly erroneous.  This conclusion is further bolstered by the fact that the issue of consent is no longer implicated by any claim or defense, so any discovery based on that defense is not relevant or proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

Second, insofar as Plaintiff objects to Judge O'Hara permitting limited discovery of Ms. Doe's sexual fantasies about Mr. Jones that were communicated to him or others, this Court concludes that such discovery is similarly unwarranted because the permissible scope of discovery has materially changed since the entry of Judge O'Hara's Order on June 13, 2025.  The only basis upon which Defendants sought information about Ms. Doe's sexual fantasies arose from the defense of consent, which was the very basis that Judge O'Hara relied upon:

> Given the allegations that Mr. Jones engaged in felony sexual assault and the specific nature of the alleged assault, asserted as part of Ms. Doe's Claire Davis Act claim, Defendants have every right to seek discovery into the issue of consent.  Such discovery necessarily includes Ms. Doe's and Mr. Jones' interactions prior to and during the alleged assault, and what Ms. Doe reported to others about all of her sexual interactions with, or fantasies about, Mr. Jones.

*See* [Doc. 126 at 7]; *see also* [Doc. 217 at 11].  Indeed, at the hearing on this matter, Judge O'Hara specifically inquired as to the basis for this request due to his concern regarding the breadth of inquiry, and counsel for Defendants confirmed that a potential defense was that Ms. Doe and Mr. Jones engaged in consensual sexual activity on January 19, 2022 at Starbucks.  [Doc. 198 at 99:18–100:13].  No mention of a nexus

11

between this information and Ms. Doe's request for emotional distress damages was articulated.[2] *See generally* [*id.*].

Defendants' Supplemental Response, which first mentioned Ms. Doe's "hypersexuality," made no mention of discovery regarding Ms. Doe's sexual fantasies, communicated or otherwise. *See generally* [Doc. 160-1]. Indeed, it appears that the first time that Defendants argued that evidence of Ms. Doe's sexual fantasies, communicated or otherwise, was probative of damages (rather than consent) is within their Objection. *Compare* [Doc. 234], *with* [Doc. 126; Doc. 198; Doc. 160-1]. But Defendants fail to address why the Court should consider any argument that was not presented to Judge O'Hara, particularly when such a theory could have been developed in their extensive briefing and argument, let alone persuade it to do so. *See* NYW Civ. Practice Standard § 72.3(b) ("[T]his Court disfavors the consideration of arguments . . . not made to the Magistrate Judge. Should the objecting party seek to make arguments . . . that were not raised before the Magistrate Judge, such party must expressly identify those arguments . . . and explain why such omitted arguments . . . should be considered, in the first instance, upon Objection."). Thus, Defendants' argument that such discovery is justified due to Ms. Doe's request for emotional distress damages is not properly before this Court and has been waived. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's [order] are deemed

---

[2] Though not entirely clear, the transcript of the hearing also includes a statement attributed to an "unidentified female" who stated, "[a]nd to be clear, we've never asked about fantasies. I don't know where that's coming from," to which Plaintiff's counsel responded, "[f]antasies has been -- there has been discussion about fantasies." [Doc. 198 at 128:1–5]. Regardless of this colloquy, there is no question that this issue features prominently both in Judge O'Hara's Order and the Parties' Objections. [Doc. 217 at 10–11; Doc. 234 at 7; Doc. 235 at 3, 6–8].

waived."); *see also Sinclair Wyo. Refining Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (finding firm waiver rule applicable when a party fails to object to a magistrate judge's non-dispositive ruling under Rule 72(a)).

Third, even if this Court were to construe Defendants' Objection as challenge Judge O'Hara's application of Rule 412 to discovery, as opposed to simply disagreeing with how Judge O'Hara applied the Rule, this Court finds no clear error. As properly observed by Judge O'Hara, "[a]lthough Rule 412 controls the admissibility of evidence rather than its discoverability, it must inform the proper scope of discovery in [the] case." [Doc. 217 at 7 (quoting *Giron v. Corr. Corp. of Am.*, 981 F. Supp. 1406, 1407 (D. Colo. Aug. 13, 1997))]. Numerous courts around the nation have long applied the Rule in deciding discovery disputes. *See Williams v. Bd. of Cnty. Comm'rs*, 192 F.R.D. 698, 704 (D. Kan. 2000) (collecting cases). Rule 412 generally precludes evidence of a victim's sexual behavior or predisposition unless its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Fed. R. Evid. 412(a)(2). Here, the probative value of sexual fantasies is minimal at best. There has been no suggestion that Ms. Doe's sexual fantasies caused her any emotional distress, and any relationship with "hypersexuality," *see* [Doc. 160-1 at 2], is simply too attenuated and is substantially outweighed by annoyance, embarrassment, oppression, or undue burden to Ms. Doe, *see* Fed. R. Civ. P. 26(c).

Accordingly, this Court respectfully **SUSTAINS** Plaintiff's Objection as to any discovery regarding Ms. Doe's sexual fantasies and **OVERRULES** Defendants' Objection as to Judge O'Hara's ruling that such discovery generally is prohibited. No discovery of Ms. Doe's sexual fantasies is permitted.

Case No. 1:24-cv-00687-NYW-TPO   Document 246   filed 08/06/25   USDC Colorado
pg 14 of 16

## II. Ms. Doe and Mr. Jones's Relationship Prior to the Assault

Next, the Court considers Plaintiff's Objection to discovery regarding Ms. Doe and Mr. Jones's relationship prior to the assault, up to and including any physical and sexual relationship. [Doc. 235 at 3, 9–11]. Judge O'Hara permitted Defendants to inquire about this topic based on the potential probative value as to Defendants' consent defense. [Doc. 217 at 12–14]. As discussed above, the issue of consent is no longer a viable defense to any existing cause of action, and accordingly, cannot form the justification for any discovery. *See supra* Part I.

Judge O'Hara also found that such discovery was permissible because "[a]ny resulting trauma that Plaintiff may have experienced because of Mr. Jones' conduct could provide an alternative source for Ms. Doe's emotional distress" or trauma. [Doc. 217 at 14 (citing *Ledezma v. Young Life*, No. 20-cv-01896-NYW, 2021 WL 2823261, at *7 (D. Colo. Jan. 8, 2021))]. This Court concurs with Judge O'Hara's analysis that "Mr. Jones is not a defendant to the lawsuit. Thus, Mr. Jones' actions are distinct from the Defendants' actions." *See* [*id*.]. And certainly, the trauma caused by Mr. Jones's actions on January 19, 2022 forms an alternative basis for Ms. Doe's emotional distress. But this Court perceives no allegation by Ms. Doe that her relationship with Mr. Doe prior to January 19, 2022, up to and including any physical or sexual relationship, was traumatic or that the prior relationship prompted Defendants to take or decline to take certain actions. *See generally* [Doc. 100; Doc. 114; Doc. 29 at 2–5]. Ms. Doe points out, and this Court respectfully agrees, that to the extent that these Defendants believe that their knowledge of any relationship between Ms. Doe and Mr. Jones prior to January 19, 2022 impacted Defendants' decision-making process after they learned of the assault,

Defendants need not seek that information from Ms. Doe, but would have it in their own custody and control.  See [Doc. 235 at 3 n.4].

As discussed above, there is no remaining claim that Defendants were deliberately indifferent to a risk of sexual assault or that Defendants' indifference was the proximate cause of the sexual assault.  See [Doc. 245 at 11–13].  And there has been no cogent argument as to how such evidence would be an alternative source of Ms. Doe's emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses that must arise from Defendants' action or lack thereof in response to Plaintiff's report of the January 19, 2022 sexual assault, as opposed to the assault itself.  On this limited basis alone, this Court finds that Judge O'Hara's Order was in error.

Accordingly, this Court **SUSTAINS** Plaintiff's Objection on this issue.  No discovery of Ms. Doe's relationship with Mr. Jones prior to the January 19, 2022 sexual assault is permitted, outside of what was already known to Defendants during their response to the report of the January 19, 2022 assault.

### III.     Plaintiff's Non-Traumatic Sexual History

Finally, the Court considers Defendants' Objection to Judge O'Hara's ruling that Plaintiff's non-traumatic sexual history is discoverable because, inter alia, "[t]his evidence . . . will not be relevant to the issue of damages because it is not sufficiently connected to Plaintiff's trauma" and because any such discovery would undermine the rationale of Rule 412.  [Doc. 217 at 9–10].  In their Objection, Defendants contend that such information would allow them to perform discovery into alternative sources of emotional distress and permit questions along the lines of "[w]ere you sexually active prior to the assault?  How many sexual partners did you have? . . . What types of sexual activity, and . . . did that

15

change after the sexual assault?" [Doc. 234 at 6]. They contend that these questions would allow "Defendants to determine what Plaintiff's sexual conduct was like before and after the alleged assault and the alleged deliberate indifference to her complaints and would allow Defendants to determine the validity of Plaintiff's mental health provider's diagnoses and report." [*Id.*].

Again, Defendants' Objection does not demonstrate that Judge O'Hara's ruling is clearly erroneous, but instead simply reiterates Defendants' prior arguments hoping to get a different outcome. *Vester v. Asset Acceptance, L.L.C.*, No. 08-cv-01957-MSK-LTM, 2009 WL 2940218, at *8 (D. Colo. Sept. 9, 2009) ("An 'objection' that merely reargues the underlying motion is little different than an 'objection' that simply refers the District Court back to the original motion papers."). Upon review of the record, the Court finds that Judge O'Hara's Order precluding discovery of Plaintiff's non-traumatic sexual history is not clearly erroneous or contrary to law. Thus, Defendants' Objection on this topic is **OVERRULED**.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendants' Partial Objections to the Magistrate Judge's Order on Plaintiff's Motion for Protective Order [Doc. 234] is **OVERRULED**; and

(2) Plaintiff's Objection Magistrate Judge's Order [Doc. 235] is **SUSTAINED**.

DATED: August 6, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

16