# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00687-NYW-TPO

**JANE DOE**,

     Plaintiff,

v.

**CHERRY CREEK SCHOOL DISTRICT**;
**KEVIN UHLIG**, in his individual capacity;
and **RYAN SILVA**, in his individual capacity,

     Defendants.

———————————————————————————————

## PLAINTIFF'S MOTION TO STRIKE OR LIMIT TESTIMONY OF DEFENDANTS' PROFFERED REBUTTAL EXPERT WITNESS PURSUANT TO FRE 702 & FRCP 26

———————————————————————————————

1

Plaintiff Jane Doe, through her attorneys, respectfully submits the following Motion to Strike or Limit Testimony of Defendants' Proffered Rebuttal Expert Witness Pursuant to FRE 702 and FRCP 26 and, as grounds therefor, states as follows.

## STATEMENT OF CONFERRAL

After conferral, Defendants' counsel stated this motion is opposed.

## INTRODUCTION

Plaintiff served expert disclosures on the November 14, 2025 affirmative expert disclosures deadline, including a report from psychologist Donna Peters, Ph.D., who was retained to perform a **forensic psychological evaluation** of Ms. Doe. *See* **Ex. 1**, *Dr. Peters' Forensic Examination Evaluation and Report*. Defendants served no affirmative expert disclosures. On the December 22, 2025 rebuttal expert disclosures deadline, Defendants disclosed a single rebuttal expert: Janine Shelby, Ph.D. While Dr. Shelby was allegedly retained to rebut Dr. Peters' report, *see* **Ex. 2**, *Defendants' Rebuttal Expert Disclosures* at 1, Dr. Shelby herself states that her report "is primarily intended to assess the presence and/or extent of Plaintiffs' [*sic*] emotional distress based on source documents and to offer a psychological perspective regarding the Plaintiffs' [sic] reported injuries," **Ex. 3**, *Dr. Shelby's Rebuttal Report and CV*, at 1. And although the term "primarily" is used, no other reasons for the report are provided, and there is no reference *at all* to a rebuttal opinion. *See generally id.* Indeed, her opinions go far beyond such. Additionally, her proffered opinions go beyond her stated expertise and beyond information she can reasonably opine on. For the following reasons, Dr. Shelby's testimony should be entirely stricken or, in the alternative, limited.

2

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The burden on the proponent of the expert testimony is significant, as any inadequacy in the proof regarding any of Rule 702's elements may render the entire opinion inadmissible." *Haynes v. Transamerica Corp.*, No. 16-CV-02934-KLM, 2018 WL 4360444, at *2 (D. Colo. Sept. 13, 2018) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)).

Courts in this circuit employ a two-step analysis for determining the admissibility of expert testimony. *See Lieberenz v. Board of Cnty. Comm. of the Cnty. of Saguache*, No. 21-cv-00628-NYW-NRN, 2025 WL 35601, at *4 (D. Colo. Jan. 6, 2025).

> First, courts consider whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by assessing the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is valid. . . . Second, courts look to whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder.

3

*Id.* (citations omitted). Because the court is a "gatekeeper" as to expert opinion testimony, it may exclude opinion testimony that it concludes is not sufficiently reliable, is not sufficiently relevant, or will not assist the trier of fact. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 136 (1997); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-92 (1993); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006); *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004).

Finally, where a rebuttal expert is offered, the expert must limit their testimony to responding to an affirmative expert's opinion. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal expert reports are not the proper place for presenting new arguments." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-CV-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. Apr. 21, 2016).

## ARGUMENT

Based on the foregoing legal standard, Dr. Shelby's expert report should be stricken entirely or, in the alternative, limited in numerous respects.

### I. Dr. Shelby Should Be Stricken Entirely as She Provides an Out-of-Time Affirmative Expert Report

Dr. Shelby's opinion is an affirmative expert report disclosed late under the label of a rebuttal expert, and she should be stricken as an out-of-time affirmative expert. "Rebuttal experts do just that – they rebut the opinions of the opponent's expert. 'Rebuttal expert reports are not the proper place for presenting new arguments. [R]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Andersen v. City of Colo. Springs*, No. 20-CV-02032-RBJ, 2022 WL 715120, at *6 (D. Colo. Mar. 10, 2022) (quoting *Spring Creek*,

4

2016 WL 1597529 at *3) (striking portions of rebuttal expert that exceeded the appropriate scope). "In addition to requiring that rebuttal evidence contradict affirmative evidence, rebuttal evidence must also be directed to <u>the same subject matter</u> identified by the affirmative expert." *Spring Creek*, 2016 WL 1597529 at *3 (emphasis in original). "[E]xpert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." *Id*. (quoting *Boles v. United States*, No. 13CV489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015)); *see also Cereceres v. Walgreen Co.*, 645 F. Supp. 3d 1110, 1125 (D. Colo. 2022) ("Rule 26 of the Federal Rules of Civil Procedure governs the propriety of rebuttal expert opinions.").

Plaintiff's affirmative expert provided a **forensic psychological evaluation** of Ms. Doe and provided an expert report on that evaluation and:

> 1) the possible psychological and physiological impact resulting from the sexual assault of [Doe] by a fellow student, 2) the possible psychological and physiological impact of actions taken and not taken by Cherry Creek High School administrators following the assault and its impact on [Doe]'s ability to access her education, and 3) the possible impairment of physical, emotional, and behavioral functioning [Doe] is likely to experience now and into the near future as a result of the sexual assault and the lack of protective measures taken by [Defendants] in response to the sexual assault.

*See* **Ex. 1** at 2. But even though Dr. Shelby was disclosed as a rebuttal expert, she does not provide a rebuttal expert report in this case. Instead, she notes that her report "is primarily intended to assess the presence and/or extent of Plaintiffs' [*sic*] emotional distress based on source documents and to offer a psychological perspective regarding

the Plaintiffs' [*sic*] reported injuries." **Ex. 3** at 1.[1]  And, unsurprisingly, the report does just

that, going well beyond the role of a rebuttal expert.  Dr. Shelby's report includes a

summary of opinions numbered 1-14.  *See id.* at 3-8.  The only opinions to even reference

Dr. Peters are those found at Nos. 5, 6, 7, and 12, and they all raise admissibility concerns

discussed individually herein.  *See infra.*

Plaintiff acknowledges that because Dr. Shelby is a psychologist, it might appear

at first blush that her report addresses "the same general subject matter" as Dr. Peters'.

However, because the report does not "directly contradict or rebut the actual contents of

that prior report," it is not a proper rebuttal report.  *See Spring Creek*, 2016 WL 1597529

at *3.  Notably, Dr. Shelby's own admission of her limitations underscores the fact that

she is not – and cannot be – rebutting Dr. Peters' clinical opinions based on Dr. Peters'

forensic psychological evaluation.  Dr. Shelby, who based her knowledge about Ms. Doe

solely on documents produced in this case, states, "Therefore, I did not draw diagnostic

conclusions or form treatment recommendations specifically tailored to the Plaintiff's

needs." **Ex. 3** at 1.  In other words, Dr. Shelby admits what her report makes clear: that

she does not rebut the specific diagnostic conclusions or treatment recommendations Dr.

Peters opined on after a forensic evaluation of Ms. Doe.  Instead, Dr. Shelby's

"psychological perspective," "based on source documents," *id.* at 1, presents her own new

theories and affirmative arguments for Defendants that should have been disclosed as

such.

---

[1] In fact, Dr. Shelby does not even mention the affirmative expert or Dr. Peters' report and opinions in the entire "Purpose, Context, and Parameters," section of her report.  *See* **Ex. 3** at 1.

## II. Dr. Shelby Should Be Stricken Because She Is Not Qualified to Rebut a Forensic Psychological Evaluation

The issue of expert qualification is a threshold consideration in evaluating the proffered expert testimony. "When the subject matter of proffered testimony constitutes scientific, technical, or other specialized knowledge, the witness must be qualified as an expert under Rule 702." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (quotation marks omitted) (quoting Fed. R. Evid. 702). To be qualified, an expert is "required to possess such skill, experience or knowledge *in that particular field*." *LifeWise*, 374 F.3d at 928 (emphasis added) (quotation marks and citation omitted). Where a purported expert lacks the necessary educational or experiential background in the specific subject matter at issue, exclusion is appropriate. *See id.* (affirming exclusion of expert testimony based on lack of qualifications, including a lack of training, prior experience as expert, and publications).

As noted above, Plaintiff disclosed Dr. Peters as a **forensic psychological evaluator** to opine on Ms. Doe's injuries stemming from her sexual assault and Defendants' conduct. While she and Dr. Shelby are both psychologists, Dr. Peters is a trained, licensed, and experienced forensic psychological evaluator of nearly 30 years. **Ex. 1** at 77-85. Dr. Shelby, meanwhile, has *no* experience at all as a forensic psychological evaluator. **Ex. 3** at 31-56.[2] This is particularly important as Dr. Peters

---

[2] Dr. Shelby's experience is in clinical supervision, *i.e.*, supervising clinical providers who are treating patients. **Ex. 3** at 31-56. Her focus appears to be in play therapy, *see generally id.* (listing play therapy repeatedly and primarily throughout her CV), which is a type of nondirective therapy for *children* utilizing carefully selected toys to elicit communication of the child's view of their experiences, *see* **Ex. 4**, Humble, *et al.*, *Child-Centered Play Therapy for Youths Who Have Experienced Trauma: A Systematic*

conducted and opined on a forensic psychological evaluation of Ms. Doe.  *See* **Ex. 1** at 2.

That Dr. Peters' report is based on her forensic psychological evaluation is a distinction that matters.  "Forensic psychology is recognized as a distinct specialty by both [the American Psychological Association] and the [American Board of Professional Psychology.]"  **Ex. 5**, Packer*, Specialized Practice in Forensic Psychology: Opportunities and Obstacles* (2008), at  PDF p. 4 (describing the specialized area of forensic psychology and discrete knowledge and training required).  "Forensic psychologists, in addition to basic clinical training, must have specialized knowledge and experience related to the law, including . . . forensic evaluation methodologies, including specialized forensic instruments[.]"  *Id.* at PDF p. 2 (emphasis in original).  "Competent forensic assessment involves specialized training and recognition of a multitude of additional issues—clinical, legal, and ethical—not present in common clinical/therapeutic practice."  **Ex. 6,** Varela, *et al.*, *Professional Competencies in Forensic Psychology* (2012), at PDF p. 3; *see also id.*, Table 1 (listing skills necessary for forensic psychology specifically, including, *inter alia*, "Administration, scoring, and interpretation of specialized forensic assessment instruments").  "Forensic assessments are often conducted under circumstances that diverge greatly from clinical practice," *id.*, which is why professionals in the field emphasize the need for general clinical psychologists (like Dr. Shelby) who want to do work in forensic psychology to undergo "specialized training at the postdoctoral level,"

---

*Literature Review* (Nov. 2018) at PDF p. 1-2; *see also id.* at 2 ("Nondirective therapy with children typically involves play, as play represents an effective method for children to explore and express their experiences.").

including experiential training and supervision of forensic work, *see* **Ex. 5** at PDF p. 4 (detailing the specialized training necessary).

To the extent that Dr. Shelby's expert report mentions Dr. Peters' forensic psychological evaluation and consequent conclusions at all, it should be stricken because Dr. Shelby's report merely attacks Dr. Peters' methodology in her forensic evaluation, an area squarely outside of Dr. Shelby's expertise and experience, as noted above. Specifically, in Opinion 5, Dr. Shelby challenges Dr. Peters' interpretation of Plaintiff's evaluation test results (**Ex. 3** at 5); in Opinion 6, Dr. Shelby questions the meaning of Plaintiff's scores on a test given by Dr. Peters (*id*. at 6); and in Opinion 7, Dr. Shelby attacks Dr. Peters' testing methodology (*id*.). Because Dr. Shelby has no experience as a forensic psychological evaluator, she is not qualified to render an opinion rebutting Dr. Peters' forensic psychological evaluation, especially Dr. Peters' methodology.[3] *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) ("[T]he district courts in this Circuit have held after *Wheeler* and *Compton*, and we agree, that merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue"); *see also Gulick v. State Farm Mut. Auto. Ins. Co.*, 780 F. Supp. 3d 1169, 1190 (D. Kan. 2025) (finding expert unqualified to offer opinion on methods of another expert outside of his scope of expertise). While her entire opinion should be stricken on this basis, as Dr. Shelby was disclosed solely to rebut Dr. Peters' report, Opinions 5, 6, and 7 (and Opinion 7's narrative counterpart, **Ex. 3** at 24-29) should

---

[3] Dr. Shelby's critiques of Dr. Peters' methodology are also unsupported by what she relies on for such arguments and are insufficient under Fed. R. Civ. P. 26(a)(2)(B)(i).

specifically be stricken as Dr. Shelby questions Dr. Peters' methodology when she has no forensic evaluation experience, training, or education to do so.

III.     **Alternatively, Dr. Shelby's Testimony Should Be Limited Because Numerous Opinions Stretch Beyond the Scope of Her Expertise, Her Limited Role as a Rebuttal Expert, and/or Into the Province of the Jury**

A.   Dr. Shelby Is Not Qualified to Opine on Genetics

In Opinion 2, Dr. Shelby opines that the diagnoses and symptoms Plaintiff has experienced can be attributable to her genetics.  *See* **Ex. 3** at 4.  Specifically, Dr. Shelby explains, "[T]hese conditions/symptoms are often heavily influenced by genetics/heritability."  *Id.*  She then challenges the cause of Ms. Doe's psychological conditions and for each one opines as to the genetic or hereditary risk associated with such.  *See id.* at 4-5; *see also id.* at 23 (opining that "OCD is strongly heritable").  Dr. Shelby, meanwhile, has no expertise, education, or training in genetics.  *See generally id.* at 31-56.  Moreover, Dr. Shelby has extremely limited information regarding Plaintiff's family's psychological and medical history from which to even speculate.  These theories are also not supported with references to what research or literature she relies on.  Thus, Dr. Shelby's opinions on genetics/hereditary conditions – and her overarching opinions relying on such underlying analysis – should be stricken.

B.   Dr. Shelby Is Not Qualified to Testify as to Efficacy or Impacts of Medication

Similarly, Dr. Shelby – who is not a medical doctor, holds no medical degrees, and has never examined or spoken with Plaintiff – is not qualified to opine on the efficacy of Ms. Doe's medications and how the use or discontinuation of medications may impact her.  *See id.* at 7 (Opinion 12).  Indeed, Dr. Shelby herself notes, "I did not draw diagnostic

conclusions or form treatment recommendations specifically tailored to the Plaintiff's needs," because of her limited role.  *Id*. at 1.  Such opinions regarding the effects of medication should be stricken.

### C.  Dr. Shelby Cannot Opine as to Credibility

It is improper for an expert witness to offer opinions regarding the credibility of another witness.  *See United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014).  As the Tenth Circuit has explained, such testimony "usurps a critical function of the jury," is generally unhelpful to the factfinder, and is highly "prejudicial and unduly influences the jury."  *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993).  Even where credibility is central to the dispute – such as cases involving alleged false confessions – the Tenth Circuit has consistently declined to permit expert testimony on credibility.  *See, e.g.*, *United States v. Rodriguez-Flores*, 907 F.3d 1309, 1321 (10th Cir. 2018).

Insofar as Dr. Shelby opines on the credibility of Ms. Doe and her mother, such opinions intrude on the province of the jury and should be stricken.  *See, e.g.*, **Ex. 3** at 5 (Opinion 5); *id.* at 7 (Opinion 9).  Similarly, Dr. Shelby makes numerous unsupported comments maligning Ms. Doe and her mother and suggesting they were intentionally evasive in their depositions.  *See, e.g.*, *id.* at 6 (Opinion 6); *id.* at 7 (Opinion 9); *id.* at 21-22.  Additionally, Dr. Shelby opines that Ms. Doe's "testing profile displays these [supposed unreliability] scores at, perhaps, the highest I have seen across thousands of profiles I have reviewed," suggesting Ms. Doe is malingering.  *Id.* at 5 (Opinion 5).  As Defendants failed to disclose the profiles referenced, it would be impossible to interrogate the veracity of this allegation or cross-examine Dr. Shelby on the soundness of such an

inflammatory claim which is, again, an attempt to discredit Plaintiff.  *See also* FRE 403. These types of comments – thinly veiled as expert opinion – should be stricken.[4]

D. <u>Dr. Shelby's Opinions as to How She Would Act in a Clinical Treatment Setting Should Be Stricken as Irrelevant Non-Rebuttal Testimony</u>

Insofar as Dr. Shelby opines as to how she would act in a clinical treatment setting, those opinions should be stricken as irrelevant non-rebuttal testimony, as they are outside the scope of Dr. Peters' forensic psychological evaluation.  *See id.* at 6 (Opinion 5); *id.* at 7 (Opinion 10); *id.* at 7 (Opinion 11).  Further, Dr. Shelby notes her own limitations in this circumstance by explicitly stating, "I did not draw diagnostic conclusions or form treatment recommendations specifically tailored to the Plaintiff's needs."  *Id*. at 1.  Thus, these opinions should be stricken, as well.

E. <u>Dr. Shelby Should Be Precluded from Providing Superfluous or Improper Commentary Regarding Discovery</u>

Dr. Shelby makes a variety of superfluous or improper comments regarding discovery in her report that should be stricken.  An expert usurps the role of the court by commenting on redactions or assertions of privilege in documents reviewed.  *See Carter v. Monge*r, No. 19-CV-03555-GPG, 2022 WL 1115225, at *5 (D. Colo. Apr. 13, 2022). Where a party "had wished to challenge any redactions or assertions of the physician-patient privilege, the proper forum for such a dispute would have been before" the court, not through expert testimony.  *Id*. (citing *Hutchison v. Walmart, Inc.*, No. 1:19-CV-01496-

---

[4] Not only are these opinions inherently improper for an expert, but they fail to consider that defense counsel was conducting each deposition and could have moved to compel more fulsome answers if either deponent was actually being evasive, which did not happen here.

SKC, 2020 WL 9075064, at *1 (D. Colo. Oct. 29, 2020)). Even where an expert is otherwise qualified and employs a reliable methodology, expert testimony is still inadmissible if it intrudes upon functions reserved to the court or the jury.  *See Hill*, 749 F.3d at 1258.  Such testimony is not helpful to the trier of fact within the meaning of Rule 702 and undermines the court's gatekeeping role.  *See id.*

Dr. Shelby makes numerous comments regarding the redactions on medical records she received.  *See* **Ex. 3** at 6 (Opinion 8); *id.* at 15-16.  And, in a similar vein, she criticizes the fact that she did not have mental health treatment records to review, characterizing the summaries from Ms. Doe's providers as lacking and apparently questionable because they were prepared for this litigation.  *See id.* at 18-19.  These types of comments – which suggest Plaintiff is inappropriately withholding evidence and/or manipulating information – are substantially prejudicial.  First, it is the province of this Court to determine what information is appropriately disclosed versus withheld/redacted.[5]   Second, the treatment summaries *were* crafted for this case; certainly, Ms. Doe would not have requested a summary of her treatment but for her obligation to disclose such.  And Defendants have also never challenged the adequacy of Ms. Doe's treatment summaries or requested a supplemental summary with additional information.  Allowing Dr. Shelby to testify in a manner suggesting manipulation or malintent on the part of Plaintiff (or her counsel) would be incredibly prejudicial and

---

[5] Notably, Plaintiff offered to provide a HIPAA release for Defendants to subpoena her actual mental health treatment records, which Defendants **declined**.  *See* ECF No. 240-2 (June 2025 email exchange between counsel discussing Plaintiff's offer of a release for Defendants to subpoena her mental health treatment records and Defendants' declination of such).

unwarranted, especially when Dr. Shelby's complaints stem from Defendants' litigation strategies.

Finally, Dr. Shelby offers unsolicited commentary about Ms. Doe's parents and their parenting.  *See* **Ex. 3** at 18 (critiquing Ms. Roe's use of the word "damaged" in reference to Ms. Doe); *see also id.* at 4 (mentioning "parenting practices" as a risk factor). Any such opinions are non-rebuttal opinions, outside the province of Dr. Shelby's expertise, irrelevant to the claims and defenses, and inappropriate.

F.  Dr. Shelby Should Be Precluded from Offering Unsupported Opinions

Insofar as Dr. Shelby offers opinions that are non-specific and unsupported, they should also be stricken.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (mandating experts provide complete opinions and the basis and reasons for them).

Dr. Shelby's challenges to Dr. Peters' methodology and interpretation in Opinions 5, 6, and 7, *see* **Ex. 3** at 5-6, fail to reference what she relies on in making these challenges and assertions.  *See also supra* III(C).

Dr. Shelby opines that "evidence-based treatments show the highest statistical likelihood of positive, rapid change" while also seemingly suggesting that Ms. Doe has failed to explore such options.  *See* **Ex. 3** at 7 (Opinion 13).  Not only is this not responsive to Dr. Peters' report, but the basis for this opinion is not included in Dr. Shelby's report.[6]

---

[6] The only non-case-specific materials Dr. Shelby includes as "materials considered" for her report are (a) the DSM-V, (b) test manuals for specific psychological tests, and (c) a study from 1998 entitled "Trauma and posttraumatic stress disorder in the community: the 1998 Detroit Area Survey of Trauma."  *Id.* at 3.  This study "estimates the relative importance of specific types of traumas experienced in the community in terms of their prevalence and risk of leading to posttraumatic stress disorder (PTSD)."  **Ex. 7**, *1998*

Further, Dr. Shelby's conclusion that "there is no reason to believe [Plaintiff's trauma-related disorder] will be permanent" also relies upon unsupported premises.  *See* **Ex. 3** at 8 (Opinion 14).  She cites one study, the "1998 Detroit Area Survey," for her proposition that "In large, U.S. based epidemiological studies, almost all adults have experienced at least one significantly adverse event." *Id*.  But as the abstract of this article states, it consisted of phone interviews of "2181 persons in the Detroit area aged 18 to 45 years." **Ex. 7** at 1.  That is insufficient evidence for Dr. Shelby's universalized premise, and Dr. Shelby does not provide any credible evidence or research to support her conclusion that "there is no reason to believe [Plaintiff's trauma-related disorder] will be permanent."[7]  *See* **Ex. 3** at 8.  Therefore, Opinions 5-7 and 13-14 should be stricken.

G.  Dr. Shelby Cannot Opine as to the Scope of Dr. Peters' Expertise

Lastly, in the summary (not opinion) section of her report, Dr. Shelby muses as to whether Dr. Peters' opinions are outside of her "scope," presumably meaning her scope of expertise.  *See* **Ex. 3** at 22.  As only the Court can make such a determination, any such opinion should be stricken.[8]

---

*Detroit Area Survey of Trauma* Abstract.  Obviously, this study could not serve as the basis for Opinion 13, or really any of the unsupported claims in the report.

[7] And again, Dr. Shelby stated she, "did not draw diagnostic conclusions or form treatment recommendations specifically tailored to the Plaintiff's needs." **Ex. 3** at 1.

[8] Additionally, Plaintiff's counsel has been conferring with Defendants' counsel about the sufficiency of the testimony list provided for Dr. Shelby.  As of the time of filing, an updated list has not been provided to Plaintiff, but the undersigned is confident that this will be resolved soon informally given amicable and productive conferral on this.

*Table 1 - Summary of Plaintiff's Objections by Opinion*

| Opinion | Objection |
|---|---|
| **All** | • Untimely affirmative opinion and/or non-rebuttal opinion |
| **2** | • Not qualified to opine on genetics<br>• Unsupported opinions |
| **5** | • Not qualified to opine on forensic methodology<br>• Inappropriate credibility opinion<br>• Unsupported opinion |
| **6** | • Not qualified to opine on forensic methodology<br>• Inappropriate credibility opinion<br>• Unsupported opinion |
| **7** | • Not qualified to opine on forensic methodology<br>• Unsupported opinion |
| **8** | • Inappropriate commentary on discovery |
| **9** | • Inappropriate credibility opinion |
| **12** | • Not qualified to opine on efficacy or impacts of medication |
| **13** | • Unsupported opinion |
| **14** | • Unsupported opinion |

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' rebuttal expert be stricken entirely.  In the alternative, her opinions should be limited to only rebuttal opinions for which she has demonstrated sufficient expertise and should not include any superfluous, irrelevant, or prejudicial commentary, such as identified above.

Respectfully submitted this 21st day of January 2026.

<table>
<tr>
<td>

*s/ Aurora L. Randolph*
Aurora L. Randolph
ALR CIVIL RIGHTS LLC
9878 W. Belleview Ave., Suite 2129
Denver, CO 80123
(303) 968-1703 (t)
aurora@alrcivilrights.com

</td>
<td>

Laura B. Wolf
Stephen Shaw
SPARK JUSTICE LAW LLC
4045 S. Broadway, Suite 208
Englewood, CO 80113
(303) 802-5390 (t) / (303) 848-3003 (f)
laura@spark-law.com
steve@spark-law.com

</td>
</tr>
</table>

*Attorneys for Plaintiff*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January 2026, I electronically filed the foregoing **PLAINTIFF'S MOTION TO STRIKE OR LIMIT TESTIMONY OF DEFENDANTS' PROFFERED EXPERT WITNESS PURSUANT TO FRE 702 & FRCP 26** with the Clerk of Court using the CM/ECF system and served on the following:

Holly E. Ortiz
Mary B. Gray
SEMPLE, FARRINGTON, EVERALL & CASE, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
(303) 595-0941
hortiz@semplelaw.com
mgray@semplelaw.com

*Attorneys for Defendants*

Additionally, pursuant to D.C.COLO.LCivR 5.1(d), I hereby certify that the restricted exhibits submitted with this filing will be served contemporaneously via email to the above.

*s/ Aurora L. Randolph*
Aurora L. Randolph
