Professional Psychology: Research and Practice
2008, Vol. 39, No. 2, 245–249

Copyright 2008 by the American Psychological Association
0735-7028/08/$12.00    DOI: 10.1037/0735-7028.39.2.245

# Specialized Practice in Forensic Psychology: Opportunities and Obstacles

Ira K. Packer
University of Massachusetts Medical School

In recent years, there has been a proliferation of the need for psychology practitioners to provide expertise to the legal system on a wide variety of topics. One of the difficulties for psychologists has been that the demand for such services has at times outstripped the capacity of the field to train practitioners to provide these services in a competent and ethical manner. Furthermore, many psychologists are not aware of the types of knowledge and training required to perform these services. This article describes the knowledge base and skills that distinguish the specialty of forensic psychology and the types of training required to practice in this field.

*Keywords:* forensic, specialty, legal

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

For the first half of the 20th century, when the American legal system required mental health expertise, it turned to psychiatrists (also referred to by the courts as "*alienists*"). A major landmark case that ushered in a significant change in the role of psychologists in the legal system occurred in 1962. Vincent Jenkins, charged with intent to commit an assault, assault with intent to rape, and assault with a dangerous weapon, asserted an insanity defense and called both psychiatrists and psychologists as witnesses to discuss his diagnosis and mental state. The judge presiding over the case instructed the jury to disregard the testimony of three psychologists (the issue was not their "forensic" testimony but their qualifications to offer diagnostic assessments, based on testing and interviews, that Jenkins suffered from schizophrenia). The basis for the judge's decision was that *as psychologists* (as opposed to physicians), they were not competent to offer a "medical" opinion concerning diagnosis. However, the appeals court (*Jenkins v. U.S.*, 1962), in an opinion written by Justice David Bazelon, overruled the trial judge and established the precedent that psychologists who had proper training could be recognized as experts in diagnosing mental disorders. (Of note, one of the indicators of professional qualification cited by the appellate court was certification by the American Board of Professional Psychology [ABPP].)

Currently, psychologists are recognized by courts to provide expertise that is relevant to a wide range of legal issues (see Table 1 for a representative list of issues frequently addressed by psychologists). Most state and federal jurisdictions, for instance, recognize psychologists as expert witnesses in criminal cases (Farkas, DeLeon, & Newman, 1997). In some jurisdictions, the majority of forensic evaluations related to the criminal justice system, particularly competency to stand trial, are performed by psychologists. Indeed, it appears that the justice system's need for psychological expertise has outstripped the profession's ability to train psychologists. To fill that gap, a number of state mental health authorities have developed their own training and certification programs (e.g., Fein et al., 1991; Grisso, Cocozza, Steadman, Fisher, & Greer, 1994; Melton, Petrila, Poythress, & Slobogin, 1997). However, with some exceptions, such state-sponsored programs are not able to provide adequate training and education. In 1980, a study of the quality of competency to stand trial reports (Roesch & Golding, 1980) revealed that such reports often contained only summary conclusions or descriptions of psychiatric symptoms that were not adequately related to the issue before the court. Twenty years later, Nicholson and Norwood (2000) surveyed the literature on quality of criminal forensic reports from various jurisdictions within the United States. Although they found improvement relative to the situation in 1980, they nevertheless concluded that "the available evidence reveals significant deficiencies in the reports of forensic evaluations submitted to the courts" (Nicholson & Norwood, 2000, p. 40). Furthermore, they noted that although the studies reviewed focused on criminal adjudication, there was reason to believe that the results would generalize to civil areas (such as personal injury and child custody) since in the civil arena there were fewer opportunities for training and oversight.

A very likely explanation for these findings is that many forensic evaluations are performed by psychologists and psychiatrists who have not received adequate training in the area and, thus, lack knowledge of the concepts, methodology, and standards required. In a study of competency to stand trial evaluations in Utah, Skeem and Golding (1998) specifically identified lack of adequate training as a major factor contributing to the deficiencies in the reports and concluded that "occasional experts rely primarily on their traditional clinical skills and attempt to generalize these to psycholegal assessment" (p. 365). In contrast, Massachusetts has developed a very comprehensive, mandatory training program for psychologists and psychiatrists who provide public sector forensic evaluations. This training includes not only didactic presentations

IRA K. PACKER received his PhD in clinical psychology from the University of Pennsylvania. He is a clinical professor of psychiatry at the University of Massachusetts Medical School, where his responsibilities include directing the forensic psychology postdoctoral fellowship. He has served as president of both the American Board of Forensic Psychology and the American Academy of Forensic Psychology. Currently, he chairs the Forensic Specialty Council, which is responsible for developing the Education and Training Guidelines for Forensic Psychology, and also serves as vice president of the Council of Specialties in Professional Psychology.

CORRESPONDENCE CONCERNING THIS ARTICLE should be addressed to Ira K. Packer, University of Massachusetts Medical School, 55 Lake Avenue North, Worcester, MA 01655. E-mail: ira.packer@umassmed.edu

246                                                    PACKER

Table 1
*Sample of Areas Within Forensic Psychology*

Civil
- Child custody
- Civil commitment
- Deprivation of parental rights
- Divorce mediation
- Employment litigation
- Guardianship
- Personal injury
- Testamentary capacity
- Workers' compensation

Criminal
- Juvenile waiver (from juvenile to adult court)
- Juvenile sentencing
- Competence to stand trial
- Competence to be sentenced
- Competence to waive Miranda rights
- Insanity defense
- Diminished capacity
- Sentencing (including special issues related to capital sentencing)
- Commitment of sex offenders ("sexually violent predators")[a]

[a] This is considered a civil commitment process but is typically addressed by forensic psychologists with expertise in criminal areas.

but also direct supervision of forensic evaluations (Fein et al., 1991). A review of the quality of competency to stand trial and criminal responsibility reports in Massachusetts revealed that across a number of domains, the quality was markedly higher than the results from other jurisdictions reported in the literature (Packer & Leavitt, 1998).

Another factor that likely contributes to the problem of poor quality of forensic reports is imbalance between demand and supply. That is, the legal system's need for forensic evaluations exceeds the cadre of qualified professionals who are capable of providing these services. For example, it is estimated that there are hundreds of thousands of forensic evaluations requested each year in the United States (Otto & Heilbrun, 2002). Psychologists may be attracted to performing forensic evaluations not only because it is an interesting and beneficial application of psychological knowledge but also for practical reasons. Reimbursement is not dependent on managed care, as these services are typically funded by courts, attorneys, or state mental health agencies (e.g., Otto & Heilbrun, 2002). As the field of forensic psychology is relatively new, many practitioners are not aware of the specialized nature of forensic practice and often mistakenly believe that if they have solid clinical training, and some limited exposure to forensic issues, they can adequately perform these evaluations. However, as is discussed below, there have been significant advances in the conceptualization and operationalization of psycholegal issues as well as development of methodologies for forensic assessment. Psychologists who venture into the legal system without proper grounding and training risk doing harm to both the parties involved and their own reputations.

## Terminology

Although there has not always been clarity in terminology, one proposal has been to distinguish between *legal psychology*, referring to social science and the law (Bersoff et al., 1997), and *forensic psychology*, reserving the latter term for "clinical" prac-

titioners. The most recent definition of forensic psychology, adopted by the Forensic Specialty Council (which contains only minor modifications to the definition proposed when forensic psychology was recognized as a specialty in psychology by the American Psychological Association [APA] in 2001) is

> the professional practice by psychologists within the areas of clinical psychology, counseling psychology, school psychology, or another specialty recognized by the American Psychological Association, when they are engaged as experts and represent themselves as such, in an activity primarily intended to provide professional psychological expertise to the judicial system. (Zapf, 2006, p. 17 [also available on the Council of Specialties in Professional Psychology Web site: http://www.cospp.org])

This latter definition is the focus of this article. Although some of the principles discussed here are also applicable to the field of legal psychology, the issues of training and quality of practice are relevant specifically to professional practitioners.

## Specialized Knowledge

Forensic psychologists, *in addition* to basic clinical training, must have specialized knowledge and experience related to the law, including understanding of how the legal system works and the "legal doctrines that give relevance to the mental health evaluation" (Melton et al., 1997, p. 81); forensic evaluation methodologies, including specialized forensic instruments; rules, procedures, and techniques related to providing expert witness testimony; ethical issues that arise specifically in forensic contexts; and substantive areas that are not typically covered in general clinical training.

Forensic psychologists are not expected to be legal scholars, but they are required to have a reasonable knowledge of legal concepts that are relevant to their areas of forensic practice. Furthermore, as the field of forensic psychology has developed over the past 3 decades, psychologists have developed means for operationalizing psycholegal concepts. There is now a significant body of literature addressing the variety of forensic areas (e.g., Goldstein, 2003, 2007). For instance, in the area of competency to stand trial, Grisso (2003) has identified the basic dimensions to be addressed in such evaluations, including functional (i.e., the defendant's ability to perform various tasks required in court), causal (explanation of any deficits found, based on clinical data), interactive (how the specific demands of the case would impact the significance of the defendant's deficits), and prescriptive (whether and how the defendant's deficits could likely be remediated with treatment). Bonnie (1992) has proposed that competency evaluations require both assessment of foundational competency (e.g., knowledge of the charges, consequences, and courtroom process) and decisional competency (i.e., ability to make rational decisions).

In addition, over the past 2 decades, a number of instruments have been developed to specifically address competency to stand trial, including the MacCAT–CA (MacArthur Competency Assessment Tool–Criminal Adjudication; Otto et al., 1998), the ECST–R (Evaluation of Competency to Stand Trial—Revised; Rogers, Grandjean, Tillbrook, Vitacco, & Sewell, 2001), and the CAST-MR (Competency Assessment to Stand Trial for Defendants with Mental Retardation; Everington & Luckasson, 1992). To provide quality evaluations in this area, it is imperative for

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

forensic psychologists to understand how the issue of competency is conceptualized and to become familiar with the strengths and weaknesses of the various instruments available, because none of them map directly onto the legal concept (e.g., Pinals, Tillbrook, & Mumley, 2006).

## Professional Role

In addition to substantive knowledge areas specific to forensic psychology, it is important for psychologists working in this area to appreciate, and practice in accordance with, the basic conceptual differences between forensic and therapeutic roles. This is one of the main distinguishing features of forensic practice, one that requires a change of orientation for psychologists who are used to being in a "helping" role. Greenberg and Shuman (1997) identified ten areas in which there are differences between therapeutic and forensic roles. Among the most significant differences are who the client of the psychologist is, the nature of the relationship between the psychologist and the individual being evaluated, and the psychologist's approach to the material provided by the individual.

In a therapeutic relationship, the individual being treated is the psychologist's client, and the responsibilities of the psychologist, the relationship formed, and the nature of the interactions flow from this. However, in forensic work, the individual who is being evaluated is *not* the client of the psychologist. The client is either the court that ordered the examination or the attorney retaining the psychologist. Although this does not mean that the psychologist has no obligations to the party being evaluated, it does dramatically change the nature of the relationship (e.g., Monahan, 1980; Weissman & Debow, 2003). Unlike in therapy, in which the psychologist is engaged in a helping relationship with the individual, in forensic evaluations the psychologist's role is to evaluate the party and to provide relevant information to the legal system. The information provided may or may not be helpful to the evaluee. Furthermore, in a forensic context, the psychologist is often required to adopt an adversarial role, questioning the validity or veracity of the individual's report. In addition, the psychologist cannot rely solely on the individual's self-report. Rather, collateral sources of information are essential for the psychologist to use to corroborate or disconfirm the individual's presentation.

In addition to the differentiation of roles, the special demands of operating within the legal system necessitate practice guidelines unique to this field. In 1991, the American Psychology-Law Society and the American Academy of Forensic Psychology developed the Specialty Guidelines for Forensic Psychologists (Committee on Ethical Guidelines for Forensic Psychologists, 1991). Currently, a revised version of these guidelines is being prepared.

## Testimony as an Expert Witness

Forensic psychologists need to be knowledgeable about the legal rules that govern the admissibility of expert testimony (Ewing, 2003). Failure to be so can lead to situations in which significant elements of the psychologist's testimony will be barred. The evidentiary rules governing admissibility of various forms of expert testimony are complex, even for lawyers, and may vary across jurisdictions. Thus, while the forensic psychologist is not expected to know with certainty what the court will accept into evidence, it does behoove the expert to have a reasonable sense of what the

usual rules in the jurisdiction are so as to guide the interview process and develop alternate sources of information if some of the data obtained are to be ruled inadmissible. Furthermore, forensic psychologists should be familiar with legal cases that provide guidance to judges on how to determine whether new methodologies, such as psychological tests, should be accepted into evidence (e.g., *Daubert v. Merrell Dow Pharmaceuticals*, 1993; *Frye v. U.S.*, 1923). In addition to this knowledge base, forensic psychologists must develop the appropriate skills to convey their information coherently and meaningfully to a lay audience (judges, jurors, lawyers) within the context of an adversarial court system, including a variety of cross-examination techniques that are likely to be used by opposing attorneys (e.g., Bank & Packer, 2007; Brodsky, 1999).

## Distinctive Areas of Research

The demands of applying psychology to the legal system have resulted in the development of specialized expertise and methodologies that, while also applicable in other settings, are particularly relevant to forensic practice. Two examples are response bias and violence risk assessment. Response bias on psychological testing (i.e., attempts to both overreport and underreport psychopathology) is an issue that is not unique to forensic psychology and has been addressed through validity scales in a number of psychological tests (e.g., the Minnesota Multiphasic Personality Inventory—2, the Personality Assessment Inventory). However, as noted above, in forensic evaluations there needs to be heightened sensitivity to evaluating the veracity of the individual's self-report, because the external incentives are typically very high. To aid in this task, specialized instruments have been developed to assess malingering, including (but not limited to) the SIRS (Structured Interview of Reported Symptoms; Rogers, Bagby, & Dickens, 1992), the TOMM (Test of Memory Malingering; Tombaugh, 1996), and the VIP (Validity Indicator Profile; Frederick, 1997). Forensic psychologists need to be familiar with such instruments, and such familiarity should include an understanding of the populations on which they are normed and the limitations of their applicability in certain situations (e.g., Hurley & Deal, 2006).

Another example of a substantive area that has been developed within forensic psychology relates to assessment of violence risk. Thirty years ago, psychologists and psychiatrists had few conceptual or practical tools to aid the courts in cases in which the issue of an individual's risk of harm to others was relevant. The demands of the legal system for such evaluations (e.g., in civil commitment hearings, in which "dangerousness" was a criterion [e.g., *O'Connor v. Donaldson*, 1975]; in "duty to protect" cases [e.g., *Tarasoff v. Regents of the University of California*, 1976]) exceeded the knowledge base available at the time. It is not surprising that in a study of how mental health professionals conducted risk assessments for commitment, Pfohl (1979) found that there was variability among different treatment teams in their reliance on a number of factors, many of which were not validated. Since that time, the field of violence risk assessment has burgeoned and has produced data on factors that can increase or decrease the risk of violent recidivism (e.g., Borum, 1996; Monahan & Steadman, 1994). In addition, a number of instruments and measures have been developed that can be incorporated into violence risk assessments. Such instruments include the HCR-20

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

248                                                          PACKER

(Historical, Clinical, and Risk Management; Webster, Douglas, Eaves, & Hart, 1995), the Hare Psychopathy Checklists (Hare, 2003; Hart, Cox, & Hare, 1995), the VRAG (Violence Risk Assessment Guide; Quinsey, Harris, Rice, & Cormier, 2006), and the COVR (Classification of Violence Risk; Monahan et al., 2005). Forensic psychologists need to be knowledgeable not only about the research and the instruments available but also about the appropriate uses and limitations of these instruments. Psychologists are at risk both for errors of omission (i.e., not including an instrument that is relevant and important) and errors of commission (i.e., using instruments in an inappropriate manner and drawing unwarranted conclusions from them). For instance, the use of actuarial instruments such as the VRAG is controversial (e.g., Litwack, 2001), and forensic psychologists need to carefully consider if and when it is appropriate to use a particular instrument as part of a risk assessment with a specific population (e.g., Edens, 2006; Edens, Skeem, & Douglas, 2006).

### Implications for Students and Practitioners

A basic principle of forensic psychology is that the quality of the forensic work is limited by the underlying clinical knowledge and acumen of the forensic psychologist. It is therefore essential for students who are interested in a career in forensic psychology to first obtain a broad and general education in both scientific psychology and the foundations of practice. This generalist training should then be augmented by exposure to the forensic area, at the graduate and internship levels, followed by specialized training at the postdoctoral level.

A number of doctoral programs offer forensic courses as well as practicum opportunities with forensic or correctional populations (a listing of graduate programs that provide forensic exposure can be found at http://www.ap-ls.org). Furthermore, there has been a significant increase in the opportunities for psychology interns to gain experience with forensic populations and activities. There are currently over 60 psychology internship programs that identify themselves as having either a major or minor rotation involving forensic psychology (American Psychology-Law Society, 2007). However, given the range and types of specialized knowledge and skills required to practice competently in this field, postdoctoral training is essential (Otto & Heilbrun, 2002; Packer & Borum, 2003). Ideally, such postdoctoral training should occur in a forensic residency program (also known as *postdoctoral fellowship*). The American Board of Forensic Psychology, the specialty board of ABPP, has recognized the value of such programs, allowing the successful completion of an approved residency program in forensic psychology to substitute for the 4 years of postdoctoral forensic experience required for eligibility to apply for diplomate status.

Unfortunately, the number of residency programs in forensic psychology available at present is limited. In 1997, 11 such programs were identified (Bersoff et al., 1997), and 10 years later, I was able to identify 17 such programs through a search of the American Psychological Association classified ads, the American Psychology-Law Society Web site, and a general Internet search. Although this represents a substantial increase, there are still not enough residencies to meet the needs of all the students interested in specializing in forensic psychology.

Trainees who are unable to obtain a forensic residency, as well as practitioners who have already completed their formal training, can obtain relevant education through continuing education activities related to forensic practice. However, the nuances and complexities of applying clinical skills to the legal arena, as outlined in this article, necessitate experiential training. Thus, practitioners who seek postdoctoral training experiences in forensic psychology need to obtain, in addition to didactic education, direct supervision of their work. Such supervision should include a focus on, at a minimum, the following elements:

1.  forensic interviewing techniques;

2.  appropriate use and interpretation of structured assessment instruments;

3.  attention to obtaining useful and relevant data, including collateral sources of information;

4.  writing reports that are clear, comprehensive, and appropriately focused on the referral issue;

5.  clear articulation in the reports of the relationship between data and conclusions in a manner consistent with ethical and practice guidelines;

6.  provision of expert testimony in a clear, articulate manner consistent with ethical and practice guidelines; and

7.  practicing forensic psychology consistent with the specialty's practice guidelines.

### Summary

Forensic psychology is recognized as a distinct specialty by both APA and the ABPP. There is now a significant body of literature and guidelines for practice across a broad variety of forensic areas, both civil and criminal. Psychologists who are looking to expand their practice into forensic areas need to be aware of the distinctive competencies required and to obtain appropriate training and education regarding the legal issues addressed, the methodologies for assessment that have been developed, the special ethical issues that arise in the forensic context, and the skills of forensic report writing and testimony. Students who are still in training need to ensure that they have first received broad and general training in psychology before seeking out postdoctoral residencies in forensic psychology.

### References

American Psychology-Law Society. (2007). *Resource directory of forensic psychology pre-doctoral internship training programs 2006–2007.* Retrieved March 5, 2007, from http://ap-ls.org/students/Pre-Doctoral%20Internship%20Guide.pdf

Bank, S. C., & Packer, I. K. (2007). Expert witness testimony: Law, ethics, and practice. In A. M. Goldstein (Ed.), *Forensic psychology: Emerging topics and expanding roles* (pp. 421–445). Hoboken, NJ: Wiley.

Bersoff, D., Goodman-Delahunty, J., Grisso, T., Hans, V., Poythress, N. G., & Roesch, R. (1997). Training in law and psychology: Models from the Villanova Conference. *American Psychologist, 52,* 1301–1310.

Bonnie, R. (1992). The competence of criminal defendants: A theoretical reformulation. *Behavioral Sciences and the Law, 10,* 291–316.

Borum, R. (1996). Improving the clinical practice of violence risk assess-

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

ment: Technology, guidelines, and training. *American Psychologist, 51,* 945–956.

Brodsky, S. L. (1999). *The expert expert witness: More maxims and guidelines for testifying in court.* Washington, DC: American Psychological Association.

Committee on Ethical Guidelines for Forensic Psychologists. (1991). Specialty guidelines for forensic psychologists. *Law and Human Behavior, 15,* 655–665.

Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993).

Edens, J. F. (2006). Unresolved controversies concerning psychopathy: Implications for clinical and forensic decision making. *Professional Psychology: Research and Practice, 37,* 59–65.

Edens, J. F., Skeem, J. L., & Douglas, K. S. (2006). Incremental validity analyses of the Violence Risk Appraisal Guide and the Psychopathy Checklist: Screening Version in a civil psychiatric sample. *Assessment, 13,* 368–374.

Everington, C., & Luckasson, R. (1992). A second validation study of the Competence Assessment to Stand Trial for Defendants with Mental Retardation (CAST-MR). *Criminal Justice and Behavior, 22,* 44–59.

Ewing, C. P. (2003). Expert testimony: Law and practice. In A. M. Goldstein (Ed.), *Handbook of psychology, Vol. 11: Forensic psychology* (pp. 55–66). New York: Wiley.

Farkas, G., DeLeon, P., & Newman, R. (1997). Sanity examiner certification: An evolving national agenda. *Professional Psychology: Research and Practice, 28,* 73–76.

Fein, R., Appelbaum, K., Barnum, R., Baxter, P., Grisso, T., & Leavitt, N. (1991). The designated forensic professional program: A state government–university partnership to improve forensic mental health services. *Journal of Mental Health Administration, 18,* 223–230.

Frederick, R. (1997). *The Validity Indicator Profile.* Minneapolis, MN: National Computer Systems.

Frye v. U.S., 293 F. Supp. 1013, 1014 (App. D.C. 1923).

Goldstein, A. M. (Ed.). (2003). *Handbook of psychology, Vol. 11: Forensic psychology.* New York: Wiley.

Goldstein, A. M. (Ed.). (2007). *Forensic psychology: Emerging topics and expanding roles.* Hoboken, NJ: Wiley.

Greenberg, S. A., & Shuman, D. W. (1997). Irreconcilable conflict between therapeutic and forensic roles. *Professional Psychology: Research and Practice, 28,* 50–57.

Grisso, T. (2003). *Evaluating competencies: Forensic assessments and instruments* (2nd ed.). New York: Kluwer Academic/Plenum.

Grisso, T., Cocozza, J. J., Steadman, H. J., Fisher, W. H., & Greer, A. (1994). The organization of pretrial forensic evaluation services. *Law and Human Behavior, 18,* 377–393.

Hare, R. D. (2003). *Hare Psychopathy Checklist—Revised (PCL–R): Technical manual* (2nd ed.). Toronto, Ontario, Canada: Multi-Health Systems.

Hart, S., Cox, D., & Hare, R. D. (1995). *The Hare Psychopathy Checklist: Screening version.* Toronto, Ontario, Canada: Multi-Health System

Hurley, K. E., & Deal, W. P. (2006). Assessment instruments measuring malingering used with individuals who have mental retardation: Potential problems and issues. *Mental Retardation, 44,* 112–119.

Jenkins v. U.S., 307 F. 2d 637 (1962).

Litwack, T. R. (2001). Actuarial versus clinical assessments of dangerousness. *Psychology, Public Policy, and Law, 7,* 409–443.

Melton, G. B., Petrila, J., Poythress, N. G., & Slobogin, C. (1997). *Psychological evaluations for the courts.* New York: Guilford Press

Monahan, J. (Ed.). (1980). *Who is the client? The ethics of psychological intervention in the criminal justice system.* Washington, DC: American Psychological Association.

Monahan, J., & Steadman, H. (Eds.). (1994). *Violence and mental disor-*

*der: Developments in risk assessment.* Chicago: University of Chicago Press.

Monahan, J., Steadman, H. J., Robbins, P. C., Appelbaum, P., Banks, S., Grisso, T., et al. (2005). An actuarial model of violence risk assessment for persons with mental disorders. *Psychiatric Services, 56,* 810–815.

Nicholson, R. A., & Norwood, S. (2000). The quality of forensic psychological assessments, reports, and testimony: Acknowledging the gap between promise and practice. *Law and Human Behavior, 24,* 9–44.

O'Connor v. Donaldson, 422 U.S. 563 (1975).

Otto, R. K., & Heilbrun, K. (2002). The practice of forensic psychology: A look to the future in light of the past. *American Psychologist, 57,* 5–18.

Otto, R. K., Poythress, N., Nicholson, R., Edens, R., Monahan, J., & Bonnie, R. (1998). Psychometric properties of the MacArthur Competence Assessment Tool–Criminal Adjudication. *Psychological Assessment, 10,* 435–443.

Packer, I. K., & Borum, R. (2003). Forensic training and practice. In A. M. Goldstein (Ed.), *Handbook of psychology, Vol. 11: Forensic psychology* (pp. 21–32). New York: Wiley.

Packer, I. K., & Leavitt, M. (1998). *Designing and implementing a quality assurance process for forensic evaluations.* Paper presented at the biennial meeting of the American Psychology-Law Society, Redondo Beach, CA.

Pfohl, S. J. (1979). From whom will we be protected? Comparative approaches to the assessment of dangerousness. *International Journal of Law and Psychiatry, 2,* 55–78.

Pinals, D. A., Tillbrook, C. E., & Mumley, D. L. (2006). Practical application of the MacArthur Competence Assessment Tool–Criminal Adjudication (MacCAT-CA) in a public sector forensic setting. *Journal of the American Academy of Psychiatry and the Law, 34,* 179–188.

Quinsey, V. L., Harris, G. T., Rice, M. E., & Cormier, C. A. (2006). *Violent offenders: Appraising and managing risk* (2nd ed.). Washington, DC: American Psychological Association.

Roesch, R., & Golding, S. (1980). *Competency to stand trial.* Urbana–Champaign: University of Illinois Press.

Rogers, R., Bagby, R. M., & Dickens, S. E. (1992). *Structured Interview of Reported Symptoms (SIRS) and professional manual.* Odessa, FL: Psychological Assessment Resources.

Rogers, R., Grandjean, N., Tillbrook, C., Vitacco, M., & Sewell, K. (2001). Recent interview-based measures of competency to stand trial: A critical review augmented with research data. *Behavioral Sciences and the Law, 19,* 503–518.

Skeem, J., & Golding, S. (1998). Community examiners' evaluations of competence to stand trial: Common problems and suggestions for improvement. *Professional Psychology: Research and Practice, 29,* 357–367.

Tarasoff v. Regents of the University of California, 17 Cal. 3d 425, 551 P.2d 334 (1976).

Tombaugh, T. N. (1996). *TOMM*: *The Test of Memory Malingering.* North Tonawanda, NY: Multi-Health Systems.

Webster, C., Douglas, K., Eaves, D., & Hart. S. (1995). *HCR-20: Assessing Risk for Violence (Version 2).* Vancouver, British Columbia, Canada: Simon Fraser University

Weissman, H. N., & Debow, D. M. (2003). Ethical principles and professional competencies. In A. M. Goldstein (Ed.), *Handbook of psychology, Vol. 11: Forensic psychology* (pp. 33–53). New York: Wiley.

Zapf, P. A. (2006). Division 41/American Psychology-Law Society, Executive Committee (EC) Meeting Minutes, St. Petersburg, FL, March 2, 2006. *American Psychology-Law Society News, 26*(2), 16–20.

Received December 21, 2006
Revision received March 6, 2007
Accepted April 9, 2007 ∎