Professional Psychology: Research and Practice
2012, Vol. 43, No. 5, 410–421

© 2012 American Psychological Association
0735-7028/12/$12.00   DOI: 10.1037/a0026776

# Professional Competencies in Forensic Psychology

Jorge G. Varela and Mary Alice Conroy
Sam Houston State University

The field of forensic psychology has grown immensely over the past three decades, with psychologists involved in both the civil and criminal forensic arenas as well as other fields affiliated with the justice system, including law enforcement and correctional agencies. This growth has necessitated the development of a taxonomy of competencies required to practice in the forensic arena. Despite increasing specialization, there are generalized competencies common to all practitioners and researchers in psychology that are necessary for work in forensic psychology. In addition, there are specialty competencies that cut across the various forensic psychology subspecialties and are necessary for all forensic work. In this article we briefly review the emergence of forensic psychology into a unique specialty within psychology as well as published literature related to professional competencies in psychology. We present the generalized and specialty competencies of forensic psychology as knowledge, skills, and attitudes across the six functional domains of assessment, intervention, consultation, research, supervision-training, and management-administration.

*Keywords:* forensic psychology, professional competencies, generalized competencies, specialty competencies

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

The specialty of forensic psychology exists at the convergence of the law and justice system with professional scientific psychology. It has been variously defined in the literature. However, for the purposes of submission to APA for specialty recognition, it was defined as:

. . . the professional practice by psychologists within the areas of clinical psychology, counseling psychology, neuropsychology, or school psychology, when they are engaged regularly as experts and represent themselves as such, in an activity primarily intended to provide professional psychological expertise to the judicial system (Petition for the Recognition of a Specialty in Professional Psychology: Forensic Psychology, 2000, p. 1).

The past two decades have witnessed a great expansion of forensic psychology such that the field is beginning to develop subspecialties, with psychologists—experimental to clinical—represented in the

---

*Editor's Note.*   This article is one of five in this special section on Professional Competencies in Specialty Practice and Research.—MCR

JORGE G. VARELA received his PhD in Clinical Psychology from the University of Alabama. He is currently an Assistant Professor and member of the Doctoral Program faculty in the Department of Psychology and Philosophy at Sam Houston State University. His research interests include multicultural diversity issues in forensic psychology as well as law enforcement and military psychology.

MARY ALICE CONROY received her PhD in Clinical Psychology from the University of Houston and is board certified (ABPP) in Forensic Psychology. Currently she is a professor and Director of Clinical Training for the Clinical Psychology Doctoral Program (forensic emphasis) in the Department of Psychology and Philosophy at Sam Houston State University. Her current position includes conducting forensic evaluations for the courts, as well as teaching and publishing in the area of criminal forensic assessment.

CORRESPONDENCE CONCERNING THIS ARTICLE should be addressed to Dr. Varela, Box 2447, Department of Psychology and Philosophy, Sam Houston State University, Huntsville, TX 77341. E-mail: jgv002@shsu.edu

field. The work of these psychologists ranges from basic science research to the application of psychology to specific cases in both the civil and criminal arenas. Recognized subspecialties in these two domains include child custody, civil commitment, deprivation of parental rights, divorce, employment litigation, guardianship, personal injury, testamentary capacity, workers' compensation, juvenile court evaluations, criminal competencies, insanity, diminished capacity, and criminal sentencing (Packer, 2008).

In the era of managed care and shrinking markets, general practitioners often consider forensic work as a path to expanding opportunities. However, rightful concern has been expressed regarding clinicians who inadvertently stray into the realm of forensic practice but lack knowledge of the requisite competencies (Otto & Heilbrun, 2002). A lack of specialty competencies can quickly lead to violations of civil rights and unjust court actions, as well as serious embarrassment to the clinician and the profession.

In the context of forensic work, the goals of the *Ethical Principles of Psychologists and Code of Conduct* (EPPCC; American Psychological Association, 2002) and the newly approved *Specialty Guidelines for Forensic Psychologists* (SGFP; Committee on the Revision of the Specialty Guidelines for Forensic Psychology, 2011) have new meanings, especially beneficence and nonmaleficence, justice, and respect for people's rights and dignity. The EPPCC addresses the issue of competence specifically in requiring psychologists to work within the bounds of their competence and seek appropriate training before expanding their work into new areas (see standards 2.01a & 2.01c) as well as familiarity with pertinent judicial or administrative rules that govern their work (standard 2.01f). The SGFP echo these concerns (guidelines 2.01–2.09).

## Emergence of Forensic Psychology as a Specialty in Psychology

The emergence of forensic psychology began in 1908 with Hugo Munsterberg's efforts to have experimental psychology rec-

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

ognized as a force in the court room. Others in the first half of the 20th century advocated for psychology's role in the justice system (e.g., Terman, 1931) and by the end of World War II psychology services were becoming common within prison environments. A major step forward took place in 1954, when for the first time the U.S. Supreme Court in *Brown v. Board of Education* relied on social science evidence in a precedent setting case, demonstrating the important role behavioral science evidence can play in courtroom proceedings. Similarly, eight years later *Jenkins v. U.S.* (1962) was the first case to establish that psychologists could be qualified as independent witnesses with expertise on mental disorder.

In 1969, the American Psychology-Law Society (AP-LS) was chartered, and in 1980, it became Division 41 of the American Psychological Association. The American Board of Forensic Psychology (ABFP) was initially formed in 1976 and joined the American Board of Professional Psychology in 1985, thus creating a mechanism for certifying professional forensic psychologists as diplomates. A separate but related organization, the American Academy of Forensic Psychology (AAFP), became the educative arm of the organization of forensic diplomates.

A major step in establishing forensic psychology as a specialized discipline came with the 1995 National Invitational Conference on Education and Training in Law and Psychology. This invitational gathering of 48 recognized experts in the field of law and psychology, sponsored by APA, AP-LS, AAFP, the Florida Mental Health Institute, and Villanova Law School, proved to be a benchmark for training and education in forensic psychology, akin to the role the Boulder Conference played for clinical psychology (Bersoff et al., 1997).

In 2001, forensic psychology was recognized as a specialty within the field of psychology by the Commission for the Recognition of Specialties and Proficiencies in Professional Psychology. Over the past two decades forensic psychology has mushroomed in terms of scholarly literature, scientific research, and professional practice—particularly within the courtroom. A plethora of top tier journals, including *Law and Human Behavior*, *Behavioral Sciences and the Law*, *Criminal Justice and Behavior*, and *Psychology, Public Policy and Law*, are dedicated to the dissemination of this research and are widely circulated in the mental health and legal communities.

### Existing Taxonomies of Professional Competence

Multiple professional organizations and scholars have published taxonomies of professional competence related to various aspects of professional practice. These models are similar in that they present interrelated dimensions of competency and share a common theme of identifying core competencies necessary for the delivery of professional psychological services across specializations. We have drawn upon these basic models in identifying and organizing competencies associated with forensic psychology.

### The Competency Cube

Rodolfa et al. (2005) proposed the Competency Cube model as an organizational framework for a taxonomy of professional competencies in psychology. According to this model, competencies in professional psychology are framed around three dimensions: (a) the *Foundational Competency Domain*, (b) the *Functional Competency Domain*, and (c) the *Stages of Professional Development*. The *Foundational Competency Domain* represents the building blocks of professional competencies (Rodolfa et al., 2005). It comprises six areas: (a) reflective practice–self-assessment, (b) scientific knowledge–methods, (c) relationships, (d) ethical-legal standards-policy, (e) individual-cultural diversity, and (f) interdisciplinary systems. The *Functional Competency Domain* encompasses the various work activities of professional psychologists. These include (a) assessment/diagnosis/conceptualization, (b) intervention, (c) consultation, (d) research/evaluation, (e) supervision/training, and (f) management/administration. Lastly, the *Stages of Professional Development* outline the various educational experiences and professional training activities associated with professional psychology and the acquisition of the competencies associated with the first two domains, including (a) doctoral education, (b) doctoral internship/residency, (c) postdoctoral supervision, (d) residency/fellowship, and (e) continuing competency.

### Training-Oriented Competency Models

The National Council of Schools and Programs in Professional Psychology (NCSPP) has identified seven core areas essential for entry-level practice in psychology—relationship, assessment, intervention, diversity, research/evaluation, management/supervision, and consultation/education—each with its own subset of domains (NCSPP, 2007). Further, NCSPP has identified knowledge, skills, and attitudes associated with each of these competency areas across three developmental achievement levels (DALs): begin practicum, begin internship, and complete doctoral degree.

The Competency Benchmarks delineated by Fouad et al. (2009) have provided an organization of competence in clinical psychology that informs graduate training. The Competency Benchmarks draw upon the Rodolfa et al. (2005) Cube model by incorporating the foundational and functional domains, but add professionalism and advocacy (and separate teaching and supervision) as areas for training. Within each of the areas of competencies are multiple subareas of skills. Beyond describing these 15 domains, Fouad et al. also provide essential components for each area as well as behavioral anchors for demonstrating competency. Similar to the Competency DALs (NCSPP, 2007), the Competency Benchmarks recommend skills and competencies in all areas at the readiness for practicum, readiness for internship, and readiness for entry-level practice stages of development.

### A Taxonomy of Forensic Competencies

The current taxonomy of competencies represents a synthesis of the approaches used in previous models. We have built our taxonomy of competencies in forensic psychology around the functional domain of the Cube model, but include both generalized competencies as well as specialty competencies. *Generalized* competency refers to skills and knowledge that are applicable across various specialties within the larger field of psychology and are connected to the competencies associated with forensic psychology. *Specialty* competency refers to those specific and largely unique skills associated with forensic research and practice, the

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

412                                                                VARELA AND CONROY

development of which begins with mastery of the generalized competencies.

The purpose of this article is to build upon the foundational clinical competencies identified as Benchmarks (Fouad et al., 2009) and develop core competencies unique to forensic psychology. This will be done by dividing the specialty into the six areas outlined in the Cube: assessment, intervention, consultation, research, supervision/training, and management/administration. Within each of these functional domains, we have adopted the Competency DAL approach of identifying the knowledge, skills, and attitudes necessary for competent practice. Lastly and consistent with the aforementioned models of professional competency, we address the acquisition and maintenance of these competencies in forensic psychology.

## Generalized and Specialty Assessment Competencies in Forensic Psychology

One of the most common activities for psychologists working in the justice arena is psychological assessment (Melton, Petrila, Poythress, & Slobogin, 2007). It is estimated over 60,000 competency to stand trial evaluations are conducted each year (Bonnie & Grisso, 2000) and probably safe to assume that the total number of forensic mental health evaluations is in the hundred thousands each year (Otto & Heilbrun, 2002). While assessment training is a component of all doctoral programs in clinical and counseling psychology, this provides necessary, but not sufficient, competency for assessment in forensic contexts. Competent forensic assessment involves specialized training and recognition of a multitude of additional issues—clinical, legal, and ethical—not present in common clinical/therapeutic practice. We list these generalized and specialized competencies in Table 1.

The competencies associated with psychological assessment as outlined by Fouad et al. (2009) as well as by the Society for Personality Assessment (Board of Trustees for the Society for Personality Assessment, 2006) and Krishnamurthy et al. (2004) are necessary for all forensic assessment practitioners and have been integrated into our list of generalized assessment competencies. Forensic assessments are often conducted under circumstances that diverge greatly from clinical practice, but knowledge of psychometrics and the ability to effectively interview and formulate diagnostic impressions, to include consideration of physiological and psychological functioning, and to incorporate multicultural

Table 1

*Generalized and Specialty Assessment Competencies in Forensic Psychology*

**Generalized**
*Knowledge*
   A. Science, theory, and contexts related to psychological constructs being assessed
   B. Interaction between physical and psychological functioning
   C. Psychometric theory and test construction
   D. Strengths and weaknesses of assessment methods
   E. Ethical and legal issues in psychological assessment
   F. Influence of diversity on assessment process and outcome
*Skills*
   A. Clinical and diagnostic interviewing
   B. Appropriate test selection, administration, scoring, and interpretation
   C. Data integration from multisource-multimethod assessment
   D. Effective written and oral communication of assessment findings
*Attitudes*
   A. Recognition of personal biases that influence assessment process and outcome
   B. Understanding of the limitations of psychological assessment methods
   C. Readiness to seek consultation as needed
**Specialty**
*Knowledge*
   A. Statutes, case law, governmental rules, and other jurisprudence that may impact assessment
   B. Unique assessment techniques used to address psycholegal issues
   C. Unique rights of examinees in forensic contexts (e.g., avoidance of self-incrimination, refusal rights, prisoner rights)
   D. Unique ethical issues associated with forensic evaluations (e.g., appropriate disclosure to court representatives, defining the client, attorney-client privilege, consent for evaluation)
   E. Diverse cultural groups in justice system (e.g., criminal subculture, gang affiliation)
*Skills*
   A. Use/integration of collateral data, including data sources unique to forensic contexts (e.g., police reports, crime witness statements, correctional records)
   B. Incorporation of psycholegal issues and pertinent jurisprudence when selecting assessment methods
   C. Administration, scoring, and interpretation of specialized forensic assessment instruments
   D. Explanation of assessment methods and limitations of methods to non-psychologists representatives of the justice system
   E. Communication of clinical and psycholegal opinions to non-psychologist stakeholders in the justice system
*Attitudes*
   A. Awareness of attitudes toward justice issues that may influence assessment process, outcome, and formulation of psycholegal opinions
   B. Acceptance of scrutiny and challenges to assessment methods and outcome
   C. Acceptance of psychology's limited role relative to the overall goals of the justice system
   D. Resistance to treating probabilistic conclusions as facts, despite the pressure from representatives of the justice system
   E. Understanding of the limitations of forensic assessment techniques
   F. Understanding of the limitations and potential biases of collateral data

considerations are necessary skills across all contexts and the ethics of psychological assessment are relevant to psychologists across all settings. All psychologists who engage in assessment practices must approach their work with an appreciation of the limits of their methods, must recognize the role their own biases may play, and be willing to seek consultation as needed.

Beyond these generalized skills, psychologists conducting assessments in forensic contexts must understand the psycholegal concepts that underlie the assessment referral question. For example, a psychologist conducting assessments of competency to stand trial must know how such competency is defined in the jurisdiction where a defendant is facing trial and what specific functional capacities are to be assessed. To answer the referral questions posed in forensic contexts, it is often the case that specialized assessment techniques must be used and additional issues must be considered. For example, instruments that have been developed specifically for the assessment of adjudicative competency (e.g., the MacArthur Competency Assessment Test-Criminal Adjudication; Poythress et al., 1999; the Evaluation of Competency to Stand Trial-Revised; Rogers, Tillbrook, & Sewell, 2004) and for the assessment of violence risk (Violence Risk Appraisal Guide; Quinsey, Harris, Rice, & Cormier, 2006). For a more complete discussion of forensic assessment instruments, see Grisso (2003). Surveys have found that many forensic examiners found these specialized instruments helpful for forensic assessments (Archer, 2006; Lally, 2003).

Just as general practitioners, forensic psychologists must also recognize the limitations of these specialized instruments as well as the limitations of collateral data. Additionally, evaluees in forensic contexts may be motivated to distort their clinical presentation in an effort to obtain a more favorable case disposition. In such cases, specialized instruments developed to detect malingering and response distortion can be brought to bear on the referral question (e.g., the Validity Indicator Profile; Frederick, 1997; the Structured Interview of Reported Symptoms, Rogers, Bagby, & Dickens, 1992). While all psychologists are aware evaluees may distort, the implications of an erroneous conclusion are fundamentally larger in forensic settings and not all clinicians are trained in the use of these specific measures. Forensic clinicians must be aware of and clearly report the limitations of their assessment methods. When providing expert opinion, the error associated with assessment methods may become a specific and crucial point of trial testimony that may determine admissibility of expert evidence (see *Daubert v. Merrell Dow Pharmaceuticals*, 1993). They must, however, avoid treating probabilistic conclusions as absolute facts, despite pressure from representatives of the justice system (Melton et al., 2007).

In addition to the multicultural considerations inherent in all assessments, psychologists working in the criminal justice system must understand unique subcultures and subcultural standards of behavior, such as those associated with gang members, law enforcement personnel, and prison inmates. Lastly, the unique ethical and legal issues involved in forensic assessment must be thoroughly understood by the clinician in this arena, and these vary with jurisdiction. For example, some forensic evaluations require fully informed consent from the examinee; others (court ordered or statutorily mandated) may be done over the examinee's objection. Unlike in general clinical work, the person being examined is almost never the client or patient of the forensic examiner; rather

it is the court, attorney, or administrative body. Nonetheless it is critical that the individual's civil rights be understood and not inadvertently violated. To practice competently, forensic psychologists must also monitor their own biases related to justice system issues (e.g., capital punishment) and be willing to accept the additional scrutiny applied to their work. Further, psychologists conducting forensic assessments must accept the limited role of psychology relative to the overarching goals of the justice system.

To further illustrate the competencies involved in forensic assessment, consider the evaluation of a severely mentally ill man at the request of his family. The psychologist may conduct clinical interviews, administer testing, render a diagnosis, and recommend appropriate treatment. In contrast, if the issue is a court order for evaluation of his competency to stand trial, the aforementioned evaluation provides, at best, only a partial assessment of the referral question, despite meeting clinical standards of care. The evaluation procedures described above might be used to formulate a necessary diagnostic opinion, but have little bearing on the psycholegal question of whether he has the ability to consult with his attorney and possesses a factual and rational understanding of the legal proceedings he faces (the common standard for trial competency, see *Dusky v. United States*, 1960).

## Generalized and Specialty Intervention Competencies in Forensic Psychology

As is the case with assessment, competencies associated with treatment considered to be forensic comprise both generalized and specialty skills. We list both sets of competencies associated with treatment in forensic contexts in Table 2.

The effective delivery of forensic intervention services begins with basic competencies common to all practitioners and taught in clinical and counseling graduate programs. In forensic settings, treatment recipients may have identified goals, but these are commonly secondary to those goals mandated by external governing bodies. Nonetheless, general and forensic practitioners must approach their work with compassion and commitment to ethical practice to be competent and effective. Similarly, sensitivity to multicultural issues and readiness to seek consultation or refer clients whose needs are outside their scope are necessary attitudes for all clinicians.

Beyond the generalized clinical skills, however, there is a multiplicity of specialty competencies that pertain to this type of treatment. This was acknowledged by the International Association for Correctional and Forensic Psychology, 2010 *Standards for Psychological Services in Jails, Prisons, Correctional Facilities, and Agencies* in the statement, "Providing correctional mental health services is a uniquely specialized task that often requires specialized education and experience" (p. 769). However, forensic intervention services are not simply those services provided in correctional facilities. The recently revised SGFP (Committee on the Revision of the Specialty Guidelines for Forensic Psychology, 2011) define forensic psychology as any practice applying psychology to assist in a legal matter. Intervention services may be judged to be the practice of forensic psychology due to the impact the interventions have on a legal matter or the impact of psycholegal issues on the nature of the services (e.g., mandatory parenting skills training, domestic violence counseling). The forensic intervention service provider must therefore be aware of the psycho-

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

414                                                                VARELA AND CONROY

Table 2

*Generalized and Specialty Intervention Competencies in Forensic Psychology*

**Generalized**

*Knowledge*

A. Evidence-based interventions (e.g., empirical support for effectiveness, interventions for specific disorders)

B. Limitations of research related to specific interventions and specific populations

C. Standards of practice regarding risk management and clinical documentation

D. Jurisprudence relevant to treatment services in local jurisdiction

*Skills*

A. Alliance-building and therapeutic intervention skills (i.e., clinician self-awareness, active listening, appropriate use of questions)

B. Ability to incorporate social, biological, cognitive, and affective bases of behavior across the lifespan in formulating treatment plans

C. Incorporation of multicultural considerations in planning and implementing treatments

D. Working collaboratively with clients in developing treatment plans/goals and implementing treatment techniques

E. Adherence to empirically-supported techniques and adjustment of interventions if needed to client context and changing client needs

F. Monitoring ongoing risk and intervention during clinical crises

G. Management of the emotional demands of psychotherapy

H. Identification and e resolution ethical dilemmas

*Attitudes*

A. Compassion and commitment to client welfare

B. Sensitivity to multicultural issues and multiple client identities

C. Professional values and ethics in behaving toward clients

D. Readiness to seek consultation and/or supervision to address client needs

**Specialty**

*Knowledge*

A. Knowledge of empirically-supported techniques for intervention with unique behavioral problems in forensic contexts

B. Applied experience with relevant forensic populations

C. Understanding of psycholegal issues impacting or impacted by intervention (e.g., restoration to competency, parenting capacity)

D. Awareness of unique ethical issues in forensic settings (e.g., defining client, avoidance of dual roles such as therapist/evaluator)

E. Awareness of rights of treatment recipients (e.g., treatment refusal, least restrictive environment, avoidance of self-incrimination)

*Skills*

A. Treatment planning to address legally relevant goals that may not be patient-centered (e.g., criminogenic needs, risk reduction)

B. Specialized expertise in specific practice areas (e.g., specialized treatments, prevention of violence, violence risk management)

C. Consideration of unique clinical issues and obstacles (e.g., client motivation, unique treatment goals, limitation on service delivery)

D. Incorporation of forensic-specific considerations in clinical documentation (e.g., limited confidentiality, use of records for justice decision-making)

E. Identification and resolution of ethical dilemmas unique to many forensic settings

*Attitudes*

A. Maintenance of a professional identity and commitment to ethical principles as a professional psychologist in nonclinical settings (e.g., prison, court clinic)

B. Recognition of mental health treatment as secondary to other organizational goals in many forensic contexts

C. Sensitivity to unique multicultural issues in forensic settings (gang affiliation, victims of violence, criminal subculture)

---

legal issues impacting the service-recipients and these typically vary across legal jurisdictions. For example, the clinician working in a facility for the restoration of incompetent defendants must be well-aware of the pertinent competency standards. In a related fashion, clinicians involved in the treatment of forensic clients must be able to formulate and implement treatment plans to address legally relevant goals and address criminogenic needs. This is further complicated when the recipient of these services does not perceive the importance of treatment or is otherwise unmotivated to achieve the same goal. For instance, a client on parole may be mandated to attend substance abuse treatment as a condition of release but may lack intrinsic motivation to do so. Often, these treatment goals may require interventions that depart from the typical treatment modalities learned in graduate programs. For example, a risk management plan ordered as part of a juvenile diversion program may require multisystemic or wrap-around treatment services; typical counseling to improve the juvenile's self-esteem may, in fact, be contraindicated under such circumstances. Further, the forensic clinician must be able to recognize how working in a forensic environment may place limitations on treatment and require a departure from standard methods (e.g., counseling in a prison yard, service delivery with

third parties present). Awareness of cultural diversity in forensic treatment settings must also include more than an understanding of the impact of diversity issues typically addressed in clinical training (e.g., race, gender, ethnicity, etc.). The practitioner will also need a familiarity with prison culture and standards of behavior as well as other aspects of criminal subcultures. The forensic intervention provider must also be aware of unique ethical issues, such as the role of consent and therapeutic alliance in mandated treatment, limits to confidentiality, and the delivery of services in the least restrictive environment, and be competent in resolving these dilemmas. Psychologists providing forensic intervention services must recognize mental health treatment is often a secondary goal relative to the organizational mission where they work.

To illustrate the competencies involved in forensic treatment, consider in a typical clinical setting a diagnosis would be made and treatment plan developed in consultation with the client. At any time, this client could decline treatment regardless of whether or not goals have been met. However, if this same client is committed to a hospital following a finding of Not Guilty by Reason of Insanity, a host of additional issues must be considered. Now the goal of treatment becomes reducing risk to others to the point at which the individual can be released to a less restrictive environ-

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

ment. Treatments, including medications, may be mandated by the court and any treatment provider must know the laws and procedures involved. The recipient of services may well see the clinician as an agent of the court rather than an ally. Interventions often clinically appropriate (i.e., gradual release to the community) may be prohibited. The court, and not the practitioner, will determine when treatment begins and ends. Criteria for discharge from hospitalization will be set by the court or by statute. The individual's sole motivation for treatment may be release from confinement so that he can discontinue treatment all together. Thus, while disorders seen in nonforensic settings may also be seen in forensic settings, the forensic practitioner must possess the competencies needed to adapt treatment to account for a wide range of practical and legal differences as well as substantive ethical concerns.

## Generalized and Specialty Consultation Competencies in Forensic Psychology

In forensic settings, psychologists are called upon to consult in a myriad of contexts, ranging from therapeutic settings to courtrooms. We list the relevant generalized and specialized competencies in Table 3.

The foundation of professional consultation is familiarity with the core literature in psychological consultation (see Brown, Pryzwansky, & Schulte, 2006; Caplan & Caplan, 1993). In a clinical setting, psychologist consultants must be willing to work within consultee restraints and be able to communicate opinions to fellow professionals from other disciplines in a manner that can facilitate the work of others.

In forensic settings, consultation is complicated by competing demands and interests that at times may be at cross-purposes, which in turn require the development and application of unique competencies. This begins with competency in understanding the mission and policies of the forensic organization(s) in which the

psychologist is consulting. For example, the mission of a prison is primarily to deliver correctional services in a manner determined by legislated rules, and issues related to mental health and well-being are subservient to this overarching goal.

Consulting to attorneys and judges within the courtroom context is fundamentally unique. It is first critical that the forensic practitioner understand that all opinions and recommendations provided are, in fact, consultation. It is the attorney or trier of fact, and not the psychologist, who will make the final decisions. A key competency for the forensic consultant is understanding how psychological concepts relate to legal principles and communicating opinions in a manner that is useful to legal representatives and other professionals working within the justice system. Psychologists may serve as consultants in very specialized areas, such as jury selection and witness preparation, and must possess specialized knowledge not commonly part of a graduate training program curriculum. Consultation in a forensic setting also requires careful attention to ethical imperatives and how these differ from those of other professions. If, for example, a woman were to enter psychotherapy because she was psychologically traumatized following a motor vehicle accident, the therapist could obtain consent, assess her clinical condition, formulate a treatment plan, and provide therapy. However, if her attorney were to contract with the psychologist for a personal injury evaluation, it would mean conducting an objective evaluation to determine the woman's exact condition and then evaluating if and to what degree the accident (or possibly some other event) was the proximate cause or a contributing cause to that distress. Such an assessment would require the exploration of much collateral information that may or may not support the woman's contention. Finally, the evaluator would need to assess any potential damages (e.g., the prognosis, need for ongoing psychological care or other rehabilitation, the estimated length of

Table 3

*Generalized and Specialty Consultation Competencies in Forensic Psychology*

**Generalized**
*Knowledge*
    A. Familiarity with core literature on consultation
    B. Cross-disciplinary knowledge (e.g., basic psychopharmacology & utilization of community resources/programs in multidisciplinary settings)
*Skills*
    A. Identification of appropriate consultant roles, expectations, obligations, and goals
    B. Communication with non-psychologist and non-mental health consultees
    C. Application of expert guidance in response to client needs
    D. Application of ethical and legal standards to diverse groups
*Attitudes*
    A. Willingness to work and apply psychology within the limitations of consultee needs and organization
    B. Willingness to recognize one's own limits and respond appropriately through additional learning, seeking supervision, or consultee referral
**Specialty**
*Knowledge*
    A. Understanding the mission of judicial and correctional organizations and the role of psychology in accomplishing organizational goals
    B. Understanding of unique organizational subcultures (e.g., norms and mores, consultee perception of psychology)
    C. Familiarity with pertinent forensic consultation subspecialties (e.g., jury selection, witness preparation, eyewitness identification procedures)
    D. Understanding of ethical imperatives that differ between the mental health professionals and legal/law enforcement professionals
*Skills*
    A. Applying psychological theory and techniques to meet nonclinical consultee needs and goals
    B. Communication of clinical and professional opinions in a manner relevant to legal and other justice system professionals
*Attitudes*
    A. Commitment to values and ethics of psychology and active avoidance of misuse of psychologists' work
    B. Respect for the missions and values of disciplines within the forensic context (e.g. the judiciary, law enforcement, protective agencies)

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

services, the impediments to her life functioning that may have resulted from the accident).

## Generalized and Specialty Research Competencies in Forensic Psychology

Standard research competencies play a role in forensic psychology, but are usually insufficient and specialized competencies must be developed to work in this field. We list the generalized and specialized research competencies in forensic psychology in Table 4.

The generalized competencies of research in psychology include mastery of the scientific method, research design and statistical methods, knowledge and understanding of the influence of multicultural diversity on the research process and an understanding of the ethics that guide all psychological research. Competent researchers across settings approach their work with skepticism and humility, and a willingness to allow their methods and conclusions to be scrutinized. Researchers seeking to answer forensic psychology questions, however, must be skilled in formulating research questions pertinent to the psycholegal issues and behavioral phenomena relevant to the justice system (e.g., risk of criminal recidivism, methods of counseling victims). Developing legally relevant research questions may require an investigator to be facile in

methods of legal research. This may involve competence in navigating the law library or available legal databases (e.g., Lexis-Nexis Academic, West Law, Bureau of Justice Statistics).

Forensic psychology researchers must also be competent with respect to how they approach forensic organizations, such as correctional institutions, adult and child protective agencies, and courts, and propose research that answers questions salient to the organization and can be executed in a manner consistent with institutional policies and procedures. They should also recognize the ways in which research might impact the organization. For example, a study methodology that involves placing large numbers of high risk and combative prisoners together may pose safety and security risks in a correctional setting that would preclude conducting the research. Forensic hospitals that serve patients whose competence to stand trial has been called into question may be very concerned about proper consent for research, even going so far as to require a legally authorized representative for each participant. Also, forensic psychological researchers must be skilled at adjusting research methods to answer important questions with less experimental control. For example, a researcher examining the impact of residency restriction on recidivism among sexual offenders cannot randomly assign participants to different residency restriction conditions nor can a researcher examine child custody

Table 4

*Generalized and Specialty Research Competencies in Forensic Psychology*

**Generalized**

*Knowledge*

    A. Scientific method and research design, including program evaluation
    B. Statistical methods
    C. Existing research regarding biopsychosocial phenomena under investigation
    D. Ethical guidance pertaining to research
    E. Impact of multicultural diversity on psychological research

*Skills*

    A. Critical evaluation of existing research as well as one's own methods and findings
    B. Effective collaboration with a multidisciplinary research team
    C. Effective reporting and communicating research findings
    D. Incorporation of multicultural considerations in the development of research questions, design of research methods, and formulation of conclusions

*Attitudes*

    A. Scientific skepticism and humility
    B. Willingness to self-monitor to eliminate personal biases and maintain scientific objectivity in all phases of research
    C. Readiness to allow scrutiny of one's research methods, findings, and conclusions
    D. Sensitivity to multicultural issues in all phases of research
    E. Understanding limitations of psychological research methods and inferences

**Specialty**

*Knowledge*

    A. Research base related to psycholegal issues and behavioral phenomena relevant to the justice system
    B. Knowledge of research issues unique to forensic settings (e.g., applying research design principles in forensic setting, techniques of legal research, participant motivations)
    C. Knowledge of ethical issues relevant to research in forensic settings (e.g., vulnerable research populations, research in coercive environments)

*Skills*

    A. Development of research questions to address forensic issues
    B. Designing research within limitations of many forensic settings (e.g., limits on random assignment, outcome measurement)
    C. Understanding how to approach research in correctional/legal environments (gaining access, securing documents, complying with administrative polices, gaining support of correctional/courtroom/ agency staff, resolving disagreements)
    D. Conducting legal research
    E. Communication of research findings to non-psychologist stakeholders in the justice system

*Attitudes*

    A. Acceptance of non-scientific mission of many forensic settings
    B. Sensitivity to ways in which research may impact the forensic organization (misunderstandings, negative publicity)
    C. Respect for the concerns of forensic organizations (e.g., security, rights of persons served)

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

outcomes by randomly assigning custody conditions. Forensic researchers must also recognize and account for participant motivations (e.g., distorted responding) when designing studies and interpreting findings. For example, persons and institutions involved in employment litigation may be motivated by the prospect of financial loss or gain. Beyond the important ethical considerations common to all psychological research, forensic researchers must address additional issues, such as coerced participation among individuals who are members of vulnerable groups (e.g., prisoners, the elderly under guardianship). Lastly, forensic researchers must also be competent in communicating research findings to professionals in the justice system in an effective manner, considering these professionals possess an understanding of the psycholegal issue (often a more complete understanding than the researcher) but are unfamiliar with research design and statistical methods.

## Generalized and Specialty Supervision-Training Competencies in Forensic Psychology

Once again, competencies associated with providing supervision and training considered to be forensic comprise both generalized and specialty skills. We list both sets of competencies associated with these endeavors in forensic practice in Table 5.

The competent supervisor, regardless of setting, must be able to assess supervisee skills, set supervision goals, and effectively communicate supervisory feedback while remaining committed to lifelong learning and sensitive to the supervisor-supervisee power differential. A forensic supervisor needs to be familiar with any relevant psycholegal issue that is being evaluated or in some way impacts the service being rendered. The supervisor must also have a thorough understanding of any statutes, case law, rules of evidence or rules of the jurisdiction governing the work to be done. While it is unlikely any forensic psychologist has expertise in all of the subspecialties of the discipline, it is essential to have competence in the specific area being supervised. The supervisor has total legal responsibility for the work product and must never agree to supervise anything she or he is not fully qualified to perform independently (Bennett et al., 2006). Even a supervisor with stellar experience, training, and credentials in forensic psychology generally, may, for example, have great expertise in conducting sanity evaluations but have only textbook knowledge of personal injury evaluations or child custody assessments.

If work is being done in anticipation of a court proceeding, the supervisor will likely need to be personally present for, and actively participating in, much of the evaluation. The supervisor will need to take full responsibility for any report provided or records

Table 5

*Generalized and Specialty Supervision-Training Competencies in Forensic Psychology*

**Generalized**
*Knowledge*
  A. Supervision models and approaches
  B. Supervision and training ethics as well as laws related to supervision and psychology practice
  C. Impact of multicultural diversity on supervision and practice
  D. Currency in developing areas of research, practice, and practice-related law
*Skills*
  A. Assessment of supervisee knowledge, skills, and abilities
  B. Establishing supervisor and supervisee goals and expectations as well as method(s) to evaluate training progress
  C. Matching training/supervision actions to supervisee training level and client needs, and modify these in response to changes over time
  D. Effective provision of written and/or oral performance feedback
  E. Communicating psychological principles and research findings to non-psychologist trainees
  F. Modeling appropriate professional behavior across diverse settings
  G. Evaluating the effectiveness of one's supervision and training and making modifications accordingly
*Attitude*
  A. Willingness to engage in life-long learning
  B. Flexibility in applying supervision methods in response to supervisee, client, and contextual changes
  C. Acknowledging limitations of competency and commitment to refraining from supervision outside one's scope of expertise without assistance
  D. Sensitivity to power differential inherent in supervision and training relationships
**Specialty**
*Knowledge*
  A. Specialized knowledge in areas of training needed by stakeholders in the justice system
  B. Knowledge of psycholegal issues and law/jurisprudence pertinent to practice settings
  C. Knowledge and applied experience in subspecialties within civil and criminal forensic psychology
  D. Knowledge of all laws, regulations, policies, codes of conduct, and guidelines that apply to the particular tasks under supervision
*Skills*
  A. Ability to establish relationships and shared understanding of training activities with other clinical and nonclinical stakeholders
  B. Recognition of boundaries between clinical and administrative supervision
  C. Specific skills needed in any subspecialty (e.g., evaluating response style, using forensic assessment instruments, providing testimony, conducting specialized treatments)
  D. Ability to provide the supervisee with rich training experiences while still maintaining full responsibility for the work product
*Attitudes*
  A. Accepting that attorneys not mental health professionals determine case strategies
  B. Accepting that the trier of fact and not the mental health professional is the decision-maker
  C. Accepting that the mental health professional may not be able to provide the client with the opinion he/she would like
  D. Accepting that mental health professionals do not win or lose cases, they simply provide assistance to the trier of fact

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

maintained. In addition, the supervisor will need the necessary expertise to guide the supervisee through the entire process. That means, for example, not only having the necessary ability to conduct a forensic assessment, but also knowing how to negotiate and contract for forensic work with the various stakeholders, how to present informed consent or notification to the examinee, what specific rights the examinee may have throughout the process, how to access and evaluate the necessary collateral information, how to construct an assessment report for court purposes, how to maintain records that will stand up to judicial scrutiny, how to respond to court orders and subpoenas, and how to present effective testimony that will be most helpful to the trier of fact. Supervisory modeling in this arena includes not only relating to examinees, but also negotiating with clinicians from other disciplines (e.g., psychiatrists, social workers), as well as law enforcement personnel, attorneys (including judges), representatives of involved agencies (e.g., Child Protective Services, the Social Security Administration), and sources of collateral information.

In addition to supervision, forensic psychologists often provide mental health training to professionals from other disciplines. Training is commonly requested by law enforcement and corrections personnel, attorneys and members of the judiciary, and a variety of workplace supervisors. Law enforcement personnel, for example, may request training related to suicide prevention, nonviolent crisis intervention, dealing with persons who have severe mental illness, preventing burnout, and assisting employees who have witnessed traumatic events. Attorneys and members of the judiciary may request training, for example, in dealing with persons with severe mental illness, establishing effective risk management plans, the meaning of various diagnostic categories, and evaluating expert behavioral science evidence.

For example, consider the case of a couple who come to a clinic requesting treatment to help them be better parents to some difficult children. The clinic may decide to assign the case to an advanced student who will work under supervision. The supervisor may or may not meet with the clients initially while the student will continue ongoing treatment in conjunction with regular meetings with the supervisor. Informed consent will be obtained, a treatment plan will be negotiated with the clients, appropriate records will be maintained, and initial and discharge reports will be written for the file. Upon request, the couple could have complete access to all records and reports.

But now consider how the scenario would radically change if this were in the context of a child custody evaluation. In this case, the supervisor would have to work directly with the student throughout the evaluation. Work would need to be done through the respective attorneys to collect a plethora of collateral information. The supervisor would need to review all relevant statutes, case law, and licensing board rules with the trainee. The supervisor would also need to be familiar with the various ethical guidelines pertaining to these evaluations (e.g., EPPCC, SGFP, the *Guidelines for Child Custody Evaluations in Family Law Proceedings*, APA, 2010; the *Guidelines for Psychological Evaluations in Child Protective Matters,* Committee on Professional Practice & Standards, 2011). In most jurisdictions the supervisor would need to explain the guiding principle now is the "best interests of the child" rather than the well-being or preferences of the parents. Interviews would need to be conducted with both parents, as well as all children involved. It is also quite

possible that the scope of necessary interviews could be extended to grandparents, teachers, potential step-parents, and other related parties. Any evaluation instruments selected would need to withstand courtroom challenges. This means the supervisor would need a thorough understanding of evidentiary rules in the jurisdiction. It is likely that both records and any reports generated would be property of the court and the family would only have access through their attorneys. Finally, in the interest of promoting a thorough training experience, the supervisor would need to have the student accompany him or her in preparing for and providing court testimony.

## Generalized and Specialty Management-Administration Competencies in Forensic Psychology

Once again, competencies associated with working in an administrative role considered in a forensic context comprise both generalized and specialty skills. We list both sets of competencies associated with these endeavors in forensic practice in Table 6.

It is becoming increasingly common for psychologists to function as program, department, or institution administrators. Individuals in these positions would need all of the fundamental managerial competencies required for the day to day running of any organization: competencies in the areas of communication, motivation, finance, workplace safety, dispute resolution, the selection of job candidates, evaluation of employee performance, and decision-making regarding the termination of employees. Psychologist administrators must also possess an understanding of pertinent employment laws and how these must be considered when establishing organizational policies. They would also require knowledge of other relevant laws, policies, and procedures that impact the organization. The competent psychologist manager-administrator must engage in these tasks with an attitude of fairness and appreciation of the knowledge and skills of subordinates.

Forensic psychologists also have occasion to step into specialized administrative roles. Settings where this is often the case would include correctional institutions, hospitals, court clinics, university training clinics, and a variety of mental health agencies in communities that routinely provide some type of forensic service. Clearly, any manager or administrator would need to thoroughly understand any specific psycholegal issue that is being addressed for a court of law. The forensic administrator's understanding of law, however, must extend beyond the instant case and include the whole spectrum of law relative to the provision of such services. Laws vary from one jurisdiction to another in regard to right to treatment as well as right to refuse treatment. For example, California is currently embroiled in long standing litigation with potentially serious consequences regarding what level of mental health care a prison system must provide to its inmates (*Plata et al. v. Schwarzenegger*, 2010). Many organizations providing forensic services also use various forms of seclusion and restraint, as well as emergency medication. Both statutes and case law are often very complex in this regard.

Forensic settings are typically staffed by a variety of disciplines that must be brought into collaboration for the mission of the entity to succeed. In a prison hospital, for example, staff will generally include correctional personnel whose primary mission is the safety and security of the institution, as well as various medical personnel whose mission it is to provide treatment—missions that frequently

Table 6

*Generalized and Specialty Management-Administration Competencies in Forensic Psychology*

**Generalized**
> *Knowledge*
> > A. Management and organizational theories and principles
> > B. Relevant employment and practice laws
> > C. Understanding of the larger organizational mission and goals (if applicable)
>
> *Skills*
> > A. Generalized organizational and management skills
> > B. Ability to prioritize competing demands and allocate resources
> > C. Ability to develop clinic policies and processes that ensure ethical practice that meets relevant standards of care
> > D. Ability to establish a process for evaluating the effectiveness of agency services (if applicable)
>
> *Attitudes*
> > A. Commitment to fairness in implementation of organizational policies
> > B. Respect for the knowledge and skills of employees

**Specialty**
> *Knowledge*
> > A. Laws and jurisprudence relevant to psycholegal issues addressed in clinic (and changes over time)
> > B. Policy and procedure unique to the forensic setting
>
> *Skills*
> > A. Ability to foster collaboration between members of diverse professions represented in forensic settings
> > B. Ability to find points of congruence between mental health mission and larger organizational mission (if applicable)
>
> *Attitudes*
> > A. Respect for the goals and values of the variety of professionals and staff members working in the forensic context (e.g. attorneys, law
> > enforcement personnel, service agency staff)
> > B. Willingness to compromise non-essential parts of the mental health mission to accommodate other goals of organizations
> > C. Awareness that serious organization changes in most forensic organizations must be accomplished over time

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

collide. For a manager, fostering respect among disciplines requires a thorough understanding of the underlying needs, values, professional responsibilities and goals, and philosophies of all players.

Well-designed policy and procedure can provide both guidance and protection for an organization. It is, however, imperative that any administrator in a forensic setting be thoroughly versed in policy and procedure at all levels (unit, departmental, institutional, and in some cases national). For example, correctional policy and procedure can be very foreign to the newly arrived clinician and it becomes the manager's responsibility to provide orientation and guidance. Similarly, law enforcement organizations have their own unique culture complete with norms and values that extend beyond written rules and regulations. What is perfectly acceptable employee conduct in a university setting may not be acceptable in a prison, jail, police department, or other forensic setting.

By way of example, suppose a forensic psychologist is the manager of a prison hospital unit where an inmate with serious mental illness has assaulted an officer. The correctional staff is primarily concerned with physical safety and would like to have the *offender* placed in restraints overnight and demand assurances that he will remain in seclusion for a lengthy period of time. The medical staff, on the other hand, believe their *patient* is making progress in treatment and it is important for him to remain in a least restrictive environment and emergency medication should be administered involuntarily to facilitate this. However, the institution legal counsel, whose mission it is to protect the institution administration and employees from legal suit, opines that, since the *inmate* can be prevented from engaging in further assault by being confined to a locked cell, neither emergency medication nor four-point restraints are warranted and could be interpreted as a civil rights violation. The administrator of the medical or psychiatric unit is now tasked with bringing these divergent viewpoints

together in such a way as to facilitate ongoing collaboration. This will require an understanding of the three disciplines and respect for their values. It will also require a thorough knowledge of both correctional and medical policies, as well as law governing restraints, civil rights, and involuntary treatment.

## Acquisition and Maintenance of Competency in Forensic Psychology

Consistent with the final dimension of the Competency Cube, the acquisition of competency in forensic psychology takes place at all levels of higher education. Even undergraduates are exposed to courses specifically addressing the intersection of psychology and law.

In this century it is very possible to begin formal forensic psychology training with a track or emphasis in graduate school, with some programs offering the joint JD-PhD degrees. It is now possible to progress to an internship having at least one forensic rotation. Beyond that specialized postdoctoral fellowships that concentrate specifically in the forensic arena are increasing. However, current practitioners who may be many years removed from their formal training may need to seek other avenues to specialize and competently provide forensic services. For the professional in the community wishing additional or continued training in this area an extensive array of workshops are generally available from the American Academy of Forensic Psychology, the American Psychological Association, state psychological organizations, as well as private and other continuing education providers. Continuing education workshops rarely, if ever, provide the opportunity to become fully competent in any area of practice, especially forensic psychology. For the practitioner seeking to expand his or her skill repertoire, a combination of didactic training (i.e., workshops and/or graduate coursework) and supervised practice with an es-

420                                              VARELA AND CONROY

tablished expert can provide adequate and defensible training. This is particularly important, considering professional credentials may come under scrutiny in many forensic contexts, as well as one's work products. In addition, a number of states now have particular training requirements specified in statute for psychologists to engage in various types of forensic evaluations (e.g., competence to stand trial, child custody). At the highest level, there is the option of seeking board certification.

## Concluding Comments

The present article is our attempt to provide a taxonomy of the various generalized and specialty competencies associated with forensic psychology for the express purpose of assisting clinicians who are considering a foray into the forensic arena. Given the breadth of this field, it is impossible to create a listing of competencies that is both precise and exhaustive. Rather, we have broadly described these generalized and specialty competencies in such a manner as to provide sufficient guidance for psychologists in entering this field while recognizing there may be additions, deletions, and other modifications for application to specific areas of forensic research and practice. Undoubtedly, there will be fellow practitioners and researchers with strong opinions regarding our list of competencies, including disagreements and recommendations for change. We would consider this a very positive development inasmuch as debate, even spirited argument, over the professional competencies required in our field can only serve to highlight important issues and considerations for those of us who practice, conduct research, and train forensic psychologists.

Given the rapid and continuing growth of forensic psychology, this taxonomy of competencies must necessarily be considered a work-in-progress. As psychologists become involved in even more areas of the justice system and are called upon to assist in new ways, the competencies needed by these professionals will also change. We fully expect that a similar list made even just two decades in the future, by the next generation of forensic psychologists, will have substantial additions.

## References

American Psychological Association. (2002). Ethical principles of psychologists and code of conduct. *American Psychologist, 57,* 1060–1073. doi:10.1037/0003-066X.57.12.1060

American Psychological Association. (2010). Guidelines for child custody evaluations in family law proceedings. *American Psychologist, 65,* 863–867. doi:10.1037/a0021250

Archer, R. P. (Ed.) (2006). *Forensic uses of clinical assessment instruments.* Mahwah, NJ: Erlbaum.

Bennett, B. E., Bricklin, P. M., Harris, J. D., Knapp, S., Vandecreek, L., & Younggren, J. N. (2006). *Assessing and managing risk in psychological practice: An individualized approach.* Rockville, MD: The Trust.

Bersoff, D. N., Goodman-Delahunty, J., Grisso, J. T., Hans, V. J., Poythress, N. G., & Roesch, R. G. (1997). Training in law and psychology: Models from the Villanova conference. *American Psychologist, 52,* 1301–1310. doi:10.1037/0003-066X.52.12.1301

Board of Trustees of the Society for Personality Assessment. (2006). Standards for education and training in psychological assessment: Position of the Society for Personality Assessment. *Journal of Personality Assessment, 87,* 355–357. doi:10.1207/s15327752jpa8703_17

Bonnie, R., & Grisso, T. (2000). Adjudicative competence and youthful offenders. In T. Grisso & R. Schwartz (Eds.), *Youth on trial: A developmental perspective on juvenile justice* (pp. 73–104). Chicago, IL: University of Chicago Press.

Brown, D., Pryzwansky, W., & Schulte, A. (2006). *Psychological consultation and collaboration: Introduction to theory and practice.* Boston, MA: Pearson.

Brown v. Board of Education, 347 U.S. 483 (1954).

Caplan, G., & Caplan, R. B. (1993). *Mental health consultation and collaboration.* San Francisco, CA: Jossey-Bass.

Committee on Professional Practice and Standards. (2011). *Guidelines for psychological evaluations in child protection matters.* Retrieved from http://www.apa.org/practice/guidelines/child-protection.pdf

Committee on the Revision of the Specialty Guidelines for Forensic Psychology. (in press). *Specialty Guidelines for Forensic Psychology.* Retrieved from www.ap-ls.org/aboutpsychlaw/SGFP_Final_Approved_2011.pdf

Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S. Ct. 2786 (1993).

Dusky v. United States, 362 U.S. 402 (1960).

Fouad, N. A., Grus, C. L., Hatcher, R. L., Kaslow, N. J., Hutchings, P. S., Madson, M. B., . . . Crossman, R. E. (2009). Competency benchmarks: A model for understanding and measuring competence in professional psychology across training levels. *Training and Education in Professional Psychology, 3,* S5–S26. doi:10.1037/a0015832

Frederick, R. I. (1997). *Validity Indicator Profile manual.* Minnetonka, MN: NCS Assessments.

Grisso, T. (2003). *Evaluating competencies: Forensic assessments and instruments* (2nd ed.) New York, NY: Kluwer.

International Association for Correctional and Forensic Psychology Practice Standards Committee. (2010). Standards for psychological services in jails, prisons, correctional facilities, and agencies. *Criminal Justice and Behavior, 37,* 749–808. doi:10.1177/0093854810368253

Jenkins v. United States, 307 F. 2d 637 (D. C. Cir. 1962).

Krishnamurthy, R., VandeCreek, L., Kaslow, N. J., Tazeau, Y. N., Miville, M. L., Kerns, R., . . . Benton, S. A. (2004). Achieving competency in psychological assessment: Directions for education and training. *Journal of Clinical Psychology, 60,* 725–739. doi:10.1002/jclp.20010

Lally, S. J. (2003). What tests are acceptable for use in forensic evaluations? A survey of experts. *Professional Psychology: Research and Practice, 34,* 491–498. doi:10.1037/0735-7028.34.5.491

Melton, G. B., Petrila, J., Poythress, N. G., & Slobogin, C. (2007). *Psychological evaluations for the courts* (3rd ed.). New York, NY: Guilford Press.

Munsterberg, H. (1908). *On the witness stand: Essays on psychology and crime.* New York, NY: Doubleday.

National Council of Schools and Programs in Professional Psychology. (2007). *Competency developmental achievement levels.* Retrieved from http://www.ncspp.info/DALof%20NCSPP%209–21-07.pdf

Otto, R. K., & Heilbrun, K. (2002). The practice of forensic psychology: A look to the future in light of the past. *American Psychologist, 57,* 5–18. doi:10.1037/0003-066X.57.1.5

Packer, I. K. (2008). Specialized practice in forensic psychology: Opportunities and obstacles. *Professional Psychology: Research and Practice, 39,* 245–249. doi:10.1037/0735-7028.39.2.245

Petition for the recognition of a specialty in professional psychology: Forensic psychology. (2000). Submitted by Division 41 of the American Psychological Association and The American Board of Forensic Psychology.

Plata v. Schwarzenegger, 603 F 3.d, 1088 (U.S. 9th Cir., 2010).

Poythress, N. G., Nicholson, R., Otto, R. K., Edens, J. F., Bonnie, R. J., Monahan, J., & Hoge, S. (1999). *The MacArthur Competence Assessment Tool—Criminal Adjudication: Professional manual.* Odessa, FL: Psychological Assessment Resources.

Quinsey, V. L., Harris, G. T., Rice, M. E., & Cormier, C. A. (2006). *Violent offenders: Appraising and managing risk* (2nd ed.). Washington, DC: APA. doi:10.1037/11367-000

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

Rodolfa, E., Bent, R., Eisman, E., Nelson, P., Rehm, L., & Ritchie, P. (2005). A cube model for competency development: Implications for psychology educators and regulators. *Professional Psychology: Research and Practice, 36,* 347–354. doi:10.1037/0735-7028.36.4.347

Rogers, R., Bagby, R. M., & Dickens, S. E. (1992). *Structured Interview of Reported Symptoms (SIRS) and professional manual.* Odessa, FL: Psychological Assessment Resources.

Rogers, R., Tillbrook, C. E., & Sewell, K. W. (2004*). Evaluation of Competency to Stand Trial—Revised (ECST-R) and professional manual.* Odessa, FL: Psychological Assessment Resources.

Terman, L. M. (1931). Psychology and the law. *Los Angeles Bar Association Bulletin, 6,* 142–153.

Received August 15, 2011
Revision received November 16, 2011
Accepted November 18, 2011 ■

This document is copyrighted by the American Psychological Association or one of its allied publishers.
This article is intended solely for the personal use of the individual user and is not to be disseminated broadly.

## Call for Nominations

The Publications and Communications (P&C) Board of the American Psychological Association has opened nominations for the editorships of **Behavioral Neuroscience, Journal of Applied Psychology, Journal of Educational Psychology, Journal of Personality and Social Psychology: Interpersonal Relations and Group Processes, Psychological Bulletin,** and **Psychology of Addictive Behaviors** for the years 2015–2020. Mark S. Blumberg, PhD, Steve W. J. Kozlowski, PhD, Arthur Graesser, PhD, Jeffry A. Simpson, PhD, Stephen P. Hinshaw, PhD, and Stephen A. Maisto, PhD, ABPP, respectively, are the incumbent editors.

Candidates should be members of APA and should be available to start receiving manuscripts in early 2014 to prepare for issues published in 2015. Please note that the P&C Board encourages participation by members of underrepresented groups in the publication process and would particularly welcome such nominees. Self-nominations are also encouraged.

Search chairs have been appointed as follows:

- **Behavioral Neuroscience,** John Disterhoft, PhD

- **Journal of Applied Psychology,** Neal Schmitt, PhD

- **Journal of Educational Psychology,** Neal Schmitt, PhD, and Jennifer Crocker, PhD

- **Journal of Personality and Social Psychology: Interpersonal Relations and Group Processes,** David Dunning, PhD

- **Psychological Bulletin,** Norman Abeles, PhD

- **Psychology of Addictive Behaviors,** Jennifer Crocker, PhD, and Lillian Comas-Diaz, PhD

Candidates should be nominated by accessing APA's EditorQuest site on the Web. Using your Web browser, go to http://editorquest.apa.org. On the Home menu on the left, find "Guests." Next, click on the link "Submit a Nomination," enter your nominee's information, and click "Submit."

Prepared statements of one page or less in support of a nominee can also be submitted by e-mail to Sarah Wiederkehr, P&C Board Search Liaison, at swiederkehr@apa.org.

Deadline for accepting nominations is January 11, 2013, when reviews will begin.