**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00687-NYW-TPO

**JANE DOE**,

      Plaintiff,

v.

**CHERRY CREEK SCHOOL DISTRICT**;
**KEVIN UHLIG**, in his individual capacity;
and **RYAN SILVA**, in his individual capacity,

      Defendants.

———————————————————————————————————————————

**PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER AT ECF NO. 290[1]**

———————————————————————————————————————————

---

[1] The Court issued a Minute Order at ECF No. 290 containing a summary of the Magistrate Judge's orders, but noted therein that "[f]or a full recitation of the Court's ruling, the Parties should request a transcript of the proceeding." ECF No. 290 at 2 n.1. The requested transcript has been noted on the docket at ECF No. 293.

1

Plaintiff Jane Doe, through her attorneys, submits this objection to the Magistrate Judge's Order granting in part and denying in part Defendants' Motion to Compel [ECF Nos. 290 and 293] (the "Order") and in support states as follows:

Plaintiff narrowly objects to the Magistrate Judge's Order to the extent that it appears to authorize Defendants to serve subpoenas on Plaintiff's mental health treatment providers after the close of discovery and/or insofar as it reopens discovery.

## PROCEDURAL BACKGROUND

### A. Background on Defendants' Request for and Pursuit of Plaintiff's Mental Health Treatment Records

On October 21, 2024, and more than four months after the Scheduling Order in this case issued, Defendants served their first set of written discovery on Plaintiff. They sought, in part, "all records of treatment or diagnosis" for all mental and emotional conditions of Plaintiff. **Ex. 1**, *Defs.' First Set of Written Discovery* at RFP No. 14. Because Plaintiff has never had possession, custody, or control over her psychotherapy notes, Plaintiff produced in response treatment summaries from several mental health treatment providers. Defendants raised no concerns with this production until February 24, 2025, **12 weeks** after receiving the summaries.

In a discovery dispute hearing before Magistrate Judge O'Hara on March 18, 2025, counsel for Plaintiff informed the Court that they did not have copies of any psychotherapy notes because they are not disclosable to patients and thus not within Plaintiff's possession, custody, or control. *See* **Ex. 2**, *2025.03.18 Hearing Trans. – Partial* at 194:15-195:15. The Court stated that Defendants would likely be entitled to such records in light of Plaintiff's claimed emotional distress damages, but further elaborated:

> With that said, there may be limits to how they are able to get the records.
> What I would suggest is that -- well, there's really two ways this could come

2

> about.  **Either the plaintiff -- or the defense seeks a subpoena, or the defense gets them from the plaintiff.  And I'll let the parties confer on this issue**, because the defendant may be getting a subpoena or -- well, this just has to play out a little bit more.

*Id.* at 200:18-25 (emphasis added).

It should be noted that Plaintiff also objected to the production of psychotherapy notes in part based on the sensitive nature of the records and the fact that she had provided treatment summaries, which adequately responded to the discovery request. However, given the Court's order to continue conferring and in an effort to move the case towards resolution, in early April 2025, Plaintiff offered to provide Defendants a release to accompany a subpoena for her psychotherapy notes, so long as the subpoenas were returnable to Plaintiff's counsel for appropriate pre-production review and redaction. Defendants rejected Plaintiff's offer, stating that they intended to subpoena the records without a release, with production to defense counsel's office.  Because it is unlikely providers would produce records without a release, Plaintiff reiterated her offer on multiple occasions, including in an April 14, 2025 conferral call and at least twice in May and June 2025.  *See, e.g.*, ECF No. 240-2 at 1.   Defendants continued to reject this offer, and discovery continued on.

On May 20, 2025, Defendants emailed Plaintiff copies of subpoenas they intended to serve on multiple treatment providers, including Plaintiff's mental health treatment providers.  *See* ECF No. 267-1 (attaching eight subpoenas).  Plaintiff confirmed that the Parties would address concerns with the proposed subpoena process in a discovery dispute hearing scheduled for that Friday, and counsel for Defendants stated, "We plan to send these out on Friday immediately following the hearing."  **Ex. 3**, *2025.05.20 Counsel Email Exchange* at 1.  That hearing was continued until June 23, 2025.  ECF

Nos. 210, 211.  On June 19, 2025, just days before the hearing, Defendants filed their Motion to Compel.  ECF No. 218.  In conferral emails, Defendants again stated that they "plan to serve the[ subpoenas] after the hearing next week."  ECF No. 240-2 at 3.  Two months later, and in their Reply to the Motion to Compel, Defendants reversed course, stating that they "have agreed to hold off on directly subpoenaing the records at this point given the sensitive nature of the allegations in this case."  ECF No. 247 at 10.  Importantly, no such agreement was ever reached with Plaintiff, who had been under the impression that the subpoenas had been served.[2]  Ultimately, and without explanation, Defendants decided to never serve subpoenas prior to the October 1, 2025 fact discovery cutoff.

### B.  The Present Order on Defendants' Motion to Compel

As noted above, Defendants filed their Motion to Compel on June 19, 2025.  ECF No. 218.  Defendants' Motion sought in relevant part production of Plaintiff's mental health treatment records, with a focus on records that might have captured Plaintiff's statements to her providers, *i.e.*, psychotherapy notes.  *See generally id.*  In his Order, Magistrate Judge O'Hara denied Defendants' motion insofar as it sought to require Plaintiff to request psychotherapy notes, stating, "This Court's ruling does not preclude defense counsel from requesting the same notes from the treatment provider by way of a subpoena, nor does it constitute a ruling on the discoverability of such records."  ECF No. 290 at 2.  Because Plaintiff does not object to either of these substantive rulings, the arguments underpinning them will not be addressed herein.

---

[2] This proffered justification for the failure to serve the subpoenas defies logic. If the sensitive nature of the allegations in the case were a basis not to serve subpoenas in August 2025, it is unclear what has changed as of April 2026.  Moreover, the sensitive nature of the allegations was the same in May and June 2025 when Defendants claimed they would serve the subpoenas.

However, the Magistrate Judge's Order is not clear as to one matter: whether it also reopens discovery to permit Defendants to subpoena Plaintiff's mental health treatment providers. As noted, fact discovery in this case closed on October 1, 2025. Defendants never filed a motion to reopen discovery, and Plaintiff has not had an opportunity to be heard on any such request. Magistrate Judge O'Hara did not address any potential reopening of discovery in his Order or during the hearing, nor did he consider the relevant factors for resolving a motion to reopen discovery. Through much of the hearing, the Magistrate Judge spoke of any potential subpoena in the hypothetical: for example, records being held by therapists "just makes them need to be subpoenaed by the Defendant to the psychotherapist or the particular therapist. And then whatever dispute comes up from that subpoena is the dispute that comes up[.]" **Ex. 4**, *2026.03.25 Hearing Transcript* at 14:7-11. However, Magistrate Judge O'Hara later engaged in a detailed discussion of the process by which any such subpoenas should be issued, including the party to whom they would be returnable. *See id.* at 30:11-34:16. Magistrate Judge O'Hara never expressly stated that discovery would be reopened, however the discussion was ambiguous as to whether he was *authorizing* the issuance of such subpoenas or merely defining the terms on which they would be permitted *in the event that* they were later authorized.

Recent developments have borne out this confusion. On April 2, 2026, Defendants notified Plaintiff that they had sent subpoenas to be served on two of Plaintiff's mental health treatment providers, declining to wait for objections to be resolved. **Ex. 5**, *2026.04.02 Lefford-Wolf Email*. Defendants' conduct demonstrates that they believe that discovery *has* been reopened, as would be necessary for them to serve such subpoenas.

5

## LEGAL STANDARD

When a party files timely objections to non-dispositive rulings by a Magistrate Judge, the Court "must 'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Horton v. Doe*, 2011 WL 6217115, at * 1 (D. Colo. Dec. 14, 2011) (quoting Fed. R. Civ. P. 72(a)). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2D 1458, 1464 (10th Cir. 1988) (internal quotation marks and citation omitted). The "contrary to law" standard permits "plenary review as to matters of law." 12 Charles Alan Wright, Arthur R. Miller, Richard L. Cooper, Federal Practice and Procedure § 3069, at 355 (2d ed. 1997). The Court will set aside a Magistrate Judge's order "if it applied the wrong legal standard or applied the appropriate legal standard incorrectly." *Scavetta v. King Soopers, Inc.*, 2012 WL 3545278, at *2 (D. Colo. Aug. 16, 2012) (citing *Wyoming v. U.S. Dep't of Agriculture*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002)).

## ARGUMENT

### I.    The Subpoenas Cannot Be Served Without Reopening Discovery, and Any Order to the Contrary Is Contrary to Law

"[A] subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of those Rules." *Murphy v. Schiable, Russo, & Co., C.P.A.'s, LLP*, 2020 WL 12698695, at *5 (D. Colo. Nov. 20, 2020) (Wang, J.) (citing *Rice v. U.S.*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995)). "Therefore, like other discovery, it must be completed – not merely initiated – by the discovery deadline." *Id.* To the extent the Order authorizes Defendants to subpoena Plaintiff's mental health treatment providers without reopening discovery, it is contrary to law.

6

**II.      If the Magistrate Judge Ordered that Discovery Be Reopened, Such Order Is Contrary to Law for Failure to Apply the Applicable Legal Standard**

To the extent that the Magistrate Judge reopened discovery for the purpose of serving the subpoenas (which appears so based on Defendants' conduct), such order would be clearly erroneous.  Defendants never moved for such relief, the court never expressly stated that it was granting such relief, and Plaintiff has not been heard on such.

A judge is entitled to *sua sponte* reopen discovery or amend a scheduling order. *See, e.g.*, *Kong Co. v. Bounce Enterprises, LLC*, 2025 WL 2208706, at \*6 (D. Colo. May 2, 2025) (citing *M.G. ex rel. Garcia v. Scrase*, 2022 WL 5242610, at \*2 (D.N.M. Oct. 6, 2022); *Butler v. Pinerio*, 2024 WL 268147 (S.D. Ga. Jan. 24, 2024)).  However, this inherent power does not change the requirement that a court's rulings be based in, and faithfully apply, the applicable legal standards.  In cases involving modification of a scheduling order, the good cause standard applies.  *See Butler*, 2024 WL 268147, at \*2.

In cases where courts *sua sponte* reopen discovery and their orders are sustained, such rulings are supported by analyses of the relevant legal standards, even without a filed motion.  *See, e.g.*, *Kong Co.*, 2025 WL 2208706, at \*6 (where parties put issue of whether to reopen discovery based on good cause before the court, the judge's "determination to allow additional limited discovery *directly addressed those arguments*" (emphasis added)); *Butler*, 2024 WL 268147, at \*2 ("The Magistrate Judge considered the issue of whether there was good cause to modify the scheduling order, sua sponte.").

Here, by contrast, there was no consideration of the applicable "good cause" standard.  The Magistrate Judge did not address the relevant factors, make findings as to each, or state on the record that he was addressing good cause at all.  "An order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of

7

procedure." *Walker v. Bd. of Cty. Com'rs of Sedgwick Cty.*, 2011 WL 2790203, at \*2 (D. Kan. July 14, 2011) (citation omitted).  Because the Magistrate Judge failed to apply any legal standard in deciding to reopen discovery, his Order was thus contrary to law.

### III.    Even if Defendants Had Filed a Motion to Reopen Discovery, They Could Not Have Made the Required Showings

If Defendants had filed a motion, or if the Court had properly considered the relevant legal standard, discovery would not have been reopened.

"To determine whether discovery should be reopened, courts consider a number of factors, including (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the deadlines contained in the Scheduling Order; (5) the foreseeability of any need for additional discovery; and (6) whether the requested discovery is likely to lead to relevant evidence." *Graves v. Wirta*, 2022 WL 1443058, at \*5 (D. Colo. May 6, 2022) (Wang, J.).  "In addition, Rule 16(b)(4) of the Federal Rules of Civil Procedure requires the movant to demonstrate 'good cause' for amending the discovery deadline set by the Scheduling Order, which requires a showing that the movant could not have met the deadlines despite her diligent efforts." *Id.*  "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

In this case, Defendants cannot show that reopening discovery is warranted, in large part due to their lack of diligence.  Plaintiff set forth detailed arguments regarding

these facts in her response to Defendants' Motion to Modify the Scheduling Order, which she respectfully incorporates herein. *See* ECF No. 267 at 5-12. However, in short:

(1) Trial is not imminent, but only because trials in this District are not typically scheduled prior to the filing of dispositive motions. Such which will be filed this week after being delayed most recently after *three* opposed motions from Defendants.

(2) Plaintiff would have strongly opposed the request.

(3) Plaintiff would be significantly prejudiced, as reopening discovery threatens to prolong this case by another year or more. Defendants, who have stated their intention to object even to the Court's Order permitting them to subpoena records, *see* **Ex. 4** at 35:2-22, have made it clear in conferrals with Plaintiff's counsel that they are likely to challenge and object to any order regarding appropriate redactions. *See also id.* at 27:2-23 (discussing such process). Defendants have also repeatedly shared with Plaintiff that they intend to move to reopen Plaintiff's and her mother's depositions upon receipt of psychotherapy notes, as well as to depose Plaintiff's expert, who they chose not to depose during the expert discovery period.[3] The Court has also recognized that Plaintiff's treatment providers may file a motion to quash the subpoenas, and even after those motions are resolved, the Court has reserved its ruling on the discoverability of the records themselves. *See id.* at 16:1-11, 29:16-19; ECF No. 290 at 2.

Put simply, any reopening of discovery does not begin and end with the two-week production window included in the subpoenas. Instead, both the Court and the Parties have forecasted an untold number of future discovery disputes over the records, and once those are resolved, Defendants intend to seek to reopen both fact and expert discovery.

---

[3] Defendants may also seek to depose the treatment providers if discovery is reopened although they never attempted to before the close of discovery despite having treatment summaries.

Plaintiff will be prejudiced not only with respect to the time it will take to resolve this matter, but also with respect to the significant costs associated with reopening discovery.[4] Further, there is no dispute that Plaintiff will suffer significant prejudice from the continued lack of finality in this matter and from being forced to reexperience the events underlying this case well into her life as a young adult. Plaintiff offered releases well before the close of discovery to avoid this very issue.

(4) Defendants were not diligent in obtaining the records in question. As detailed at length above, Defendants had a reasonable method for obtaining the records they sought as long as *one year ago*, if not earlier.[5] Plaintiff even offered to assist them. Throughout that time, Defendants never took *any* such steps to obtain the records, choosing instead to file the motion to compel and simply wait for its resolution. They prepared subpoenas, but inexplicably did not serve them. They rejected Plaintiff's offer to provide a release. Even when the Court directed the Parties to "confer further on this matter" *in addition to* proceeding with briefing Defendants' motion to compel, ECF No. 227 at 2, Defendants made a strategic choice to wait for the Court's ruling rather than seeking the records through third-party discovery. As Plaintiff emphasized in conferrals and the Magistrate Judge has now solidified, Plaintiff was never in possession of these

---

[4] To note, Plaintiff does not object to the portion of the Court's order directing her to obtain other records – such as scheduling records – that establish her treatment, and Plaintiff does not expect these records could lead to the reopening of discovery. Indeed, Defendants' recent motions to modify the scheduling order focus entirely on discovering Plaintiff's statements to her providers, i.e. psychotherapy notes. *See generally* ECF Nos. 265, 270, 285, 288.

[5] In addition to the lack of diligence in utilizing subpoenas upon Plaintiff's offer to provide a release, it should also be noted that Defendants' lack of diligence predates these conferrals. In particular, the Court issued the Scheduling Order on June 5, 2024, yet Defendants waited over 17 weeks to serve their first set of written discovery. Further, upon receiving Plaintiff's responses, Defendants waited another 12 weeks before raising any concerns therewith. Six months – or 26 weeks – is the standard discovery period in this District; Defendants took 29 weeks just to tee up the issue.

records and they needed to be subpoenaed if Defendants wanted them. Defendants should not now be relieved of the consequences of their strategic decisions.  *See, e.g.*, *White v. Deere & Co.*, 2015 WL 5081609, at *8 (D. Colo. Aug. 28, 2015) (Wang, M.J.) (where a party chose to delay certain discovery until shortly before the discovery cutoff, the party "is bound by the litigation choices made by her . . . counsel" and the court would "not award [the party's] choice to delay substantive discovery until the eve of the discovery deadline").  Nothing stopped Defendants from seeking these records through other means during the previous year other than their own strategic decisions and erroneous legal perspective.  They should not be relieved from the consequences of their wait-wait-wait-and-see litigation strategy, and Plaintiff – whose argument won before the Court – should certainly not be left the prejudiced party after Defendants' argument failed.

(5) Defendants foresaw the purported need for this discovery by no later than October 21, 2024, as evidenced by their discovery requests.

(6) In reality, the records are likely to have minimal effect on this case. They may speak minorly to damages, but are not likely to contain much new or probative information.  *See* ECF No. 240-3, ¶ 3 (describing psychotherapy notes as "incomplete records of what was discussed during sessions").

Finally, even if Defendants were able to establish the above factors, they definitively cannot establish good cause under Rule 16(b)(4), because they could have met the deadlines by their own diligent efforts by serving subpoenas *during* discovery.[6]

---

[6] Indeed, when Defendants objected to producing discovery within their possession, custody, and control on the basis of burden, Plaintiffs diligently served subpoenas to third parties to obtain such without conceding the claim of burden.  *See* ECF No. 287 at 5-6.

## **CONCLUSION**

In light of the above, Plaintiff respectfully asks that this Court sustain her objection and issue an Order clarifying that discovery is not reopened nor can it be reopened for purposes of serving subpoenas on Plaintiff's mental health treatment providers.

Respectfully submitted this 8th day of April 2026.

Spark Justice Law LLC

*s/ Laura B. Wolf*
Laura B. Wolf
Stephen Shaw
4045 S. Broadway, Suite 208
Englewood, CO 80113
(303) 802-5390 (t) / (303) 848-3003 (f)
laura@spark-law.com
steve@spark-law.com

ALR Civil Rights LLC
Aurora L. Randolph
9878 W. Belleview Ave., Suite 2129
Denver, CO 80123
(303) 968-1703 (t)
aurora@alrcivilrights.com

*Attorneys for Plaintiff*

12

**CERTIFICATE OF SERVICE AND REGARDING THE USE OF GENERATIVE AI**

I hereby certify that on this 8th day of April 2026, I electronically filed the foregoing **PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER AT ECF NO. 290** with the Clerk of Court using the CM/ECF system and served on the following:

Holly E. Ortiz
Megan R. Brooks
SEMPLE, FARRINGTON, EVERALL & CASE, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
(303) 595-0941
hortiz@semplelaw.com
mbrooks@semplelaw.com

*Attorneys for Defendants*

Further, and pursuant to the Court's Standing Order Regarding the Use of Generative Artificial Intelligence in Court Filings, undersigned counsel certifies that generative artificial intelligence was not used in any manner to draft this Objection.

*s/ Laura B. Wolf*
Laura B. Wolf