1

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

JANE DOE,                              . Case No. 24-cv-00687-NYW-TPO
                                       .
          Plaintiff,                   .
                                       .
vs.                                    . Byron G. Rogers Courthouse
                                       . 1929 Stout Street
CHERRY CREEK SCHOOL DISTRICT, . Denver, CO  80294
RYAN SILVA, and                        .
KEVIN UHLIG,                           .
                                       .
          Defendants.                  .
                                       . March 25, 2026
. . . . . . . . . . . . . . . . . 2:08 p.m.

**TRANSCRIPT OF PROCEEDINGS HELD BEFORE
THE HONORABLE TIMOTHY P. O'HARA,
UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

For the Plaintiff:          Spark Justice Law LLC
                            By:  Laura B. Wolf
                            By:  Stephen R. Shaw*
                            4045 South Broadway
                            Suite 208
                            Englewood, CO  80113
                            (303) 802-5390

                            ALR Civil Rights LLC
                            By:  Aurora L. Randolph
                            9878 West Belleview Avenue
                            Suite 2129
                            Denver, CO  80123
                            (303) 968-1703

For the Defendants:         Semple Farrington Everall
                            & Case, P.C.
                            By:  Holly E. Ortiz
                            1120 Lincoln Street
                            The Chancery Building
                            Suite 1308
                            Denver, CO  80203
                            (303) 595-0941

APPEARANCES, Continued:

Court Recorder:                 Clerk's Office
                                U.S. District Court
                                1929 Stout Street
                                Denver, CO  80294

Transcription Service:          AB Litigation Services
                                216 16th Street, Suite 600
                                Denver, CO  80202
                                (303) 296-0017

* Appearance via telephone

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

(Time Noted:  2:08 p.m.)

THE COURTROOM DEPUTY:  All rise.  Court is in session.  The Honorable Magistrate Judge Timothy P. O'Hara presiding.

THE COURT:  Good afternoon.  You may be seated. All right.  I'll call the case of 24-cv-687-NYW-TPO.  It is Jane Doe versus Cherry Creek School District, Ryan Silva, and Kevin Uhlig.

I'll start by taking appearances of counsel, first on behalf of the Plaintiff.

MS. WOLF:  Laura Wolf and Aurora Randolph here in person on behalf of the Plaintiff.  And Stephen Shaw is appearing by phone.

THE COURT:  Good afternoon.

MS. WOLF:  Good afternoon.

THE COURT:  Welcome to you three.

And on behalf of the Defendants.

MS. ORTIZ:  Holly Ortiz.

THE COURT:  And good afternoon to you, and welcome.

Okay.  I, first of all, will start by apologizing to the parties that it has taken me so long to resolve this. My point is to try and get this to -- get these things resolved quickly.  And in some respects, I did not succeed in that.  In a lot of respects, I did not succeed.  And that's on me.  And so I apologize to the parties for that.

The nature of this work is that I have over approximately 600 cases, and there is a lot of prioritization that goes with having that many cases. And -- but I want to get on this today, and I wanted to, rather than the time it takes to issue a written order and cite check and do everything that's required for a written order, I thought it was more appropriate to have a hearing in order to resolve the issues as quickly as possible. So thank you for your patience in that.

Here's what my plan is today. The motion that is pending is relating to -- well, it's a motion to compel filed by the Defendants, and it has been fully briefed. I did request some additional information from the Plaintiff, which has been provided.

And the way I see it, there are two separate issues. The first relates to the medical records that have been disclosed in camera with and without -- well, they've been disclosed public -- they've been disclosed to the Defendant with redactions. They've been now disclosed to me without redactions.

I have reviewed those, and so that's the first topic. I don't need any argument as it relates to that. I've reviewed them and am prepared to rule. I do need -- I have one factual clarification that I'll make before I rule.

But then as to the medical records, or, excuse me,

the mental health records, which is the second part of the request, I see there being two buckets in that request. The first bucket relates to information that can be characterized as psychotherapy notes.

And the second bucket of information is information held by the treatment providers that cannot be or is not characterized as psychotherapy notes. So what I intend to do as it relates to that topic is to let the parties know my inclination.

I'll hear briefly from the parties. I'm thinking somewhere between five to 10 minutes at the most. And then I'll rule on that issue.

And then the last topic would be to discuss where we go from here as far as the motion for summary judgment deadlines that are now before me. There -- I'll allow either party to make a oral motion to extend deadlines based on the rulings, and I'll hear from the parties on those -- on that front.

So without further ado, then the first question relates to the medical records. They are disclosed at ECF 223 in a redacted form. As I said, I've reviewed them unredacted.

My one factual clarification question is for the Plaintiff. And that is, does the Plaintiff intend to seek testimony or as an element of damages relating to the impact

of this incident on the Plaintiff's sexual behavior going forward?

MS. WOLF:  No, Your Honor.  We do not.

THE COURT:  Okay.  Then based on that proffer, that representation by Plaintiff's counsel, I'm going to deny the motion to compel as it relates to seeking the redacted information.

It's a 470-page document, and I reviewed every page.  I know the claims that have survived the motion to dismiss.  I know the case very well.  I know what the allegations are.

And the information that's been redacted has been, I would characterize generally -- this is not disclosing any sort of privilege -- it can be either characterized as information relating to immunizations or general gynecological or reproductive health care.

And based on the fact that that information is not relevant to the case that I can see in any respect, and I tend to -- I view Rule 26 as a wide street.  And I understand the Defendant's request for it to be viewed in camera completely because the Defendant is not expected to take the Plaintiff's word as it relates to what is or is not relevant on any given ground.

But there is nothing I can see that this information would support for purposes of trial.  And if my

factual clarification changes, then the Defense may request to reopen this issue.  But based on what I've seen, there's -- it's not discoverable under Rule 26.  And so that will be my ruling as it relates to the medical records.

THE COURT:  Anything further that --any further record that Plaintiff would like to make?

MS. WOLF:  No, Your Honor.

THE COURT:  Any further record you'd like to make, Ms. Ortiz?

MS. ORTIZ:  Yes, Your Honor.

THE COURT:  Okay.  Sure.

MS. ORTIZ:  One of the medical summaries from the medical treatment or the mental health treatment providers indicates that one of the symptoms of emotional distress being suffered was hypersexualization, which goes directly to, you know, her sexual activity after this.  So I think that does make these potentially relevant.

THE COURT:  So say that --

MS. WOLF:  And may I --

THE COURT:  Hold on one second.  Repeat one more time.  And I remember this topic coming up as it relates to hypersexualization as being an offshoot.  But I think the Plaintiff has said that they don't seek to introduce evidence of hypersexualization --

MS. WOLF:  Yes.

THE COURT:  -- in their case in chief, or they don't anticipate it in any way coming in.

MS. ORTIZ:  The problem with that is going to be Defense has -- they are claiming emotional distress.

THE COURT:  Yes.

MS. ORTIZ:  I would say the bulk of their damages are emotional distress.  And we are entitled to seek out and to identify weaknesses with those theories and to seek out all sources of emotional distress.

And Plaintiff doesn't get to pick and choose what emotional distress is based upon what they do and do not want to disclose.  We have a mental health treatment provider who prepared a summary for this litigation that includes that in the summary.

And obviously we don't have the mental health treatment records, so we have no idea, any background what that means.  So I think we do have a right to see those records as they relate to her sexual activity moving forward.

THE COURT:  Well, hold on.

MS. ORTIZ:  If they are not --

THE COURT:  Yeah.

MS. ORTIZ:  -- if it is not actually something that would be relevant, obviously we are not going to introduce it.

THE COURT:  Right.

MS. ORTIZ:  We are not here to embarrass the Plaintiff in any way, shape, or form.  But I have a duty to defend my clients --

THE COURT:  I know.

MS. ORTIZ:  -- and they are entitled to that.

THE COURT:  Well, let me dig a little deeper then, that you would then be introducing evidence of her hypersexual activity?

MS. ORTIZ:  The lawyerly answer I'm going to give you on that is it depends because we don't know what she's going to claim at the hearing.  What we have is a mental health treatment summary provided for this litigation that introduces it, that introduces that.  So --

THE COURT:  Well, the --

MS. ORTIZ:  -- we don't know what that's based on. We don't have any information about that because we have no records from the mental health treatment providers.  The closest we get is whatever, you know, what is this hypersexualization?  We don't know that.  So I think we do have a right to see.  We don't intend to introduce any evidence of proactive damages, right.

THE COURT:  Right.

MS. ORTIZ:  But we certainly have the right, depending on what comes up, to be able to refute those.  And we can't do that if we don't have the records.

THE COURT:  And that's why I asked the question I asked before ruling, that if that is a source of damages, then I see your point as a valid one.  That if the Plaintiff is saying, and if she gets on the witness stand and says, that, listen, I could no longer have sex as a result of what happened on January -- in January of 2022, then the minutes will reflect here today that potentially that this topic may be readdressed, okay?

But this is not a source of damages that the Plaintiff is seeking.  It's like saying, I would love -- I want to get evidence of a source of damage -- that the Defendant's saying I want evidence of a source of damage that the Plaintiff is not seeking, and it just so happens to be a very extremely personal and otherwise irrelevant area.

So -- and it's not like the garden variety.  That garden variety emotional distress would not open the door to this type of information.  Say it is in a different case.  So I hear your point.  It's subject to reconsideration should the testimony go in a different direction.

But based on what I've seen and heard and even the record you've just made, respectfully, is not sufficient to allow the information that I've -- that's redacted.  So --

MS. ORTIZ:  Okay.

THE COURT:  -- I thank you for -- any further record you'd like?

MS. ORTIZ:  I would just make one point --

THE COURT:  Sure.

MS. ORTIZ:  -- that if this comes out on the stand, then we are extremely prejudiced because we will not have been able to depose her on it.  We'll be in the middle of a trial where we now have to review hundreds of pages of records --

THE COURT:  Well --

MS. ORTIZ:  -- we have not reviewed before.

THE COURT:  -- I would imagine if this happens, if that happens, it's not going to be -- that would be the least likely outcome is that you get a document that says here it is.  The most likely outcome is that you stand up and object, it's stricken, the jury is informed that that testimony should never have been made, and that they are to disregard it.

And the Courts will expect juries to follow that instruction.  I understand that un-ringing the bell is difficult.  I understand that dynamic.  However, with the evidence I have before me and what Plaintiff is saying they're not and what they are seeking as far as damages are concerned, it's just not -- it's not discoverable under Rule 26.  That's my opinion.  So thank you.

Okay.  So that will be the ruling as it relates to the medical records.

As it relates to the mental health records, if I can summarize the parties' positions, the summary is that the Defendant wants -- and I'm looking at -- hold on one second. All right.  In ECF 218, that's the motion to compel, the Defendant wants all of the mental health records and has provided a series of cases, including *Dixon*, *Seybold*, *Weatherspoon*, *Carbajal*.

And *Fisher* is another case that -- I don't know if it's in the Defendant's brief or if it's just cited by the cases I just referenced.  But that's another Tenth Circuit case that addresses this issue.

And the Defendant's position is basically, we, the Plaintiff, has raised emotional distress, and we are entitled to mental health records relating to that emotional distress. And there is support for that argument.

The cases that I just listed, among them, supporting it, and in fact binding case law.  I mean, *Dixon* and *Fisher* are the strongest arguments for the Defendant as far as the binding nature -- binding arguments as far as the relevance and therefore discoverability of mental health-related records in the context where the Plaintiff is raising emotional distress damages.

Neither of those cases addresses the exact scenario we have before us here where the Plaintiff has said, not necessarily that they aren't relevant or discoverable.  The

13

Plaintiff's response is, I don't have them, and I can't get them because especially as it relates to the psychotherapy notes, because HIPAA prevents me from getting them.  And that's found -- one second -- that argument is, it comes under ECF -- in ECF 240, page 10, where -- here's the statement.  "Put simply, unlike other medical records, patients do not have a right to access, right of access to inspect and obtain copies of mental health treatment notes, i.e., psychotherapy notes."

And I would acknowledge that I think the case law I've read, the definition of psychotherapy notes is a broad one to include many forms of counseling.  But the Plaintiff is saying she can't even get them because the treatment providers won't allow her to get them; and therefore, she can't provide them.  And there is support for that position.

The Plaintiff cites to the *Kia* case, which was a case that I heard.  I didn't hear that part of the case, but that was a case that was before me.  I'm familiar with that case, and the dynamic in that case involved the parent corporation, which was in Korea, and the American version or the American subsidiary of the parent corporation, and who was in possession of those records.

So Plaintiff says, I don't have them, and therefore they're not in my control, and therefore I can't disclose them.  What I see are two buckets that I acknowledged that

14

the psychotherapy notes, I tend to agree with the Plaintiff that the Plaintiff cannot request them because under the law, under the HIPAA laws, the psychotherapist/counselor cannot disclose them to the Plaintiff.

But there is a set of information within the therapist. And so my inclination as it relates to that bucket is that the Defendant must -- it doesn't make them not relevant; it just makes them need to be subpoenaed by the Defendant to the psychotherapist or the particular therapist.

And then whatever dispute comes up from that subpoena is the dispute that comes up, that the interests are different in that because the therapist has a different protection, right of protection than the Plaintiff herself. So it's not a ruling on the relevance of it. It's really a ruling on who has it as it relates to that bucket.

Now the non-psychotherapy notes, that's a different story. And that falls more in my estimate, at least my inclination, is those records fall more under the category of medical records. That let's say in the file that there is a sheet of all of the different dates of the appointments, those are discoverable.

And the Plaintiff or the Defendant has provided multiple examples of when mental health-related information and emotional distress cases is discoverable and where Plaintiffs have been ordered to go get them.

And I could imagine that there could be letters to the school that were written by the therapist or letters to the Plaintiff herself or to the Plaintiff's parents about certain topics that may be included in that file.  And those don't seem to fall under the same category of protection that the Plaintiff is seeking as it relates to the Plaintiff's inability to get that information.

And there's a case.  It's from the -- one second -- it's from the District of Maine from 2025 that really discusses this issue.  And it was a subpoena.  It's 2025 WL 3524288, District of Maine case, decided December 9th, 2025.

And it supports the Plaintiff's position on the control issue, that psychotherapy notes are not typically going to be held by the Plaintiff; and therefore, subpoenas would need to be issued to the provider themselves.

The -- that case does also discuss a privilege and whether there is a psychotherapist privilege in the federal law.  Defense has cited cases to suggest that there is not a privilege as it relates to even the psychotherapy notes.

But that issue is not squarely before me because it just hasn't been briefed as such because the Plaintiff is arguing we don't have this information.  And that's probably an argument -- I don't want to invite future legal arguments. However, I also don't want to decide issues before they're ripe.

16

And that's an issue that's not necessarily ripe, is whether the information itself, the psychotherapy notes, is discoverable.  I think we would need to know -- we would have to hear from the provider on that as to why they believe that they are not discoverable.

I'll note generally, the Court is to consider state law concerns, but Rule 26 tends to trump state law concerns if push comes to shove and Rule 26 conflicts with state law. However, again, I'm not ruling on that issue.  That's going to depend upon the information, the specific information, and there may be other issues with the specific information.

So I would appreciate it if the parties -- this is where I'll give the parties, I'll say, five minutes and maybe one or two additional minutes -- but I'll give -- on the first bucket, which is the information that I've described as psychotherapy notes, the Defendant has to pursue that by way of a subpoena to the provider themselves; the second bucket being any other information that is contained in the psychotherapist file that is not psychotherapy notes.

The two examples I gave were letters or confirmation of meetings, the dates of appointment.  And I'll give an example of relevance of that particular topic is let's say that Ms. Doe went to therapy once a year before January of 2022, and then she went to therapy eight times in the month of January and February.  That's information that

likely is relevant on the topic of emotional distress.

On the other hand, let's say she went eight times in the months of December and November of 2021, and then she only went one time in January of 2022.  Well, then that would be relevant for the Defendant to bring up, that the sheer amount of therapy she has requested is not supportive of the Plaintiff seeking emotional distress damages in this case.

So that's just kind of a reason behind why I think that particular bucket of information may be relevant -- okay -- so -- or discoverable is a better way to say it.  All right.

So I'll hear from the Plaintiff first on those two buckets.

MS. WOLF:  Your Honor, if I may, since it's the Defendant's motion, should --

THE COURT:  Yeah, yeah, yeah.  I'm sorry.  You're right.  Let's have Ms. Ortiz.  Thank you for reminding me of that.

It's your burden, so I'll hear from you first.

MS. ORTIZ:  So I would say first of all, in my almost at this point 20 years of doing this, I have never once had a therapist refuse to provide notes, not once.  They haven't even been requested in this case, Your Honor.

And Plaintiff has admitted they are in her custody and control because she'd have to sign a HIPAA release.  I

mean, I don't know how you get around saying they're not in our custody, control, but we'll sign a HIPAA release if you subpoena them to us.

I mean, the short answer is you can get them if you sign the release, which makes them in our custody and control.  If not, we're happy to subpoena them directly to us and have the Court rule on that.  We're happy to do that.

As far as I do agree that it's not just the therapy notes, although the therapy notes are going to be directly relevant, not just to damages.  Plaintiff, we've taken her deposition since this motion was fully briefed, and she testified throughout the deposition that the big issue still at play here is the alleged bullying that was supposedly going on at the school.

She testified that, yeah, I told my therapist about that, or I think I told my therapist about that.  We're entitled to see that.  And that's critical to the motion for summary judgment, for example.

So we are entitled to see those notes.  And the federal case law makes that pretty clear.  And quite frankly, this is the only case in my entire legal career where they have not been turned over.

Now I've had to go through the motion to compel process before, but they were turned over.  And that was, quite frankly, a Judge Wang case, a different magistrate, but

a Judge Wang case.

So you know, our position is we are entitled to them. They are in Plaintiff's custody and control. In fact, her saying they aren't is a little ridiculous, given that she says you have to have a HIPAA release for me to get them, which tells me she can get them if she wants to.

THE COURT: Well, I don't know that that's what it says. I think that her agreement to sign a release is almost -- I took it to mean, like, we won't even be able to get them. We'll try. We'll agree to even sign a release, and we'll see.

And her -- the affidavits would support that, that these particular providers aren't going to disclose them to the Plaintiff. That's how I took their willingness to give you a release, what that means. But I hear your point.

MS. ORTIZ: And the problem is they haven't even asked for them.

THE COURT: Right.

MS. ORTIZ: They haven't requested them, at least that was the last representation I had on this issue. But as to the other documentation, outside of psychotherapy notes, of course it's relevant, and of course it's discoverable.

THE COURT: Okay. So --

MS. ORTIZ: But if the Court wants us to directly subpoena them and jump through those hoops, we can do that.

That will, I think, further delay this case but --

THE COURT:  Well, we'll talk about its impact on the motion for summary judgment if, in fact, that is my ruling and what that does going on.  So okay.

Ms. Wolf.

MS. WOLF:  If I may, Your Honor --

THE COURT:  Yes.

MS. WOLF:  -- I might stand here.

THE COURT:  Sure.

MS. WOLF:  I actually threw out my back two days ago, so leaning over is hurting.  So I want to first note the biggest issue, and it's kind of what Ms. Ortiz referenced at the end, is about whether we've asked for these.  And the *Vaughn* case is very clear that the ability to ask is not the same thing as the legal right to obtain.  And so we don't --

THE COURT:  I'm with you on that topic.  I --

MS. WOLF:  So that's what I just wanted to make sure was clear.

THE COURT:  I will say, though -- and this isn't cutting into your time; this is my time -- that the cases don't seem to flesh this issue out very well.  And the idea of what you describe makes complete sense to me, and it's really -- *Carter* verifies that.  But there's plenty of cases that are ordering all mental health records.  And so --

MS. WOLF:  As the Court notes, that's not currently

what's in dispute in this matter.  So what happened -- so I understand Ms. Ortiz's history on this issue.  What I want to say is I work with sex assault victims regularly, and I have had increasing difficulties obtaining mental health treatment records, even when I am trying to request them to resolve my case.

And so, as the Court saw, we not only provided a affidavit from a treatment provider, not our client's treatment provider --

THE COURT:  No, I --

MS. WOLF:  -- a treatment provider licensed here in Colorado, and I also received client permission from a different case to provide the Court with a copy of an email communication from general -- or not general counsel, excuse me -- an attorney within counsel's office at the University of Colorado on this issue.

What has happened to us many times is that then the prejudice falls on my client, where the defendant in those cases has come to the Court and said, well, they didn't disclose these records, and so we are going to ask that they not be allowed to present emotional distress damages on the stand.

And it doesn't matter that I can show I've contacted this office 13 times, Your Honor.  Here's every communication, and I can't get them.  So at this point, I

start digging into this.  I start finding out what's going on.  I work with a lot of therapists in my work.

And I find out, well, we don't have any legal obligation to provide them.  That's the issue.  And so, yes, I agree with Ms. Ortiz that it's very possible, if not very likely, that in other cases of hers, other Plaintiffs have been able to request them and obtain them, even though they're not legally obligated to.

And I'm now taking the position my client doesn't have the possession, custody, or control.  And as we noted, we offered, if they wanted to subpoena them for release, to go to our office.

Insofar as Defendants taking the position, oh, it has to go to their office, I want to remind the Court we have a protective order in this case, and absolutely that protective order will be standing.

And so having any sort of mental health treatment records go to Defense counsel first without our ability to review and redact them would be incredibly prejudicial and I think a violation of the Court's order.

But and then I think the Court already hit the point on the release issue in the sense that that doesn't mean that we have the right to actually obtain them.  The only thing I'll add with respect to the other information that could be in the file, I have no concern with going back.

All of the conferrals we've had -- and yes, we use these terms records very broadly -- it has been very clear, at least to me, that what Defendants are seeking are the psychotherapy notes.

That's even what is at issue.  If the Court looks in the motions to modify the scheduling order to push back the dispositive motions deadline, it's all about what's in those notes.

So if there had ever been any confusion there, and additional clarification of we're just looking for the dates for you to go back and seek the dates or records showing those dates, that would have never been an issue.  And so we're happy to obtain those.

As far as any letters, if there were any letters to the School District, they certainly would have disclosed them.  We've disclosed the only letters we have, which we received treatment summaries in order to produce for Defendants in this case.

But I did want to just notify the Court that's not an issue.  And if that was part of our conferral, I want to be clear, it was not clear to us that they were seeking anything beyond the treatment notes themselves.

THE COURT:  Okay.

Anything further, Ms. Ortiz?  It is your motion.

MS. ORTIZ:  Yeah, I would just say that I think we

24

made it pretty clear we were seeking all --

THE COURT:  Right.

MS. ORTIZ:  -- mental health records.  I would agree we didn't ever specify, well, give us the dates.  But --

THE COURT:  Right.

MS. ORTIZ:  -- I mean, all mental health records is pretty clear.

THE COURT:  Okay.

MS. ORTIZ:  And I do again think as far as the HIPAA release and my subpoenaing them to her office, we're jumping through hoops that are not required of us.  Plaintiff can get them herself through a subpoena it sounds like if she wants to review those first.

THE COURT:  Well, I'm not agreeing with you necessarily as it relates to the psychotherapy notes portion of your request that the Plaintiff.  That the -- since the Plaintiff can't get them, then it is necessarily between you and the therapist.

And therefore, that portion of the request is probably -- and I hate to take any step that can add to litigation, and I am -- that's a concern of mine in this ruling, is that I'm only adding to the potential dispute which will be between the therapy office and yourself.  I'm not ignorant to that fact.

But I also am taking this one at a time because I know how important it is.  And the issue that's before me is really you want the records from the Defendant, or, excuse me, from the Plaintiff.  And there's a portion I'm finding that you're entitled to, to get from the Plaintiff.

There's a portion that I'm finding you're entitled -- you may be entitled, depending on how that issue plays out, to get from the therapist directly.

MS. ORTIZ:  So I guess my -- I was inarticulate. My concern that I was trying to take up, and I did a pretty poor job of it, was the suggestion that I subpoena records to be sent to Plaintiff's counsel.

THE COURT:  Right.  Okay.  That will -- what I think I --

MS. ORTIZ:  I mean --

THE COURT:  -- propose as a solution to that --

MS. ORTIZ:  -- I have no problem with Plaintiff's counsel reviewing them first.  But then it seems to me if that's the hoops we're going to jump through, Plaintiff's counsel subpoenas them.

MS. WOLF:  No, Your Honor.

THE COURT:  Well, I --

MS. WOLF:  It's not our subpoena.

THE COURT:  No, I --

MS. WOLF:  We're not requesting it.

THE COURT:  I --

MS. WOLF:  I apologize, but --

THE COURT:  No, I know.  I --

MS. WOLF:  -- this is their burden.

THE COURT:  Yeah.

MS. WOLF:  If they want to show why all these notes -- because the therapist has a right to object.  The therapist has a right to file a motion to quash.  Defendant needs to demonstrate the basis for asking for such sensitive records.  It's not our request.

If they would -- and I want to be clear.  We noted this in our most recent briefing.  When Defendant refused to produce certain items based on burden alone, we subpoenaed them from another party, and that party said it was burdensome.  And we were here in front of the Court defending our subpoena.  It's their request.  And if they want to make that request, that is on them to then defend it, not on us.

THE COURT:  And I don't fault the Defendant for wanting it from the Plaintiff because there is suggestion in the law.  It's not -- they typically don't address the issue. But there is suggestion that courts are ordering plaintiffs to get the records for defendants.

So I don't fault you for proceeding in that fashion.  It does leave the question about where the subpoena should be returned.  That's the -- that seems to be a little

bit of a sticking point.

Putting aside my -- what is my -- what is likely to be my ruling that this is your subpoena with the therapist themselves, do you have an objection to the records going to the Plaintiffs first, with the Court's order that every single document that is received by the Plaintiff from the therapist is to either be disclosed or redacted with a privilege log to the Defendant with the specific explanation of what is being withheld; do you have an objection to that plan?

MS. ORTIZ:  I mean, my objection to that would be I don't think the law requires us to do that.

THE COURT:  I understand.  I understand.

MS. ORTIZ:  And so I want to preserve that objection.

THE COURT:  Sure.

MS. ORTIZ:  But my -- I guess my other concern with that would be we just went through that whole process --

THE COURT:  I know.

MS. ORTIZ:  -- with the medical records, and I think we're just going to be here again, you know.

THE COURT:  I'm afraid of that too.  It is a -- that is obviously a concern of mine.  However, really the question is what I take is a vent, which I accept, about that this will take more time.  But the procedure itself of the

records being returned to the Plaintiff with that order that they are to be disclosed in their entirety or to be redacted -- and I will, I mean, when I got the redactions in this one, I got out -- I was able to deal with it quick, even though it was 400 pages.

I think it will -- that's not a step I expect to take a lot. And I will put this on the express lane if it's in my hands. So but do you insist or are you requesting that the subpoena be returned to your office?

MS. ORTIZ: I mean, I think if we've got to file a subpoena, that's what should happen. I, you know, there's just no law that supports Plaintiff's position that if I subpoena documents, they go to her.

THE COURT: Right.

MS. ORTIZ: In fact, *Ledesma*, which is a Judge Wang case, holds to the contrary, that if I subpoena records, I get them, and they are medical records in that case.

THE COURT: Yeah. All right. Here's what I'm going to rule as it relates to this second topic, which is the mental health records. All right.

I have described two buckets of records that are covered by the Defendant's request as part of the motion to compel. I'm granting the motion to compel in part, and I am ordering that the Plaintiff provide the Defendant with non -- the -- that the Plaintiff, A, request information from the

two identified mental health treatment providers, and the Plaintiff obtain the non-psychotherapy notes from those agencies and include any claim of privilege, but otherwise disclose that information to the Defendant.

As it relates to the second bucket of information, the motion to compel is denied. I am finding that based on the requirements in HIPAA that the request is properly -- should be properly -- for the psychotherapy notes, those are in the possession of the psychotherapist itself.

I know from my own experience similar -- it's similar for neuropsychology notes, that those are dearly protected by the neuropsychologist themselves. And that -- well, I'm just using that as a corollary -- but that these are the -- this is now a dispute between the Defendant and the therapists themselves.

And if the therapist wants to claim a privilege, a psychotherapy privilege in non-disclosing the information, then the therapist will have to come in and make that argument to this Court by way of a motion to quash.

But as it relates to this motion, I'm denying it because I'm finding that the Plaintiff is not in possession of the psychotherapy notes because the Plaintiff cannot be in possession of the psychotherapy notes. That would be in conflict with the specific language of HIPAA.

My ruling is based on the cases largely cited by

the Plaintiff, and in addition the *Carter* case that I cited, that do find that this type of information is typically discoverable.  But that as the *Carter* case describes, to whom the information is held is -- or who is in possession of this information, I'm finding it's the therapist.  And so that's the basis of my ruling.

As far as the return on the subpoenas, well, as it relates to the first bucket of information, that's coming to the Plaintiff, and is going to come directly to the Defendant with the redactions.

I am willing to offer that the information come to the Court, and that the Court conduct an in-camera inspection of the information.  But the -- and that would necessarily likely require the Court to -- well, I don't want to be in a position where I'm making arguments on behalf of the Plaintiff about what is or could be privileged.

But I think effectively it would be the same for the -- because of the unique situation here, I'm willing to receive it and then either hold an in-camera hearing with Plaintiff's counsel in which that issue is resolved or disclose some records to the Plaintiff's counsel in order to try and get their position whether the information is privileged.

Ms. Wolf is standing up.

MS. WOLF:  Yes, Your Honor.  I -- this is the first

time we're hearing of this proposal.  And so I just want to note, I have deep concerns with a subpoena being issued for production to a Court.  And the difference between what looks like a, as you know, struggle or debate or fight between defense counsel and a psychotherapist or, excuse me, a therapist and the Court and a therapist, I think that's improper.

If Defense counsel is looking for the documents, they should subpoena them with production to our office as we have a protection order in this case that they've never moved for reconsideration of that Judge Wang has issued.

And so if that's -- and I want to also note, if you look at ECF 240-2, a communication between myself and Ms. Ortiz, she specifically noted, and this is at the bottom of page 1, "The sticking point is not that the records will be produced to you.  That is exactly what we are asking you to do -- obtain the records and produce them to us.  You have refused to do so, so we are moving to compel."

And that is in response to my email right below it on page 2, where I note that my -- what I believe their concern is that the subpoena would be a release for production to our firm, and they disclaim that expressly.

So I don't believe it would be appropriate to have -- and I don't believe there's a legal basis to have my client's sensitive therapy records produced to this Court.

And I think it could be prejudicial because you're still ruling on issues in this case.  But it also would be prejudicial to any potential objection that the therapist might hold.

I also want to be clear, Your Honor, that we've offered the subpoena numerous times and Defense counsel has rejected it numerous times.  So I'm not exactly sure why we're back here.

THE COURT:  Well, what do you mean you've offered a subpoena?  But yours --

MS. WOLF:  Or excuse me -- offered a release.  I apologize.  We've offered a release.

THE COURT:  Yeah.  But I think your release doesn't get where it needs to go because they're not your client's to release, right?

MS. WOLF:  Yes, sorry.  I just -- I'll leave it here.

THE COURT:  Yeah.

MS. WOLF:  But what I will say is that this was never the basis of their objection previously.  This is a brand new objection that they're raising --

THE COURT:  Okay.

MS. WOLF:  -- for the first time now to having any records produced to our office.

THE COURT:  All right.  Then I -- let me say this.

That was a topic that came up. There were different district judges who required different locations of where the subpoena was to return to.

And I remember this coming up, but -- so I don't think there's an answer to where a subpoena must be returned to. I do think that, though, consistent with the ruling on the first part of this, which is that the Plaintiff is receiving records, reviewing them, issuing them to the Defendant with redactions, that it is more consistent with that portion of the opinion that the subpoena be returned to the Plaintiff rather than the Court.

The Court is, while it offers a neutral body, and I have had district judges have subpoenas returned to the Court. So I don't think it's particularly improper.

However, as I'm thinking it through, I think it would add an extra step to this and doesn't solve the problem. What I don't -- I'm not concerned that Ms. Wolf or other Plaintiff's counsels are going to take the records and not give them to the Defendant when they're ordered. I don't have that concern.

They may redact them, and then we will be before the Court, and then I will be reviewing them. But -- so I do think returning the subpoena -- well, returning the subpoena to the Plaintiff is probably the most appropriate when all is said and done.

Returning the subpoena to the Plaintiff is the most appropriate method, and that will be part of the Court's order. But it will come along with the clear order that 100 percent of the records that are obtained by the Plaintiff -- and I have a feeling we may be here again before this step happens, and in that case, we can discuss this again; but if we're not, great -- and they will go to the Plaintiff.

And the Plaintiff will do the Plaintiff's redactions that only the information that is covered by the protective order that I've already ruled on, and the information that's not covered by -- this is -- yeah -- the information not covered by the redactions would then be disclosed.

The redactions will then be reviewed by the Court in camera. So that will be the Court's ruling. The subpoena will be returned to the Plaintiff.

Ms. Wolf, anything -- any other record you want to make on this issue?

MS. WOLF:  No.  Thank you, Your Honor.

THE COURT:  Ms. Ortiz, any further record you want to make?

MS. ORTIZ:  Yeah.  I mean, I just want to preserve that we object to this procedure because we don't think it's -- it conforms with the law.  And we reserve our right to file objections, but I don't want to delay.

THE COURT:  I know.

MS. ORTIZ:  You know, I don't want to wait.  So, I mean, I'm willing to comply with this procedure.  However, I don't want it to preclude any -- our filing objections and obviously our appeal down the road.

THE COURT:  No, not at all.  You have a right to file objections within 14 days of this order.  And let me just -- is there -- the objection would be as to the return of the subpoena to the Plaintiff specifically?

MS. ORTIZ:  It would be the, quite frankly, the objection that the Plaintiff is not supposed to give us the records.

THE COURT:  I see.  Okay.

MS. ORTIZ:  I mean, basically the whole order so --

THE COURT:  Right, right, right.

MS. ORTIZ:  But I don't want to delay litigation --

THE COURT:  I understand.  Well --

MS. ORTIZ:  -- so I am willing to comply with this. I just don't want -- I want to make clear we are not waiving our objections.

THE COURT:  No, no.

MS. ORTIZ:  We will be filing objections.

THE COURT:  Yes, I understand.  The -- yes, the -- you're not waiving any objections.  And but the second thing you said, which is that objections do tend to take -- they

just take -- they take time. There's nothing we can do about that one.

MS. ORTIZ:  Right.

THE COURT:  But my ruling is that the -- consistent with the protective order previously issued in this case relating to other conduct -- information that is not -- has been deemed not relevant -- and Judge Wang largely accepted or there was a -- there were -- she granted in part and overruled in part the Defendant's objections to -- well, both parties' objections to the prior protective order that was issued.

But because that's in place, that is a specific concern that the Plaintiff has raised as to the Defendant getting the records directly.  The Court's approach of allowing the subpoena to be returned to the Plaintiff is an effort to be consistent with that protective order that was, in the end, entered by -- it was entered by me and with the objections being overruled in part and sustained in part.

But both parties are free to issue objections to this Court's order.  I think I provided the necessary clarification that I can.  And that will be the Court's ruling.  Now --

MS. RANDOLPH:  Judge, I'm so sorry.

THE COURT:  Sure.

MS. RANDOLPH:  Since this is an oral ruling, I want

to make sure my notes are good.

THE COURT:  Sure.

MS. RANDOLPH:  I think --

THE COURT:  I --

MS. RANDOLPH:  -- you had mentioned the *Carter* case, and is that the District of Maine case that you were describing?

THE COURT:  Yes.

MS. RANDOLPH:  Okay.  And is that 2025 WL 3524288? I'm so sorry.

THE COURT:  Let me just pull it up.

MS. RANDOLPH:  I should have waited until you found it.

THE COURT:  It's *United States v. Carter*.

MS. RANDOLPH:  Okay.

THE COURT:  Yeah, 2025 WL 3524288.

MS. RANDOLPH:  Thank you very much.

THE COURT:  Decided on December the 9th.  And in that case, the subpoena sought information.  The quote is, "The current subpoena seeks information from the wrong party. Mr. Carter" -- and he was the defendant in that case -- "seeks therapy records from NV2.  However, there is no evidence that NV2 has the sought-after therapy records in her possession, custody, or control," citing to 16(a)(1)(e).

And noting the relationship between Rule 16 and

Rule 17 explaining the purpose of Rule 17(c).  "And not only would it be unusual for a Plaintiff to have copies of her therapist's notes; there is no other evidence that NV2 has control of the records."  That's citing to a District of D.C. case, and there's a series of citations.

And that case goes on to say, "Although control includes the legal right to obtain documents such as where a party is able to command release of the documents by the person or entity in actual possession, NV2 is not in control of the records because she cannot get her therapist's notes."  And that cites to the *Clark* case.

"Under the HIPAA implementing regulations, an individual has a right of access to inspect and obtain a copy of protected health information except for psychotherapy notes."  And that's citing to 45 CFR § 64.524(a)(1)(i).

"Psychotherapy notes are defined as notes recorded in any medium by a mental health professional documenting or analyzing the contents of conversation during a private counseling session and that are separated from the rest of the individual's medical record."

So and it goes on to say, "Said differently, Mr. Carter has not demonstrated that NV2 is the proper person to subpoena for the psychotherapy records he seeks.  Based on this record, the court concludes that NV2 has only the facts that would confirm that she has sought therapy and presumably

when the therapy took place.  Therapy notes would be kept by NV2's therapist who has not been subpoenaed."

And that, there's a footnote there.  The court could then -- the court goes on to have a discussion about the privilege which I said is not before me.  So that's the case that I was referencing on the issue of who is in possession of these records.

MS. RANDOLPH:  Thank you, Judge.

THE COURT:  I do understand that the Defendant has cited cases in which the Plaintiff, him or herself has been ordered to disclose mental health records.  Among those cases is *Carbajal*, which is a case that does have a provision including about the HIPAA provisions.

However, that specific case does not -- it talks about HIPAA but does not discuss the specific provision relating to psychotherapy notes.  The cases also cited by Defendant, *Dixon* and *Fisher*, those are the Tenth Circuit cases.  They do support the Plaintiff's or, excuse me, the Defendant's position that they're entitled to this information.

But they don't cover the specific situation of who is to disclose them and whether the Plaintiff or the treatment provider is, in fact, in control of those records. *Fisher* was a case that -- it spoke about a denial -- sorry -- the allowance of psychotherapy records in general.

And in that case it was cited, "Numerous courts since *Jaffe* have concluded that similar to attorney-client privilege that can be waived when the client places attorney representation at issue, a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue." And that's *Schoffstall v. Henderson*, citing to an Eighth Circuit case.

And so -- and that case goes on to say, *Fisher*, "We agree with the district court that Ms. Fisher's request for emotional distress damages placed her psychological state in issue and entitled SWBT to discover her therapy records."

And I'm not -- nothing in this order should be construed as disagreeing with that concept. As I said, that issue is really not before me yet about whether those notes are entitled -- that the Defendant should be receiving those notes.

I've just only ruled on the issue of how the Defendant is to properly get those notes. So that's an important part to frame. And if there are disputes by way of a motion to quash, then I'll rule on those if they get referred to me. Okay. That will be the order in this matter.

Anything further, Ms. Wolf?

MS. WOLF: No, Your Honor.

THE COURT: Anything further, Ms. Ortiz?

MS. ORTIZ:  As far as the motion to compel or the summary judgement motion?

THE COURT:  Yes.  Okay.  Next.  That's the last -- thank you for reminding me.  The last topic I said we would discuss is the motion for summary judgment filing deadlines.  The -- I understand that this ruling is not bringing -- it's closing the door or at least resolving the pending motion which is found at ECF 218.

However, it's not getting the documents in the Defendant's hand.  I understand that.  I'll hear from the parties about their proposals relating to when to file summary judgment motions.

I'll tell you my inclination.  My inclination is to have them be due shortly because the information that I think is covered by this, the Defendant's request, is particularly impeachment related and is part of the -- it would just be more evidence of potential fact disputes.

But I have not reviewed or I don't know what the motions for summary judgment are going to look like.  And I know there's cross motions, so I could imagine a situation that this information does potentially rebut the Plaintiff's allegations, affirmative allegations, as part of their motion for summary judgment.

But my initial inclination is this is a discussion.  This is primarily information relating to damages and

impeachment.  Those are the two particularly relevant areas for the mental health records, neither of which would be particularly important for summary judgment.

But I'm happy to hear -- I guess I'll hear from you first, Ms. Wolf.

MS. WOLF:  Your Honor, I would -- again, this is not our motion, that we are not asking for any more extensions.

THE COURT:  Well, I ruled on --

MS. WOLF:  And so --

THE COURT:  -- this one is -- this --

MS. WOLF:  -- insofar as Ms. Ortiz is seeking an extension, I think it would be appropriate for me to --

THE COURT:  That's --

MS. WOLF:  -- respond to her position --

THE COURT:  Yeah, that's fair.

MS. WOLF:  -- as to why there should be an indefinite delay of the dispositive motions deadline.

THE COURT:  And there is no motion pending.  So I guess a better way --

MS. WOLF:  Sure, Your Honor.

THE COURT:  -- for me to say it is, do you request any further extension beyond the -- what I've set as Friday, the deadline for filing of summary judgment motions?

MS. WOLF:  We do not, Your Honor.

THE COURT:  Okay.

MS. WOLF:  And I guess what I'll just say on the points that you made and hopefully reserve my right, that if --

THE COURT:  Yes.

MS. WOLF:  -- Ms. Ortiz makes new points, I can note them.  Even their motion to compel states exactly what they believe these records are, which are records that speak to damages.  That -- these aren't matters at issue for a dispositive motion.

And I think the burden when you're trying to show good cause to move a deadline or modify a scheduling order, the burden rests with Defendant.  And they've done nothing to demonstrate that these records could even possibly conceivably speak to a question of whether the school acted reasonably and in compliance with the law in response to our client's report of a sexual assault, which is all that can be addressed in a dispositive motion.

Insofar as even the Court mentions impeachment, I want to note there's nothing in these records that's testimony by my client, so there's not even information to impeach.

And even Ms. Fawn, our -- the therapist who provided the affidavit at ECF 240-3 specifically noted that treatment notes don't typically contain, you know, word-by-

44

word statements of anyone.  They often contain private impressions of therapists, not of the patient, necessarily.

So you know, I like this word.  I can't take credit for it.  It's from my colleague, Steve Shaw.  But this is essentially wish casting.  They're sort of saying, we hope that these records maybe have some huge, you know, huge, you know, smoking-gun document for us, and we're hopeful, and so we want to extend this indefinitely.

And I want to note that even with the Court's resolution, Defense has already stated they will be objecting.  So now we're going to go through the objections process with the Court.

If there are subpoenas issued, then we have objections potentially by the therapist.  Then we have the process of reviewing the records and redactions and all of this.

What they are asking for is an indefinite delay, when I don't even think these records could speak to a dispositive issue.  And they certainly haven't made that showing.  But more importantly, not only is there so much prejudice to our client based on all these delays, but at the end of the day, they can remedy any prejudice that there might be by simply moving to supplement the dispositive motion.

And I want to note for Your Honor that it's not as

though when we file dispositive motions, Judge Wang is sitting and waiting at the helm to issue her ruling on them; or if she refers them to Your Honor, that you are.

When we file, it starts the clock for the six-month list, which, as you know, and I certainly know as a former clerk of this bench, is not actually six months. It's between seven and 13 months for the deadline, so to speak, to issue a ruling.

So all of these delays, even I will note the delay in not filing on February 27th, which would have put us on the following September six-month list, even now, if we file in March, we are on next March's six-month list.

And I know as a clerk that we always went oldest to newest. And so every day that we are delaying filing these motions is a delay that is incredibly prejudicial to my client.

And the reality is that at the time that any of this is resolved, Defendants will have an opportunity if they believe that those documents somehow speak to a dispositive issue in the case, that they can move to supplement.

But simply delaying indefinitely, especially, by the way, when this was a strategic decision on the part of Defendants, when I made an offer to provide these releases at the start of April of last year. So almost exactly one year ago, that was a one-year delay that Defendant chose to

undertake.

And while I understand they didn't have any control over the Court's issuance of this order, they did have control over their diligence to obtain the records and at least try other mechanisms the way we did.

So I would say we are prepared and ready. Defense counsel should certainly be prepared because the Court's initial granting of the motion on February 26th was at 7:00 p.m., meaning that they had to have their motion ready to file on February 27th.

I don't believe there should be any further delay without an absolute showing of good cause by the Defendant, because I don't believe they've made one yet.

THE COURT: Okay.

MS. WOLF: And certainly not an indefinite delay --

THE COURT: No.

MS. WOLF: -- but I believe that they should have a motion pending and ready already.

THE COURT: Okay.

Ms. Ortiz, I'll take -- are you making a oral motion for an extension of the deadline that I set this Friday?

MS. ORTIZ: We are. We're making --

THE COURT: Okay.

MS. ORTIZ: -- an oral motion based on a couple of

factors.  One is since the full briefing -- well, first of all, let me address this, we should have done the subpoena thing.  The Court ordered us, if after conferral, we didn't get the records to file a motion to compel, we did what the Court ordered.  So somehow blaming us for a delay is inappropriate and incorrect.

Second, since the full briefing of the motion, Plaintiff gave her deposition, which I spent a large chunk of time reading yesterday, of course, as we're preparing for summary judgments.  And she repeatedly testifies in there that I, you know, I'm questioning her about this alleged harassment that was going on, which is really the basis that is left in this case after the judge's ruling on the motion to dismiss is what did the District do?

What did the School District do with this alleged reported harassment?  And she testifies -- our position, quite frankly, is she never reported it at all, not to any District officials.  She says she did.

And part of that is she said, yeah, I reported it to my therapist.  So we have every right, and it's going to be critical to not only our motion for summary judgment, but responding to Plaintiff's motion for summary judgment to see what's in those notes.  They are -- it does directly impact this as far as being able to --

THE COURT:  Explain that a little bit more.  The --

how -- whether she reported to her therapist has any bearing on the deliberate indifference to -- the first claim is deliberate indifference to Ms. Doe being subjected to ongoing harassment after January 22nd.

MS. ORTIZ: Correct. And our position is, and our witnesses are going to testify, that she never reported any ongoing harassment to the District. We anticipate those therapy notes are going to be discussing -- and obviously one of the other issues is as far as this harassment, as far as deliberate indifference, is she getting any support from the District?

We anticipate those notes are going to say she -- not her therapist -- she -- what she's going to be telling her therapist is, yes, I'm getting support. I'm going to see my dean regularly. She is providing support. I mean, she gave her dean a thank-you note and a present at the end of the year. And now we're saying my dean didn't give me any support.

I think those therapy notes are going to reflect what correctly or what -- at least what she was telling -- what she's saying now is not true, which obviously we would want to introduce in our motion as well as in their motion.

The second really critical reason, and I discussed this at length when we had our phone conferral with Ms. Wolf -- sorry, I lost your name for a minute --

MS. WOLF:  That's okay.

MS. ORTIZ:  -- Ms. Wolf was the fact that, yes, I did ask for a second extension for a family medical emergency which took me out of state -- excuse me -- for a length of time.  I don't know why that's making me emotional right now.

So we would need an extension for that reason as well.  I truly don't know why that's making me -- he's fine now.  I don't know why I'm emotional about it.

THE COURT:  I'm sorry to hear that.

MS. ORTIZ:  He's fine now.

THE COURT:  Okay.

MS. ORTIZ:  This is weird.

THE COURT:  It's okay.  It's okay.  Emotions have a funny way of popping up.

MS. ORTIZ:  Thank you.

THE COURT:  Thank you.

MS. WOLF:  We actually get along very well.

THE COURT:  I know you do.  I can tell.

MS. ORTIZ:  Yes, we do.  We do so --

THE COURT:  Yeah.

MS. ORTIZ:  We talk about our kids a lot.

MS. WOLF:  A lot.

THE COURT:  Yeah.

MS. WOLF:  She has a lot of photos of my daughter as --

THE COURT:  Yeah.

MS. WOLF:  -- you know.

MS. ORTIZ:  Yeah.  So we would need the extension regardless of this motion is kind of where I'm trying --

THE COURT:  Yeah.

MS. ORTIZ:  -- very unsuccessfully to go.

THE COURT:  The concern -- I'm not opposed to extending.  Okay.  The concern I have is that extending is because of we don't know the timeline on when things are going to be returned and what issues await, extending could be substantial.

And I am more inclined to require them to be filed in a short period of time with what would be a recommendation or some notification in the minutes that if there is information that bears on the motion for summary judgment that you should be allowed, that comes out by way of what you're yet to receive, then you should be allowed to supplement that.

And it doesn't seem to me as the type of information that's going to frame your argument.  It's rather going to bolster it.  Now I could be wrong.  You never know what you don't know about a certain set of documents.  Okay. I give you that.

However, in a 2024 case, the beginning of 2024, too, it is important that the motions get filed.  So let's --

how long would you -- and I appreciate you sharing about the difficulty you faced -- that enough, that is good cause to me to extend the deadline somewhat.

But if I'm not extending all the way to when you get the records and you feel like you have what you need as far as these records are concerned. I'm really dealing with your cause being out of the office and that that set you back as far as your preparation is concerned.

Do you think an additional two weeks would be sufficient for you to get something on file?

MS. ORTIZ: I think that would work. Can we have an order, however, that's not just to supplement, but potentially to amend a motion for summary judgment?

THE COURT: Yeah. I mean, when I say supplement, I -- it's -- that's as broad of a phrase as one could interpret it. It's obviously not for any -- it still has to fit within what's relevant for purposes of --

MS. ORTIZ: Correct.

THE COURT: -- Rule 56. But if there's something that comes in, that's, for lack of a better term, a smoking gun, then, yeah, you're going to be able -- I would, if that motion comes to me as far as a motion to amend, I think the Plaintiffs are going to have a hard time shutting that down, especially because they're really wanting these to be filed now.

And so it would be inconsistent for them to argue against amendment when it can't be in dispute that you learn of the information when you get the records, because you have -- everyone agrees in this courtroom that you have had no access to the mental health records.

So I'm not ruling on that motion yet.  But this transcript will demonstrate what I would suggest for purposes of amendment going forward.  So then I will, on good cause brought by the Defendant, I will extend the deadline for the filing of Rule 56 motions.

This is coming on an oral motion that I teed up at ECF 289, and it will be -- the new deadline will be April the 10th for the filing of Rule 56 motions.  Okay.  All right.  That was the last topic I think I wanted to cover.

Anything else from -- on behalf of the Plaintiff?

MS. WOLF:  No, Your Honor.

THE COURT:  Okay.  Anything else on behalf of the Defendant?

MS. ORTIZ:  No, Your Honor.

THE COURT:  All right.  Then we will be in recess as it relates to this matter.  Good to see you all.  And please keep your conferring going.  Believe it or not, it's showing, and it's narrowing these issues.

It's just a complex case that has a lot of moving parts, but conferral when I see it is always worthy of note.

So we'll be in recess.  Thanks.

(Time noted:  3:17 p.m.)

* * * * *

CERTIFICATE

I, MAUREEN STEPHENS, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.

/s/Maureen Stephens                    April 1, 2026