IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00687-NYW-TPO

_____

VIDEOCONFERENCE DEPOSITION OF ███████████████

September 26, 2025

_____

Plaintiff,

JANE DOE,

v.

Defendants,

CHERRY CREEK SCHOOL DISTRICT; KEVIN UHLIG, in his

individual capacity; and, RYAN SILVA, in his

individual capacity.

_____

REMOTE APPEARANCES:

    SEMPLE, FARRINGTON, EVERALL & CASE, PC
       By Holly E. Ortiz, Esq.
         303-595-0941
         1120 Lincoln Street
         Suite 1308
         Denver, Colorado  80203
          Appearing for Defendants.

    SPARK JUSTICE LAW, LLC
       By Laura B. Wolf, Esq.
         Stephen Shaw, Esq.
         303-802-5390
         3435 South Inca Street
         Suite C-113
         Englewood, Colorado  80110

            Appearing for Plaintiff.

████████████

1

Q   Okay.  And I'll scroll.  Tell me when to stop, when to go.

A   Okay.  Okay.  Okay.

Q   Why did you file a second Title IX complaint at the end of June 2022?

A   Because I had new information, which was that ███ had taken ███'s phone while on school property.

Q   When did you learn that information?

A   In May.

Q   So why wait until the end of June to file the amended complaint?

A   I don't know why it took me several weeks.

Q   And as you look through this complaint, it doesn't mention anything about harassment or bullying, right?

A   It does not, no.

Q   Why not?

A   I didn't know that that was part of Title IX.

Q   You testified earlier today you read the district's policies and Bare Facts handbook that discussed harassment and bullying as part of Title IX?

95

A    No, I didn't say I read that it was part of Title IX, just that I had read the Bare Facts handbook and board policy, but not that it related to Title IX.  I so wish that someone at the school, probably Kevin Uhlig, would have sat down with me.

I had no instruction.  I was just given a form -- or the form was on the website.  No one really ever sat down and explained to me, like, "Here's all the things and here's how you do this."

I mean, I was really just grasping at things, you know.  I didn't -- like I said, I wish -- I wish they would have sat down with me and said, "Here's all the things and here's," you know...

Q    Well, you had an attorney, right?

MS. WOLF:  Objection, form.

I'm -- I'm not going to have you, ███ , answer any questions about when you retained counsel or what the scope of your retention was and what your counsel was retained to advise you on.

MS. ORTIZ:  And -- and I did not ask that.  I just --

MS. WOLF:  I know you didn't.  You didn't ask that, Holly.

MS. ORTIZ:  Okay.

MS. WOLF:  I'm just telling ███ not to say anything like that.

Q    (By Ms. Ortiz)  You had an attorney, right?

MS. WOLF:  Objection, form.

And -- and I'm going to have you not answer, ███, about whether you had an attorney at that time.

MS. ORTIZ:  Well, my --

MS. WOLF:  -- I think the timing, that isn't matter [sic], it gets into whether she had an attorney advising her with respect to Title IX complaints, which isn't -- there's no evidence of and I'm not going to have her talk about the scope of her representation with her attorney.

MS. ORTIZ:  Okay.  I understand that.

Q    (By Ms. Ortiz)  But by August, at the -- at the latest, you had an attorney, August 10th, at that meeting, right?

A    Yes.

MS. WOLF:  You can answer that, ███.

Q    And you did not --

A    Yes.

Q    -- amend your complaint after August 10th, right?

97