**CONFIDENTIAL**



Laura J. Hazen
Attorney at Law

p: 303.749.0649
f: 303.927.0809
lhazen@hklawllc.com

August 19, 2022

*By email – smckenzie3@cherrycreekschools.org*

Sonia McKenzie, General Counsel
Cherry Creek School District
4700 South Yosemite Street
Greenwood Village, CO 80111

Re: ███████████

Dear Ms. McKenzie:

As you know, my firm represents ████████████ and her parents ████████ and ██████████.

On Wednesday, August 10, 2022, ████████████ and I attended a meeting with several of your staff to discuss potential supportive measures for ████ in the 2022-2023 school year. I appreciate the chance to attend that meeting. In attendance were Kevin Uhlig, Assistant Principal; Kelly Devitt, Dean; Nancy Patrick, School Psychologist; Shelly Johnson, ████'s counselor; and Megan Lonergan, Assistant Legal Counsel.

We started the meeting asking for a summary of the type of protective measures Cherry Creek School District ("CCSD") implemented last year. Ms. Devitt went through a timeline of events, starting with the report at the end of January to the SRO and following through to the end of SY21-22. We then discussed protective measures that were available for the upcoming school year, and the school's communications with ████████ and his parents.

While I do not think that a full summary of the meeting is necessary at this time, I would appreciate the opportunity to highlight a few pieces that were impactful for ████ and her family.

CCSD 004769

**CONFIDENTIAL**

Sonia McKenzie
Cherry Creek School District
August 19, 2022
Page **2** of **7**

### *2021-2022 Protective Measures*

Last year, ███ was allowed to leave class for a break at counseling or Dean Devitt's office. ███ often went to the Dean for support. Days where she was there for a full hour were recorded but it was explained that she often came in for 10-15 minutes at a time. Those times were not recorded. ███ and ███ did not have classes together but otherwise attended school together and could easily see each other on campus and at school events during and outside of class hours. No additional protective measures were discussed or offered last year.

### *Protective Order / No-Contact Agreement*

We spent quite a bit of time discussing the Civil Protective Order ("PO") issued on March 24, 2022, and its enforcement. When issued, Ms. ███ delivered copies of the PO to the SRO and the Dean. We understand that teachers, security guards, and trainers were neither aware of the PO nor asked to play any role in its enforcement.

Mr. Uhlig said that he had a conversation with ███'s parents about the Protective Order. He had no similar conversation with ███'s parents. Mr. Uhlig explained that was because Ms. ███ – ███'s mother – had provided the Protective Order to him and he wanted to be sure that ███'s parents knew of it. He then said he offered to meet with Ms. ███ to talk to him, and she declined. Ms. ███ explained that this was later in the timeline (June 30, 2022) by which time she had not seen offers of support from Mr. Uhlig. Mr. Uhlig did not disagree. Instead, Ms. ███ explained that she felt like there was a wall between ███ and her family on one hand and the school on the other. At the time, Mr. Uhlig offered no discussion of or plan to implement a safety plan, and there was no discussion of other complaint or grievance options for ███ to utilize should ███ violate the PO.

At this point in the meeting, Mr. Uhlig said that he sent an email to Ms. ███ offering a No-Contact Agreement in the summer of 2022, which never happened. Later Mr. Uhlig admitted that he had never offered ███ or her parents a no-contact order. He owned his failure to explain the difference between a no-contact order and a protection order and the role each could play on campus. The first time that Ms. ███ was presented with a copy of a No-Contact Agreement was after our meeting on August 10, 2022. That is when she also first received a copy of the Boundary Setting Communication.

**CONFIDENTIAL**

Sonia McKenzie
Cherry Creek School District
August 19, 2022
Page **3** of **7**

Importantly, it is highly unlikely that ▉ would have signed – or would now sign – a No-Contract Agreement. Those present did not disagree but said that expectations could be set with ▉ and, if violated, there could be consequences. Mr. Uhlig explained that those consequences would start with a "talk."

### The First Title IX Complaint

We briefly touched on the first Title IX complaint. Ms. ▉ expressed her reaction to filing a complaint only to receive a one-page document with the following box checked: "The alleged conduct did not occur in a School District education program or activity." As a result, no investigation ever took place, and the complaint was dismissed. When I asked about this, Mr. Uhlig explained that the complaint did not rise to the level of a Title IX complaint because the incident happened off campus, during the school day. I disagree that a sexual assault between two students needs to take place on campus for Title IX to be implicated. ▉'s education has been and continues to be impacted by having been sexually assaulted, the prevention and amelioration of which is precisely the purpose of Title IX.

Other than the one-page document, Ms. ▉ was not offered options, but was told that her Dean is a good resource. She was not offered a no-contact order.

Mr. Uhlig then explained that they had only just learned that ▉ reported that ▉ took her phone while on campus and then left the grounds to go the Starbucks where the assault took place. He looked to ▉ and noted her alleged failure to provide this detail and took no responsibility for the school's failure to explain what information would be relevant to a determination of whether Title IX was applicable. This is not a surprise as no investigation was conducted. Regardless, that this information would have made no difference to the outcome of this matter is proven by the lack of an investigation into the Second Title IX Complaint.

### The Second Title IX Complaint

In the second Title IX complaint, ▉ raised the issue of ▉'s theft of her phone in order to lure her off campus where he attacked her. This time, the Complaint was rejected with an additional, second box checked: "Specific circumstances exist that prevent the School District from gathering evidence sufficient to reach a determination." It also noted, "While the allegations identify the students started at school, there is not information that events preceding the alleged assault were in a CCHS

**CONFIDENTIAL**

Sonia McKenzie
Cherry Creek School District
August 19, 2022
Page **4** of **7**

program or activity." Not only is this inaccurate, but it is clear that CCSD never intended to (and never intends to) conduct a Title IX investigation to address this matter.



In May 2022, Ms. ████████ reported two PO violations to the Greenwood Village Police in which ████████ had more than incidental contact with ████ in the training room. In our meeting, Mr. Uhlig repeatedly told us that because ████ reported the assault to the SRO and that, by not reporting it to counseling, her options were limited. Mr. Uhlig said repeatedly that he did not have any information about the assault and that the school did not know anything about it. This is particularly surprising (and not credible) given that these conversations have been taking place between Ms. ████████ and CCSD administrators since January 2022.

Unfortunately, Mr. Uhlig then became combative on this issue. He said that he knew that ████ and Ms. ████████ had reported the incident to the SRO, but that the District Attorney had not found "anything to substantiate" the claims. When I clarified that they had decided not to pursue a criminal charge for the PO violations related to ████████'s harassment of ████ in the training room and that decision is different than a finding that nothing happened, he repeated that there was "nothing to substantiate" ████'s experience. I found these claims particularly baffling considering that the DA has certainly never spoken to Mr. Uhlig about the investigation, which would be an ethical violation for him to do.

When Ms. ████████ asked what process had been followed and if any investigation had been undertaken by CCSD itself, Mr. Uhlig stated "not much," defending his inaction on the grounds that the matter had already been reported to the police. We were surprised by this since Ms. ████████ has repeatedly been told by Principal Silva since April 26, 2022, that the matter has been thoroughly investigated outside of the Title IX process, including coordination with CCSD administrators, CCSD legal counsel, and the police.

In the August meeting, I shared that I understood that ████ had sent photos of his penis to other minor girls. Mr. Uhlig said, and I have no reason to disbelieve him, that no one had reported such a thing and asked if I had the photos. I shared that, of course, I had no such thing on me. He then said that "some lawyer" coming in and saying that something happened was not enough to ask the school to take steps. While I certainly agree that our conversation in that room is not a formal complaint, and my word is not evidence, his tone was unprofessional, dismissive and raised even the eyebrows of his colleagues.

H&K Law, LLC | 3900 East Mexico Avenue, Suite. 330 | Denver, CO 80210

CCSD 004772

**CONFIDENTIAL**

Sonia McKenzie
Cherry Creek School District
August 19, 2022
Page 5 of 7

I then asked how ████ could feel safe returning to a school where ████ was, allegedly, allowed to engage in this behavior without repercussions. Those present then said that if ████ had filed a complaint of retaliation under Title IX, an investigation could have been undertaken, but that ████ had not filed such a complaint. At no time was Ms. ████ (or ████) informed that that such a complaint was possible. Though I am sure this option was intended to send the message that there were options for ████, it fell flat. It was yet another example of CCSD not voluntarily offering solutions and instead asking ████ and her family to dig and fight, trying to intuit what their rights are without any compassion or support from the administration. This experience is in sharp contrast to the described contact with ████'s parents. The football playing sexual assaulter is offered "due process" while the victim is left to advocate for herself.

### ISMP

There was some discussion of an Individual Student Management Plan ("ISMP") in the context of the pending criminal case and whose responsibility it was to initiate it. No understanding was reached, but it was discussed. I would welcome the opportunity to discuss this with you in greater detail, as I believe the lack of an ISMP has impacted ████'s ability to equally engage in the learning environment.

### Protective Measures

Going forward, those present at the meeting offered a few different protective measures:
- Continuation of 504 plan for ADHD and anxiety
- 7th period with Dean Devitt as an Assist (a type of intern assistant as I understand) for school credit
- Continued ability to go to counseling, Dean's office, or others when ████ is triggered and needs to remove herself from the classroom or other educational experiences
- ████ and ████ will not be in the same classes
- Those present will see if it is possible to schedule ████ and ████ for different off periods (they are currently both off 4th). This is particularly important since the assault occurred during an off period.
- ████ could report a future incident and instead of immediately being required to write a summary of what happened, she could write the statement later when she is ready.

CCSD 004773

**CONFIDENTIAL**

Sonia McKenzie
Cherry Creek School District
August 19, 2022
Page **6** of **7**

***Discipline for*** ███

Mr. Uhlig reasonably asked Ms. ███ and myself what we would like to see CCSD do with respect to the situation. I explained that, as we sat there, I was struggling to see how ███ could feel comfortable returning to Cherry Creek High School ("CCSH"). Those present had expressed that they could not investigate – i.e., were prohibited from investigating – the allegations because of the pending criminal matter and that their hands were tied. They explained that the standard for succeeded on proving a violation of Title IX was a high bar and the regulations were complicated, essentially telling us there was no point in attempting to pursue such with CCSD. Once again, their hands were tired.

As a note, when I say their "hands are tied," I am not engaging in hyperbole, I am quoting CCSD representatives from the meeting. Mr. Uhlig repeatedly said that if there were an "egregious" incident, they could take disciplinary action. I question what is more egregious than rape and its aftermath. Mr. Uhlig then explained for a second time that ███ was entitled to "due process," without explaining why no process whatsoever has ever been afforded to ███.

I then explained that I could not see how ███ could learn with ███ present alongside her in school, especially without a no-contact order or enforcement of the PO. It is important to note that Cherry Creek High School is not ███'s home school. He is allowed to play football at CCSH, where his father is a coach, and he enjoys significant play time for a young player. Mr. Uhlig repeatedly said that ███ is entitled to "due process" before any disciplinary action is taken, including removing him from CCSH (not his home school) or the football team. Not only is ███ being afforded some unspecified "due process" outside of any type of investigatory process, but it is ███ who must leave her home school if she cannot learn because of ███'s presence and her resultant experiences of anxiety and PTSD.

███**'s Ability to Learn at CCHS**

Mr. Uhlig expressly cited ███'s repeated trips to the Dean's office as proof that she was "accessing her education," using that phrase. This statement, though illogical, does show that he has been thinking about the legal standards to which CCSD's actions will be held.

We respectfully disagree. ███ has not had access to her education at her home school. ███'s criminal process has not yet completed, so it is unknown. Meanwhile, ███ is allowed to participate in extracurriculars

**CONFIDENTIAL**

Sonia McKenzie
Cherry Creek School District
August 19, 2022
Page **7** of **7**

at his chosen school. Why must ███ be the one to change her lunch period, to walk in different hallways, or to leave CCSH altogether to access an education free of sexual assault, fear, intimidation, and retaliation? ███ sent a text apologizing for the assault the day after he did what he did, apparently feeling absolved. He is allowed to play football with his father as coach and walk the halls with only ███ to enforce her PO. ███ began a journey of crisis and grieving and fear. At school she is hypervigilant, isolated, anxious and has intrusive thoughts with flashbacks.

███ will never be the same. And CCSH is offering to have a "talk" with ███, apparently worried, quite frankly, about the impact of his actions on his future football career and perhaps the performance of the CCSH football team. ███, meanwhile, is an inconvenience to them at best, and at worst, a threat to the school's priorities. It is no wonder that she's been met with resistance from the administration at every turn.

Absent any reassurance that CCSD will take more affirmative steps to keep ███ away from ███, ensure that there is some consequence for his behavior, and provide ███ with genuine access to her education, ███ will be forced to move to another school in this upcoming academic year. This is not something for which the ███ were financially prepared, but if ███ is to access an education free of sexual abuse and intimidation, they have no choice.

Very truly yours,

H&K LAW, LLC

By:___***Laura J. Hazen***___
Laura J. Hazen

**CONFIDENTIAL**

Good morning, Ms. McKenzie:

Please find attached correspondence from attorney Laura Hazen. A hard copy will be mailed today as well. Ms. Hazen is copied on this email should you have any questions.

Thank you,

Missy Dettmann
Paralegal
H&K Law, LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
(720) 305-9915

CCSD 004776