**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-00687-NYW-TPO

JANE DOE, by and through her guardian and natural parent, JANE ROE,

Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT,
KEVIN UHLIG, in his individual capacity, and
RYAN SILVA, in his individual capacity,

Defendants.

---

**ORDER ON MOTION TO EXCLUDE**

---

This matter is before the Court on Plaintiff's Motion to Strike or Limit Testimony of Defendants' Proffered Rebuttal Expert Witness Pursuant to FRE 702 & FRCP 26 (the "Motion" or "Motion to Exclude"). [Doc. 256]. The Motion is fully briefed, [Doc. 262; Doc. 272], and the Court finds that it can rule on the Motion without the benefit of oral argument or an evidentiary hearing.[1] For the reasons set forth in this Order, the Motion to Exclude is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

This Court has set out the factual background of this case in prior orders, *see, e.g.*, [Doc. 245 at 1–3], and repeats it only to provide context to the pending Motion to Exclude.

[1] "[T]he manner in which the court conducts its Rule 702 analysis is left to the court's sound discretion," *United States v. Chapman*, 839 F.3d 1232, 1239 (10th Cir. 2016), and "[a] district court is not required to hold a pretrial *Daubert* hearing in order to make [the] determinations that Rule 702 requires," *United States v. Earls*, 129 F.4th 850, 862 (10th Cir. 2025). Neither side requested an evidentiary hearing, *see* [Doc. 256; Doc. 262], and the Court concludes that a hearing is not necessary to rule on the Motion to Exclude.

Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe") alleges that, when she was a freshman at Cherry Creek High School ("CCHS"), she was forcefully sexually assaulted by a fellow freshman. [Doc. 100 at ¶¶ 12, 14–29].[2] Ms. Doe alleges that CCHS employees failed to implement measures to ensure she did not encounter her assailant at school and failed to protect her from bullying and harassment she experienced after the assault, [*id.* at ¶¶ 41, 68, 77, 79], which caused her anxiety, PTSD, and depression, [*id.* at ¶ 314]. Plaintiff asserts claims against the Cherry Creek School District, CCHS Principal Ryan Silva, and CCHS Assistant Principal Kevin Uhlig. *See* [*id.* at ¶¶ 302–47].

Plaintiff retained Dr. Donna Peters as an affirmative expert to "perform a forensic psychological evaluation of" her. [Doc. 256 at 2]; *see also* [Doc. 257 at 2]. Defendants did not disclose any affirmative experts, but they disclosed Dr. Janine Shelby as a rebuttal expert to rebut Dr. Peters's opinions. [Doc. 256 at 2]; *see also* [Doc. 256-2 at 1]. Plaintiff contends, however, that Dr. Shelby's report is not actually a rebuttal report at all, but a belated attempt to provide affirmative expert opinions. [Doc. 256 at 2, 4–6]. For that reason, Plaintiff argues that Dr. Shelby's report should be stricken under Federal Rules of Civil Procedure 26 and 37. [*Id.* at 4–6]. In the alternative, Ms. Doe contends that Dr. Shelby's opinions should be excluded under Rule 702 of the Federal Rules of Evidence. [*Id.* at 7–16].

[2] Ms. Doe reported the assault to CCHS officials, which triggered a criminal investigation. [Doc. 100 at ¶¶ 31–32]. The assailant, identified in this case as John Jones, was charged with a misdemeanor offense of unlawful sexual contact and pleaded guilty to that charge. [*Id.* at ¶¶ 42–45].

## ANALYSIS

### I. Rule 26

#### A. Legal Standards

Rebuttal expert testimony is testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). In other words, "a rebuttal expert cannot be called to buttress a case-in-chief or advance new legal theories." *Hess v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-01397-CMA-MEH, 2024 WL 1012911, at *5 (D. Colo. Mar. 8, 2024) (citing *103 Inv. I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217 (10th Cir. 2004)). Rather, rebuttal experts "must restrict their testimony to attacking the theories offered by the adversary's experts." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. Apr. 21, 2016) (quotation omitted). "[E]xpert reports that simply address the same general subject matter as" an affirmative expert's report, "but do not directly contradict or rebut the actual contents of that . . . report, do not qualify as proper rebuttal . . . reports." *Id.* (quoting *Boles v. United States*, No. 1:13-cv-00489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015)).

Affirmative expert witnesses must be disclosed "at the times and in the sequence that the court orders," Fed. R. Civ. P. 26(a)(2)(D), and rebuttal witnesses must be disclosed "within 30 days after the other party's disclosure," Fed. R. Civ. P. 26(a)(2)(D)(ii). If a court "determines that a rebuttal report contains expert opinions that should have been disclosed by a party's original expert disclosure deadline," then the untimely disclosure violates Rule 26 and sanctions under Rule 37 may be appropriate. *Crestbrook*

*Ins. Co. v. Ecolab Inc.*, No. 24-cv-01091-TC-RES, 2025 WL 2732600, at *5 (D. Kan. Sept. 25, 2025).

The party moving to strike an expert witness under Rule 26 bears the initial burden of showing that the disclosing party failed to comply with Rule 26. *Morris v. Wells Fargo Bank, N.A.*, No. 09-cv-02160-CMA-KMT, 2010 WL 2501078, at *2 (D. Colo. June 17, 2010). If the moving party makes this showing, the burden shifts to the disclosing party to demonstrate the sufficiency of the expert disclosures. *See id.*

**B. Whether Dr. Shelby's Opinions are Rebuttal Opinions**

Ms. Doe argues that all of Dr. Shelby's opinions should be excluded because her opinions are not proper rebuttal opinions and are instead untimely affirmative expert opinions. *See* [Doc. 256 at 4–6]. Defendants disagree, arguing that all of Dr. Shelby's opinions directly address and rebut Dr. Peters's opinions. [Doc. 262 at 3–9]. The Court analyzes Dr. Shelby's rebuttal report on an opinion-by-opinion basis to determine whether her opinions are properly classified as rebuttal opinions. *See, e.g., Andersen v. City of Colorado Springs*, No. 20-cv-02032-RBJ, 2022 WL 715120, at *3–6 (D. Colo. Mar. 10, 2022); *Spring Creek*, 2016 WL 1597529, at *7–8; *Cook v. Cnty. of Los Angeles*, No. 19-cv-02417-JVS-KSX, 2022 WL 1470574, at *4 (C.D. Cal. Mar. 21, 2022).

> **Opinion 1:** "If the events occurred as reported in the source documents, it is reasonable to conclude and there is evidence to support the claim that [Plaintiff] experienced psychological distress. Sexual assault survivors often experience trauma-related symptoms and difficulties." [Doc. 257-1 at 3 (emphasis omitted)].

In their Response to the Motion to Exclude, Defendants argue only that this opinion "is the very essence of Dr. Peters' Report." [Doc. 262 at 4]. They do not explain how this renders the opinion a proper *rebuttal* opinion. *See* [*id.*]. Although this opinion seemingly

supports *Plaintiff's* case-in-chief, and case law typically cautions that a rebuttal expert cannot be used to bolster the *offering party's* case-in-chief, *see Hess*, 2024 WL 1012911, at *5, the Court nevertheless concludes that Opinion 1 is not a proper rebuttal opinion because it technically does not attack Dr. Peters's theories or directly contradict or rebut Dr. Peters's opinions. *Spring Creek*, 2016 WL 1597529, at *3; *see also Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 18 (D.D.C. 2013) (striking plaintiff's rebuttal expert opinion that "[did] not rebut any arguments presented by [the d]efendant's experts, but rather agree[d] with their conclusions").

> **Opinion 2:** "Although PTSD and trauma-related disorders are causally linked to traumatic or significantly adverse event exposure, [Plaintiff]'s records indicate she also had non-trauma-related symptoms and issues. These issues include anxiety, Generalized Anxiety Disorder (GAD), depression, disordered eating, and obsessive-compulsive symptomatology, as well as problematic nicotine and alcohol use. This is not an exhaustive list. According to the Plaintiff's Responses to Defendants' First Set of Written Discovery . . ., [Plaintiff] experienced 'a variety of emotional and mental injuries . . . including anxiety, depression, PTSD, and OCD' as a 'result of Defendants' deliberate indifference.' However, the diagnoses and symptoms [Plaintiff] has reportedly experienced are not all attributable to or solely attributable to the incidents described in the Complaint. Rather, causes for mental health disorders tend to be multifactorial. Further, these conditions/symptoms are often heavily influenced by genetics/heritability. Finally, some disorders have no known direct association with traumatic event exposure." [Doc. 257-1 at 4].

Defendants contend that this opinion "rebuts Dr. Peters' opinions related to the causes of Plaintiff's alleged PTSD and other trauma-related symptoms and causes therefor." [Doc. 262 at 4]. The Court concludes that this opinion could be viewed as an attempt to contradict or undermine Dr. Peters's opinion that Plaintiff's "trauma related symptoms and depression are more likely than not related to the sexual assault and CCHS's response to the assault." [Doc. 257 at 45]; *cf. United States v. CEMEX, Inc.*, No. 09-cv-00019-MSK-MEH, 2011 WL 13068613, at *1 n.1 (D. Colo. Aug. 11, 2011)

(recognizing that "a rebuttal report may consider additional data not utilized in the expert report . . . if related to the same subject matter"); *Adacel, Inc. v. Adsync Techs., Inc.*, No. 6:18-cv-01176, 2020 WL 4588415, at *3 (M.D. Fla. July 9, 2020) ("Importantly, a rebuttal is not limited to the exact terms discussed and addressed by the initial expert and need only be addressing the 'same subject matter' discussed by the underlying expert.").[3] Accordingly, the Court finds that Opinion 2 is a rebuttal opinion.

> **Opinion 3:** "Unlike sexual assault which conforms clearly to the Posttraumatic Stress Disorder criterion A (i.e., the qualifying traumatic event criterion), the allegation of 'deliberate indifference' does not appear to meet the standard put forth in the DSM-5-TR for witnessing or experiencing an event involving actual or threatened death, threat of serious injury, or sexual violence." [Doc. 257-1 at 5].

Defendants contend that Opinion 3 "rebut[s] Dr. Peters' assertion that Plaintiff's psychology symptomology was caused by Defendants' alleged deliberate indifference." [Doc. 262 at 5]. They offer no argument in support, instead simply repeating the challenged opinion and concluding that the opinion "directly address[es] and rebut[s] Dr. Peters' repeated assertions that Plaintiff's psychological and physiological symptoms are caused by Defendants['] alleged deliberate indifference." [*Id.*].

This opinion does not directly contradict any of Dr. Peters's opinions; Dr. Peters never opines that CCHS's alleged deliberate indifference fits within the DSM-5 "Criterion A" category. *See* [Doc. 257 at 2]. Instead, she lists only the "[s]exual assault by [John Jones]" as fitting within that category. [*Id.*]. However, Opinion 3 could nevertheless be

---

[3] The Court notes that Dr. Peters opines about the cause of Plaintiff's "*trauma related* symptoms and depression," [Doc. 257 at 45 (emphasis added)], while Dr. Shelby's Opinion 2 discusses Plaintiff's "*non-trauma-related* symptoms and issues," [Doc. 257-1 at 4 (emphasis added)]. It is not this Court's role, however, to define what constitutes "trauma-related symptoms" versus "non-trauma-related symptoms" or determine how the conditions and/or symptoms listed in Opinion 2 should be classified.

construed to rebut Dr. Peters's opinion that Plaintiff's symptoms "are more likely than not related to . . . CCHS's response to the assault," *see* [Doc. 257 at 45], because it asserts that an entity's deliberate indifference to a reported traumatic event is generally not a recognized cause of PTSD. The Court finds that Opinion 3 is proper rebuttal.

> **Opinion 4:** "To the extent [Plaintiff] has experienced anxiety, GAD, depression, OCD, disordered eating, nicotine/alcohol-related problems, and other symptoms/difficulties, each potential etiology should be considered and, to the extent possible, apportioned to the factors that developed and maintain any symptoms they may have. It is not reasonable to assume, without careful analysis, that all of [Plaintiff]'s symptoms are attributable to the sexual assault and other events described in the Complaint. This is particularly true given that some of her symptoms and difficulties predated the psycholegal events (e.g., [Plaintiff]'s anxiety, depression, migraine/ headaches, conduct problems, and eating-related concerns). Further, she was diagnosed by at least one provider with GAD. According to the criteria put forth in the DSM-5-TR, this disorder is diagnosed only when an individual has excessive anxiety or worry about a number of events or activities. Thus, GAD is not related to a single event or stressor and must involve excessive worry about more than one domain of life or situation." [Doc. 257-1 at 5 (emphasis omitted)].

Defendants say that this opinion also rebuts Dr. Peters's "assertion that Plaintiff's psychological symptomology was caused by Defendants' alleged deliberate indifference." [Doc. 262 at 5]. This statement is not accompanied by any supporting argument. Despite Defendants' lack of argument, the Court will not strike Opinion 4 as improper rebuttal. To be sure, stating that all potential causes of Plaintiff's symptoms should be considered, or that the cause of Plaintiff's symptoms should not be assumed, does not plainly contradict or rebut Dr. Peters's affirmative report, and Dr. Shelby does not claim that Dr. Peters failed to consider alternative causes or relied on unreasonable assumptions "without careful analysis." *See generally* [Doc. 257-1]. But this Court must be mindful to ensure that its rebuttal-opinion analysis does not improperly weigh in on the strength of a challenged opinion. Because Opinion 4 can be construed broadly as a challenge to

Dr. Peters's opinions about the cause of Plaintiff's symptoms, the Court will not strike the opinion on this basis. Should Dr. Shelby stray from her limited rebuttal opinions at trial and begin to offer new theories that do not rebut Dr. Peters's opinions, Plaintiff may object to that testimony.

> **Opinion 5:** "[Plaintiff]'s response style warrants questions about the degree to which she is a reliable reporter of her own symptoms and experiences. First, on a test administered by Dr. Peters, . . . [Plaintiff] responded in a manner that invalidated the test. She endorsed items at an extremely high level and endorsed both typical and extremely atypical symptoms. In fact, her testing profile displays these scores at, perhaps, the highest I have seen across thousands of profiles I have reviewed during the course of my clinical and forensic work. Individuals who respond in this manner may be exaggerating or feigning. Other interpretations are that the individual may be responding to test items as a plea for help, or that individuals with unusual symptoms/high distress may obtain scores as high as [Plaintiff]'s. In this situation, the psychologist is obliged to review the individual item responses to determine whether the endorsed items are genuine reflections of the respondent's experiences. My item analysis did not lend support for the notion that [Plaintiff] was actually experiencing all of the symptoms she endorsed, but I cannot rule out this possibility given that I did not meet directly with [Plaintiff]. . . . In a similar situation with a similar patient, I would suspect that the patient was not yet being fully forthcoming regarding the full scope of reasons for her prolonged and exacerbated symptoms. To be clear, this opinion in no way negates or detracts from any trauma-related symptoms [Plaintiff] likely experienced or experiences." [Doc. 257-1 at 5–6].

Defendants assert that this opinion "address[es] the deficiencies in Dr. Peters' evaluation and testing of Plaintiff." [Doc. 262 at 6]. Defendants offer no argument in support, instead just copying and pasting a portion of Opinion 5. *See* [*id.*]. Contrary to Defendants' assertion, this opinion does *not* identify any particular deficiencies in Dr. Peters's evaluation of Plaintiff, such as, for example, opining that Dr. Peters failed to ask appropriate questions, failed to pursue necessary follow-up questions, or failed to account for unusual answers. Instead, Dr. Shelby opines on Plaintiff's "response style" and sets out her *own* theories of the presence (or lack) of symptoms based on her evaluation of

Plaintiff's "response style." *See* [Doc. 257-1 at 5 (Dr. Shelby stating that "*[her] item analysis* did not lend support for the notion that [Plaintiff] was actually experiencing all of the symptoms she endorsed" (emphasis added))]. Because rebuttal experts may not advance their own theories, *Spring Creek*, 2016 WL 1597529, at *3, Opinion 5 is not a proper rebuttal opinion.

> **Opinion 6:** "[Plaintiff]'s Atypicality scale score was clinically significant and quite high on one of the tests administered by Dr. Peters. In fact, the actuarial report generated by the publisher indicated that [Plaintiff] is likely to have unusual perceptual experiences. Without examining her, I am unable to say what the true nature of these reported symptoms may be, but substance use, OCD, and possible psychotic symptoms should be ruled out unless additional information provides a more likely explanation (e.g., exaggeration or idiosyncratic responding to test items). Upon examination of test items, I also learned that [Plaintiff] apparently has a history of running away from home and other risk-taking behaviors not directly disclosed during her or her mother's deposition." [Doc. 257-1 at 6].

Defendants again argue that this opinion "address[es] the deficiencies in Dr. Peters' evaluation and testing of Plaintiff." [Doc. 262 at 6]. As a preliminary matter, Dr. Shelby's statement that she "learned" that Plaintiff "has a history of . . . risk-taking behaviors" is not an opinion, nor is it clearly tied to any of Dr. Peters's opinions. *See generally* [Doc. 257-1]; *see also Est. of Burnett v. City of Colorado Springs*, No. 21-cv-01708-WJM-MDB, 2025 WL 388833, at *5 (D. Colo. Feb. 3, 2025) (excluding "statement of fact" that was "not an opinion which would require" specialized knowledge). Furthermore, Dr. Shelby does not connect her statements to any sort of opinion that rebuts or contradicts Dr. Peters's report, and Defendants do not make an effort to explain how this opinion can or should be construed to address "the deficiencies in" Dr. Peters's evaluation. *See* [Doc. 262 at 6]. Opinion 6 is not proper rebuttal testimony.

> **Opinion 7:** "Although Dr. Peters's examination was thorough and conscientious in many respects, her methodology involved using a large

> number of checklist-type questionnaires across two separate meetings. Because these instruments are not forensically sound, have no indices to detect validity threats (e.g., exaggerated responding or minimizing), and are easily discernible as genuine symptoms, individuals who are motivated to portray themselves as more symptomatic than they are could easily learn to do so from completing these questionnaires. This is a particular concern given how many instruments of this type were administered and [Plaintiff]'s response pattern on the TSI-2, which rendered it invalid." [Doc. 257-1 at 6].

Defendants argue that Opinion 7 "address[es] the deficiencies in Dr. Peters' evaluation and testing of Plaintiff," [Doc. 262 at 6], and the Court agrees. Opinion 7 clearly attempts to rebut Dr. Peters's methodology in conducting her evaluation of Plaintiff. "[I]t is well settled that experts are permitted to critique each other's methods," *Harvey v. THI of N.M. at Albuquerque Care Ctr., LLC*, No. 12-cv-00727-MCA-RHS, 2014 WL 12796898, at *4 (D.N.M. Mar. 31, 2014) (collecting cases), and the Court concludes that this is a proper rebuttal opinion.

> **Opinion 8:** "Many of the source documents that would have shed light on the true nature of [Plaintiff]'s difficulties were heavily--and quite unusually--redacted or missing. Such limited information made it difficult or impossible to conduct the full analysis necessary to establish a baseline of psychological and behavioral functioning from which an expert can then assess the degree of change that occurred following the psycholegal event. This redacted information is also important to allow me to adequately consider and assess all possible causes of the symptoms and difficulties [Plaintiff] reported." [Doc. 257-1 at 6–7].

Defendants assert that, through Opinion 8, Dr. Shelby "calls [into question]" Dr. Peters's "assumption that Plaintiff's trauma symptoms can be credibly attributed to Defendants' alleged deliberate indifference or that Plaintiff's 'physical and mental health issues were very likely exacerbated by the lack of adequate by [sic] CCHS administrators and staff.'" [Doc. 262 at 7 (quoting Doc. 257 at 45)]. In support, Defendants note that Dr. Peters stated that her opinions "were formulated using information including 'psychological history, including mental health history'" and medical records, "without any

mention . . . that the records were redacted or incomplete." [*Id.* (citing Doc. 257 at 60)]. The Court is not persuaded by this argument. Dr. Shelby does not opine that Dr. Peters had insufficient information to conduct a proper or thorough evaluation. Rather, Opinion 8 discusses Dr. Shelby's *own* difficulties in evaluating Plaintiff's "psychological and behavioral functioning" based on missing or redacted medical records. See [Doc. 257-1 at 6–7 ("Such limited information *made it difficult or impossible to conduct the full analysis necessary* to establish a baseline of psychological and behavioral functioning . . . . This redacted information is . . . important *to allow me to adequately consider and assess* all possible causes of the symptoms and difficulties [Plaintiff] reported." (emphasis added))]. Furthermore, Dr. Shelby's statement that medical records were "quite unusually" redacted is improper commentary that is not tied in any way to Dr. Peters's report or evaluation. Contrary to Defendants' assertion, Opinion 8 does not "address[] the deficiencies in Dr. Peters' evaluation and testing of Plaintiff," [Doc. 262 at 6], and it is not a proper rebuttal opinion.

> **Opinion 9:** "In addition to concerns about the degree to which [Plaintiff] may have highlighted or exaggerated symptoms, it was also my impression from the deposition testimonies of [Plaintiff] and her mother that both parties were, at times, attempting to minimize [Plaintiff]'s conduct/behavioral concerns, eating-related difficulties, and risk-taking behaviors prior to the events described in the Complaint. However, when individuals respond in a manner that is intentionally vague or misleading, particularly under oath, the level of confidence in the individual's report of other information must also be questioned." [Doc. 257-1 at 7].

Defendants again state that this opinion "address[es] the deficiencies in Dr. Peters' evaluation and testing of Plaintiff." [Doc. 262 at 6]. They contend that because Dr. Peters stated that she reviewed the deposition testimony of Plaintiff and her mother before conducting her follow-up psychological examination of Plaintiff, "it is entirely appropriate

rebuttal testimony for Dr. Shelby to criticize the validity of relying on the deposition testimony and statements of Plaintiff and her mother." [*Id.* at 7–8]. This argument is not supported by any legal authority. *See* [*id.*]. Furthermore, Dr. Shelby's Opinion 9 does *not* criticize the validity of relying on deposition testimony, as Defendants suggest; a general statement that Plaintiff's self-reports "must be questioned," without any specific opinion explaining how or why Dr. Shelby believes that Dr. Peters failed to engage in the required questioning, does not amount to an opinion rebutting or challenging Dr. Peters's report. Indeed, Dr. Peters does not appear to substantively discuss the deposition testimony, indicate how she relied on it, or opine about the veracity of it.

Opinion 9 advances Dr. Shelby's *own* theories with respect to the veracity of Plaintiff's and her mother's deposition testimony. [Doc. 257-1 at 7 ("[I]t was also *my impression from the deposition testimonies* of [Plaintiff] and her mother that both parties were, at times, attempting to minimize [Plaintiff]'s conduct/behavioral concerns, eating-related difficulties, and risk-taking behaviors prior to the events described in the Complaint." (emphasis added))]. This is improper, and Opinion 9 is not a proper rebuttal opinion. *Spring Creek*, 2016 WL 1597529, at *3.

> **Opinion 10:** "If [Plaintiff] were a patient in a clinic where I work, I would recommend that she receive a thorough evaluation for OCD. Many of the symptoms documented in [Plaintiff]'s records usually result in findings of OCD, in my experience. Because I did not examine any party in this case, I am not drawing definitive conclusions about [Plaintiff]'s diagnosis or psychological status." [Doc. 257-1 at 7].

Defendants contend that Opinion 10 "address[es] treatment recommendations that properly rebut the recommendations of Dr. Peters." [Doc. 262 at 8]. They posit that this opinion "addresses Dr. Peters['s] discussion of symptomology that she attributes to Defendants that are most likely symptoms of OCD, noting that Plaintiff should be

evaluated for OCD." [*Id.*]. But opining that Plaintiff should be screened for OCD does not expressly rebut or contradict any of Dr. Peters's treatment opinions; Dr. Shelby does not opine that Dr. Peters's treatment recommendations are incorrect or inadequate. Nor does she clearly state that, if Plaintiff were diagnosed with OCD, Dr. Peters's treatment recommendations would be inappropriate. Opinion 10 is not a proper rebuttal opinion.

> **Opinion 11:** "[Plaintiff]'s alcohol/substance use should be evaluated outside the forensic context (i.e., in a clinic), where she may have an enhanced ability to disclose information and contemplate any needed change." [Doc. 257-1 at 7].

Defendants say that Opinion 11 "notes the concerns with a forensic evaluation of Plaintiff's use of alcohol and nicotine, issues addressed and attributed by Dr. Peters to Defendants' alleged deliberate indifference." [Doc. 262 at 8]. They contend that "[t]his is direct rebuttal evidence to Plaintiff's use of a forensic psychologist to evaluate symptoms and causes of Plaintiff's alcohol and nicotine use." [*Id.*]. But this opinion does not "note[]" any "concerns with a forensic evaluation of Plaintiff's use of alcohol and nicotine"; indeed, it does not clearly or directly state that Dr. Peters's methodology or evaluation procedures were inadequate or improper or plainly critique Dr. Peters's evaluation. Nor does Dr. Shelby assert that the nature Dr. Peters's forensic evaluation limited Plaintiff's "ability to disclose information." *See generally* [Doc. 257-1]. This vague opinion does not clearly contradict or rebut Dr. Peters's opinions and is not a proper rebuttal opinion.

> **Opinion 12:** "Based on her reported alcohol consumption to Dr. Peters, it is possible that [Plaintiff]'s alcohol use is hindering the effectiveness of the Lexapro and/or giving her unwanted side effects. She should discuss this issue with her medication provider. Further, source documents indicated that [Plaintiff] had difficulties in the past with medication compliance because she disliked the side effects. Individuals who abruptly discontinue SSRI medications can trigger antidepressant discontinuation syndrome and/or experience decreased mood or increased symptoms." [Doc. 257-1 at 7 (emphasis omitted)].

Defendants contend that this opinion is proper rebuttal because it "rebuts Dr. Peters' opinion that Plaintiff's depression was caused and exacerbated by [Defendants'] alleged deliberate indifference." [Doc. 262 at 8]. Again, Defendants make no meaningful supporting argument; they simply repeat Dr. Shelby's opinion and conclude that Opinion 12 "is proper[] rebuttal testimony related to Dr. Peters' determination regarding the causes of Plaintiff's symptoms." [*Id.* at 8–9]. Nevertheless, construing Rule 26(a)(2)(D)(ii) broadly, the Court finds that this opinion could be properly viewed as rebuttal to Dr. Peters's opinions about the cause or severity of Plaintiff's symptoms.

> **Opinion 13:** "There is no evidence that [Plaintiff] has ever received an evidence-based treatment for trauma symptoms or any of her other disorders/symptoms. Although it is possible that other treatments may be effective, evidence-based treatments show the highest statistical likelihood of positive, rapid change. The trauma-based treatments with the most rigorous scientific support are Cognitive Processing Therapy (CPT), Prolonged Exposure (PE), and (if it is deemed suitable given her age) Trauma-Focused CBT (TF-CBT). Eye Movement Desensitization and Reprocessing also has rigorous support for its use." [Doc. 257-1 at 7].

Defendants claim that this opinion rebuts "the validity of Dr. Peters' testing and opinions that Plaintiff continues to suffer from PTSD four years after the sexual assault and alleged deliberate indifference" and Dr. Peters's "assertion that Plaintiff will need years of therapy to address PTSD." [Doc. 262 at 9]. The Court disagrees with Defendants' first assertion, as nothing in Opinion 13 contradicts, rebuts, or calls into question Dr. Peters's opinion that Plaintiff has PTSD. However, construed broadly, this opinion could reasonably be deemed to rebut Dr. Peters's opinion that Plaintiff will need therapy for two to three years because it suggests that other treatment methods may result in more "positive, rapid change." Accordingly, this is proper rebuttal testimony.

> **Opinion 14:** "If [Plaintiff] has a trauma-related disorder, there is no reason to believe it will be permanent. Particularly with the advent and broad dissemination of evidence-based treatments for psychological trauma, the most common recovery trajectory for individuals with PTSD is recovery. . . . [E]xperiencing a significantly stressful event does not mean an individual inevitably develops PTSD or suffers permanently from it or other forms of severe emotional distress." [Doc. 257-1 at 8].

In Defendants' view, Opinion 14 rebuts Dr. Peters's opinions that (1) Plaintiff continues to suffer from PTSD; and (2) Plaintiff will need years of therapy to address her PTSD. [Doc. 262 at 9]. But Dr. Peters never opined that Plaintiff's PTSD is permanent. *See* [Doc. 257]. Dr. Shelby's opinion does not directly contradict or rebut Dr. Peters's opinions that Plaintiff currently is suffering from PTSD and currently needs therapy or that Plaintiff will benefit from two to three years of therapy sessions, *see* [*id.* at 51–52], and Defendants do not explain why it does, *see* [Doc. 262 at 9]. Because Opinion 14 does not contradict or rebut Dr. Peters's opinions, this opinion is not a proper rebuttal opinion. *Spring Creek*, 2016 WL 1597529, at *3.

In sum, the Court concludes that Opinions 1, 5, 6, 8, 9, 10, 11, and 14 are not proper rebuttal opinions. And because Defendants did not disclose Dr. Shelby as an affirmative expert by the affirmative expert deadline, her inclusion of affirmative opinions in her rebuttal report violates Rule 26(a)(2)(D). *See* Fed. R. Civ. P. 26(a)(2)(D); [Doc. 227 at 2 (setting affirmative expert deadline); Doc. 256 at 2 ("Defendants served no affirmative expert disclosures.")].

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) violation

is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). To determine whether a Rule 26 violation was substantially justified or harmless, courts consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the . . . party's bad faith or willfulness." *Id.* Here, Defendants raise no argument under the *Woodworker's* factors, *see* [Doc. 262], and the Court cannot make arguments on Defendants' behalf, *see United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011). Accordingly, the Court finds that striking these opinions is appropriate, and the Motion to Exclude is **GRANTED** as to Opinions 1, 5, 6, 8, 9, 10, 11, and 14.

## II. Rule 702

### A. Legal Standards

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "In essence, Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'" *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172

(10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). The party offering expert testimony has the burden of showing its admissibility by a preponderance of the evidence. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

Trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, the court must first analyze whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions. Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019). If the expert is qualified, the trial court must determine whether the expert's opinions are reliable by assessing the underlying reasoning and methodology, *Bill Barrett Corp.*, 918 F.3d at 770, and whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand, *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).

**B. Dr. Shelby's Qualifications**

"Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires*, 829 F. Supp. 2d at 1048 (quoting *United States v. Velasquez*, 64 F.3d 844, 849 (3rd Cir. 1995)). "[A]s long as an expert stays within the reasonable confines of [her] subject area . . . a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (cleaned up). A court "should not

exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." *Squires*, 829 F. Supp. 2d at 1048.

Ms. Doe argues that Dr. Shelby's opinions should be excluded "because she is not qualified to rebut a forensic psychological evaluation." [Doc. 256 at 7 (emphasis omitted and capitalization altered)]. This argument focuses on Opinion 7,[4] but Plaintiff nevertheless argues that Dr. Shelby's "entire [report] should be stricken on this basis." [*Id.* at 9]. Specifically, she argues that Dr. Shelby "has no experience at all as a forensic psychological evaluator." [*Id.* at 7]. Relying on articles about forensic psychology, Ms. Doe contends that forensic psychology is a distinct specialty that requires specialized training, and without that training, Dr. Shelby is not qualified to serve as a rebuttal expert in this case. [*Id.* at 8].

Defendants respond that "Dr. Shelby's curriculum vitae demonstrates that she is eminently qualified to testify about Dr. Peters' Report, conclusions, opinions and methodology." [Doc. 262 at 10]. But rather than explain *why* Dr. Shelby is qualified, Defendants largely just summarize Dr. Shelby's curriculum vitae. *See* [*id.* at 10–11]. With respect to forensic psychological evaluations specifically, they point out that Dr. Shelby "was the Lead Forensic Interviewer for the Harbor-UCLA Medical Center, currently works and has copious experiences as a 'forensic consultant' as demonstrated by her curriculum vitae and by the fact that she currently works with Park Dietz & Associates, Inc[.], Forensic Consultants in Medicine and the Behavior Sciences." [*Id.* at 11].

[4] This argument is also directed at Opinions 5 and 6, which have already been stricken as improper rebuttal testimony.

Respectfully, the fact that Dr. Shelby currently works for a company with "Forensic Consultants" in its tagline does little to demonstrate Dr. Shelby's expertise or knowledge in the field of forensic psychology. *See* [Doc. 257-1 at 1–2 (Dr. Shelby's biographical summary containing no information about her work at Park Dietz & Associates)]. Moreover, although Dr. Shelby's curriculum vitae states that she worked as a lead forensic interviewer at the Harbor-UCLA Medical Center, the Court notes that Dr. Shelby held this position for just over a year nearly 20 years ago. *See* [Doc. 257-1 at 32]. Defendants do not explain why this experience renders Dr. Shelby qualified to rebut Dr. Peters's opinions in this case. *See* [Doc. 262]. Similarly, aside from some presentations or papers that expressly reference forensics or forensic psychology, *see, e.g.*, [Doc. 257-1 at 39, 46], it is not clear to the Court whether any of Dr. Shelby's more recent research relates to the field of forensic psychology, and Defendants do not argue that it does.

Nevertheless, the Court is mindful that an expert witness need not be "the most qualified" or have "the specialization considered most appropriate by the court." *Squires*, 829 F. Supp. 2d at 1048. Dr. Shelby has a Ph.D. in counseling psychology, [Doc. 257-1 at 31], worked as the director of a child trauma clinic for ten years, [*id.* at 32], and has authored or co-authored several papers about, or has given presentations about, the treatment of children who have been sexually assaulted or have otherwise experienced traumatic events (though many were authored or given nearly or over 20 years ago), *see* [*id.* at 37–50]. The Court declines to strike Dr. Shelby's opinions in their entirety on qualifications grounds. *See Petty v. Garden City Pub. Schs.*, No. 21-cv-11328, 2025 WL 752314, at *3–4 (E.D. Mich. Mar. 10, 2025) (declining to strike psychiatrist's opinions

about child abuse victims because even though he had not spent "the majority of his time focused on child psychiatry," he had experience treating child victims).

Opinion 7, which specifically criticizes Dr. Peters's forensic evaluation methodology, presents a closer question. As the proponents of Dr. Shelby's testimony, Defendants bear the burden of showing that she is qualified to offer all of her opinions, *see Squires*, 829 F. Supp. 2d at 1048, and Defendants make no effort to explain why Dr. Shelby's year of forensic-interviewing experience, over 20 years ago, renders her sufficiently qualified to critique Dr. Peters's methodology in conducting her forensic evaluation, *see* [Doc. 262]. Some courts have excluded experts from testifying when their experience in the relevant area is outdated. *See, e.g.*, *In re Bard Implanted Port Catheter Prods. Liab. Litig.*, No. 23-cv-01975-PHX-DGC, 2026 WL 713632, at *3 (D. Ariz. Mar. 13, 2026) (precluding radiologist from testifying about emotional distress because his only experience working in psychiatry was in medical school rotations 30 years prior); *Ford Motor Co. v. Versata Software, Inc.*, No. 15-cv-10628, 2018 WL 10733561, at *4 (E.D. Mich. July 9, 2018) (concluding that expert's "'high level' experiences, some of which took place more than fifteen years ago," did not render expert qualified). But other courts have concluded that an expert's stale experience goes to the weight of the expert's testimony, not its admissibility. *See, e.g.*, *S.E.C. v. Cornerstone Acquisition & Mgmt. Co. LLC*, No. 22-cv-00765-JLS-VET, 2025 WL 276318, at *8 (S.D. Cal. Jan. 23, 2025); *Alto v. Sun Pharm. Indus., Inc.*, No. 1:19-cv-09758-GHW, 2021 WL 4803582, at *5 (S.D.N.Y. Oct. 13, 2021) (recognizing that "the Second Circuit has found that the age of an expert's experience is a matter of weight rather than admissibility") (citing *Cunningham v. Gans*, 507 F.2d 496, 500 (2d Cir. 1974)).

Ultimately, the Court finds that Dr. Shelby's limited experience in forensic psychology goes to the weight of her testimony. Although Plaintiff highlights that forensic psychology is a specialized field, *see* [Doc. 256 at 8], Plaintiff does not argue that the standards or practices in the field of forensic psychology have changed in the last 20 years, and it is not this Court's role to speculate about whether they have, *see Lowery v. Ave. 8 Holding Ltd.*, No. 24-cv-03107-AGT, 2026 WL 1388945, at *1 (N.D. Cal. May 18, 2026) (declining to exclude expert based on 20-year-old experience where party seeking excluding "[did not] explain why" the age of expert's experience mattered). To the extent Plaintiff believes Dr. Shelby lacks the necessary experience to credibly critique Dr. Peters's methodology, she can press that line of questioning on cross-examination.

Plaintiff also challenges Dr. Shelby's qualifications to offer two other opinions: Opinion 2 and Opinion 12. As for Opinion 2, which states that certain symptoms may be attributable to genetics, *see* [Doc. 257-1 at 4], Ms. Doe argues that Dr. Shelby "has no expertise, education, or training in genetics," so she is not qualified to offer that opinion, [Doc. 256 at 10]. The Court, however, is respectfully not persuaded that a psychologist would need specialized training in genetics to know that, generally, some psychological conditions are genetic.[5] However, Dr. Shelby may not offer any opinion about whether *Ms. Doe's specific conditions or symptoms* are attributable to genetics.

Plaintiff also argues that Dr. Shelby is not qualified to offer Opinion 12, which concerns the effectiveness of Plaintiff's medication. *See* [*id.* at 10–11; Doc. 257-1 at 7].

---

[5] Plaintiff's alternative argument that Opinion 2 is inadmissible because "Dr. Shelby has extremely limited information regarding Plaintiff's family's psychological and medical history from which to even speculate," *see* [Doc. 256 at 10], goes to the weight of the opinion, not its admissibility.

Plaintiff argues that Dr. Shelby "is not a medical doctor, holds no medical degrees, and has never examined or spoken with Plaintiff," so she "is not qualified to opine on the efficacy of [her] medications and how the use or discontinuation of medications may impact her." [Doc. 256 at 10]. Defendants respond that Dr. Shelby is "vastly qualified in the treatment of mental health issues, which includes the efficacy of medication and the issues that can occur with failing to comply with mental health medication," and she is qualified to "testify about what can happen if a patient ceases following prescribed treatment." [Doc. 262 at 14].

The Court agrees with Plaintiff. There is no indication in Dr. Shelby's report or curriculum vitae that she has specialized experience, knowledge, or training in prescribing medication, monitoring medication management, or the effects of medication. Nor does Dr. Shelby state that she has any experience working closely with psychiatrists who prescribe and manage medication or that medication management is a regular part of her work as a psychologist. *Cf. Ngatuvai v. Lifetime Fitness*, No. 2:16-cv-00039-JNP-DBP, 2020 WL 5441442, at *8 (D. Utah Sept. 10, 2020) (psychologist was qualified to testify that plaintiffs should be "treated through medication" because even though she was not authorized to prescribe medication, she "regularly work[ed] in tandem with psychiatrists to obtain and monitor pharmacological treatment for her patients"). The Court declines to assume that Dr. Shelby has specialized knowledge about how certain factors (like alcohol consumption or inconsistent medication compliance) impact the efficacy of medication simply because she has experience "in the treatment of mental health issues." Furthermore, Dr. Shelby's opinion that "it is possible that [Plaintiff]'s alcohol use is hindering the effectiveness of the Lexapro and/or giving her unwanted side effects" is

speculative at best and does not provide the jury any type of meaningful assistance to understand or determine a fact at issue. Fed. R. Evid. 702.

The Court does not doubt that in certain circumstances a psychologist may be qualified to testify about the efficacy of medication based on her knowledge, training, and experience. But Defendants have not demonstrated by a preponderance of the evidence that Dr. Shelby is so qualified.[6] The Court will exclude Opinion 12 on this basis.

### C. Unsolicited Commentary About Plaintiff's Parents

Dr. Shelby notes in her report that Plaintiff's mother wrote in an impact statement "that she was heartbroken to see her daughter 'damaged'" and that Plaintiff's mother "sobb[ed]" when Plaintiff told her about the assault. [Doc. 257-1 at 18]. Dr. Shelby states that "it would be upsetting to most youth with whom I have worked to know that a beloved parent regards them as damaged," and "[p]arents should avoid communicating that the child is damaged or showing uncontrolled sobbing." [*Id.*]. Ms. Doe moves to preclude Dr. Shelby from making this "unsolicited commentary about [her] parents and their parenting," arguing that these opinions or comments "are non-rebuttal opinions, outside the province of Dr. Shelby's expertise, irrelevant to the claims and defenses, and inappropriate." [Doc. 256 at 14]. Defendants do not attempt to defend this commentary. *See* [Doc. 262].

The Court concludes that any such opinions or comments are not proper rebuttal opinions and are otherwise inadmissible under Rules 402 and 403 of the Federal Rules

---

[6] Defendants argue that "Plaintiff's own expert, who does not hold any medical degrees, specifically discussed medication issues," [Doc. 262 at 14], but Defendants did not move to exclude Dr. Peters's opinions.

of Evidence. Dr. Shelby will be precluded from offering any opinions or commentary about Plaintiff's mother's reaction to the sexual assault.

**D. "Unsupported Opinions"**

Next, Plaintiff argues that "[i]nsofar as Dr. Shelby offers opinions that are non-specific and unsupported, they should also be stricken." [Doc. 256 at 14]. Plaintiff challenges Opinion 13, wherein Dr. Shelby opines that "evidence-based treatment[s] for trauma symptoms," such as cognitive processing therapy, prolonged exposure, and trauma-focused cognitive behavioral therapy, have "the highest statistical likelihood of positive, rapid change." [Doc. 257-1 at 7]. Plaintiff argues that "the basis of this opinion is not included in Dr. Shelby's report," so the opinion should be excluded. [Doc. 256 at 14]. Defendants do not respond to this argument. [Doc. 262].

The Court agrees with Plaintiff. Although Dr. Shelby explains the differences between certain therapeutic treatments and states that prolonged exposure and cognitive processing therapy "have the most rigorous base of evidentiary support," *see* [Doc. 257-1 at 28], she does not cite the sources from which she draws the conclusion that certain therapies have "the highest statistical likelihood of rapid, positive change," *see* [*id.* at 7, 28 (stating that prolonged exposure and cognitive processing therapy "have the most rigorous base of evidentiary support," but not identifying a source for this assertion)]. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Because Defendants have not demonstrated the admissibility of this opinion by a preponderance of the evidence, the Court will exclude Opinion 13.

Finally, Plaintiff also argues that, with respect to Opinion 7, Dr. Shelby "fail[s] to reference what she relies on in" offering this opinion. [Doc. 256 at 14]. Defendants do not respond to this truncated argument. *See* [Doc. 262]. The Court has reviewed Dr. Shelby's related explanation for her opinion, *see* [Doc. 257-1 at 24–27, 29], and finds that it can be reasonably inferred that Dr. Shelby relied upon her experience in forming this opinion, which is permissible. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009).[7] The Court will not exclude Opinion 7 on this basis.

### E. Scope of Dr. Peters's Expertise

Next, Plaintiff argues that "in the summary (not opinion) section of her report, Dr. Shelby muses as to whether Dr. Peters' opinions are outside of her 'scope,' presumably meaning her scope of expertise." [Doc. 256 at 15]. Plaintiff contends that only this Court can make such a determination, so any such opinion should be excluded. [*Id.*]. Defendants do not respond to this argument. [Doc. 262].

Dr. Shelby states as follows:

> Dr. Peters stated that her scope to was [sic] "determine the possible impact arising from the sexual assault . . . and the subsequent response of school officials." It was not clear that Dr. Peters is a standard of care expert related to school administration. Nor did it appear that Dr. Peters conducted an analysis of what responses the school administration and staff actually took. Therefore, Dr. Peters's opinions in this area would seemingly be outside Dr. Peters's scope.

[7] When an expert relies solely on her experience in forming their opinion, they are typically required to explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Nacchio*, 555 F.3d at 1258 (quotation omitted). Plaintiff does not argue that Dr. Shelby's report lacks this requisite explanation, [Doc. 256], and the Court will not raise arguments on Plaintiff's behalf, *Yelloweagle*, 643 F.3d at 1284.

[Doc. 257-1 at 22]. The Court agrees that this "opinion" is not admissible. Although the meaning behind Dr. Shelby's statement is not entirely clear, this statement is either an improper legal determination, not proper rebuttal testimony, or outside of the scope of *Dr. Shelby's* expertise. This opinion will be excluded. *See Kumho Tire*, 526 U.S. at 147–52 (trial courts are gatekeepers of expert testimony); *E.E.O.C. v. W. Distrib. Co.*, 643 F. Supp. 3d 1205, 1219 (D. Colo. 2022) (recognizing that it is not an expert's role "to determine what opinions are permissible for another expert to offer").

**F. Remaining Arguments**

Plaintiff's remaining arguments attack opinions that have already been excluded. *See* [Doc. 256 at 11 (seeking exclusion of Opinions 5, 6, and 9); *id.* at 12 (seeking exclusion of Opinions 5, 10, and 11); *id.* at 12–13 (seeking exclusion of Opinion 8); *id.* at 15 (seeking exclusion of Opinion 14)]. Because these opinions have been excluded on other bases, the Court does not address these arguments.

In sum, the Motion to Exclude is **GRANTED in part** and **DENIED in part**. Opinions 1, 5, 6, 8, 9, 10, 11, 12, 13, and 14, as well as any antecedent opinions contained in the body of Dr. Shelby's report, are excluded. Dr. Shelby's comments about Plaintiff's parents or the scope of Dr. Peters's expertise are also excluded. Opinions 2, 3, 4, and 7 are not excluded.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1) Plaintiff's Motion to Strike or Limit Testimony of Defendants' Proffered Rebuttal Expert Witness Pursuant to FRE 702 & FRCP 26 [Doc. 256] is **GRANTED in part** and **DENIED in part**.

DATED: September 8, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge